| | |
|---|---|
| 1.     Na Pali Haweo Community Association ("Association") is a nonprofit corporation empowered to enforce the Declaration of Covenants, Conditions and Restrictions of Na Pali Haweo ("Declaration"). | Exhibit "A", Art. VI, §§ 6.1.1 and 6.7.11. |
| 2.     The Declaration is binding upon all owners of property within Na Pali Haweo subdivision ("Project"). | Exhibit "A", Art. III, §§ 3.1, 3.3.3. |
| 3.     Defendants are owners of a single family home ("Dwelling") and lot situate at 1251 Kamehame Drive, Honolulu, Hawaii 96825 (the "Property") located within the Project, which is subject to the Na Pali Haweo Design Guidelines ("Design Guidelines"). | Exhibit "A", Art. IV, § 4.1; Exhibit "C". |
| 4.     In October 2000, Defendants submitted construction plans for a house to the Architectural Review Committee ("ARC") with a letter from their architect, Edward A. Resh ("Resh"), acknowledging his use of the Design Guidelines in designing the Dwelling. | Exhibits "D","E"; Awa Aff. ¶ 16. |
| 5.     On October 24, 2000, the ARC approved said plans ("approved plans"), attached as Exhibit "D," subject to a modification of the trash enclosure and clarification of the design for skylights. | Exhibit "F"; Awa Aff. ¶ 17. |
| 6.     Defendants submitted a different set of plans to the City and County of Honolulu, Department of Planning and Permitting but did not provide those plans to the Association. The plans differed from the approved plans, in part, in that the footprint of the dwelling had been altered, floor area increased, roof line revised, there was a toilet room in the garage instead of storage space, and exterior fenestrations were modified. | Exhibit "G"; Awa Aff. ¶ 18. |
| 7.     After construction started in 2003, Defendants' neighbors complained that the Dwelling, then in the initial stages of construction, exceeded the height limit imposed by the Design Guidelines. | Exhibit "H"; Kloetzel Aff. ¶ 13. |

| | |
|---|---|
| 8. On July 30, 2003, the Association informed Resh of the neighbors' complaints, and requested that he verify construction was in accordance with the approved plans. | Exhibit "I"; Kloetzel Aff. ¶ 14. |
| 9. By letter dated August 8, 2003, Resh confirmed that all items were the "same as approved plans." | Exhibit "J"; Awa Aff. ¶ 20. |
| 10. On August 15, 2003, ARC Chairman Ronald K. Awa visually inspected the Dwelling and concluded that construction appeared to conform with the approved plans. At that time, the roof framing above the master bedroom/garage had not been completed. Mr. Awa noted unauthorized plumbing rough-ins in the garage. | Exhibit "K"; Awa Aff. ¶ 21; Kloetzel Aff. ¶ 16. |
| 11. On September 22, 2003, the Association informed Defendants of continued complaints by neighbors about the Dwelling's height setback and front yard setback, and that the neighbors' attorney had demanded actual 'as-built' measurements of the home. | Exhibit "L"; Kloetzel Aff. ¶ 17. |
| 12. On October 7, 2003, the ARC met with Mr. Grande and his design/build team. Resh produced a drawing dated September 29, 2003, illustrating the building envelope violation, which included a notation by Resh: "MOVE COL?" referring to the columns constructed within the building envelope. | Exhibit "M"; Awa Aff. ¶ 23. |
| 13. On October 16, 2003, the Property was inspected by a county building inspector, the Association's Project Manager, Jeff Kloetzel, neighbor Glen Moribe and his attorney. Narindar Kaur Grande and Defendants' contractor, Jeff Brandt, were present. The measurements confirmed that portions of the second floor balcony and garage roof protruded beyond the building envelope, and the front facade of the Dwelling (at the garage) breached the 20 foot front setback restriction of the Design Guidelines. At that time, the roof framing of the Dwelling had been constructed, but neither the roof nor the plywood sheathing had been installed. | Kloetzel Aff. ¶ 18. |

| | |
|---|---|
| 14.  On or about October 19, 2003, Resh submitted revised plans and a letter requesting a building envelope and a front yard setback variance for the Dwelling. | Exhibit "N"; Awa Aff. ¶ 24; |
| 15.  On October 29, 2003, Defendants were advised that the ARC did not have authority to grant a height setback variance and that it would be in their best interest to cease all further construction. | Exhibit "O"; Kloetzel Aff. ¶ 20. |
| 16.  On November 6, 2003, Defendants were again informed that the ARC could not grant a height setback variance, and that their garage storage area deviated from the approved plans and the Design Guidelines. | Exhibit "P"; Awa Aff. ¶ 25. |
| 17.  On or about November 13, 2003, Resh submitted revised plans to the ARC showing removal of two columns. On November 26, 2003, the ARC *approved* the removal and reconstruction of the columns but noted that other portions of the Dwelling would also have to be moved to conform with the building envelope. | Exhibit "Q"; Awa Aff. ¶ 26. |
| 18.  Construction on non-compliant portions of the Dwelling ceased in approximately late October 2003. The dwelling remained in a substantially incomplete state until January 2004, at which time work resumed. | Kloetzel Aff. ¶ 21. |
| 19.  Resh submitted plans dated January 9, 2004, proposing to cut off a portion of the eaves above the garage. On January 28, 2004, the ARC rejected the proposal because it was out of character with the overall roof design. This letter also addressed the inadequate garage storage space. | Exhibit "R"; Awa Aff. ¶ 27. |
| 20.  On January 28, 2004, the Association demanded that Defendants cease construction on non-compliant portions of the Dwelling. | Exhibit "S"; Kloetzel Aff. ¶ 22. |
| 21.  On March 4, 2004, the Association's attorneys wrote to Defendants demanding that all non-compliant construction cease and that revised plans be submitted to the ARC. | Exhibit "U"; Kloetzel Aff. ¶ 28. |

