IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

| | |
|---|---|
| NA PALI HAWEO COMMUNITY ASSOCIATION, a Hawaii non-profit corporation, | CIVIL NO. CV04-00413 DAE/LEK (Injunctive Relief) |
|      Plaintiff, | AFFIDAVIT OF JEFF KLOETZEL |
|      vs. | |
| ANTHONY CHARLES GRANDE; NARINDAR KAUR GRANDE; JOHN DOES 1-10; JANE DOES 1-10; DOE PARTNERSHIPS 1-10; DOE CORPORATIONS 1-10; DOE ENTITIES 1-10; AND DOE GOVERNMENTAL UNITS 1-10, | |
|      Defendants. | |
| ANTHONY CHARLES GRANDE and NARINDAR KAUR GRANDE, | |
|      Counterclaim Plaintiffs, | |
|      vs. | |
| NA PALI HAWEO COMMUNITY ASSOCIATION; RONALD K. AWA and DOES 1-25, | |
|      Counterclaim Defendants. | |

<u>AFFIDAVIT OF JEFF KLOETZEL</u>

STATE OF HAWAI'I             )
                                    ) SS.
CITY AND COUNTY OF HONOLULU    )

JEFF KLOETZEL, being duly sworn upon oath, deposes and says:

1.      I am employed by Hawaiiana Group Incorporated ("Hawaiiana") as a project manager. I make this Affidavit based on my own personal knowledge and information.

2.      I have been employed by Hawaiiana to serve as project manager since approximately 1995, and since February 2002 I have been assigned to assist Plaintiff Na Pali Haweo Community Association ("Association") with design review coordination and covenants compliance.

3.      I am in possession of the records of the Association referenced herein which are kept in the ordinary course and scope of business, am familiar with the subject matter of this action, and am qualified to swear to the statements contained herein.

4.      Attached to the Association's Motion for Summary Judgment ("Association's Motion") as Exhibit "A" are true and accurate excerpts of a certified and self-authenticated copy of the Declaration of Covenants, Conditions and Restrictions of Na Pali Haweo Community Association ("Declaration") dated April 11, 1991, and recorded in the Bureau of Conveyances of the State of Hawaii as Document No. 91-049173 on April 18, 1991, as amended.

5.      Attached to the Association's Motion as Exhibit "B" are true and

2

accurate copies of excerpts of the Association's Design Guidelines ("Design Guidelines") (the Declaration and Design Guidelines are collectively referred to as "governing documents").

6.     Defendants ANTHONY CHARLES GRANDE and NARINDAR KAUR GRANDE ("Defendants") are the owners of a single family home and lot located at 1251 Kamehame Drive, also known as Lot No. 49 (Kamehame Ridge Subdivision, Unit II-Phase 2-A shown on file Plan Number 2028), Maunalua, Honolulu, Hawaii 96825 (the "Property"). Attached to the Association's Motion as Exhibit "C" is a certified and self-authenticated copy of Defendants' deed for the Property which was recorded at the Bureau of Conveyances of the State of Hawaii as Document No. 2000-038054 on March 23, 2000.

7.     Attached to the Association's Motion as Exhibit "H" is a true and accurate copy of correspondence I received from Defendants' neighbor, Glen Y. Moribe, dated July 15, 2003.

8.     Attached to the Association's Motion as Exhibit "I" is a true and accurate copy of correspondence I sent to Defendants' architect, Edward Resh ("Resh") dated July 30, 2003, requesting verification that construction was in accordance with approved plans.

9.     Attached to the Association's Motion as Exhibit "K" is a true and accurate copy of correspondence I sent to Defendants dated August 29, 2003.

10.    Attached to the Association's Motion as Exhibit "L" is a true and accurate copy of correspondence I sent to Defendants dated September 22, 2003.

11.    Attached to the Association's Motion as Exhibit "O" is a true and accurate copy of correspondence I sent to Defendants dated October 29, 2003.

12.    Attached to the Association's Motion as Exhibit "S" is a true and accurate copy of correspondence I sent to Defendants dated January 28, 2004.

