IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

| | |
|---|---|
| NA PALI HAWEO COMMUNITY ASSOCIATION, a Hawaii non-profit corporation,<br><br>　　Plaintiff,<br><br>　　vs.<br><br>ANTHONY CHARLES GRANDE; NARINDAR KAUR GRANDE; JOHN DOES 1-10; JANE DOES 1-10; DOE PARTNERSHIPS 1-10; DOE CORPORATIONS 1-10; DOE ENTITIES 1-10; AND DOE GOVERNMENTAL UNITS 1-10,<br><br>　　Defendants.<br><br>ANTHONY CHARLES GRANDE and NARINDAR KAUR GRANDE,<br><br>　　Counterclaim Plaintiffs,<br><br>　　vs.<br><br>NA PALI HAWEO COMMUNITY ASSOCIATION; RONALD K. AWA and DOES 1-25,<br><br>　　Counterclaim Defendants. | CIVIL NO. CV04-00413 DAE/LEK (Injunctive Relief)<br><br>AFFIDAVIT OF RONALD K. AWA |

## AFFIDAVIT OF RONALD K. AWA

STATE OF HAWAI'I              )
                              ) SS.
CITY AND COUNTY OF HONOLULU   )

RONALD K. AWA, being duly sworn upon oath, deposes and says:

1. I am a licensed architect in the State of Hawaii and a member of the NA PALI HAWEO COMMUNITY ASSOCIATION'S ("Association") Architectural Review Committee ("ARC"). I am authorized to make this Affidavit on behalf of the Association and make this Affidavit based on my own personal knowledge and information.

2. I have been a member of the ARC since mid-2000.

3. I am in possession of the records of the ARC kept in the ordinary course of business and referenced herein, am familiar with the subject matter of this action, and am qualified to swear to the statements contained herein.

4. Defendants ANTHONY CHARLES GRANDE and NARINDAR KAUR GRANDE ("Defendants") are the owners of a single family home and lot located at 1251 Kamehame Drive, also known as Lot No. 49 (Kamehame Ridge Subdivision, Unit II-Phase 2-A shown on file Plan Number 2028), Maunalua, Honolulu, Hawaii 96825 (the "Property").

2

5.  Attached to the Association's Motion for Summary Judgment ("Association's Motion") as Exhibit "D" are true and accurate excerpts of the building plans for Defendants' dwelling ("Dwelling") that were approval by the ARC.

6.  Attached to the Association's Motion as Exhibit "E" is a true and accurate copy of the correspondence the ARC received from Defendants' architect, Edward Resh ("Resh"), dated October 4, 2000, regarding Resh's receipt and use of the Association's Design Guidelines.

7.  Attached to the Association's Motion as Exhibit "F" is a true and accurate copy of the correspondence dated October 24, 2000, that the ARC sent to Resh regarding tentative approval of the plans for the Dwelling.

8.  Attached to the Association's Motion as Exhibit "G" are true and accurate excerpts of a certified and self-authenticated copy the buildings plans for the dwelling on the Property that are on file with the Department of Planning and Permitting, City and County of Honolulu, dated July 2000.

9.  Attached to the Association's Motion as Exhibit "J" is a true and accurate copy of correspondence the ARC received from Resh dated August 8, 2003, regarding Resh's verification that construction was in accordance with approved plans.

11. Attached to the Association's Motion as Exhibit "N" is a true and accurate copy of correspondence received by the ARC from Resh dated October 19, 2003, regarding Resh's request for a height setback variance and a front setback variance from the ARC.

12. Attached to the Association's Motion as Exhibit "P" is a true and accurate copy of correspondence the ARC sent to Defendants dated November 6, 2003.

13. Attached to the Association's Motion as Exhibit "Q" is a true and accurate copy of correspondence the ARC sent to Defendants dated November 26, 2003.

14. Attached to the Association's Motion as Exhibit "R" is a true and accurate copy of correspondence the ARC sent to Resh dated January 28, 2004.

15. Attached to the Association's Motion as Exhibit "V" is a true and accurate copy of correspondence from Resh dated March 10, 2004, regarding Resh's assertion that he was not asked by Defendants to submit drawings.

16. In October 2000, Defendants submitted construction plans for a four bedroom, three bath home of approximately 3,335 square feet to the ARC for review and approval, along with a letter from their architect, Edward A. Resh ("Resh"), stating: "The owner and I acknowledge receipt of the Design Guidelines and have used them in the design of the residence stated above."

17.   The ARC approved the plans subject to a modification to the height of the trash enclosure and clarification as to the skylight design. On October 24, 2000, the ARC informed Resh that the plans were approved.

