I hereby certify that this is
a true copy from the records
of the Bureau of Conveyances.

*M. Page*

Registrar of Conveyances
Assistant Registrar, Land Court
State of Hawaii

91-049173

STATE OF HAWAII
BUREAU OF CONVEYANCES
RECORDED

'91 APR 18 AM 9 34

S. FURUKAWA, REGISTRAR

| LAND COURT | REGULAR SYSTEM |
|---|---|

AFTER RECORDATION, RETURN BY MAIL (X)    PICK-UP ( )

BEDFORD PROPERTIES INC.
P. O. Box 25007
Honolulu, HI 96825
Attn. *Amy Dal...*

*Accom 91-167*

LEASE NO. *28,681*

NA PALI HAWEO

DECLARATION OF COVENANTS,
CONDITIONS AND RESTRICTIONS

EXHIBIT "A"

Hawaii, including, but not limited to, File Plan 1998, File Plan 2028, File Plan 2033 and File Plan 2035.

2.31    Supplemental Declaration:    The term "Supplemental Declaration" shall mean a recorded document authorized by the provisions of this Declaration, amending this Declaration.

2.32    Trustees:  The term "Trustees" shall mean the Trustees of the Estate of Bernice Pauahi Bishop and their successors in trust and assigns.

## ARTICLE III

### PROPERTY SUBJECT TO RESTRICTIONS

3.1    The Project:  Initially, all of that certain real property located in the City and County of Honolulu, State of Hawaii, described in Exhibit A shall be subject to this Declaration and shall constitute the Project.  The Trustees and Declarant hereby declare that all of the Project is held and shall be held, conveyed, hypothecated, encumbered, leased, rented, used, occupied and improved subject to this Declaration, all of which are declared and agreed to be in furtherance of a plan for the subdivision, improvement and sale of the Project and are established and agreed upon for the purpose of enhancing and perfecting the value, desirability and attractiveness of the Project and every part hereof.  This Declaration shall run with the land and shall be binding upon and inure to the benefit of Declarant, the Trustees (as to any Lots owned in fee simple by the Trustees), the Association, each Owner of a Lot in the Project and each successor in interest of such Owner.  Each and all of the covenants, conditions, restrictions, limitations, easements, uses and obligations contained herein shall be deemed to be and shall be construed as equitable servitudes enforceable by Declarant, the Association, the Trustees (as to any Lot owned in fee simple by the Trustees) or any of the Owners of any Lot against other Owners, tenants or occupants of the Project, or any portion thereof. Additional property may be annexed to the Project and made subject to this Declaration pursuant to Section 3.3.

3.2    Land Classification:  All land within the Project shall be divided into the following land classifications:

3.2.1  Residential Area, being all of the residential Lots as shown on the Subdivision Map.

3.2.2    Common Area, being all of the Project other than Residential Area or areas dedicated as public parks, roadways, pump stations, water reservoirs or other similar uses dedicated to the City and County of Honolulu or agencies thereof.

(iii) a declaration, subordinated to the restrictions set forth in this Declaration and applicable exclusively to a specified area.

The Supplemental Declaration as applicable to such property upon the annexation thereof into the Project shall be deemed to include any and all additions and modifications thereto authorized by subsections (i) and (ii) above and set forth or referred to in such Supplemental Declaration.

3.3.2 <u>Ownership of Common Area Within Annexed Property</u>: All that portion of the annexed property designated as Common Area shall be conveyed and/or demised to, accepted by and owned by the Association in lease and/or in fee simple. The Common Area shall be conveyed and/or demised to the Association on the same terms and conditions and subject only to those liens, restrictions and encumbrances as are provided in Section 5.1; provided, however, that the Common Area shall also be subject to any additional or supplemental covenants, conditions and restrictions provided in the Supplemental Declaration pertaining thereto.

3.3.3 <u>Rights and Obligations of Owners</u>: After the required annexation procedures are fulfilled, all Owners in the Project shall be entitled to use of the Common Area in such annexed property. Owners of the annexed property shall be subject to this Declaration and shall be Members in the Association. After each annexation, the assessments for the Project shall be reassessed for a proportionate share of the total expenses of the Project on the same basis as other Lots in the Project.

