IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| NA PALI HAWEO COMMUNITY ASSOCIATION, a Hawaii non-profit corporation,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>ANTHONY CHARLES GRANDE; NARINDAR KAUR GRANDE, and DOES,<br>　　　　Defendants.<br><br><br>ANTHONY CHARLES GRANDE and NARINDAR KAUR GRANDE,<br><br>　　　　Counterclaim Plaintiffs,<br><br>　v.<br><br>NA PALI HAWAO COMMUNITY ASSOCIATION; RONALD K. AWA; and DOES 1-25,<br><br>　　　　Counterclaim Defendants | CIVIL NO. CV04-00413-DAE LEK<br><br>DECLARATION OF EDWARD RESH |

## DECLARATION OF EDWARD RESH

Edward Resh declares as follows:

1. I am a duly licensed Hawaii architect. I have been licensed since 1972. I was and am retained by Anthony and Narindar Grande for the design and construction of their home at 1251 Kamehame Drive. I have personal knowledge of the facts in this Declaration.

2. Grandes' home, as constructed, is set back more than 10' from their front property line.

3. As I previously stated in my Declaration filed October 18, 2004, Grandes' home, as built, is even within the "typical" building envelope described in the Na Pali Haweo Design Guidelines if measured from existing lot elevations, *i.e.*, lot elevations before grading and construction.

4. Even if the columns or roof at the front of the house were too high, in terms of the approved building envelope or a "typical" envelope, they could be brought into conformity by the use of ground level soil or planters (raising the as-built ground level), as the City and County of Honolulu allows where a building is otherwise too high.

5. When I measured Grandes' home on or about August 8, 2003, I measured its height in relation "to existing grades," as the first paragraph of my note of that date says. See Association Exhibit J.

6. By letter dated November 26, 2004, the ARC for Na Pali Haweo "approved" Grandes' compromise "proposal to remove and reconstruct ... two ...

2

cmu columns to be in compliance with the height setback requirements," with the proviso that "[t]he only work that shall project into the building envelop [*sic*] [are] roof overhangs as may be allowed by both the Design Guidelines and [Land Use Ordinance]." I had proposed moving the columns at the front of the house further back from the front of the lot, as a way of resolving any and all height-setback "building envelope" questions.

7. In January 2004, I submitted further revised plans to the ARC, detailing how the columns would be reconstructed. I had observed the rooflines of other, nearby houses. At least three other houses had gabled roofs over porch-decks, and hipped roofs over the rest of the houses. I designed Grandes' new roofline, above the columns, to similarly have a gabled roof, with a hipped roof over the rest of the house.

8. In its letter dated January 28, 2004, the ARC said that the previously-"accepted" proposal to move back the front columns – which would have resolved all height measurement issues – was unacceptable after all because the "roof line over the balcony resulting from the roof cut-off is … out of character with the overall roof design." "[T]he [roof] beam shall be relocated together with its support columns and the affected roof plane … reconstructed to achieve a hip profile consistent with the adjacent roofs."

3

9. That was a surprise because the revised roof profile conformed with the roofs of at least three other adjacent homes. After that, I was unable to get the ARC to tell me what it would accept as being a "hip profile consistent with adjacent roofs."

10. In December 2005, Mr. Grande asked me to prepare revised plans for submission to the ARC, as-built with a few exceptions.

11. I was able to get a draft to him in late March 2006, and finished revisions on April 8, 2006.

12. There is no material difference between the proposal the ARC accepted and then rejected in November 2003-January 2004, and the one it approved from my April 2006 plans as item 2 on May 31, 2006.

13. The toilet and heater room in Grandes' home is 7'4 by 6', or 44 square feet. The washer-dryer-sink area within the garage, with a shelf over it, is an additional 19 ½ square feet (6'6" by at least 3'). There is much more than an additional 36 ½ square feet of area in the garage for storage.

14. I designed other homes in Na Pali Haweo before designing Grandes'.

15. It is common in homebuilding, including homebuilding within planned communities, to make minor revisions from approved plans during construction, and to then seek approval for the revisions once the home is

completed, by showing them in the final as-built plans submitted along with notices of completion.

16. The changes in Grandes' home from the originally approved plans were only minor.

17. Moving out the back right corner of Grandes' home added only 56 square feet of floor space per floor (14' x 4'), and eliminated a kink in their roof.

18. Page 10 of the Design Guidelines for Na Pali Haweo say that "roofs should be simple hip or gable forms with low to medium roof pitches," and are illustrated with straight roofs without kinks as model designs.

19. During March-May 2004, I was having severe heart problems. My ability to work was extremely limited, and I could not undertake rush projects.

I declare under penalty of perjury that the foregoing facts are true and correct to the best of my knowledge and belief.

Executed this 8th day of June, 2006, at Kailua, Hawaii.

_____
EDWARD RESH