IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| NA PALI HAWEO COMMUNITY ASSOCIATION, a Hawaii non-profit corporation,<br><br>    Plaintiff,<br><br>  v.<br><br>ANTHONY CHARLES GRANDE; NARINDAR KAUR GRANDE, and DOES,<br>    Defendants.<br><br><br>ANTHONY CHARLES GRANDE and NARINDAR KAUR GRANDE,<br><br>    Counterclaim Plaintiffs,<br><br>  v.<br><br>NA PALI HAWAO COMMUNITY ASSOCIATION; RONALD K. AWA; and DOES 1-25,<br><br>    Counterclaim Defendants | CIVIL NO. CV04-00413-DAE LEK<br><br>DECLARATION OF NARINDAR GRANDE |

DECLARATION OF NARINDAR GRANDE

Narindar Grande declares as follows:

1. I am one of the Defendants in this action. Defendant Anthony Grande is my husband. Our uphill next-door neighbors on Kamehame Drive were Mr. and Mrs. Moribe. Our downhill next-door neighbors were Ron Yee and his wife. We understood that Mr. Yee was and is a member of Na Pali Haweo's ARC. We are currently Florida residents, because of a job transfer. I have personal knowledge of the facts in this Declaration.

2. I grew up in Singapore and lived there until 1999. My work background is in aviation. I worked for Northwest Airlines until 1999. I did not have any experience in homebuilding or dealing with homeowners associations before we purchased our lot in Na Pali Haweo.

3. Exhibit A hereto is a true and correct copy of excerpts from the Na Pali Haweo CC&Rs, as provided to us when we purchased our lot.

4. Exhibit B hereto is a true and correct copy of excerpts from Na Pali Haweo's Design Guidelines, as provided to us when we purchased our lot.

5. Exhibit 9 hereto is a true and correct copy of excerpts from our purachase contract for our lot.

6. I did not receive a notice of "substantial" noncompliance from the ARC before being sued by the Association, or before its presentation of Exhibits T and 5.

7. I have never received notice of a hearing on alleged noncompliance before the Association's Board of Directors, or of any opportunity to present information to the Board at such a hearing. Nor have I ever received notice of any determination of noncompliance by the Board following a hearing at which I had an opportunity to present information, of any determination by the Board of the steps necessary to achieve compliance following such a hearing, or of any determination by the Board of the costs of any proposed steps.

8. To the best of my knowledge, the Board has never given notice of such a hearing, never conducted such a hearing, never made any determinations of desired remedial steps at such a hearing, and never made any determinations of the costs of such steps following such a hearing.

9. The only demands I received from the Association before being sued were Association Exhibits S and U.

10. Exhibit 10 consists of true and accurate photographs of our home as of the dates indicated thereon (where dates are indicated), or as of now (if no date is indicated).

11. Exhibit 13 is a true and correct copy of an interim agreement signed in Magistrate Judge Kobayashi's chambers on September 30, 2005, indicating what the Association wanted us to do at that time.

12.  While meeting on that date, we asked what kind of screening the Association wanted around the air conditioner. Mr. Kloetzel advised that a simple lattice screen would be sufficient.

16.  We have not yet finished the construction of our home because of the Association's demand that we cease all construction in the front setback area.

17.  The concrete floor of the trash area was poured and has been there since around October 2003.

18.  It was and is my understanding that minor changes from original plans can be made while a home is being built, without stopping construction to obtain permission. My understanding was and is that minor changes can be reported when the home is finished.

19.  The concerns motivating the modifications included privacy (the original location of the master suite windows gave Moribes a view into our bed and bathroom, the other bedroom window gave a view of my child-nursing room), preservation of the view (the original location of the openable living room windows put window frames across our ocean view), and child safety (reducing the open railings on the second-story).

21.  After the meeting at our lot on October 16, 2003, our downhill neighbor at 1243 Kamehame Drive, Ron Yee, asked us to cooperate with the Association by seeking a variance from Na Pali Haweo's ARC – of which he was

4

and is a member – for our house as built. He assured us that a variance would be granted. We did not believe that we needed a variance, but asked our architect to apply for one anyway, because we wanted to cooperate. Our architect also submitted compromise proposals, in an attempt to make everyone happy. We did not want to have hostile neighbors.

22. Despite Mr. Yee's assurance, our variance request was partially denied and partially deferred, as reflected in Association Exhibit O dated October 29, 2003, which took the position that height setback variances could not be granted. Mr. Yee later told me that he was not aware of any ARC meeting having taken place before the letter of October 29, 2003, was sent to us, and was not aware of any ARC decision before it.

23. Association Exhibit O suggested, but did not demand, that "all further construction" "cease" – on all parts of our home. At that point, construction near the front setback area was essentially completed, and no construction was done in that area for several months.

24. I asked to attend the ARC meeting in November 2003, at which our home would be discussed. However, Mr. Yee told me that ARC Chair Awa did not like owners attending, and would not allow "wives" to attend "because they are too emotional."

25. After receiving a copy of Association Exhibit Q, dated November 26, 2003, in which the ARC indicated that a compromise had been reached and said nothing about stopping construction, I believed we had resolved the building envelope questions.

26. I was therefore surprised, and dismayed, two months later when I received a Notice To Cease Construction from the Association's Board of Directors dated January 28, 2004, along with a copy of the ARC's letter of January 28, 2004, withdrawing its approvals of two months earlier. (Compare Association Exhibits Q and R)

I declare under penalty of perjury that the foregoing facts are true and correct.

Executed this 8th day of June, 2006, at Melbourne Beach, Florida.

_____
NARINDAR GRANDE

6