Certified to be a true, correct and complete copy of the instrument recorded in the Bureau of Conveyances of the State of Hawaii.

on __4-18-91__ at 8:01 A.M. as

Document No. __91-049173__

FOUNDERS TITLE & ESCROW OF HAWAII

By _[signature]_

LAND COURT                    REGULAR SYSTEM

AFTER RECORDATION, RETURN BY MAIL ( )   PICK-UP ( )

NO. __28,681__

## NA PALI HAWEO

## DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS

EXHIBIT   A

time. All Owners, builders, and developers shall conduct their activities strictly in accordance with the Design Guidelines.

Any amendments to the Design Guidelines adopted from time to time by the Architectural Committee in accordance with this Section shall apply to construction and modifications commenced after the date of such amendment only, and shall not apply to require modifications to or removal of structures previously approved by the Architectural Committee once the approved construction or modification has commenced.

The Design Guidelines shall include detailed application and review procedures. In addition, plans and specifications showing the nature, kind, shape, color, size, materials, and location of such modifications, additions, or alterations, shall be submitted to the Architectural Committee for approval as to quality of workmanship and design and as to harmony of external design with existing structures, and as to location in relation to surrounding structures, topography, and finishing grade elevation. No permission or approval shall be required to repaint in accordance with originally approved color scheme, or to rebuild in accordance with originally approved plans and specifications.

Any construction or reconstruction of, or the refinishing or alteration of any part of the exterior of, any Improvement upon any Lot is absolutely prohibited until and unless the Owner of such Lot first obtains the approval therefor from the Architectural Committee and otherwise complies with all of the provisions of the Design Guidelines and/or this Declaration. The Association may remove any Improvement constructed, reconstructed, refinished, altered or maintained in violation of this Section and the Owner thereof shall reimburse the Association for all expenses incurred in connection therewith. Any Owner proposing to construct or reconstruct, or to refinish or alter the Lot, or any part of the exterior of, any Improvement on or within his Lot, or to perform any work which under this Section requires the prior approval of the Architectural Committee, shall apply to the Architectural Committee for approval.

Nothing contained herein shall be construed to limit the right of an Owner to remodel or redecorate the interior of structures comprising a Lot in any manner desired. However, modifications or alterations to the interior of screened porches, balconies, decks, patios, and similar portions of the Lot visible from outside the Lot shall be subject to approval. In the event that the Architectural Committee fails to approve or to disapprove such plan within fifty (50) days after submission of all information and materials reasonably requested, the plans shall be deemed approved. However, no approval, whether expressly granted or deemed granted pursuant to the foregoing, shall be inconsistent with the Design Guidelines unless a variance has been granted in writing by the Architectural Committee pursuant to Section 4.9 below.

c:\bedford\napali\ccr.5
April 8, 1991

10

from its natural or improved state existing on the date such Lot was first conveyed or demised by the Trustees to Owner shall be made or done without the prior written approval of the Architectural Committee given pursuant to the provisions of the Design Guidelines and this Declaration, except as specifically authorized herein.  All repairs, maintenance and care of the exterior surfaces of Residences and Lots shall be undertaken by Owner in accordance with this Article IV and the standards established in the Design Guidelines and/or Architectural Committee Rules.

4.3.5    <u>Temporary Occupancy</u>:   No trailer, recreational vehicle, tent, shack, garage or temporary building or structure of any kind shall be used at any time for a Residence either temporary or permanent, nor shall any overnight camping be permitted on any Lot. Temporary buildings or structures used during the construction or improvement of a Residence shall be expressly approved by the Architectural Committee pursuant to the Design Guidelines and this Declaration, and shall be removed immediately after the completion of construction.

