

ORIGINAL

NEELEY & ANDERSON LLP
A Limited Liability Law Partnership

JOYCE Y. NEELEY         (3134-O)
(JNeeley@neeley-anderson.com)
PHILIP L. LAHNE          (3709-O)
LANCE S. FUJISAKI       (4224-O)
SCOTT R. GRIGSBY      (6673-O)
Pacific Guardian Center, Makai Tower
733 Bishop Street, Suite 2301
Honolulu, Hawai`i 96813
Telephone: (808) 536-8177
Facsimile: (808) 536-4977

X:\NaPaliHaweo\Grande\Usdc PLEADINGS\Concise Stmnt of Facts in Opp-fnl.wpd

Attorneys for Plaintiff
NA PALI HAWEO COMMUNITY ASSOCIATION

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

JUN 19 2006

at 10 o'clock and 54 min. ___M
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

| | |
|---|---|
| NA PALI HAWEO COMMUNITY ASSOCIATION, a Hawaii non-profit corporation,<br><br>Plaintiff,<br><br>vs.<br><br>ANTHONY CHARLES GRANDE; NARINDAR KAUR GRANDE; JOHN DOES 1-10; JANE DOES 1-10; DOE PARTNERSHIPS 1-10; DOE CORPORATIONS 1-10; DOE ENTITIES 1-10; AND DOE GOVERNMENTAL UNITS 1-10,<br><br>Defendants. | CIVIL NO. CV04-00413 DAE/LEK<br>(Injunctive Relief)<br><br>PLAINTIFF NA PALI HAWEO COMMUNITY ASSOCIATION'S CONCISE STATEMENT OF FACTS OPPOSITION TO COUNTER-MOTION FOR SUMMARY JUDGMENT FILED JUNE 8, 2006 |

| ANTHONY CHARLES GRANDE and NARINDAR KAUR GRANDE, | ) ) ) | | |
|---|---|---|---|
| Counterclaim Plaintiffs, | ) ) ) | Date: Time: JUDGE: | June 26, 2006 10:30 a.m. Honorable David A. Ezra |
| vs. | ) ) | | |
| NA PALI HAWEO COMMUNITY ASSOCIATION; RONALD K. AWA and DOES 1-25, | ) ) ) ) | | |
| Counterclaim Defendants. | ) ) ) | | |

PLAINTIFF NA PALI HAWEO COMMUNITY ASSOCIATION'S
CONCISE STATEMENT OF FACTS IN OPPOSITION TO
COUNTER-MOTION FOR SUMMARY JUDGMENT FILED JUNE 8, 2006

| | |
|---|---|
| 1 - 5. Accepted as a partial and incomplete quotation of the subject documents. | |
| 6. Disputed. No such limitation is set forth in the CC&Rs. | Def. Ex. A at p. 47 |
| 7. Accepted in part/disputed in part. As Grandes did not provide written notice of completion under § 9.9.1, Grandes did not trigger the procedures set forth in § 9.9. However, the Association did provide the Grandes with notice of various violations before filing suit. | Def. Ex. A at p. 46 Plaint. Reply: Awa Decl. ¶ 28 Kloetzel Decl. ¶ 6 |
| 8. Accepted in part/disputed in part. As Grandes did not provide written notice of completion under § 9.9.1, Grandes did not trigger the procedures set forth in § 9.9, including a hearing. Hence, the Association did not provide Grandes with notice of a hearing under CC&R § 9.9.3. | Def. Ex. A at p. 46 Plaint. Reply: Awa Decl. ¶ 28 Kloetzel Decl. ¶ 6 |

