ORIGINAL

NEELEY & ANDERSON LLP
A Limited Liability Law Partnership

JOYCE Y. NEELEY         (3134-O)
(JNeeley@neeley-anderson.com)
PHILIP L. LAHNE         (3709-O)
LANCE S. FUJISAKI       (4224-O)
SCOTT R. GRIGSBY        (6673-O)
Pacific Guardian Center, Makai Tower
733 Bishop Street, Suite 2301
Honolulu, Hawai`i 96813
Telephone: (808) 536-8177
Facsimile: (808) 536-4977

X:\NaPaliHaweo\Grande\Usdc PLEADINGS\Reply MSJ-drf.wpd

Attorneys for Plaintiff
NA PALI HAWEO COMMUNITY ASSOCIATION

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

JUN 1 5 2006

at 11 o'clock and 18 min. P M
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

| | |
|---|---|
| NA PALI HAWEO COMMUNITY ASSOCIATION, a Hawaii non-profit corporation,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>ANTHONY CHARLES GRANDE; NARINDAR KAUR GRANDE; JOHN DOES 1-10; JANE DOES 1-10; DOE PARTNERSHIPS 1-10; DOE CORPORATIONS 1-10; DOE ENTITIES 1-10; AND DOE GOVERNMENTAL UNITS 1-10,<br><br>　　　　Defendants. | CIVIL NO. CV04-00413 DAE/LEK<br>(Injunctive Relief)<br><br>PLAINTIFF NA PALI HAWEO COMMUNITY ASSOCIATION'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT FILED APRIL 12, 2006, AND MEMORANDUM IN OPPOSITION TO COUNTER-MOTION FOR SUMMARY JUDGMENT FILED JUNE 8, 2006; DECLARATION OF JEFF KLOETZEL; DECLARATION OF RONALD K. AWA; DECLARATION OF RONALD YEE; DECLARATION OF JAMES I. NISHIMOTO; DECLARATION OF LANE K. UCHIMURA; AFFIDAVIT |

| | |
|---|---|
| ANTHONY CHARLES GRANDE and NARINDAR KAUR GRANDE, | ) OF JEFF BRANDT; EXHIBIT "A"; ) AFFIDAVIT OF SCOTT R. GRIGSBY; ) EXHIBITS "BB" - "UU" |
| Counterclaim Plaintiffs, | ) CERTIFICATE OF SERVICE ) |
| vs. | ) ) Date:    June 26, 2006 |
| NA PALI HAWEO COMMUNITY ASSOCIATION; RONALD K. AWA and DOES 1-25, | ) Time:    10:30 a.m. ) JUDGE:   Honorable David A. Ezra ) ) |
| Counterclaim Defendants. | ) ) ) |

PLAINTIFF NA PALI HAWEO COMMUNITY ASSOCIATION'S
REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
FILED APRIL 12, 2006, AND MEMORANDUM IN OPPOSITION TO
COUNTER-MOTION FOR SUMMARY JUDGMENT FILED JUNE 8, 2006

Defendants have failed to raise genuine issues of material fact regarding their violations of the governing documents. As discussed below, Defendants' proposal to fix the height envelope violation, which was approved by the Association, resolves this violation in favor of the Association. The Association is entitled to summary judgment compelling Defendants to correct this violation in accordance with the approved plans. The Association is entitled to summary judgment as to the remaining violations as Defendants intentionally took a chance by deviating from plans approved by the Association.

### A. DEFENDANTS ARE BARRED FROM DISPUTING THEIR VIOLATION OF THE HEIGHT SETBACK VIOLATION

One week after the Association filed this Motion, Defendants submitted plans to the Association. Def. Exh. 4. The Association accepted Defendants' proposed correction of the height envelope violation and other corrections, while disapproving the remainder of the plans. Def. Exh 5. Defendants' proposal to fix the height envelope, and the subsequent acceptance by the Association means that Defendants are bound by their proposal. Nevertheless, Defendants have apparently repudiated the agreement and continue to vigorously dispute the height envelope violation. Indeed, they move for summary judgment on this issue.

