IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| NA PALI HAWEO COMMUNITY ASSOCIATION, a Hawaii non-profit corporation, | CIVIL NO. CV04-00413 DAE/LEK (Injunctive Relief) |
| Plaintiff, | DECLARATION OF RONALD K. AWA |
| vs. | |
| ANTHONY CHARLES GRANDE; NARINDAR KAUR GRANDE; JOHN DOES 1-10; JANE DOES 1-10; DOE PARTNERSHIPS 1-10; DOE CORPORATIONS 1-10; DOE ENTITIES 1-10; AND DOE GOVERNMENTAL UNITS 1-10, | |
| Defendants. | |
| ANTHONY CHARLES GRANDE and NARINDAR KAUR GRANDE, | |
| Counterclaim Plaintiffs, | |
| vs. | |
| NA PALI HAWEO COMMUNITY ASSOCIATION; RONALD K. AWA and DOES 1-25, | |
| Counterclaim Defendants. | |

## DECLARATION OF RONALD K. AWA

1.      I am a licensed architect in the State of Hawaii and a member of the NA PALI HAWEO COMMUNITY ASSOCIATION'S ("Association") Architectural Review Committee ("ARC"). I am authorized to make this Declaration on behalf of the Association and make this Declaration based on my own personal knowledge and information.

2.      I have been a member of the ARC since mid-2000.

3.      I am familiar with the property owned by ANTHONY CHARLES GRANDE and NARINDAR KAUR GRANDE ("Grandes") located at 1251 Kamehame Drive, Honolulu, Hawaii 96825 ("Property") and the dwelling constructed thereon ("Dwelling").

4.      Section 3.2.1(d) of the Design Guidelines requires that the first story building envelope be set back twenty (20) feet from the property line. The first story building envelope for flag lots must be set back ten (10) feet from the property line. The Grandes' Dwelling is not situated on a flag lot.

5. Section 3.2.1(d) of the Declaration authorizes the ARC to consider variances of the front set back restriction in cases involving unusually shallow or odd shape lots or in which extensive excavation, fill or embankment will be required. In these cases, the only variance permitted by the Design Guidelines is to allow a single level turn-in garage to encroach a maximum of ten (10) feet into the 20-foot setback area. These conditions do not exist on the Grandes' property.

6. The ARC has granted front setback variances in the limited circumstances set forth above, and therefore, some of the houses within the Na Pali Haweo subdivision are situated less than twenty (20) feet from the front property boundary. However, while I have served as Chair, the ARC has not granted any setback variances where the above circumstances did not exist.

7. The ARC did not grant the Grandes' request for a front setback variance and a height setback variance.

8. The plans submitted by the Grandes in October 2000 contained erroneous information and violated the Design Guidelines in that the plans did not correctly show the front yard setback of the building envelope 20 feet from the front property line. Design Guidelines at Article III, § 3.2.1(d). Article VI, § 6.3 of the Design Guidelines provides that the "maximum permitted Building Envelope must be shown in relation to the proposed structure for all elevations."

9. The plans submitted by the Grandes in October 2000 were prepared by Edward Resh, an architect licensed in the State of Hawai`i, and were submitted with a letter stating, "The owner and I acknowledge receipt of the Design Guidelines and have used them in the design of the residence stated above."

10. The plans showed the building envelope in relation to the proposed structures. However, Mr. Resh drew the front yard setback of the building envelope 10 feet from the property line, the minium allowed by the Land Use Ordinance of the City and County of Honolulu ("LUO") rather than 20 feet from the property line as required but the more stringent Na Pali Haweo's Design Guidelines. Hence, the drawing indicated that the Dwelling was within the building envelope. Had Mr. Resh drawn the building envelope in its correct location, as required by the Design Guidelines, this would have revealed that the proposed Dwelling encroached beyond the building envelope and the ARC would not have approved the plans.

11. In the memorandum filed on June 8, 2006, in the above-captioned action, the Grandes argue that the ARC approved a building height envelope for their Property measured 10 feet from their front property line. This statement is not true.

The ARC does not approve building height envelopes for each lot. The building height envelope is established by the Design Guidelines at Article III, § 3.2.1(d), and this restriction applies to all lots in Na Pali Haweo. The ARC does not and did not have the authority to establish a different building height envelope for the Property.