| | |
|---|---|
| 22.   On May 25, 2004, the Association's attorneys wrote to Defendants' counsel, Steven Jacobson, demanding that all non-complaint construction on the Dwelling cease and that revised plans be submitted to the ARC. | Exhibit "W"; Kloetzel Aff. ¶ 29. |
| 23.   On June 7, 2004, the Association offered to mediate with Defendants, provided they agree to cease all unauthorized construction. | Exhibits "X"; Kloetzel Aff. ¶ 30. |
| 24.   On June 10, 2004, Defendants' counsel advised that his clients were willing to mediate but Defendants did not agree to cease unauthorized construction. On June 23, 2004, the Association repeated its offer to mediate if Defendants would cease construction. | Exhibits "Y", "Z"; Kloetzel Aff. ¶¶ 31, 32. |
| 25.   Despite letters from the Association and its attorneys demanding that Defendants cease construction on the non-compliant portions of the Dwelling, the Defendants continued with construction. | Kloetzel Aff. ¶ 23. |
| 26.   The Dwelling encroaches 3 ½ inches into the twenty foot front setback in violation of Article III, Section 3.2.1(d) of the Design Guidelines. | Exhibits "B","T" ¶ 1; Nishimoto Aff. ¶ 7A. |
| 27.   The master bedroom columns, the roof beam and more than 2 1/2 feet of roof structure extend beyond the building envelope in violation of Article III, Section 3.2.1(d) of the Design Guidelines. | Exhibits "B","T" ¶ 2; Awa Aff. ¶ 22; Nishimoto Aff. ¶ 7B. |
| 28.   The two skylights on the north roof slope are bubble type with white frost, plastic lens, and natural aluminum curbs, in violation of Article III, Section 3.2.3(i) of the Design Guidelines. | Exhibits "B","T" ¶ 3; Awa Aff. ¶ 31C; Nishimoto Aff. ¶ 7C. |
| 29.   Air conditioning equipment was installed without approval by the ARC and without screening in violation of Article III, Section 3.2.14 of the Design Guidelines. | Exhibits "B","T" ¶ 4; Awa Aff. ¶ 31D; Nishimoto Aff. ¶ 7D. |

| | |
|---|---|
| 30. Two commercial aluminum turbine roof exhaust vents were installed which do not match the vents shown on the approved plans, and which have a natural aluminum finish instead of a color matching the roof material in violation of Article III, Section 3.2.3(f) of the Design Guidelines. | Exhibits "B","T" ¶ 5; Awa Aff. ¶ 31E; Nishimoto Aff. ¶ 7E. |
| 31. Defendants failed to install a sliding garage gate, although specified on the approved plans, leaving an empty double wall receptor, in violation of Article VI, Section 6.3.4 of the Design Guidelines. | Exhibits "B","T" ¶ 6; Awa Aff. ¶ 31F; Nishimoto Aff. ¶ 7F. |
| 32. Front entry light fixtures were installed with exposed bulbs in violation of Article III, Section 3.2.6 of the Design Guidelines. | Exhibits "B","T" ¶ 7; Awa Aff. ¶ 31G; Nishimoto Aff. ¶ 7G. |
| 33. The garden wall at the front property line exceeds the height indicated on the approved plans and violates Article III, Section 3.2.7 of the Design Guidelines. | Exhibits "B","T" ¶ 8; Awa Aff. ¶ 31H; Nishimoto Aff. ¶ 7H. |
| 34. The approved plans specified a roof eyebrow above the garage, an arched clerestory window above the entry door, arched corners within the garage wall opening, planters at the front entry, a metal railing at the master bedroom balcony corner, second floor windows on the left side of the dwelling, and separate and distinct roof elements over the entry and the master bedroom; however, Defendants failed to construct each of these elements as shown on the plans in violation of Article VI, Section 6.3.4 of the Design Guidelines. | Exhibits "B","T" ¶ 9; Awa Aff. ¶ 31I; Nishimoto Aff. ¶ 7I. |
| 35. The approved plans specified a storage room of at least 100 square feet; however, Defendants constructed a toilet room instead of the storage room in violation of Article III, Section 3.2.4(b) of the Design Guidelines. | Exhibits "B","T" ¶ 10; Awa Aff. ¶ 31J; Nishimoto Aff. ¶ 7J. |
| 36. Defendants failed to create a concrete pad at the trash area as specified on the approved plans in violation of Article VI, Section 6.3.4 of the Design Guidelines. | Exhibits "B","T" ¶ 11; Awa Aff. ¶ 31K; Nishimoto Aff. ¶ 7K. |