13.    After construction started in 2003, the Association received complaints from Defendants' neighbors, Glen Y. Moribe and Sandra E. Moribe ("Moribes"), that the Defendants' dwelling ("Dwelling"), then in the initial stages of construction, had exceeded the height limit imposed by the Design Guidelines.

14.    On July 30, 2003, I sent a facsimile to Resh informing him of the complaints about the height of the Dwelling, and requesting that Resh certify construction was in accordance with the approved plans.

15.    By letter dated August 8, 2003, Resh confirmed that all items had been verified to be the same as the approved plans.

16.    On August 15, 2003, ARC Chairman Ronald K. Awa, AIA, visually inspected the Dwelling and the work site plans. I notified Defendants of Mr. Awa's findings by letter dated August 29, 2003.

17.    By letter dated September 22, 2003, the Association advised Defendants that the Dwelling's height setback and front setback were continuing to be questioned by the Moribes and their attorney had "demanded actual 'as-built' measurements of the home proving that it is in full compliance with all regulations." The Association advised: "You may want to hire an impartial outside consultant to verify all as-built measurements in order to satisfy yourself as well as others."

4

18.    On October 16, 2003, the Property was inspected by a building inspector for the City and County of Honolulu, myself,  Glenn Y. Moribe and his attorney. Defendant Narindar Kaur Grande and Defendants' contractor Jeff Brandt also attended. Actual measurements were taken of the Dwelling, including height and front setback dimensions. The inspection confirmed that portions of the second floor balcony and garage roof encroached beyond the building envelope, and the front facade of the Dwelling (at the garage) breached the 20 foot front setback restriction of the Design Guidelines. At this time, the roof framing of the Dwelling had been constructed, but neither the roof nor the plywood sheathing had been installed.

19.    By letter dated October 19, 2003, Resh requested a height setback variance and a front setback variance from the ARC.

20.    By letter dated October 29, 2003, the ARC asked that Defendants re-submit the plans "with all revisions made to each sheet clearly highlighted." This letter also stated:  "The ARC further notes that until all these issues are resolved it would be in your best interest to cease all further construction at 1251 Kamehame Drive." Defendants were also advised that the ARC did not have authority to grant a height setback variance.

21.    Construction on non-compliant portions of the Dwelling ceased in approximately late October 2003.   The dwelling remained in a substantially incomplete state until January 2004, at which time work resumed.

22.    By letter dated January 28, 2004, the Association demanded that Defendants cease all construction on non-compliant portions of the Dwelling

immediately.

23.    Despite my January 28, 2004, letter and subsequent letters from the Association's attorneys demanding that Defendants cease construction on the non-compliant portions of the Dwelling, the Defendants continued with construction.

24.    Defendants have violated numerous provisions of the Declaration and Design Guidelines, as described and depicted in the Association's Motion, which violations continue to exist, by:

A.    Constructing the Dwelling, portions of which, including without limitation, the second floor balcony columns, roof beam and the front roof section above the garage, protrude beyond the "building envelope" in violation of Article III, Section 3.2.1(d) of the Design Guidelines and Article IV, Sections 4.1, 4.3 and 4.3.4 of the Declaration.

B.    Constructing a significant portion of the Dwelling less than 20 feet back from the front property line in violation of Article III, Section 3.2.1 of the Design Guidelines.

C.    Installing skylights in the roof of the Dwelling which are not designed as an integral part of the roof, have white glazing, are not framed in either bronze anodized or colored to match the roof, and are of a bubble design in violation of Article III, Section 3.2.3(i) of the Design Guidelines.

D.    Installing air conditioning equipment at the rear yard with no fence or screening in violation of Article III, Section 3.2.14 of the Design Guidelines.

E.    Installing roof vents which differ from those depicted on plans submitted by Defendants to the ARC, were not approved by the ARC, do not match the color of the roof, and are visible from the street in violation of Article III, Section 3.2.3(f) and Article VI, Section 6.3.4 of the Design Guidelines and Article IV, Sections 4.1, 4.3 and 4.3.4 of the Declaration.

F.    Failing to install a sliding garage gate, which is a deviation from the approved plans, in violation of Article VI, Section 6.3.4 of the Design Guidelines.