18.   Defendants inexplicably submitted a different set of plans to the City and County of Honolulu, Department of Planning and Permitting. A Building Permit was issued on September 6, 2001. Defendants did not provide the Association with the plans approved by the City. The plans approved by the City differed from the plans approved by the ARC in that the footprint of the dwelling had been altered, floor area increased, roof line revised, there was a toilet room in the garage instead of storage space, and exterior fenestrations were modified.

19.   After construction started in 2003, the Association received complaints from Defendants' neighbors, Glen Y. Moribe and Sandra E. Moribe ("Moribes"), that the Dwelling, then in the initial stages of construction, had exceeded the height limit imposed by the Design Guidelines.

20.   By letter to the ARC dated August 8, 2003, Resh confirmed that all items had been verified to be the same as the approved plans.

21.   On August 15, 2003, I visually inspected the Dwelling and the work site plans. I did not have with me equipment to take actual measurements, and the roof framing above the master bedroom/garage had not been completed. Nevertheless, based upon a visual inspection, I concluded that construction appeared to be in conformance with the approved plans and building setbacks and height envelopes. I noted that although not shown on the ARC approved plans, the jobsite

5

plans called for plumbing fixtures within the garage storage room and, upon inspection, plumbing rough-ins were in place.

22.  The building envelope is a restriction on the maximum height, setback, and bulk of each house to effectuate the design concept for the Na Pali Haweo subdivision. Na Pali Haweo is an upscale subdivision located on the east end of Oahu on the summit of a ridge line of Hawaii Kai. The home sites range from 375 to 750 foot elevation above sea level, with views of the Hawaii Kai golf course, Maunalua Bay, Diamond Head, Koko Head Park and the neighboring islands of Molokai, Lanai and Maui. The minimum required floor area of a home within the subdivision is 2,000 square feet although a typical house usually exceeds 3,000 square feet. Na Pali Haweo has been developed to allow access to views of the surrounding landscape, access to prevailing marine wind and sunshine, and access to open space. As a result, the three dimensional aspect of the house and its location within the lot is important to the community as a whole. Houses within Na Pali Haweo are subject to front yard setbacks equal to twice the distance mandated by the City and County of Honolulu Land Use Ordinance ("LUO"); the maximum lot coverage at Na Pali Haweo is restricted to 1/3 of the lot area whereas the LUO allows lot coverage equal to ½ of the lot area; and some lots within Na Pali Haweo are subject to view channels and/or special height restrictions to maximize visual access to views from surrounding lots. The purpose of the building envelope restriction is to reduce the apparent mass and scale of the house and neighboring lots from the street level and to promote access to views, prevailing marine wind, sunshine and

6

open space. In the present case, the Dwelling violated the building envelope restriction because the roof beam, columns and more than 2 ½ feet of roof structure were protruding beyond the building envelope.

23. On October 7, 2003, the ARC met with Mr. Grande and Defendants' design/build team to discuss the building envelope violation, concerns that Defendants' contractor was using a job site copy of plans different from that approved by the ARC, and other issues. Resh provided the Association a schematic drawing dated September 29, 2003, illustrating the building envelope violation. The drawings included a notation by Resh: "MOVE COL?" referring to the columns constructed within the building envelope. The ARC specifically requested that on the next submission of plans, Defendants make revisions to the original tracings of all drawing sheets affected, cloud all changes with revision numbers and dates. The ARC requested this information because the previous submission of plans contained changes that were not identified with revision clouds and numbers. The professional standard is to include such information to document the nature and dates of changes to avoid errors in review.

24. On or about October 19, 2003, Resh submitted to the ARC revised plans for the Dwelling and a letter requesting a building envelope and front setback variance for the Dwelling. Defendants failed to revise the original tracings or cloud all revisions with numbers and dates as requested by the ARC although the ARC specifically requested this information at the October 7, 2003, meeting.

25. On November 6, 2003, Defendants were again informed that the ARC was not empowered to grant a height setback variance and Defendants were informed that their garage storage area deviated from plans approved by the ARC and the Design Guidelines. Defendants were asked to submit revised plans.

26. On or about November 13, 2003, Resh submitted revised plans to the ARC showing removal of two (2) concrete masonry unit (CMU) columns. By letter dated November 26, 2003, the ARC *approved* the removal and reconstruction of the CMU columns but noted portions of the Dwelling (the beam, columns and part of the roof structure) would also have to be moved to within the building envelope:

> Your proposal to remove and reconstruct the two (2) cmu columns to be in compliance with the height setback requirements was approved. The only work that shall project beyond the building envelop[e] shall be roof overhangs as may be allowed by both the Design Guidelines and LUO.