3.3.4 <u>No Creation of Restrictions to Adjacent Property</u>: No property, except that described in Exhibit A and hereby made subject to the restrictions set forth in this Declaration and except that specifically annexed as hereinbefore provided shall be deemed subject to these restrictions whether or not shown on any Subdivision Map filed by Declarant or described or referred to in any document executed and/or recorded by Declarant. No designation of any parcel, Lot or other area on any map filed by Declarant and/or Trustees as a Common Area, road, street or park or as any other type or parcel, Lot or area, shall be deemed to be a dedication or commitment or representation that such parcel, Lot or area is or will be used, devoted to or restricted to such use, except with respect to parcels, Lots or areas specifically described in Exhibit A, specifically later annexed as aforesaid, and so designated on a Subdivision Map for such use, nor shall any Owner, the Association, the public or any public body or agency or any other person acquire any interest or rights therein by reason of such designation or filing, except as aforesaid. Nothing herein or in any amendment hereto shall be deemed to be a representation, warranty or commitment that Declarant and/or Trustees will commit or subject to the restrictions set forth in this

Declaration any land it may now own or hereafter acquire other than that described in Exhibit A or such amendment.

3.4 <u>Withdrawal</u>: The Declarant reserves the right to amend this Declaration, with the consent of the Trustees, at any time so long as it holds an unexpired option to expand the community pursuant to this Article, without prior notice and without the consent of any person or entity other than the Trustees, for the purpose of removing certain portions of the Project then owned by the Declarant or its affiliates from the provisions of this Declaration, provided such withdrawal is not unequivocally contrary to the overall, uniform scheme of development for the Project. For so long as any Common Area, Lot or other property subject to this Declaration is owned in fee simple by the Trustees, the Trustees reserve the right to amend this Declaration, with the consent of Declarant, without prior notice and without the consent of any person or entity other than the Declarant, for the purpose of removing certain portions of the Project then owned by the Trustees or its affiliates from the provisions of this Declaration, provided such withdrawal is not unequivocally contrary to the overall, uniform scheme of development for the Project.

<u>ARTICLE IV</u>

<u>PROPERTY RIGHTS:  RESIDENTIAL AREA</u>



4.1 <u>Design Guidelines</u>:  The Declarant shall prepare the initial design and development guidelines and applications and review procedures (the "Design Guidelines") which shall be applicable to all construction activities within the Project.  The initial Design Guidelines may be amended from time to time by the Declarant (prior to its adoption by the Architectural Committee) without prior notice or consent of any person or entity.  The Design Guidelines may contain general provisions applicable to all of the properties within the Project, as well as specific provisions which vary from one portion of the Project to another depending upon the location, unique characteristics, and intended use.  The Architectural Committee, acting on behalf of the Board of Directors, shall adopt such Design Guidelines at its initial organizational meeting and, thereafter shall have sole and full authority to amend the provisions which apply solely to residential construction or construction activities within the Project.

The Architectural Committee shall make the Design Guidelines available to Owners, builders, and developers who seek to engage in development of or construction upon  all of any portion of the Project.  In the discretion of the Declarant, such Design Guidelines may be recorded in the Bureau of Conveyances of the State of Hawaii, in which event the recorded version, as it may unilaterally be amended from time to time by the Architectural Committee by recordation of amendments thereto, shall control in the event of any dispute as to which version of the Design Guidelines was in effect at any particular

time. All Owners, builders, and developers shall conduct their activities strictly in accordance with the Design Guidelines.

Any amendments to the Design Guidelines adopted from time to time by the Architectural Committee in accordance with this Section shall apply to construction and modifications commenced after the date of such amendment only, and shall not apply to require modifications to or removal of structures previously approved by the Architectural Committee once the approved construction or modification has commenced.

The Design Guidelines shall include detailed application and review procedures. In addition, plans and specifications showing the nature, kind, shape, color, size, materials, and location of such modifications, additions, or alterations, shall be submitted to the Architectural Committee for approval as to quality of workmanship and design and as to harmony of external design with existing structures, and as to location in relation to surrounding structures, topography, and finishing grade elevation. No permission or approval shall be required to repaint in accordance with originally approved color scheme, or to rebuild in accordance with originally approved plans and specifications.