4.3.6  <u>Animals</u>:  No animals of any kind shall be bred or kept in any Residence or Lot within the Residential Area, except that a reasonable number of dogs, cats, caged birds and fish of a type customarily kept as household pets may be kept, and, subject to limitation by the Rules, such other animals as may be permitted by local ordinance may be kept; provided, however, that no animals shall be kept or maintained for any commercial purposes but shall be kept solely as household or yard pets or for recreational use by Owner, his family, guests or tenants.  No animal or fowl shall be allowed to make an unreasonable amount of noise or otherwise to become a nuisance. Except in areas in the Project specifically authorized by the Association, no animal shall be permitted outside of the Lot of Owner of said animal unless said animal is under the control of a responsible person by means of a leash or other reasonable restraint. The Rules may establish limitations on the number and type of animals which are to be kept on a Lot, provided that the Rules shall not discriminate against any Owner.   In addition, the Board shall specifically have the right to prohibit the maintenance of any animal which, in the opinion of the Board, after notice and hearing, constitutes a nuisance to any Owner or Owners.

4.3.7  <u>Garages</u>:  Garages shall be used only for the parking or repair of personally owned motor vehicles, storage and workshop purposes.  No garage shall be enclosed, modified or otherwise used so as to reduce its capacity for parking vehicles below the capacity originally approved by the Architectural Committee.  Garage doors visible from any street within the Project shall remain closed except during ingress and egress or when the garage is actively being used by the Owner or occupant.

committee pursuant to the Design Guidelines and/or this Declaration, proceed expeditiously with necessary adjustments.

4.3.11  Fires:  There shall be no exterior fires whatsoever except barbecue fires contained within receptacles designed for such purpose.

4.3.12  Machinery and Equipment:  No machinery or equipment of any kind shall be placed, operated or maintained upon or adjacent to any Lot within a Residential Area except such machinery or equipment as is usual and customary in connection with the use, maintenance or construction of Improvements.

4.3.13  Diseases and Insects:  No Owner shall permit any thing or condition to exist upon his Lot which shall induce, breed or harbor infectious plant diseases or noxious insects.

4.3.14  Storage:  All portions of a Lot outside of enclosed structures shall be kept in a clean and tidy condition at all times. Nothing shall be done, maintained, stored, or kept outside of enclosed structures on a Lot which, in the determination of the Board of Directors, causes an unclean, unhealthy, or untidy condition to exist or is obnoxious to the senses.  Nothing shall be done or maintained on any part of a Lot which emits foul or obnoxious odors outside the Lot or creates noise or other conditions which tend to disturb the peace, quiet, safety, comfort, or serenity of the occupants and invitees of other Lots.  There shall not be maintained any plants or animals or device or thing of any sort which activities or existence in any way is noxious, dangerous, unsightly, unpleasant, or of a nature as may diminish or destroy the enjoyment of the Project.

4.4  View Channels:  View channels are indicated on an overall map of the subdivision in the Design Guidelines.  No trees, hedges or other plants within the view channel area shall be allowed to grow above the view plane of the Lot and shall, from time to time as necessary, be removed or trimmed by the Owner to conform to the view plane limit.  Except for residential construction variances granted by the Architectural Committee, the area above the view plane shall constitute a view easement which shall be enforceable by the Board when any Owner's view is in fact impeded by a violation of the view plane easement area.  It is to be noted that neither the Declarant nor the Association guarantees any unobstructed view.

4.5  Exterior Maintenance of Residences:  Each Owner shall be responsible for providing for the exterior maintenance of his Residence and all Improvements located on his Lot.  Such exterior maintenance shall include the painting, repair, replacement and care of exterior building surfaces, roof surfaces, gutters, downspouts, glass surfaces and skylights of the Improvements, and, in general, the maintenance of the exterior of such Improvements in good repair, condition and appearance.  All such work shall be identical in

*in the Project.* In the event said Owner does not commence such rebuilding or repair within a reasonable time, which in no event shall exceed one (1) year from the occurrence of such damage or destruction, the Association may bring suit to compel Owner to perform said rebuilding or repair.