| | |
|---|---|
| 9. Accepted in part/disputed in part. As Grandes did not provide written notice of completion under § 9.9.1, Grandes did not trigger the procedures set forth in § 9.9, including a hearing. The Association did provide Grandes notice of noncompliance and steps required to achieve compliance regarding the items addressed a letter dated March 4, 2004, which expressly stated, "The non-compliant portions of the dwelling include the following: (1) the second floor balcony columns, (2) the front roof section above the garage, (3) any portion of the dwelling which violated the front setback requirements and (4) the interior garage storage (collectively "Non-Compliant Items")." | Def. Ex. A at p. 46<br>Plaint. Mot. Summary Judgment:<br>Ex. U<br>Plaint. Reply:<br>Awa Decl. ¶ 28<br>Kloetzel Decl. ¶ 6 |
| 10. Accepted in part/disputed in part. The Board of Directors did not notice and conduct a hearing under Section 9.9 of the CC&Rs, however Grandes were not entitled to hearing under Section 9.9 of the CC&Rs as they never gave written notice of completion to the ARC in accordance with CC&R 9.9.1. Further, the Association is not able to reasonably formulate a response as to the "Grandes' knowledge." | Def. Ex. A at p. 46<br>Plaint. Reply:<br>Awa Decl. ¶ 28<br>Kloetzel Decl. ¶ 6 |
| 11. Disputed. The allegation is false. | Plaint. Reply:<br>Yee Decl. ¶ 10 |
| 12. Accepted. As construction was ongoing, the Association filed suit to compel the Grandes to cease further construction and identified in the Complaint violations which were discovered before the Complaint was filed, including newly discovered violations. | Plaint. Reply:<br>Kloetzel Decl. ¶ 8 |
| 13. Accepted in part/disputed in part. The purchase contract, as produced by the Grandes, addresses a special 18-foot height limitation to 13 lots within Na Pali Haweo but is silent as to the height limitations generally applicable to all other lots, including the Grandes' lot. | Def. Ex. 9 at p. 11 |
| 14. Accepted as a partial and incomplete quotation of the subject document. | |

2

| | |
|---|---|
| 15. Disputed. The "building envelope" is established by the Design Guidelines and is not approved by the ARC on a lot by lot basis. | Plaint. Reply: Awa Decl. ¶ 12 |
| 16. Disputed. The "building envelope" is established by the Design Guidelines and is not approved by the ARC on a lot by lot basis. The Grandes' home does not comply with the building envelope as set forth in the Design Guidelines. | Plaint. Reply: Awa Decl. ¶ 12 |
| 17. Disputed. The "building envelope" is established by the Design Guidelines and is not approved by the ARC on a lot by lot basis. The Grandes' home (including balcony columns and front roof section) does not comply with the building envelope as set forth in the Design Guidelines. | Plaint. Reply: Awa Decl. ¶ 12 |
| 18. Disputed. The "building envelope" is established by the Design Guidelines and is not approved by the ARC on a lot by lot basis. The Grandes' home does not comply with the building envelope as set forth in the Design Guidelines. | Plaint. Reply: Awa Decl. ¶ 12 |
| 19. Accepted in part/disputed in part. Section 3.2.1(d) of the Design Guidelines authorizes the ARC to consider variances of the first story envelope under limited conditions which do not apply to the Grandes' lot. Article IV, § 4.9 authorizes the ARC to grant variances under limited conditions. | Plaint. Reply: Awa Decl. ¶ 5 Nishimoto Decl. ¶ 8 |
| 20. Accepted in part/disputed in part. The Association accepts the contention that the ARC does not have the authority to grant the Grandes a variance from the height setback | |
| 21. Disputed. This quotation is incomplete and does not accurately reflect the meaning of the quoted provision. Article IV, Section 4.9 of the CC&Rs states that the ARC may authorize variances from the Design Guidelines "when circumstances such as, but not limited to, topography, natural obstructions, hardship, or aesthetic or environmental considerations require, as | Def. Ex. A at p.17 |