Defendants' April 19, 2006, submission is an admission against interest which confirms their violation of the governing documents. When an offer is made and accepted, if for some reason the agreement is not performed or a party to the

agreement repudiates, evidence of such an agreement is admissible in the original controversy. Defendants' Counter-MSJ reflects a repudiation of the agreement. *See*, Sternberger v. U.S., 185 Ct. Cl. 528, 401 F.2d 1012, 1018 (1968); Rogers v. Rogers, 2005 WL 668614 (Ark. App. 2005);  *See also,* Admissibility of evidence of unperformed compromise agreements, 26 A.L.R.2d 858 §2; 2 Federal Evidence §§ 135 & 138 (2d ed.)(scope of 28 U.S.C.A. 408 as to compromise offers and agreements); 2 McCormick on Evid. §266 (6th ed.) (if offer of compromise is accepted and a contract created, the party repudiating the contract may not claim privilege; shield of privilege does not extend to the protection of those who repudiate agreements which the privilege is designed to encourage).  Courts have permitted consideration of the evidence of an unperformed compromise agreement as an admission of liability or indebtedness, as an admission against interest, or as an admission against the one making the offer or all parties to the agreement. *See* Reese v. McVittie, 119 Colo. 29, 200 P.2d 390 (1948) (use of offer admissible); Luster v. Whitlock, 203 Ky. 405, 262 S.W. 572, 573 (1924) (agreement can be used as an admission).

Finally, Defendants falsely argue that the plans submitted in April 2006 are substantially the same as those submitted in January 2004. There are substantial differences between the two sets of plans. For example, the January 2004 plans did not show relocation of the roof beam, although this was shown on the April 2006

2

plans, and the April 2006 plans call for a substantially larger area of eaves to be removed, including the left and right sides of the roof, thus creating a significantly improved appearance, and a different roof shape. Decl. of Nishimoto, ¶ 29, Exh. DD.

**B.    GOVERNING DOCUMENTS SHOULD BE LIBERALLY CONSTRUED**

Defendants cite to Hiner v. Hoffman , 90 Hawaii 188, 977 P.2d 878 (1999), without elaboration or analysis. Defendants' citation to Hiner is unintelligble as they have not made any argument that the governing documents are ambiguous. In construing restrictive covenants, a court must interpret the covenant or restriction based upon the entire context of the provision, with words interpreted in accordance with ***the intention of the parties*** and in their ***ordinary and popular sense.*** DeMund v. Lum, 5 Haw. App. 336, 690 P.2d 1316 (1984), *cert. denied* 67 Haw. 685, 744 P.2d 781 (citing 20 Am.Jur.2d Covenants, Sec. 186 (1965)); Pelosi v. Wailea Ranch Estates, 10 Haw. App. 424, 435-36, 876 P.2d 1320, 1326-27 (1994).

The Declaration expressly requires the restrictions to be liberally construed:

> 12.5.1    All of the covenants, conditions and restrictions of this Declaration shall be ***liberally construed*** together to ***promote and effectuate the fundamental concepts of*** the Project as set forth in this Declaration.

Exh. OO. The expressed purpose of the restrictions is "to enhance, protect and preserve the value, desirability and attractiveness of the Project and each of its parts." Declaration at Article I.C, Exh. OO.

The RESTATEMENT (THIRD) OF PROPERTY (SERVITUDES) ("*Restatement*"), § 4.1

3

(2000) also emphasizes that a servitude should be interpreted to carry out the purpose for which it was created. The drafters of the *Restatement* were especially critical of any rule of construction that would impair the purpose especially in the context of a community association enforcement dispute:

> The rule that language will be construed against the drafter . . . can be applied in resolving disputes in which the drafter is involved, but should not uncritically be applied to the detriment of successors to the drafter.

*Restatement*, §4.1 Comment d.

The case most frequently cited by Defendants strongly recognizes the importance of enforcement of provisions requiring approval of a design committee in a community association.