12. The ARC did not grant the Grandes a variance allowing the building envelope to be located ten (10) feet from their front property line.

13. When I initially became a member of the ARC, I was asked to attend ARC meetings in which Owen Chock was the Chair. I recall at that time, Mr. Chock and other members acknowledged and discussed the requirement for separate and enclosed storage facilities within garages in their review of the plans before them. Section 3.2.4(b) of the Design Guidelines requires that every garage with a vehicular entrance facing a street shall contain "an additional one hundred (100) square feet of enclosed and covered area for service and storage facilities." Article IV, Section 4.3.7 of the Association's Declaration states that, "Garages shall be used only for the parking or repair of personally owned motor vehicles, storage and workshop purposes." The toilet room in the Grandes' garage violates the above provision of the Declaration and is not a "service" facility within the meaning of the Design Guidelines.

14. The pre-fabricated lattice work screening installed around the Grandes' air-conditioning equipment is not permitted by the Design Guidelines. Section 3.2.7 of the Design Guidelines prohibits the use of prefabricated lattice work. Section 3.2.14 of the Design Guidelines requires that air-conditioning equipment be screened from view and insulated for sound attenuation. The lattice work screening installed around the Grandes' air-conditioning equipment does not in itself insulate the equipment for sound attenuation. Section 3.2.14(a) requires that prior to the installation of an air-conditioning system, an owner must secure the written concurrence of the ARC as to the location and type of system. The Grandes' air-conditioning system was not shown on the approved plans and was not approved by the ARC.

15. The Declaration of Edward Resh states that the Grandes' home is "within the 'typical' building envelope described in the Na Pali Haweo Design Guidelines if measured from existing lot elevations, *i.e.*, lot elevations before grading and construction."

16. The foregoing statement is not correct. Based upon plans submitted by the Grandes on October 5, 2000, and approved by the ARC, the existing grade as shown on Building Section 1/A-5 of the plans (reflecting the grade at the

center of the garage) is lower than the finished grade. *See* Exhibit "BB." In this instance, the height of the dwelling exceeds the height setback restriction regardless of whether the height is measured from the existing or finished grade. (As used in the design and construction profession, the term "existing grade" in this instance refers to the original grade of the Property as constructed per the subdivision grading plan.)

17. The Declaration of Edward Resh provides at ¶ 4 that "[e]ven if the columns or roof at the front of the house were too high, in terms of the approved building envelope or a 'typical' envelope, they could be brought into conformity by the use of ground level soil or planters (raising the as-built ground level), as the City and County of Honolulu allows where a building is otherwise too high."

18. Mr. Resh is apparently referring to the building height envelope under the LUO. This building height envelope is similar to the building height envelope in the Design Guidelines, except that the LUO measures this envelope 10 feet from the front property line, whereas the Design Guidelines measure this envelope 20 feet from the front property line. Section 21-4.60 of the LUO provides:

> The building height envelope shall run parallel to existing or finish grade, ***whichever is lower*** (see Figure 21-4.3), except where finish grade is higher than existing grade in order to meet city construction standards for driveways, roadways, drainage, sewerage and other infrastructure requirements, or to meet conditions of permits approved under the provisions of this chapter. In these cases, height shall be measured from finish grade.

19. Based upon the foregoing provision, the LUO would not permit the Grandes to contravene the building height envelope by artificially raising the finish grade to thereby raise the building height envelope. The LUO specifically provides that the building height envelope is measured from the lower of existing or finish grade. Thus, Mr. Resh's statement that the City would permit the Grandes to correct a building height envelope encroachment by "use of ground level soil or planters" is not correct; such changes would be irrelevant because the benchmark for measuring the building height envelope is the lower of the existing grade or finish grade.

20. The principle under the LUO that the building height envelope is measured from the lower of existing or finish grade applies to all residential zoned districts throughout the City and County of Honolulu and should apply as well to the calculation of the building height envelope under the Design Guidelines. However, as noted above, even if the Grandes' building height envelope were measured from existing grade, the height of the dwelling exceeds the height setback restriction because the existing grade on the right side of the garage is lower than finish grade.