G.    Installing front entry light fixtures on the entry column bases that have exposed bulbs in violation of Article III, Section 3.2.6 of the Design Guidelines.

H.    Installing a wall on the Property which deviates from the plans approved by the ARC and exceeds the height restriction set forth in the Design Guidelines in violation of Article III, Section 3.2.7 and Article VI, Section 6.3.4 of the Design Guidelines and Article IV, Sections 4.1, 4.3 and 4.3.4 of the Declaration.

I.    Installing numerous exterior fenestrations which deviate from the plans approved by the ARC in violation of Article VI, Section 6.3.4 of the Design Guidelines, including without limitation, the roof eyebrow above the garage has been deleted, the upper corners of the garage door opening are squared-off instead of arched, the roof over the entry is not separate and distinct from the roof over the master bedroom, planters have been deleted, the metal railing at the balcony corner has been deleted, and the arched clerestory window above the entry door has been deleted.

7

J.    Failing to construct a storage area within the garage that provides the required 100 square feet of enclosed storage space in violation of Article III, Section 3.2.4(b) and Article VI, Section 6.3.4 of the Design Guidelines and Article IV, Sections 4.1, 4.3 and 4.3.4 of the Declaration.

K.    Failing to install a concrete pad at the trash area, which is a deviation from the approved plans in violation of Article VI, Section 6.3.4 of the Design Guidelines.

L.    Constructing various other improvements on the Property which deviate from the plans approved by the ARC, including, without limitation, roof ridges, hips and/or valleys in violation of Article VI, Section 6.3.4 of the Design Guidelines.

25.    Upon information and belief, as of this date, the covenant violations described above continue to exist.

26.    I am personally familiar with the Defendants' Property. Attached to the Association's Motion as Exhibit "AA" are copies of photographs which fairly and accurately depict the Dwelling as it currently appears.

27.    Attached to the Association's Motion as Exhibit "G" are true and accurate excerpts of a certified and self-authenticated copy the buildings plans for the dwelling on the Property that are on file with the Department of Planning and Permitting, City and County of Honolulu, dated July 2000.

28.    On March 4, 2004, the Association's counsel Neeley and Anderson LLP, A Limited Liability Law Partnership ("Neeley and Anderson") wrote to

Defendants and their architect demanding that all non-compliant construction on the Dwelling cease and that revised plans be submitted to the ARC by March 16, 2004. Attached to the Association's Motion as Exhibit "U" is a true and accurate copy of the letter from Neeley and Anderson to Defendants, dated March 4, 2004.

29.    On May 25, 2004, Neeley and Anderson wrote to counsel for Defendants, Steven B. Jacobson, Esq. ("Jacobson"), again demanding that all non-complaint construction on the Dwelling cease and that revised plans be submitted to the ARC. Attached to the Association's Motion as Exhibit "W" is a true and accurate copy of the letter from Neeley and Anderson to Jacobson, dated May 25, 2004.

30.    By letter dated June 7, 2004, the Association offered to mediate this matter with Defendants before The Mediation Center of the Pacific, provided Defendants agreed to cease all unauthorized construction. Attached to the Association's Motion as Exhibit "X" is a true and accurate copy of the letter from Neeley and Anderson to Jacobson, dated June 7, 2004.

31.    By letter dated June 10, 2004, Defendants' counsel advised that his clients were willing to mediate but Defendants did not agree to cease unauthorized construction. Defendants continued the unauthorized work. Attached to the Association's Motion as Exhibit "Y" is a true and accurate copy of the letter from Jacobson to Neeley and Anderson dated June 10, 2004.

32.    On June 23, 2004, the Association repeated its offer to mediate if Defendants would cease any unauthorized construction. No response was received. Attached to the Association's Motion as Exhibit "Z" is a true and accurate copy of the letter from Neeley and Anderson to Jacobson, dated June 23, 2004.

FURTHER AFFIANT SAYETH NAUGHT.

JEFF KLOETZEL

Subscribed and sworn to before me this

7th    day of    April    , 2006.

(Signature)

EDNA T. BARTOLOME

(Printed Name)

Notary Public, State of Hawai`i
My Commission expires:  12-23-2009

3