27. In January, Resh submitted plans with a revision date of January 9, 2004, proposing the cutting off of a portion of the eaves above the garage; the plans did not specify movement of columns or the beam to within the building envelope. By letter dated January 28, 2004, the ARC rejected the proposal to correct the violation of the building envelope restriction, commenting that the "roof cut-off is an obvious after thought and is unacceptable as it is out of character with the overall roof design." Defendants were informed through their architect that they must relocate the beam, together with support columns, so as not to encroach beyond the building envelope. This letter also addressed the lack of adequate storage in the garage and noted a decision had not been made concerning the request for variance from the front setback restriction.

28. Although Defendants initially appeared to stop construction, construction ultimately continued without curing the building envelope violation or revised plans being submitted to or approved by the ARC.

29. The front setback violation is of concern because when combined with the building envelope encroachment and other deviations from the approved plans, they all contribute to the imposing mass and scale.

30. When Defendants were informed that the garage storage area did not meet the Design Guidelines' requirements, they were directed to submit revised plans to the ARC for approval. Defendants did submit revised plans, however, those plans were not approved by the ARC. Defendants constructed these portions of the Dwelling in violation of Article IV, Sections 4.1, 4.3 and 4.3.4 of the Declaration.

31. Defendants have violated numerous provisions of the Declaration and Design Guidelines, as described and depicted in Exhibit "T" to the Association's Concise Statement of Facts, which violations continue to exist, by:

  A. Constructing the Dwelling, portions of which, including without limitation, the second floor balcony columns and the front roof section above the garage, protrude beyond the "building envelope" in violation of Article III, Section 3.2.1(d) of the Design Guidelines and Article IV, Sections 4.1, 4.3 and 4.3.4 of the Declaration.

  B. Constructing a significant portion of the Dwelling less than 20 feet back from the front property line in violation of Article III, Section 3.2.1 of the Design Guidelines.

C. Installing skylights in the roof of the Dwelling which are not designed as an integral part of the roof, have white glazing, are not framed in either bronze anodized or colored to match the roof, and are of a bubble design in violation of Article III, Section 3.2.3(i) of the Design Guidelines.

D. Installing air conditioning equipment at the rear yard, that was not a part of the approved plans, with no fence or screening in violation of Article III, Section 3.2.14 of the Design Guidelines.

E. Installing roof vents which differ from those depicted on plans submitted by Defendants to the ARC, were not approved by the ARC, do not match the color of the roof, and are visible from the street in violation of Article III, Section 3.2.3(f) and Article VI, Section 6.3.4 of the Design Guidelines and Article IV, Sections 4.1, 4.3 and 4.3.4 of the Declaration.

F. Failing to install a sliding garage gate, which is a deviation from the approved plans, in violation of Article VI, Section 6.3.4 of the Design Guidelines.

G. Installing front entry light fixtures on the entry column bases that have exposed bulbs in violation of Article III, Section 3.2.6 of the Design Guidelines.

H. Installing a wall on the Property which deviates from the plans previously approved by the ARC and in excess of 6 feet in height in violation of Article III, Section 3.2.7 and Article VI, Section 6.3.4 of the Design Guidelines and Article IV, Sections 4.1, 4.3 and 4.3.4 of the Declaration.

I.  Installing numerous exterior fenestrations which deviate from the plans approved by the ARC in violation of Article VI, Section 6.3.4 of the Design Guidelines, including without limitation, the roof eyebrow above the garage has been deleted, the upper corners of the garage door opening are squared-off instead of arched, the roof over the entry is not separate and distinct from the roof over the master bedroom, planters have been deleted, the metal railing at the balcony corner has been deleted, and various windows have been modified, moved or deleted.

J.  Constructing a storage area within the garage that deviates from the plans previously approved by the ARC and which lacks the required 100 square feet of enclosed storage space in violation of Article III, Section 3.2.4(b) and Article VI, Section 6.3.4 of the Design Guidelines and Article IV, Sections 4.1, 4.3 and 4.3.4 of the Declaration.

K.  Failing to install a concrete pad at the trash area, which is a deviation from the approved plans in violation of Article VI, Section 6.3.4 of the Design Guidelines.

L.  Constructing various other improvements on the Property which deviate from the plans approved by the ARC, including, without limitation, roof ridges, hips and/or valleys in violation of Article VI, Section 6.3.4 of the Design Guidelines.

32.  Upon information and belief, as of this date, the covenant violations delineated above continue to exist.

FURTHER AFFIANT SAYETH NAUGHT.

_____
RONALD K. AWA

Subscribed and sworn to before me this

7th day of April, 2006.

_____
(Signature)

___EDNA T. BARTOLOME___
(Printed Name)

Notary Public, State of Hawai`i
My Commission expires: 12-23-2009