Any construction or reconstruction of, or the refinishing or alteration of any part of the exterior of, any Improvement upon any Lot is absolutely prohibited until and unless the Owner of such Lot first obtains the approval therefor from the Architectural Committee and otherwise complies with all of the provisions of the Design Guidelines and/or this Declaration. The Association may remove any Improvement constructed, reconstructed, refinished, altered or maintained in violation of this Section and the Owner thereof shall reimburse the Association for all expenses incurred in connection therewith. Any Owner proposing to construct or reconstruct, or to refinish or alter the Lot, or any part of the exterior of, any Improvement on or within his Lot, or to perform any work which under this Section requires the prior approval of the Architectural Committee, shall apply to the Architectural Committee for approval.

Nothing contained herein shall be construed to limit the right of an Owner to remodel or redecorate the interior of structures comprising a Lot in any manner desired. However, modifications or alterations to the interior of screened porches, balconies, decks, patios, and similar portions of the Lot visible from outside the Lot shall be subject to approval. In the event that the Architectural Committee fails to approve or to disapprove such plan within fifty (50) days after submission of all information and materials reasonably requested, the plans shall be deemed approved. However, no approval, whether expressly granted or deemed granted pursuant to the foregoing, shall be inconsistent with the Design Guidelines unless a variance has been granted in writing by the Architectural Committee pursuant to Section 4.9 below.

4.2  Signs:  No signs whatsoever, including, but not limited to, commercial, political and similar signs, shall be erected or maintained on any Lot within the Residential Area or any Common Area. Notwithstanding anything herein to the contrary, the following signs shall be permitted:

(i)  Such signs as may be required by legal proceedings;

(ii)  Residential identification signs, subject to the approval of the Architectural Committee as to suitability with a maximum face area of two square feet; and

(iii)  Not more than one (1) "for sale" or "for rent" sign per Lot having maximum face area of two (2) square feet.

The Owner recognizes and acknowledges Declarant's right, as the developer of the Project, to be free from competition from Owner in the sale of Owner's unimproved Lot or Lots in the following limited respect:  For a period of one (1) year following sale of an unimproved Lot or Lots to an Owner by Declarant, Owner shall not display any "for sale" signs (or any other signs of a similar nature advertising the unimproved Lot or Lots for sale) on his unimproved Lot, or on any other Lots, Common Area or areas dedicated to the City and County of Honolulu or agencies thereof, except, however, this prohibition shall not apply to any mortgagee in possession.

4.3  Residential Area:  Permitted Uses and Limitations; Construction and Alteration of Improvements:  Absolutely no construction or alteration of Improvements may be undertaken on a Lot without prior approval of the Architectural Committee pursuant to the Design Guidelines and this Declaration.  The following standards and restrictions are applicable to the use of a Lot and any and all Improvements from time to time existing upon any Lot.

4.3.1  Residence and Use:  No more than one (1) Residence shall be constructed on any Lot.  Each Lot within the Residential Area shall be improved and used exclusively for Residential Use as defined in this Declaration, subject to the provisions of Article X hereinafter contained.

No garage sale, moving sale, rummage sale or similar activity and no trade or business may be conducted in or from any Lot, except that an Owner or occupant residing in a Lot may conduct business activities within the Lot so long as:  (1) the existence or operation of the business activity is not apparent or detectable by sight, sound or smell from outside the Lot; (b) the business activity conforms to all zoning requirements for the Project; (c) the business activity does not involve regular visitation of the Lot by clients, customers, suppliers or other business invitees, persons coming onto the Project who do not reside in the Project, or door-to-door solicitation of residents of the Project; and (d) the business activity is consistent

with the residential character of the Project and does not constitute a nuisance, or a hazardous or offensive use, or threaten the security or safety of other residents of the Project, as may be determined in the sole discretion of the Board.

The terms "business" and "trade", as used in this provision, shall be construed to have their ordinary, generally accepted meanings, and shall include, without limitation, any occupation, work or activity undertaken on an ongoing basis which involves the provision of goods or services to persons other than the provider's family and for which the provider receives a fee, compensation, or other form of consideration, regardless of whether: (a) such activity is engaged in full or part-time; (b) such activity is intended to or does generate a profit; or (c) a license is required therefor. Notwithstanding the above, the leasing of a Lot shall not be considered a trade or business within the meaning of this Section. This Section shall not apply to any activity conducted by the Declarant or conducted by a builder with approval of the Declarant, with respect to this development and sale of the Project or its use of any Lots which it owns within the Project.