4.9 <u>Variances</u>: The Architectural Committee may, but shall not be required to, authorize variances from compliance with any of the provisions of the Design Guidelines when circumstances such as, but not limited to, topography, natural obstructions, hardship, or aesthetic or environmental considerations require, as determined in the sole discretion of the Architectural Committee, but only in accordance with duly adopted rules and regulations. Such variances may only be granted, however, when unique circumstances exist and no variance shall (a) be effective unless in writing, (b) be contrary to the restrictions set forth in the body of this Declaration or any applicable Supplemental Declaration, or (c) estop the Architectural Committee from denying a variance in other circumstances. For purposes of this Section, the inability to obtain approval of any governmental agency, the issuance of any permit, or the terms of any financing shall not be considered a hardship warranting a variance. No variance from the requirements of Sections 4.3.1 will be permitted unless the Owner or his architect has obtained the prior written approval for such variance from the Director of Land Utilization of the City and County of Honolulu.

### ARTICLE V

### PROPERTY RIGHTS: COMMON AREA

5.1 <u>Common Area Ownership</u>: The Common Area shall be conveyed and/or demised to and owned and/or leased by the Association and the Association shall accept the conveyance of the Common Area transferred to it pursuant to this Section. The Association will from time to time promptly upon Declarant's or Trustees' request, execute and deliver to or accept from the Trustees conveyances (lease or fee) demising to the Association such Common Area or parts thereof as Declarant or Trustees may specify. Fee simple transfers shall be for a consideration of one dollar ($1.00). Leases shall be at a rent of one dollar ($1.00) per year plus all real property taxes and assessments thereon accruing and all rates and other charges connected therewith during such term. Conveyances may provide for the Association's use, possession, maintenance, repair and administration of the Common Area in a manner satisfactory to the Trustees and consistent with the provisions of this Declaration. If within thirty (30) days from the date of the Declarant's or Trustees' request therefor, the Association shall fail to accept, execute and deliver to the Trustees any of the aforesaid conveyances, the Association hereby irrevocably appoints the Declarant as its attorney-in-fact with full power and authority to accept, execute and deliver to the Trustees any such conveyances for and on behalf of the Association and in the

c:\bedford\napali\ccr.5
April 8, 1991

in derogation of the minimum standards required by this Declaration. A copy of the Architectural Committee Rules, as they may from time to time be adopted, amended or repealed, certified by an architect member of the Architectural Committee, shall be kept available at all times at the office of the Association and at the office of Declarant, for the inspection of any Owner, architect or agent of the Owner or architect.

9.6 <u>Design Review Applications</u>: The content, format, required information to be submitted, form of approval, fees, procedure and other matters relating to design review applications is set forth in the Design Guidelines, and may be amended from time to time by the Architectural Committee.

9.7 <u>Proceeding with Work</u>: Upon receipt of approval from the Architectural Committee, pursuant to the Design Guidelines and this Declaration, the Owner shall, as soon as practicable and/or within the time period specified by the Architectural Committee, satisfy all conditions hereof and diligently proceed with the commencement and completion of all construction, reconstruction, refinishing, alterations and excavations pursuant to said approval. If the Owner shall fail to comply with this Section, any approval given shall be deemed revoked unless the Architectural Committee, upon written request of the Owner made prior to the expiration of said time period, extends the time for such commencement. No such extension shall be granted except upon a finding by the Architectural Committee that there has been no change in the circumstances upon which the original approval was granted.

9.8 <u>Failure to Complete Work</u>: The Owner shall in any event complete the construction, reconstruction, refinishing or alteration of any such Improvement within a reasonable time not to exceed eighteen (18) months after commencing construction thereof, except and for so long as such completion is rendered impossible or would result in great hardship to the Owner due to strikes, fires, national emergencies, natural calamities or other supervening forces beyond the control of the Owner or his agents. If the Owner fails to comply with this Section, the Architectural Committee shall notify the Board of such failure, and the Board shall proceed in accordance with the provisions of Section 9.9 below as though the failure to complete the Improvements were a noncompliance with approved plans.