| | |
|---|---|
| determined in the sole discretion of the Architectural Committee . . . . Such variances may only be granted, however, when unique circumstances exist. . . ." | |
| 22. Disputed. The Grandes misquote the CC&Rs. Furthermore, the CC&Rs incorporate by reference the Design Guidelines. *See, e.g.,* Article IV, § 4.1 and 4.3 | Def. Ex. A at p.15 |
| 23. Accepted as a partial and incomplete quotation of the subject document. | |
| 24. Accepted in part/disputed in part. This quotation is incomplete and does not accurately reflect the meaning of the quoted provision. | |
| 25. Disputed. Section 3.2.1(d) of the Design Guidelines state: "The Building Envelope sets the maximum height, setback, and bulk of each house. . . . No part of any structure or auxiliary structure may protrude outside the building envelope. . . ." The Design Guidelines set forth mandatory requirements for building height setback and building envelope. | Def. Ex. B at pp. 11, 12<br>Plaint. Reply:<br>Awa Decl. ¶ 34<br>Nishimoto Decl. ¶ 26 |
| 26. Accepted in part/disputed in part. The referenced portion of the Design Guidelines does not contain the phrase "typical building heights" but instead states that "the maximum height of structures shall be determined by the building envelope. . . ." The Design Guidelines do not expressly state whether maximum height is measured from existing or finish grade. | Def. Ex. B at pp. 12, 13 |
| 27. Disputed. This statement is nonsensical. The existing grade is lower than finish grade at the front edge of the garage. The height of the dwelling's front roof plate and eave exceed the height setback restriction regardless of whether height is measured from existing or finish grade. The "building envelope" is established by the Design Guidelines and is not approved by the ARC on a lot by lot basis. | Plaint. Reply:<br>Awa Decl. ¶ 16<br>Nishimoto Decl. ¶ 15, 19 |
| 28. Disputed. The Grandes cannot circumvent the building height envelope by artificially raising the as- | Plaint. Reply:<br>Awa Decl. ¶¶ 17-22 |

4

| | |
|---|---|
| built ground level. The benchmark for measuring the building height envelope is the lower of the existing grade or finish grade. The finish grade is fixed by the elevation of the driveway and garage floor. | Nishimoto Decl. ¶¶ 16-20 |
| 29. Accepted in part/disputed in part. The failure to construct the Dwelling within the required front setback is a substantial and material deviation from the approved plans. The term "expensive" is vague and ambiguous. The phrase, "Grandes' exterior is cement block rather than merely wood," is vague and ambiguous. | Plaint. Reply: Awa Decl. ¶ 29 Nishimoto Decl. ¶ 21 |
| 30. Disputed. The phrase "or appearing to possibly be within 20'" is so vague and ambiguous that the Association cannot reasonably formulate a response. The Association is not aware of other homes in violation of the 20' front setback. | |
| 31. Accepted in part/disputed in part. The Association approved the Grandes' proposed remedy for the building height setback encroachment as set forth in paragraph No. 2 of the Response To Plans Submitted by Anthony Charles Grande and Narindar Kaur Grande (Received April 19, 2006). The term "compromise proposal" is vague and ambiguous and is disputed. | Def. Ex. 5 at B-1, Item 2 |
| 32. Disputed. The plans submitted by the Grandes on January 28, 2004, were substantially different from the plans submitted on April 19, 2006, which were the subject of the Association's May 31, 2006 letter. | Def. Ex. 5 at A-1 Plaint. Reply: Nishimoto Decl. ¶ 29 |
| 33. Accepted in part/disputed in part. Section 4.3.7 of the CC&Rs expressly states "Garages shall be used *only* for the parking or repair of personally owned motor vehicles, storage and workshop purposes." (emphasis added). This quotation is incomplete and does not accurately reflect the meaning of the quoted provision. | Def. Ex. A at p. 13 |
| 34. Accepted as a partial and incomplete quotation of the subject document. | |