> It is no secret that housing today is developed by subdividers who, through the use of restrictive covenants, guarantee to the purchaser that his house will be protected against adjacent construction which will impair its value, and that a general plan of construction will be followed. Modern legal authority recognizes this reality and recognizes also that the approval of plans by an architectural control committee is one method by which guarantees of value and general plan of construction can be accomplished and maintained.
>
> So long as the intention of the covenant is clear (and in the present case it is clearly to protect present and future property values in the subdivision), covenants such as the one before us have been up-held against the contention that they lacked specific restrictions providing a framework within which the architectural committee must act.

Rhue v. Cheyenne Homes, Inc., 168 Colo. 6, 449 P.2d 361, 362 (1969). "As experience has shown that servitudes are important tools of modern land development, courts and legislatures have eroded the old constraints on servitude

4

creation to the point where recognizing a general freedom to create servitudes more accurately describes the law." *Restatement*, §3.1 Comment a. Here, the covenants in question are not ambiguous and should be enforced to effectuate the expressed intent.

Defendants cite the Rhue decision for the proposition that the Association's refusal "to approve plans must be reasonable and made in good faith and must not be arbitrary or capricious." However, there is no evidence that the actions of the ARC were unreasonable, arbitrary or capricious.

To the extent Defendants are arguing that this Court should find that their plans are reasonable, the Hawaii Supreme Court has emphasized that this is not a question for the court to consider. The only question is whether there is any evidence that the ARC's decision was arbitrary or made in bad faith:

> The trial court's focus on the reasonableness of the Committee's actions rather than the reasonableness of plaintiffs' plans was well taken. ***Plaintiffs' presentation of their case was directed towards showing that their plans for construction were reasonable. However, this is not a question for a court either at the trial or appellate level to consider. The body most suited for this determination was the [association's] designated board -- the Managing Committee.*** The trial court's task was to see that the Committee's decision was not arbitrary or made in bad faith.

Id. at 402 at n.10, 616 P.2d at 209 at n. 10 (emphasis added).

Finally, the Association is entitled to relief even if the violations are allegedly "minor." The Sandstrom court ruled:

5

> We are convinced that where a property owner "deliberately and intentionally violates a valid express restriction running with the land or intentionally 'takes a chance', the appropriate remedy is a mandatory injunction to eradicate the violation." (Emphasis added) . . . In any event, we have already held that when either a deliberate and intentional or an assumed-risk violation of a restrictive covenant is shown, a plaintiff is entitled to mandatory injunctive relief ***regardless of the relative damage which may ensue from the injunction***. Furthermore, it is held that a breach of a restrictive covenant may be enjoined even absent a showing of the amount of damage which has in fact been caused by that breach, without allowing appellants to introduce evidence relating to possible alternative remedies.

Id. at 500-501, 583 P.2d at 978-979 (trial court properly ordered the removal of the top story of appellants' residence). In this case, there is clear evidence that Defendants intentionally took a chance in violating the governing documents. Exh. QQ, RR.

**C.   OUTSTANDING COVENANT VIOLATIONS**

   **1.   Building Height Envelope**

       **a.   The Dwelling Exceeds the Height Setback**

Edward Resh argues that the Dwelling complies with the height envelope if the height is measured from existing grade. However, Mr. Resh's plans show the existing grade lower than the finish grade along the front edge of the garage. *See* Exh. D-3 and BB (existing grade shown by dotted line) and Declaration of Awa, ¶ 16, and Nishimoto, ¶ 15. Mr. Resh provides no explanation or calculations to support his conclusions. There is no merit to his argument.

       **b.   Building Envelope Is A Mandatory Requirement**

Defendants describe the height envelope as a "typical" requirement, suggesting

6

that this is not a mandatory requirement, but rather a suggestion. However, the language used within § 3.2.1 is unequivocal. All owners must comply with the specified height setback. The word "typical" is used as several of the lots are "Restricted Lots" which are subject to a stricter height restriction than the second story envelope. "Typical" does not appear in the section entitled "Height Setbacks," which Defendants have violated. Def. Exh. B at 13.