21.    Contrary to Mr. Resh's statement, the Grandes cannot circumvent the building height envelope by artificially raising the as-built ground level by the use of ground level soil or planters. In calculating the front building envelope for the Property, the finish grade is fixed by the elevation of the driveway and garage floor. The finish grade cannot be increased using soil or planters as this will not change the elevation of the driveway and garage floor.

22.    In any event, the Grandes have never submitted plans proposing to raise the finish grade of their lot from the existing grade using soil or planters, and while I have been Chair of the ARC, the ARC has never permitted owners to do so.

23.    At ¶ 6, Mr. Resh states, "I had proposed moving the columns at the front of the house further back from the front of the lot, as a way of resolving any and all height-setback 'building envelope' questions."

24.    Mr. Resh's statement is incorrect. Basically three components of the dwelling violated the building height envelope: (1) the two columns, (2) the beam which the columns were supporting, and (3) more than 2 1/2 feet of roof eaves. *See* Design Guidelines at Article III, § 3.2.1(d). In addition to the columns, the Grandes must move the beam and roof eaves so that not more than 2 1/2 feet of roof eaves encroach beyond the building height envelope.

25. At ¶ 7, Mr. Resh states, "In January 2004, I submitted further revised plans to the ARC, detailing how the columns would be reconstructed. . . . I designed Grandes' new roofline, above the columns, to similarly have a gabled roof, with a hipped roof over the rest of the house."

26. The chopped-off roof design proposed by Mr. Resh in January 2004 would not result in a gabled roof design, and his plans did not "detail" how the columns would be reconstructed. The plans prepared by Mr. Resh were not properly dimensioned and did not show how the columns would be demolished and reconstructed.

27. The Grandes previously proposed to delete the eyebrow roof above the garage opening from their plans. The Grandes failed to construct the eyebrow roof.

28. Despite the fact that tenants are now occupying the Grandes' Dwelling, the Grandes have never notified the Association or ARC that construction of the Dwelling has been completed.

29. Various changes made by the Grandes were not "minor changes" including but not limited to, the increased building footprint and resulting roof line redesign, failure to construct the roof eyebrow, failure to install the clerestory window above the front entry, failure to install front planters, failure to construct separate and distinct roof elements over the master bedroom and main entry, failure to construct

the garage door opening with arched corners and failure to construct the Dwelling within the required front setback and height setback, all of which substantially deviated from the approved plans.

30. The aggregate effect of all the changes and/or deviations made by the Grandes is that the Dwelling constructed by the Grandes is substantially different from the dwelling depicted in the approved plans.

31. I disagree with statements in Mr. Resh and Mr. Chock's declarations that "[i]t is common in homebuilding, including homebuilding within planned communities, to make minor revisions from approved plans during construction, and to then seek approval for the revisions once the home is completed, by showing them in the final as-built plans submitted along with notices of completion."

32. The Grandes did not "make minor revisions from approved plans." Rather, after obtaining approval from the ARC in October 2000, they submitted a different set of plans to the City and County of Honolulu and obtained a building permit based upon the different set of plans, which were substantially different from the plans approved by the ARC. During construction, the Grandes made further substantial changes from the plans approved by the ARC.

33. The Grandes argue that "the Design Guidelines are not rigid anyway. They 'express intentions rather than absolutes,' and the building envelope guidelines are merely 'typical.'"

34. The Design Guidelines (1) provide owners with general concepts for the design and construction of homes, and (2) provide specific requirements and restrictions for the design and construction of homes. The ARC has interpreted that certain requirements and restrictions in the Design Guidelines are mandatory requirements for all owners. The mandatory requirements include, but are not limited to, the building height envelope, the 20 foot front setback, the requirements and restrictions concerning vents and skylights, air conditioning screening, and garage storage, all of which are at issue in this case.

35. The angle of the eyebrow roof over the garage opening was not shown on plans received from the Grandes on April 19, 2006. These plans also do not indicate the color of the roof, or otherwise indicate that the roof will match the existing roof of the Dwelling.

I, RONALD K. AWA, do declare under penalty of law that the foregoing is true and correct.

DATED: Honolulu, Hawaii, _____JUN 15 2006_____.

_____
RONALD K. AWA