4.3.2  <u>Restrictions on Further Subdivision</u>: No Lot shall be further subdivided, nor shall less than all of any such Lot be conveyed by an owner thereof. No easement or other interest in a Lot shall be given without the prior written approval of the Architectural Committee. The Owner of two or more contiguous Lots may apply to the Architectural Committee for permission to use such Lots as the site for a single Residence. Upon approval thereof by the Architectural Committee pursuant to the Design Guidelines and this Declaration, which shall not unreasonably be withheld, a written consent to such use shall be executed by Owner and by a majority of members of the Architectural Committee. Owner thereafter may apply to the appropriate governmental agencies for approval of a consolidation of two (2) or more Lots. Thereafter the consolidated Lot shall not be resubdivided, but shall be considered as multiple Lots for all other purposes.

4.3.3  <u>Rental of Lots</u>: An Owner shall be entitled to rent the Residence situated on his Lot, provided that the term of said rental shall not be for a term less than thirty (30) days. Any rental or lease of a Residence shall be subject to this Declaration and the Rules established by the Board pursuant to Section 6.9. Each tenant or lessee shall be provided with a copy of this Declaration by the Owner so renting or leasing. An Owner shall at all times be responsible for his or her tenant's or lessee's compliance with all of the provisions of this Declaration pursuant to the occupancy and use of the Residence.

4.3.4  <u>Improvements, Alterations and Repairs</u>: No Improvement, repair, Excavation, Fill or other work which in any way alters the exterior appearance of any Lot or the Improvements located thereon

c:\bedford\napali\ccr.5
April 8, 1991                    12

from its natural or improved state existing on the date such Lot was first conveyed or demised by the Trustees to Owner shall be made or done without the prior written approval of the Architectural Committee given pursuant to the provisions of the Design Guidelines and this Declaration, except as specifically authorized herein. All repairs, maintenance and care of the exterior surfaces of Residences and Lots shall be undertaken by Owner in accordance with this Article IV and the standards established in the Design Guidelines and/or Architectural Committee Rules.

4.3.5    <u>Temporary Occupancy</u>:    No trailer, recreational vehicle, tent, shack, garage or temporary building or structure of any kind shall be used at any time for a Residence either temporary or permanent, nor shall any overnight camping be permitted on any Lot. Temporary buildings or structures used during the construction or improvement of a Residence shall be expressly approved by the Architectural Committee pursuant to the Design Guidelines and this Declaration, and shall be removed immediately after the completion of construction.

4.3.6 <u>Animals</u>: No animals of any kind shall be bred or kept in any Residence or Lot within the Residential Area, except that a reasonable number of dogs, cats, caged birds and fish of a type customarily kept as household pets may be kept, and, subject to limitation by the Rules, such other animals as may be permitted by local ordinance may be kept; provided, however, that no animals shall be kept or maintained for any commercial purposes but shall be kept solely as household or yard pets or for recreational use by Owner, his family, guests or tenants. No animal or fowl shall be allowed to make an unreasonable amount of noise or otherwise to become a nuisance. Except in areas in the Project specifically authorized by the Association, no animal shall be permitted outside of the Lot of Owner of said animal unless said animal is under the control of a responsible person by means of a leash or other reasonable restraint. The Rules may establish limitations on the number and type of animals which are to be kept on a Lot, provided that the Rules shall not discriminate against any Owner. In addition, the Board shall specifically have the right to prohibit the maintenance of any animal which, in the opinion of the Board, after notice and hearing, constitutes a nuisance to any Owner or Owners.

4.3.7 <u>Garages</u>: Garages shall be used only for the parking or repair of personally owned motor vehicles, storage and workshop purposes. No garage shall be enclosed, modified or otherwise used so as to reduce its capacity for parking vehicles below the capacity originally approved by the Architectural Committee. Garage doors visible from any street within the Project shall remain closed except during ingress and egress or when the garage is actively being used by the Owner or occupant.

c:\bedford\napali\ccr.5
April 8, 1991                                    13

NA PALI HAWEO COMMUNITY ASSOCIATION

6.1  The Organization:

6.1.1  Nonprofit Corporation:  The Na Pali Haweo Community Association, herein called the "Association," is a nonprofit corporation charged with the duties and empowered with the rights set forth herein and in the Articles, and its affairs shall be governed by this Declaration, the Articles and the Bylaws.

6.1.2  Successor Associations:  In the event that the Association as a corporate entity is dissolved, a nonprofit, unincorporated association shall forthwith and without further action or notice be formed to succeed to all the rights and duties of the Association hereunder.  The affairs of such unincorporated association shall be governed by the laws of the State of Hawaii and, to the extent not inconsistent therewith, by the Articles and the Bylaws as if they were created for the purpose of governing the affairs of an unincorporated association.