9.9 <u>Inspection of Work</u>: Inspection of work and correction of defects therein shall proceed as follows:

9.9.1 Upon the completion of all framing for Improvements to be constructed upon any Lot and upon the completion of any construction, reconstruction, alteration or refinishing of the exterior of any Improvements, or upon the completion of any other work for which approved plans are required under this Article, the Owner shall give written notice thereof to the Architectural Committee.

9.9.2  Within three (3) days after the completion of framing of Improvements and within sixty (60) days after the other occurrences mentioned above, the Architectural Committee, or its duly authorized representative, may inspect such Improvement to determine whether it was constructed, reconstructed, altered or refinished to substantial compliance with the final plans.  If the Architectural Committee finds that such construction, reconstruction, alteration or refinishing was not done in substantial compliance with the final plans, it shall notify the Owner in writing of such noncompliance within such three (3) or sixty (60) day periods, specifying particulars of noncompliance, and shall require the Owner to remedy such noncompliance.  So long as the Association shall have received the information required by Section 11.9, the Architectural Committee shall mail to the mortgagee at the address provided to the Association, a copy of the notice of noncompliance concurrently with the issuance of such noncompliance notice to the Owner.

9.9.3   If the Owner shall have failed to remedy such noncompliance upon the expiration of thirty (30) days from the date of such notification, the Architectural Committee shall notify the Board in writing of such failure.  The Board shall then set a date on which a hearing before the Board shall be held regarding the alleged noncompliance.  The hearing date shall be not more than thirty (30) nor less than fifteen (15) days after notice of the noncompliance is given to the Board by the Architectural Committee.  Notice of the hearing date shall be given at least ten (10) days in advance thereof by the Board to the Owner, the Architectural Committee and, in the discretion of the Board, to any other interested party.

9.9.4  At the hearing, the Owner, the Architectural Committee and, in the Board's discretion, any other interested person may present information relevant to the question of the alleged noncompliance.  After considering all such information, the Board shall determine whether there is a noncompliance and, if so, the nature thereof and the estimated cost of correcting or removing the same.  If a noncompliance exists, the Board shall require the Owner to remedy or remove the same within a period of not more than forty-five (45) days from the date of the Board ruling.  If the Owner does not comply with the Board ruling within such period or within any extension of such period as the Board, in its discretion, may grant, the Board, at its option, may either remove the noncomplying Improvement or remedy the noncompliance and the Owner shall reimburse the Association for all expenses incurred in connection therewith upon demand.  If such expenses are not promptly repaid by the Owner to the Association, the Board shall levy a reimbursement assessment against such Owner pursuant to Section 7.3 hereof.

9.9.5  If for any reason the Architectural Committee fails to notify the Owner of any noncompliance within sixty (60) days after receipt of said notice of completion from the Owner, the Improvement shall be deemed to be in accordance with said approved plans.

c:\bedford\napali\ccr.5
April 8, 1991

47

of such costs, expenses or liabilities, except such costs, or liabilities as shall relate to matters as to which he is by reason of his willful misconduct toward the Association or in the performance of his duties as such member of the Architectural Committee. In the absence of such final adjudication of existence of such liability, the Architectural Committee and each member may conclusively rely upon an opinion of legal counsel selected by the Architectural Committee. The foregoing right of indemnification shall not be exclusive of other rights to which any such member of the Architectural Committee may be entitled as a matter of law or otherwise, and shall inure to the benefit of the heirs, legal representatives and assigns of each such member of the Architectural Committee.

9.13  <u>Nonexistence of Architectural Committee</u>: In the event that at any time through death, absence from this State, resignation, or for any other reason, there shall not be an Architectural Committee or there shall not be a quorum necessary to act on a particular matter the approval or action by the Architectural Committee being required hereunder for such matter and such situation lasts for a period of not less than twenty (20) days, then, and until there shall again be an Architectural Committee with sufficient members, all matters requiring such approval or action may be approved or done by the President of the Association, and any other officer of the Association, and their certificate that there had been no Architectural Committee, or that the required members were not present, and that they were acting pursuant to the authority of this Section shall be conclusive between the Owners, the Association, or from anyone deriving any interest in a Lot through an Owner, and any other person. The officers of the Association acting hereunder shall be entitled to employ an architect or engineer to render technical advice and to receive reasonable compensation to be set by the Board for his services.