5

| | |
|---|---|
| 35. Accepted in part/disputed in part. The interior of garages are visible when garage doors are open. The restrictions on the use of garages set forth in Section 4.3.7 of the CC&Rs are not limited to "the interiors of garages . . .visible from outside the lot." The Association accepts that the Design Guidelines add, "All garages must be fully enclosed and have automatic roll-up doors." | Def. Ex. A at p. 13 |
| 36. Accepted as a partial and incomplete quotation of the subject document. | |
| 37. Accepted as a partial and incomplete quotation of the subject document. | |
| 38. Disputed. The ARC has required "an additional one hundred (100) square feet of enclosed and covered area for service and storage facilities" as required by Section 3.2.4(b) of the Design Guidelines. The second sentence is vague and ambiguous regarding the phrase "entirely separate." | Def. Ex. 5 at pp. A-1, A-2 |
| 39. Disputed. As Article IV, Section 4.3.7 of the CC&Rs limits the use of garages to "parking or repair of personally owned motor vehicles, storage and workshop purposes" the term "service" as used in Section 3.2.4 of the Design Guidelines does not include restrooms, and therefore the Grandes' toilet room within the garage does not count toward the 100 square feet of "service and storage facilities." | Plaint. Reply: Awa Decl. ¶ 13 Nishimoto Decl. ¶ 5 |
| 40. Disputed. The provision does not "mean[] only that such facilities must be indoors." Section 3.2.4(b) of the Design Guidelines requires that the service and storage area be an enclosed and covered area within the enclosed garage. The Grandes' interpretation disregards the phrase, "enclosed and covered area." Moreover, when read in conjunction with Article IV, Section 4.3.7 of the CC&Rs, the provision also means that such | Def. Ex. A at p. 13 |

6

| | |
|---|---|
| facilities must be used for "parking or repair of personally owned motor vehicles, storage and workshop purposes." | |
| 41. Disputed. The present Chair of the ARC recalls that when he initially became a member of the ARC in mid 2000, the ARC acknowledged and discussed the requirement for separate and enclosed storage facilities within garages in their review of the plans before them. | Plaint. Reply: Awa Decl. ¶¶ 2, 13 |
| 42. Accepted in part/disputed in part. As Article IV, Section 4.3.7 of the CC&Rs limits the use of garages to "parking or repair of personally owned motor vehicles, storage and workshop purposes" the term "service" as used in Section 3.2.4 of the Design Guidelines does not include restrooms, and therefore the Grandes' toilet room within the garage does not count toward the 100 square feet of "service and storage facilities." Uncovered or unenclosed storage space should not be included in the 100 square feet requirement. As discovery is ongoing, the Association cannot accept the measurements described. | Plaint. Reply: Awa Decl. ¶ 13 Nishimoto Decl. ¶ 5 |
| 43. Disputed. The Association disapproved the proposal by the Grandes because it would not create the mandatory 100 square feet of "service and storage facilities." | Plaint. Reply: Nishimoto Decl. ¶ 4-6 |
| 44. Accepted in part/disputed in part. The Association's pre-litigation demand letters did not reference roof vents, skylights, front wall and "roof ridges, hips and/or valleys," as construction was ongoing. The Association disputes the reference to "purported 'violations.'" | |
| 45. The Association accepts this as a partial and incomplete restatement of the Grande Memorandum. | |
| 46. The Association accepts that it provided the Grandes with a document dated March 22, 2005, which was revised by a document dated April 1, 2005, | Plaint. Mot. Summary Judgment: Ex. T Plaint. Reply: Ex. UU |

7

| | |
|---|---|
| summarizing various violations. | |
| 47. Accepted in part/disputed in part. As Grandes did not provide written notice of completion under § 9.9.1, Grandes did not trigger the procedures set forth in § 9.9. | Def. Ex. A at p. 46 Plaint. Reply: Awa Decl. ¶ 28 Kloetzel Decl. ¶ 6 |
| 48. Accepted in part/disputed in part. The Association and Grandes reached an agreement, subject to Rule 408 of the Federal Rules of Evidence. However, the Grandes subsequently repudiated the agreement. The Agreement speaks for itself insofar as the Agreement Regarding Items To Be Included In/Excluded From The Grandes' Revised Plans (To Be Submitted To The ARC For Review and Approval). | Def. Ex. 13 |
| 49. Accepted in part/disputed in part. The Grandes made the stated modifications without notifying or obtaining the prior approval of the Association, although required under the Declaration and requested via letter dated January 5, 2006. The Association does not know when the modifications were made. The skylight frames were not painted to match the roof. The Association is without sufficient information to accept the allegation that vents were "moved." | Plaint. Reply: Ex. LL; Plaint. Mot. Summary Judgment: Ex. AA |
| 50. Disputed. The Association was not aware of such work when it filed its summary judgment motion on April 12, 2006. Mr. Yee did not notice the work until May 29, 2006. | Plaint. Reply: Yee Decl. ¶ 11 |
| 51. Disputed. The Grandes did not notify the Association that such plans were being prepared although the Grandes were aware that the Association intended to file a Motion for Summary Judgment. The Association does not have sufficient information to accept or dispute the remaining allegations. | |
| 52. Accepted. | |