### c.  Grandes Are Bound By Building Height Envelope

The ARC did not approve a special height envelope for the Property. Decl. Awa, ¶ 11-12. Defendants' plans were prepared by a licensed architect. The plans showed the building envelope in relation to the proposed structures. However, Mr. Resh drew the height envelope 10 feet from the property line consistent with the requirements of the Land Use Ordinance of the City and County of Honolulu ("LUO"), rather than 20 feet from the property line as required by the more stringent Design Guidelines. *See* Decl. of Awa, ¶ 18-20. Hence, the drawing indicated that the Dwelling was within the building envelope. Had Mr. Resh drawn the building envelope in its correct location, as he was required to do, this would have revealed that the Dwelling encroached beyond the height envelope and the ARC would not have approved the plans. *See* Decl. of Awa, ¶ 8-10.

The ARC does not approve building height envelopes for each lot. The building height envelope is established by the Design Guidelines at Article III,

7



§ 3.2.1(d), and this restriction applies to all lots in Na Pali Haweo.

### d.    Variance

The ARC did not grant the Grandes a variance allowing the building envelope to be located ten (10) feet from their front property line. *See* Decl. of Awa, ¶ 4-7, 11-12. The criteria for variances is described at Article IV, § 4.9 of the Declaration. Def. Exh. A. None of the criteria are applicable in this instance.

### e.    Proposal to Elevate Lot

The proposal by Mr. Resh to elevate the finish grade is not permitted by the City and County of Honolulu. Decl. of Nishimoto, ¶ 16-20.

### 2.    Front Yard Setback Encroachment

Defendants do not dispute the front setback encroachment and have acknowledged their obligation to remove the encroachment. *See* May 3, 2004, letter from Defendants' counsel, Exh. SS ("Unless the community association waives compliance, the entire house will need to be moved further back onto the lot, which would entail (we understand) moving or replacing everything under the house that supports it."). Defendants allege that other homes appear to violate the 20' setback; however, this evidence is speculative.

### 3.    Front Wall Violates Height Restrictions of Design Guidelines

Defendants do not dispute that the front wall violates the Design Guidelines and the plans approved by the ARC. Plans submitted April 19, 2006, were

disapproved as to the front wall as they were ambiguous. The plans do not indicate where the walls will be cut or otherwise modified. The top of wall elevations are not provided for each step of the walls. Also, Sheet A-1 shows a dotted line drawn above the wall; however, there is no notation as to what this line means and dotted lines have multiple meanings in the architectural profession. Decl. of Nishimoto, ¶ 28.

### 4. Separate and Distinct Roof Elements

Defendants call this a "silly item" and, through Mr. Chock, insist that the roofs are separate and distinct. Not only do the photos attached to the memo confirm the roofs are not separate and distinct, this point was conceded by Defendants' contractor who admitted that the "roof area could not be built in accordance with the plans" and "are not separate and distinct elements." Exh. EE.

### 5. Bubble Skylights Violate Design Guidelines

Owen Chock states in his Declaration at ¶ 21: "There are bubble skylights on other homes throughout Na Pali Haweo, including those at 1155 Kamehame Drive, 167 Hanohano Place, 1021 Hoa Street, 1056 Hoa Street, 1100 Hoa Street, 111 Hoolako Place, and 120 Waihili Place." He also references 162 Hoolako Place and 1203 Kamehame Drive. However, all of these houses were approved when Mr. Chock was ARC Chair. Decl. of Klotzel, ¶ 9-10. Mr. Chock was replaced as ARC Chair due to concerns about his performance. Decl. of Lane Uchimura