6.2  Membership:

6.2.1  Classes of Members:  The Association shall have two (2) classes of members:  Class A Members and Class B Members.

6.2.1.1  Class A Members:  Each Owner of a Lot, with the exception of Declarant, by virtue of being an Owner, shall be a Class A Member of the Association, or, in the event of its dissolution, a Class A Member of the unincorporated association succeeding to the Association, as provided for in Subsection 6.1.2.  The membership shall be appurtenant to and may not be separate from the ownership of any Lot which is subject to assessment by the Association.  Upon termination of Lot ownership, membership in the Association shall also terminate.  Ownership of a Lot shall be the sole qualification for Association membership.  The membership of an Owner shall not be transferred, pledged or alienated in any way except to a person or entity who shall concurrently become an Owner of such Lot.  Any attempt to make a prohibited transfer is void.  Declarant shall become a Class A Member upon the occurrence of the events specified in Subsection 6.3.1.2.

6.2.1.2  Class B Members:  The sole Class B Member shall be Declarant.  Declarant shall hold one Class B membership for each Lot in the Project which is owned in fee simple by the Trustees and which has not been conveyed to a party other than Declarant or an affiliate of Declarant following the recordation of this Declaration, until the occurrence of events specified in Section 6.3.1.2.

6.2.2  Member's Rights and Duties:  The rights, duties, privileges and obligations of all Members, or Members of the succeeding unincorporated association, shall be those set forth in,

c:\bedford\napali\ccr.5
April 8, 1991                                    24

6.7.11    <u>Enforcement of Declaration and Rules</u>:    The Association shall have the duty to take such other action, whether or not expressly authorized by this Declaration, including the hiring of legal counsel and undertaking legal action, as may be reasonably necessary to enforce the covenants, conditions and restrictions contained herein, the Rules and the Architectural Committee Rules.

6.7.12    <u>Accounting Statements</u>:    The Board shall prepare and distribute the following financial statements and reports as follows:

(i)    A balance sheet rendered as of an accounting date that is the last day of the month closest in time to six (6) months from the date of the incorporation of the Association, and an operating statement for such period. The operating statement for said period shall include a schedule of assessments received or receivable itemized by Lot number and name of the assessed person and entity. Thereafter, the Association shall prepare a balance sheet and operating statement as of the last day of the Association's fiscal year.

(ii)    A pro forma operating budget for each fiscal year consisting of (i) estimated revenue and expenses on an accrual basis, (ii) amount of cash reserves currently available for replacement or major repair of Common Area facilities and for contingencies, and (iii) an itemized estimate of the remaining life of the major components of the Common Area for which the Association is responsible, a description of the methods of funding used to defray the costs of future repairs, replacements or additions to such components, and a general statement of the procedures used by the Board in calculating and establishing reserves to defray such costs. The budget shall be prepared consistently with the prior fiscal year's pro forma operating budget, and shall include adequate reserves for contingencies and for maintenance, repairs and replacement of the Common Area improvements and other Association owned or maintained improvements or personal property.

(iii)    An annual report consisting of a balance sheet rendered as of the last day of the fiscal year, an operating statement for the fiscal year, and a statement of changes in financial position for the fiscal year.

6.7.13    <u>Other</u>:    The Association shall carry out the duties of the Association as set forth in other sections of this Declaration, the Articles and the Bylaws.

6.8    <u>Powers and Authority of the Association</u>:    The Association shall have all of the powers of a nonprofit corporation organized under the laws of the State of Hawaii in operating for the benefit of its Members, subject only to such limitations upon the exercise of such powers as are expressly set forth in the Articles, the Bylaws and this Declaration.  It shall have the power to do any and all lawful

Notwithstanding the above, the percentage of votes necessary to amend a specific clause shall not be less than the prescribed percentage of affirmative votes required for action to be taken under that clause.  To be effective, any amendment must be recorded in the Bureau of Conveyances of the State of Hawaii.

If an Owner consents to any amendment to this Declaration or the Bylaws, it will be conclusively presumed that such Owner has the authority so to consent, and no contrary provision in any mortgage or contract between the Owner and a third party will affect the validity of such amendment.