9.14  <u>Non-liability for Approval</u>. Any approval by the Architectural Committee pursuant to this Article IX, including but not limited to approval of plans and specifications, are approved solely as to style, design, appearance, location and/or compliance with this Declaration. Such approval does NOT constitute approval of engineering, design, compliance with zoning ordinances or compliance with building codes. The Architectural Committee, the members thereof, the Association, the Board and Declarant do not assume any liability or responsibility for such approval, or for any defect in any structure constructed from approved plans and specifications.

ARTICLE X

<u>LIMITATION OF RESTRICTIONS ON DECLARANT</u>

10.1  <u>Limitation of Restrictions</u>: Declarant is undertaking the work of developing a residential subdivision. The completion of that work and the sale and other disposal of Lots is essential to the

11.7  <u>Applicability</u>:  Nothing contained in this Article shall be construed to reduce the percentage vote that must otherwise be obtained under the Declaration, Bylaws, or Hawaii law for any of the acts set out in this Article.

11.8  <u>Failure of Mortgagee to Respond</u>:  Any mortgagee who receives a written request from the Board to respond to or consent to any action shall be deemed to have approved such action if the Association does not receive a written response from the mortgagee within thirty (30) days of the date of the Association's request, provided such request is delivered to the mortgagee by certified or registered mail, return receipt requested.

## ARTICLE XII

## MISCELLANEOUS PROVISIONS

12.1  <u>Amendment and Duration</u>:

12.1.1  <u>Amendment By Declarant</u>:  Until termination of the Class "B" membership, Declarant may unilaterally amend this Declaration if such amendment is (i) necessary to bring any provision into compliance with any applicable governmental statute, rule, regulation, or judicial determination; (ii) necessary to enable any reputable title insurance company to issue title insurance coverage on the Lots; (iii) required by an institutional or governmental lender or purchaser of mortgage loans, including, for example, the Federal National Mortgage Association or Federal Home Loan Mortgage Corporation, to enable such lender or purchaser to make or purchase mortgage loans on the Lots; (iv) necessary to enable any governmental agency or reputable private insurance company to insure mortgage loans on the Lots; or (v) otherwise necessary to satisfy the requirements of any governmental agency.  However, any such amendment shall not adversely affect the title to any Lot unless the Owner shall consent thereto in writing.  So long as the Declarant still owns property described in Exhibit "A" for development as part of the Project, it may unilaterally amend this Declaration for any other purposes, provided the amendment has no material adverse effect upon any right of any Owner.

12.1.2  <u>Amendment By Owners</u>:  Thereafter and otherwise, this Declaration may be amended only by the affirmative vote or written consent, or any combination thereof, of Members representing seventy-five percent (75%) of the total Class "A" votes in the Association, including seventy-five percent of the Class "A" votes held by Members other than the Declarant, and the consent of the Class "B" Member, so long as such membership exists.  In addition, the approval requirements set forth in this Declaration shall be met if applicable.

c:\bedford\napali\ccr.5
April 8, 1991

Notwithstanding the above, the percentage of votes necessary to amend a specific clause shall not be less than the prescribed percentage of affirmative votes required for action to be taken under that clause. To be effective, any amendment must be recorded in the Bureau of Conveyances of the State of Hawaii.

If an Owner consents to any amendment to this Declaration or the Bylaws, it will be conclusively presumed that such Owner has the authority so to consent, and no contrary provision in any mortgage or contract between the Owner and a third party will affect the validity of such amendment.

No amendment may remove, revoke, or modify any right or privilege of the Declarant without the written consent of the Declarant or the assignee of such right or privilege.

12.1.3 Consent of Trustees. So long as any Common Area, Lot or other property subject to the Declaration is owned in fee simple by the Trustees, any amendment to this Declaration shall require the prior written consent of the Trustees.