| | |
|---|---|
| 53. Accepted in part/disputed in part. The Association's response to the Grandes' April 2006 plans is set forth in the Response To Plans Submitted by Anthony Charles Grande and Narindar Kaur Grande (Received April 19, 2006). The Association disputes the remainder of the allegations to the extent it is referring to communications pursuant to Rule 408, Federal Rules of Evidence. | Def. Ex. 5 |
| 54. Accepted in part/disputed in part. As Grandes did not provide written notice of completion under § 9.9.1, Grandes did not trigger the procedures set forth in § 9.9. | Def. Ex. A at p. 46<br>Plaint. Reply:<br>Awa Decl. ¶ 28<br>Kloetzel Decl. ¶ 6 |
| 55. Disputed. According to Grandes' expert, Owen Chock, there are seven (7) houses with bubble type skylights and three (3) houses with flat skylights. All of the houses with bubble type skylights were approved while Mr. Chock was the Chair of the ARC. The Association has not taken an inventory of houses with skylights or the types of skylights installed on homes. | Plaint. Reply:<br>Kloetzel Decl. ¶ 9 |
| 56. Accepted. | |
| 57. Disputed. The Grandes' roof tiles are shades of terra cotta. The skylight frames were painted bright red. | Plaint. Mot. Summary Judgment, Ex. AA |
| 58. Accepted as a partial and incomplete quotation of the subject document. | |
| 59. Disputed. The Association does not have sufficient information to accept or dispute the allegations. | |
| 60. Disputed. The phrase "less contrast in shades of red" is vague and ambiguous such that the Association cannot reasonably frame a response. The two other homes referenced in this allegation were approved while Mr. Chock was the Chair of the ARC. | Plaint. Reply:<br>Kloetzel Decl. ¶ 10 |
| 61. Accepted in part/disputed in part. The skylights are | Def. Ex. B at p. 16 |

| | |
|---|---|
| located on a side-facing roof. A plain reading of Section 3.2.3(i) makes it clear that the restrictions as to color, type and material apply to all skylights regardless of location. | |
| 62. Accepted in part/disputed in part. Accepted as to lack of screening for air conditioning on Ron Yee's property. The Association does not have sufficient information to accept or dispute the remaining allegations. | |
| 63. Accepted. | |
| 64. Disputed. While the Association does not admit that the communication was ever made, the alleged communication would have occurred during a settlement conference subject to Rule 408, Federal Rules of Evidence. Furthermore, the Grandes were informed in writing that they should not perform any work on the air conditioner screening without obtaining approval of proposed plans by the ARC. | Plaint. Reply: Ex. LL |
| 65. Accepted. | |
| 66. Accepted as a partial and incomplete quotation of the subject document. | |
| 67. Accepted as a partial and incomplete quotation of the subject document. | |
| 68. Disputed. The screening is prefabricated lattice work. Prefabricated lattice work is a prohibited material under §§ 3.2.2 and 3.2.7 of the Design Guidelines. The Association disputes the contention that, in this context, a screen is distinguishable from a fence. | Def. Ex. B at p. 17 Plaint. Reply: Awa Decl. ¶ 14 Nishimoto Decl. ¶ 12 |
| 69. Accepted in part/disputed in part. The Grandes had notice of the sound suppression requirement as it is set forth in the Design Guidelines. The Association has no knowledge of what Mr. Grande is doing. | Def. Ex. B at p.18 (3.2.14) |