### 6. Failure to Construct Storage Facilities in Garage

Contrary to Defendants' argument, the Association's expert confirms that the

9

ARC correctly applied Article III, § 3.2.4(b) of the Design Guidelines and concluded that the restroom in the Grandes' garage does not count towards the required 100 square feet of enclosed and covered area for service and storage facilities. The governing documents do not contemplate restrooms in garages.[1] Article IV, § 4.3.7 of the Association's Declaration provides, in part: "Garages shall be used only for the parking or repair of personally owned motor vehicles, storage and workshop purposes." As the Declaration does not contemplate that garages will be used for restroom purposes, the term "service" as used in Article III, § 3.2.4(b) of the Design Guidelines does not include restrooms. Decl. of Nishimoto, ¶¶ 4-6; Decl. of Awa, ¶ 13. Therefore, the restroom in the Grandes' garage does not count towards the required 100 square feet of enclosed and covered area for service and storage facilities. Furthermore, Mr. Chock's statements that he did not enforce the storage requirements are not true. Decl. of Awa, ¶ 13.

7.   **Vents, Skylights and Air Conditioner Screening**

Without notifying the Association, Defendants completed remedial work on the vents, skylights and air conditioner screening. Defendants were required to obtain approval from the Association before performing the work under the governing

---

[1]   The quotation of § 3.2.4(b) of the Design Guidelines, page 20 of the Memorandum in Support, is erroneous. The sentence "The purpose of this requirement is to ensure that garages have adequate storage and thereby improve the aesthetic appearance of garages which face the street," does not appear in the rule.

documents. In addition, in response to Defendants' December 6, 2005, letter, Exh. HH, the Association informed Defendants that no work should be performed until the Association could respond to their letter, Exh. II, and via a January 5, 2006, letter, Exh. LL, the Association informed Defendants that before proceeding with remedial work, they must submit plans for review and approval by the ARC. Defendants ignored these communications and proceeded with remedial work without ARC approval. As a result, the Association was not aware roof vents and skylights were changed when it filed the instant Motion. The Association's position regarding these items is reasonable. Decl. of Nishimoto, ¶¶ 12-13. Furthermore, lattice work is a prohibited material under the Design Guidelines. Decl. of Awa, ¶ 14.

**8.    Other Items**

a.    The approved plans call for a concrete pad at the trash area (between the driveway and trash storage area) which has not been constructed. Exh. TT.

b.    Defendants failed to install a sliding garage gate in accordance with the approved plans.

c.    The ARC has not acted unreasonably in requiring information on the color of the eyebrow roof or the slope of the roof. Decl. of Nishimoto, ¶ 27. Moreover, there are genuine questions as to Defendants' intent to construct the eyebrow roof as they have previously proposed to delete it. Exh. MM.

d.    Defendants argue that other as-built conditions substantially comply with

11

the approved plans. However, it is apparent from Exh. "CC," and other exhibits, that various deviations from approved plans represent substantial changes and not minor revisions, e.g., changing upper corners of garage door opening from arched to squared-off design, deleting planters at entry, deleting metal railing at balcony corner, deleting windows on left side of Dwelling, deleting arched clerestory window above entry door, and removing articulations in walls and roof. Decl. of Nishimoto, ¶ 21-24.

   e. The Association has not taken new positions in Exh. 5. Exh. 5 is consistent with Exh. LL regarding information required for vents and skylights. In any event, Exh. 13 was a Rule 408 agreement which Defendants repudiated; hence, Exh. 13 is not binding upon the Association.

**D.** **"ABSOLUTES" V. "INTENTIONS"**

The Design Guidelines (1) provide owners with general concepts for design and construction of homes, and (2) provide specific requirements and restrictions for the design and construction of homes. The mandatory requirements include, but are not limited to, the building height envelope, the 20 foot front setback, the requirements and restrictions concerning vents and skylights, air conditioning screening, and garage storage, all of which are at issue in this case. *See* Decl. of Awa, ¶ 14, and Nishimoto, ¶ 25-26. Defendants' interpretation of the Design Guidelines simply ignores the clear language contained therein.

Furthermore, the Declaration provides that owners "shall conduct their

activities strictly in accordance with the Design Guidelines," Exh. A at 10, and the Design Guidelines state that the Declaration shall control in the event of any conflict with Design Guidelines. Def. Exh B at 1.