No amendment may remove, revoke, or modify any right or privilege of the Declarant without the written consent of the Declarant or the assignee of such right or privilege.

12.1.3  <u>Consent of Trustees</u>.  So long as any Common Area, Lot or other property subject to the Declaration is owned in fee simple by the Trustees, any amendment to this Declaration shall require the prior written consent of the Trustees.

12.1.4  <u>Duration</u>:  The provisions of this Declaration including the covenants, conditions and restrictions contained herein, shall continue and be effective for period of eighty (80) years from the date of recordation and shall be automatically extended for consecutive ten (10) year periods thereafter unless, at least one (1) year prior to: (i) the end of the eighty (80) year initial term, or (ii) the end of a ten (10) year extension term; a Supplemental Declaration is recorded giving notice of the termination of this Declaration at the end of such term, approved in writing by the Trustees (so long as any Common Area, Lot or other property subject to the Declaration is owned in fee simple by the Trustees), the Director of Land Utilization of the City and County of Honolulu, and the Association based on the written consent of not less than seventy-five percent (75%) of the total Class "A" votes in the Association, including seventy-five percent of the Class "A" votes held by Members other than the Declarant, and the consent of the Class "B" Member, so long as such membership exists.

12.2  <u>Enforcement and Nonwaiver</u>:

12.2.1  <u>Right of Enforcement</u>:  Except as otherwise provided herein, Declarant, the Trustees (so long as any Common Area, Lot or other property subject to the Declaration is owned in fee simple by the Trustees), the Association, or any Owner or Owners shall have the right to enforce any and all of the limitations, covenants, conditions, restrictions, obligations, liens and charges now or hereafter imposed by this Declaration upon the Owners or upon any Lot in the Project, and the costs of enforcement, including court costs and attorneys' fees, shall be paid by any Owner who violates any such limitation, restriction, covenant or condition, or fails to pay and

c:\bedford\napali\ccr.5
April 8, 1991                                55

satisfy when due any such lien or charge. Except as otherwise expressly provided herein, no entry upon the Lot of any Owner or other action to enforce any such limitation, restriction, covenant, condition, obligation, lien or charge may be made or taken without first giving not less than thirty (30) days' written notice and demand to the Owner concerned to cure or rectify the default or breach involved.

12.2.2  <u>Violations and Unreasonable Sources of Annoyance</u>: Every act or omission whereby a covenant, condition or restriction of this Declaration is violated in whole or in part is hereby declared to be a nuisance and may be enjoined or abated, whether or not the relief sought is for negative or affirmative action, by Declarant, the Trustees (as to any Common Area or Lot owned in fee simple by the Trustees), the Association, or an Owner or Owners. However, any other provision to this Declaration notwithstanding, only Declarant, the Trustees (as to any Common Area or Lot owned in fee simple by the Trustees), the Board, or their respective duly authorized agents may enforce by self-help any covenant, condition or restriction herein set forth. Except to the extent otherwise expressly provided herein, any Owner or Owners shall have the right to enforce any and all limitations, restrictions, covenants, conditions and obligations now or hereafter imposed by this Declaration, provided, however, anything herein to the contrary notwithstanding, no Owner as such shall have any right to enter upon the Lot of any other Owner or to abate any unreasonable sources of annoyance or enforce any provision hereof against another Owner or the Association except by proper legal proceedings and authority of a court having jurisdiction.

12.2.3  <u>Violation of Law</u>:  Any violation of any state, municipal or local law, ordinance or regulation pertaining to the ownership, occupation or use of any Lot within the Project is hereby declared to be a violation of this Declaration and subject to any or all of the enforcement procedures herein set forth.

12.2.4  <u>Remedies Cumulative</u>:  Each remedy provided by this Declaration is cumulative and not exclusive.

12.2.5  <u>Nonwaiver</u>:  The failure to enforce the provisions of any covenant, condition or restriction contained in this Declaration shall not constitute a waiver of any right to enforce any such provisions or any other provisions thereof.

12.3  <u>Condemnation of Common Area</u>:  If at any time all or any portion of any Common Area, or any interest therein, be taken for any public or quasi-public use, under any statute, by right of eminent domain or by private purchase in lieu of eminent domain, the entire award in condemnation shall be paid to the holder or holders of the fee title to such area as their interests may appear. Any such award to the Association shall be deposited into the Operating Fund. No Owner shall be entitled to any portion of such award, and no Owner