12.1.4 Duration: The provisions of this Declaration including the covenants, conditions and restrictions contained herein, shall continue and be effective for period of eighty (80) years from the date of recordation and shall be automatically extended for consecutive ten (10) year periods thereafter unless, at least one (1) year prior to: (i) the end of the eighty (80) year initial term, or (ii) the end of a ten (10) year extension term; a Supplemental Declaration is recorded giving notice of the termination of this Declaration at the end of such term, approved in writing by the Trustees (so long as any Common Area, Lot or other property subject to the Declaration is owned in fee simple by the Trustees), the Director of Land Utilization of the City and County of Honolulu, and the Association based on the written consent of not less than seventy-five percent (75%) of the total Class "A" votes in the Association, including seventy-five percent of the Class "A" votes held by Members other than the Declarant, and the consent of the Class "B" Member, so long as such membership exists.

12.2 Enforcement and Nonwaiver:

12.2.1 Right of Enforcement: Except as otherwise provided herein, Declarant, the Trustees (so long as any Common Area, Lot or other property subject to the Declaration is owned in fee simple by the Trustees), the Association, or any Owner or Owners shall have the right to enforce any and all of the limitations, covenants, conditions, restrictions, obligations, liens and charges now or hereafter imposed by this Declaration upon the Owners or upon any Lot in the Project, and the costs of enforcement, including court costs and attorneys' fees, shall be paid by any Owner who violates any such limitation, restriction, covenant or condition, or fails to pay and

satisfy when due any such lien or charge. Except as otherwise expressly provided herein, no entry upon the Lot of any Owner or other action to enforce any such limitation, restriction, covenant, condition, obligation, lien or charge may be made or taken without first giving not less than thirty (30) days' written notice and demand to the Owner concerned to cure or rectify the default or breach involved.

**12.2.2** <u>Violations and Unreasonable Sources of Annoyance</u>: Every act or omission whereby a covenant, condition or restriction of this Declaration is violated in whole or in part is hereby declared to be a nuisance and may be enjoined or abated, whether or not the relief sought is for negative or affirmative action, by Declarant, the Trustees (as to any Common Area or Lot owned in fee simple by the Trustees), the Association, or an Owner or Owners. However, any other provision to this Declaration notwithstanding, only Declarant, the Trustees (as to any Common Area or Lot owned in fee simple by the Trustees), the Board, or their respective duly authorized agents may enforce by self-help any covenant, condition or restriction herein set forth. Except to the extent otherwise expressly provided herein, any Owner or Owners shall have the right to enforce any and all limitations, restrictions, covenants, conditions and obligations now or hereafter imposed by this Declaration, provided, however, anything herein to the contrary notwithstanding, no Owner as such shall have any right to enter upon the Lot of any other Owner or to abate any unreasonable sources of annoyance or enforce any provision hereof against another Owner or the Association except by proper legal proceedings and authority of a court having jurisdiction.

**12.2.3** <u>Violation of Law</u>: Any violation of any state, municipal or local law, ordinance or regulation pertaining to the ownership, occupation or use of any Lot within the Project is hereby declared to be a violation of this Declaration and subject to any or all of the enforcement procedures herein set forth.

**12.2.4** <u>Remedies Cumulative</u>: Each remedy provided by this Declaration is cumulative and not exclusive.

**12.2.5** <u>Nonwaiver</u>: The failure to enforce the provisions of any covenant, condition or restriction contained in this Declaration shall not constitute a waiver of any right to enforce any such provisions or any other provisions thereof.

**12.3** <u>Condemnation of Common Area</u>: If at any time all or any portion of any Common Area, or any interest therein, be taken for any public or quasi-public use, under any statute, by right of eminent domain or by private purchase in lieu of eminent domain, the entire award in condemnation shall be paid to the holder or holders of the fee title to such area as their interests may appear. Any such award to the Association shall be deposited into the Operating Fund. No Owner shall be entitled to any portion of such award, and no Owner