| | |
|---|---|
| 70. Accepted. | |
| 71. Accepted in part/disputed in part. The Association's response does not address whether vents "face the street." | Def. Ex. 5, Item 5 |
| 72. Accepted in part/disputed in part. The Association's response to the Grandes' April 2006 plans is set forth in the Response To Plans Submitted by Anthony Charles Grande and Narindar Kaur Grande (Received April 19, 2006). | Def. Ex. 5 |
| 73. Accepted. | |
| 74. Accepted in part/disputed in part. The ARC has the authority to require owners to submit specifications for building components. | |
| 75. Accepted. | |
| 76. Disputed. The Association demanded that Grandes cease construction on all "non-compliant" portions of the dwelling. | Plaint. Mot. Summary Judgment, Ex. S, U, W |
| 77. Accepted in part/disputed in part. The September 30, 2005, agreement is subject to Rule 408, Federal Rules of Evidence. | |
| 78. Disputed. The Association does not have sufficient information to accept or dispute the allegations. | |
| 79. Accepted. | |
| 80. Accepted. | |
| 81. Disputed. The April 2006 plans are ambiguous as to what the Grandes will do to remedy the wall violation. | Plaint. Reply: Nishimoto Decl. ¶ 28 |
| 82. Accepted. | |
| 83. Disputed. The April 2006 plans are ambiguous as to what the Grandes will do to remedy the wall | Plaint. Reply: Nishimoto Decl. ¶ 28 |

11

| | |
|---|---|
| violation. The plans do not indicate adequately where the walls will be cut or otherwise modified to meet the height restrictions of the Design Guidelines. | |
| 84. Accepted in part/disputed in part. The April 2006 plans are ambiguous as to what the Grandes will do to remedy the wall violation. The Association is without sufficient information to accept or dispute the allegations concerning the surveyor's measurements and the allegations by Grandes' counsel. | Plaint. Reply:<br>Nishimoto Decl. ¶ 28 |
| 85. Accepted in part/disputed in part. This is a partial quote of § 3.2.7(a). | |
| 86. Accepted. | |
| 87. Disputed. The roof elements are not separate and distinct. "The Grandes' contractor explains, 'The roof area could not be built in accordance with the plans. . . . [A] decision was made to combine the distinct roof [*sic*.] in order to allow for the installation of gutters.'" | Plaint. Reply:<br>Ex. EE at 9(a)(6)<br>Awa Decl. ¶ 29<br>Nishimoto Decl. ¶ 21 |
| 88. Disputed. The photograph is not misleading. The roof elements are not separate and distinct. | Plaint. Reply:<br>Ex. EE at 9(a)(6)<br>Awa Decl. ¶ 29<br>Nishimoto Decl. ¶ 21 |
| 89. Disputed. The roof elements are not separate and distinct. | Plaint. Reply:<br>Ex. EE at 9(a)(6)<br>Awa Decl. ¶ 29<br>Nishimoto Decl. ¶ 21 |
| 90. Accepted. | |
| 91. Accepted. | |

| | |
|---|---|
| 92. Disputed. The Association demanded that Grandes cease construction on all "non-compliant" portions of the dwelling. | Plaint. Mot. Summary Judgment, Ex. S, U, W |
| 93. Disputed. The Grandes previously proposed to delete the eyebrow roof above the garage opening from their plans. | Plaint. Reply: Awa Decl. ¶ 27 |
| 94. Accepted. | |
| 95. Accepted. | |
| 96. Accepted in part/disputed in part. The angle of the eyebrow roof over the garage opening was not shown on plans received from the Grandes in April 2006. | Plaint. Reply: Awa Decl. ¶ 35 |
| 96. Accepted in part/disputed in part. The angle of the eyebrow roof over the garage opening was not shown on plans received from the Grandes in April 2006. The plans do not indicate the color of the roof, or otherwise indicate that the roof will match the existing dwelling. | Plaint. Reply: Awa Decl. ¶ 35 |
| 97. Accepted in part/disputed in part. The quoted provision states "Roof overhangs may protrude not more than 2 ½ feet outside the envelope." The word "typical" does not appear on the referenced page. | Def. Ex. B at p. 11 |
| 98. Disputed. This is an incorrect quote. | |
| 99. Disputed. The approved plans call for a concrete pad at the trash area (between the driveway and trash storage area) which has not been constructed. | Plaint. Mot. Summary Judgment: Ex. T at 11 Plaint. Reply: Ex. NN, TT |
| 100. Accepted in part/disputed in part. Attachment No. 5 to Association Exhibit T does not purport to show the location specified for the concrete trash pad, instead it shows an exposed double wall receptor for the missing sliding garage gate. The location for the concrete trash pad is specified in Exhibit NN attached to the | Plaint. Reply: Ex. NN |