E.   **HEARING PROCEDURE UNDER ARTICLE IX, § 9.9**

Defendants argue that the Association is not entitled to relief because it failed to comply with Article IX, § 9.9. However, the procedures in § 9.9 are triggered by owners submitting a notice of completion of all framing and/or completion of all construction. *See* Def. Exhibit "A." Defendants failed to provide the Association with such notice. Decl. Awa, ¶ 28. Hence, the procedures of § 9.9 were never triggered and do not apply. Moreover, Defendants never requested a hearing before the Board under § 9.9.3, and they suffered no prejudice as this case was placed on hold for approximately 12 months for settlement negotiations before Mag. Judge Kobayashi. Decl. Kloetzel, ¶ 6.

F.   **SEPTEMBER 30, 2005, SETTLEMENT AGREEMENT**

Defendants have attached as Exhibit "13" an agreement signed by the parties. Defendants are attempting to bind the Association to this agreement. However, at page 3, the agreement expressly states it is made in compromise negotiations and is not to be used as evidence. Defendants have breached the terms of the agreement by disclosing it to this Court. As Defendants are attempting to use Exhibit "13" against the Association, however, the following points should be noted:

13

First, Exhibit "13" resulted during approximately 12 months of settlement negotiations before Mag. Judge Kobayashi in which the parties met with the Court at least 11 times. Settlement negotiations were terminated by Mag. Judge Kobayashi after Defendants repudiated their own settlement proposal. The Amended Rule 16 Scheduling Order filed January 3, 2006, states: "Plaintiffs [Grandes] to advise defendants [Association] by January 24, 2006 if Plaintiffs will agree to build as drawn in the July 20, 2005 plans." Defendants failed to respond.

Second, the Association made a good faith effort to settle this case while Defendants conducted themselves in bad faith. On May 19, 2005, the Association provided Defendants with a schematic drawing showing a proposed fix for the building height violation. *See* Exh. FF. On July 20, 2005, Defendants submitted plans to correct the building height violation. *See* Exh. PP. On August 11, 2005, the Association <u>accepted</u> the plans with regard to correction of the building height violation and addition of garage storage. Exh. GG at 4. However, Defendants repudiated their proposal. On November 9, 2005, Defendants submitted a revised proposed set of plans which the Association <u>approved</u>. Court Minutes, Exh. JJ. However, Defendants again repudiated their proposal. Exh. KK.

Third, by their conduct, Defendants repudiated the agreement in Exhibit "13," forcing the Association to file the instant Motion.

While the Association has not ruled out further settlement negotiations, it is

14

clear that meaningful negotiations will not occur without a ruling on the underlying issues in favor of the Association.

G.  **GOVERNING DOCUMENTS HAVE NOT BEEN ABANDONED**

In <u>Sandstrom v. Larson</u>, 59 Haw. 491, 583 P.2d 971 (1978), the Hawaii Supreme Court rejected an argument that a height restriction had been abandoned because 5 lots out of a 30 lot subdivision had violated the height restriction. The court said even if it could be proven that those lots violated the height restriction, the restriction would not be abandoned absent proof that the covenant had no further meaning and owners "acquiesced in substantial and general violations of the covenant within the restricted area." <u>Id</u>. at 497-498, 583 P.2d at 977. There is no such evidence of substantial and general violations of covenants. Na Pali Haweo is a subdivision composed of 193 lots. Decl. of Kloetzel, ¶ 5. Defendants have alleged violations on only a small portion of the total lots and, even assuming arguendo these allegations are true, they do not raise a question of fact as to abandonment.

DATED: Honolulu, Hawai'i,   JUN 15 2006                          .

_____
JOYCE Y. NEELEY
LANCE S. FUJISAKI
SCOTT R. GRIGSBY
Attorneys for Plaintiff
NA PALI HAWEO COMMUNITY
ASSOCIATION

15