13

| | |
|---|---|
| Association's Reply. | |
| 101. Disputed. The list of violations are not new allegations. The document entitled Listing of Violations - Grande Residence, 01 April 2005 references the violations. The Association disputes the Grandes' restatement of the list to the extent they deviate from the list. | Plaint. Mot. Summary Judgment: Ex. T |
| 102. Disputed. It is not common to make such revisions and then seek approval after the home has been completed. | Plaint. Reply: Awa Decl. ¶ 31 Nishimoto Decl. ¶ 23 |
| 103. Disputed. Changes made by the Grandes were not minor changes. | Plaint. Reply: Awa Decl. ¶¶ 29, 32 Nishimoto Decl. ¶¶ 21, 24 |
| 104. Disputed. The Grandes' subjective reasons for deviating from the approved plans are not known by the Association nor are they relevant to this matter. | |
| 105. Disputed. The agreement of September 30, 2005, was subject to Rule 408 of the Federal Rules of Evidence. Furthermore, the quotation is inaccurate. | Def. Ex. 13 at 9.c.2 |
| 106. Disputed. The Association's response of May 31, 2006, did not so state as to all of the referenced items. | Def. Ex. 5 at 9.c.2 |
| 107. Disputed. The term "kink" is vague and ambiguous so that the Association cannot reasonably formulate a response to the allegation. | |
| 108. Disputed. Page 10 of the Design Guidelines states in part, "Roofs should be simple hip or gable forms with low to medium roof pitches. It is essential that roof forms are appropriately articulated with respect to the individual Lot, the neighboring houses and the community as a whole." The term "kink" does not appear in the Design Guidelines and is vague and ambiguous so that the Association cannot reasonably | Def. Ex. B at p. 10 |

14

| | |
|---|---|
| formulate a response to the allegation. | |
| 109. Accepted. | |
| 110. Disputed. Mr. Grande told Mr. Yee on several occasions that he intended to build his house as far forward as possible to maximize his view. When Mr. Grande approached Mr. Yee regarding a 3½ inch encroachment into the 20-foot front setback, Mr. Yee told him that, short of tearing down the front of his house, the only thing he could do was to enquire whether the ARC would grant him a variance. Mr. Yee did not tell the Grandes that a variance would be granted. | Plaint. Reply: Yee Decl. ¶¶ 5, 6, 7 |
| 111. Disputed. The Grandes' request for a variance was discussed at various ARC meetings. | Plaint. Reply: Yee Decl. ¶ 9 |
| 112. Disputed. As of October 16, 2003, the roof framing had been constructed but neither the roof nor the plywood sheathing had been installed in the subject area. | Plaint. Mot. Summary Judgment: Kloetzel Aff. ¶ 18 |
| 113. Disputed. Construction of non-compliant portions of the dwelling ceased in approximately late October 2003 and then resumed in January 2004. Despite letters from the Association and its attorneys demanding that the Grandes cease construction on non-compliant portions of the dwelling, the Grandes continued with construction. The Grandes did not notify the Association that they did not understand that Association's demands. | Plaint. Mot. Summary Judgment: Kloetzel Aff. ¶¶ 21, 23 |
| 114. Disputed. The ARC's letter to Edward Resh dated January 28, 2004, did not ask the Grandes to submit revised plans as to the front yard setback violation. The letter clearly stated "the ARC awaits the action of the NPH Board of Directors regarding the front yard setback violation and the applicability of [the] 'deminimus rule.'" | Plaint. Mot. Summary Judgment: Ex. R |

| | |
|---|---|
| 115. Disputed. The allegation is vague and ambiguous as to the time frame of the alleged call so that the Association cannot reasonably frame a response. | |
| 116. Disputed. The March 4, 2004 letter expressly states, "The non-compliant portions of the dwelling include the following: (1) the second floor balcony columns, (2) the front roof section above the garage, (3) any portion of the dwelling which violated the front setback requirements and (4) the interior garage storage (collectively "Non-Compliant Items")." | Plaint. Mot. Summary Judgment: Ex. U |
| 117. Disputed. The Association demanded that the Grandes submit plans addressing each of the issues discussed in the January 28, 2004 letter "EXCLUDING THE FRONT SETBACK ISSUE." | Plaint. Mot. Summary Judgment: Ex. U |
| 118. Disputed. Construction of non-compliant portions of the dwelling ceased in approximately late October 2003 and then resumed in January 2004. Despite letters from the Association and its attorneys demanding that the Grandes cease construction on non-compliant portions of the dwelling, the Grandes continued with construction. Discovery is ongoing; the Association cannot accept or dispute the allegations regarding amounts paid to the contractor. | Plaint. Mot. Summary Judgment: Kloetzel Aff. ¶¶ 21, 23 |
| 119. Accepted. | |
| 120. Disputed. The garage door itself was not a "Non-Compliant Item." The Association cannot accept or dispute the allegations regarding "multiple dilemmas." To the extent the "multiple dilemmas" are accurate, they were caused by the Grandes' violations of the governing documents. | Plaint. Mot. Summary Judgment: Ex. U |
| 121. Disputed. The Association is without sufficient information to accept or dispute the allegations regarding amounts paid. | |

| | |
|---|---|
| 122. Disputed. This misstates the letter. The May 25, 2004 letter does not demand revised plans within 24 hours. | Plaint. Mot. Summary Judgment: Ex. W |
| 123. Disputed. The Association is without sufficient information to accept or dispute the allegations regarding amounts paid. | |

DATED: Honolulu, Hawai'i, 6-19-06            .

_____
JOYCE Y. NEELEY
LANCE S. FUJISAKI
SCOTT R. GRIGSBY
Attorneys for Plaintiff
NA PALI HAWEO COMMUNITY
ASSOCIATION

17

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

| | |
|---|---|
| NA PALI HAWEO COMMUNITY ASSOCIATION, a Hawaii non-profit corporation,<br><br>    Plaintiff,<br><br>    vs.<br><br>ANTHONY CHARLES GRANDE; NARINDAR KAUR GRANDE; JOHN DOES 1-10; JANE DOES 1-10; DOE PARTNERSHIPS 1-10; DOE CORPORATIONS 1-10; DOE ENTITIES 1-10; AND DOE GOVERNMENTAL UNITS 1-10,<br><br>    Defendants.<br><br>ANTHONY CHARLES GRANDE and NARINDAR KAUR GRANDE,<br><br>    Counterclaim Plaintiffs,<br><br>    vs.<br><br>NA PALI HAWEO COMMUNITY ASSOCIATION; RONALD K. AWA and DOES 1-25,<br><br>    Counterclaim Defendants. | CIVIL NO. CV04-00413 DAE/LEK<br>(Injunctive Relief)<br><br>CERTIFICATE OF SERVICE |

CERTIFICATE OF SERVICE

The undersigned hereby certifies that the document attached hereto shall be duly served upon the following parties via hand-delivery on June 20, 2006.

> STEVEN B. JACOBSON, ESQ.
> P.O. Box 240761
> Honolulu, Hawaii 96824-0761
>   Attorney for Defendants
>   ANTHONY CHARLES GRANDE
>   and NARINDAR KAUR GRANDE
>
> JOHN D. ZALEWSKI, ESQ.
> Case Lombardi & Pettit
> Pacific Guardian Center, Suite 2600
> 737 Bishop Street
> Honolulu, Hawaii 96813
>   Attorney for Counterclaim Defendants
>   NA PALI HAWEO COMMUNITY ASSOCIATION
>   and RONALD K. AWA

DATED: Honolulu, Hawai'i, 6-19-06.

_____
JOYCE Y. NEELEY
LANCE S. FUJISAKI
SCOTT R. GRIGSBY
Attorneys for Plaintiff
NA PALI HAWEO COMMUNITY ASSOCIATION