IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| NA PALI HAWEO COMMUNITY ASSOCIATION, a Hawaii non-profit corporation,<br><br>Plaintiff,<br><br>v.<br><br>ANTHONY CHARLES GRANDE; NARINDAR KAUR GRANDE, and DOES,<br><br>Defendants.<br><br><br>ANTHONY CHARLES GRANDE and NARINDAR KAUR GRANDE,<br><br>Counterclaim Plaintiffs,<br><br>v.<br><br>NA PALI HAWAO COMMUNITY ASSOCIATION; RONALD K. AWA; and DOES 1-25,<br><br>Counterclaim Defendants | CIVIL NO. CV04-00413-DAE LEK<br><br>MEMORANDUM IN SUPPORT OF MOTION |

MEMORANDUM IN SUPPORT OF MOTION

INTRODUCTION

There are a number of manifest errors of fact and law in the Order of July 18, 2006, which should be reconsidered and corrected under FRCP Rule 54(b) and Local Rule 60.1(c).

Under FRCP Rules 56(c) and 56(e), summary determinations must be based on admissible evidence, and are inappropriate where purported material facts are genuinely disputed.

## I. BACKGROUND (pp. 2-10)

Page 5, line 18, through Page 6, line 4. It is inaccurate to state that construction of Grandes' home, when begun in 2003, was "approximately three years" after the City Building Department received and approved their plans. The City documents are dated March and April 2001. (Ass'n Ex. G, filed 4-12-06, first page). It is also inaccurate to imply that plans were submitted to the ARC and the City simultaneously, given the later date on the City-approved plans.

It is further inaccurate to conclude that the **submission** to the City by Grandes' architect of plans differing in a few respects from those approved by the ARC was somehow "in violation" of **unspecified** provisions of "the CC&Rs and Design Guidelines." No provision of the CC&Rs or Design Guidelines appears to apply.

2

Page 8, lines 4-5. It is inaccurate to say, or imply, that "the ARC did not have the authority to grant a height setback variance." The CC&Rs give the ARC full authority to grant variances from typical building envelopes, including the building height provisions thereof. As Grandes' previously showed, variances merely need to be in writing, and cannot be contrary to restrictions in the CC&Rs themselves – and there are no applicable restrictions on building envelopes in the CC&Rs. (See, e.g., Grande Reply, filed 6-21-06, at 6; Ass'n Ex. F; Grande Ex. A, at 17; Grande Concise Statement, filed 6-8-06, para. 21-23)

Page 9, lines 6-7, 10-11, et seq. It is both inaccurate, and totally inappropriate in a summary judgment context, to simply "presume" – in the absence of admissible evidence from the Association, and despite Grandes' evidence to the contrary – that construction on allegedly non-compliant areas of Grandes' house "continued" at any time after October 30, 2003, when their request for a variance was denied.

The evidence submitted by Grandes shows that there was no construction in the front setback area between October 30, 2003 and one week in late May 2004, that the May 2004 construction – for protective purposes – was completed within a week, and that there was no construction in that area thereafter other than installation of the garage door as required to meet CC&R requirements. Grandes' Concise Statement filed 6-8-06, para. 112-123.

3

## II. BUILDING HEIGHT (pp. 13-16)

<u>First,</u> the conclusion (at 15) that the language of Section 3.2.1 of the Design Guidelines is "clear and unequivocal" is apparently based upon the language quoted at pages 13 and 14 of the Order. The quote is incomplete, however, because it overlooks these words at page 12 of the Design Guidelines (Grande Ex. B, filed 6-8-06, at 12, emphasis added):

> "The following first and second story envelopes define the **typical** limits of the building envelope.
>
> \* \* \* \*
>
> <u>"Second Story Envelope</u>
>
> . . . . "Inclusive of the first story envelope, **the second story envelope sets the maximum height allowed.**"

As pointed out in Grandes' Reply filed June 21 (at 4-5), the word "typical" is reasonably susceptible of meaning something less than "mandatory," because "typical" more often means "usual," "average," "general" or "suggestive," and "mandatory" is not even listed as a form of "typical" in the current version of Roget's Thesaurus. Kipfer (ed.), *Roget's 21st Century Thesaurus*, at 829 (2d ed. 1999).

Applying the usual meaning of "typical" is most appropriate here, where the Design Guidelines themselves say that they "express intentions rather than

4

absolutes." (Grande Ex. B, filed 6-8-06, at 1) If the Association had meant "mandatory," it could easily have said "mandatory" instead of "typical."

Indeed, as a matter of law, the word "typical" must be construed in Grandes' favor as *not* meaning "mandatory." In both *Fong v. Hashimoto*, 92 Haw. 568, 573, 994 P.2d 500, 505 (2000), and *Hiner v. Hoffman*, 90 Haw. 188, 189, 192-193, 977 P.2d 878, 879, 882-883 (1999), the Hawaii Supreme Court held that restrictive covenants are to be "strictly" construed "in favor of the grantee," in holding that the terms "one story in height" and "two stories in height" are ambiguous because they are "reasonably susceptible to more than one meaning." Notably, *Hiner* rejected the idea of using typical story heights to measure the allowed height of a building.

Strict construction of restrictive covenants as required by *Hiner* and *Fong* serves the important public function of limiting opportunities for disguised racism and "for locals only" prejudice within planned community associations – matters of particular concern here, where the Grandes are from out-of-state, Mr. Grande is originally from the Mainland, Mrs. Grande is originally from Singapore, and they have both been Florida citizens since before this action was filed.

Second, as a matter of Hawaii law, a waiver exists only where there has been an *intentional* relinquishment of a known right. *Schafke v. Reliable Collection Agency, Ltd..*, 96 Haw. 408, 422, 32 P.3d 52, 66 (2001). Under that standard,

Grandes cannot be found to have waived their right to rely on the ARC's approval of a 10' building envelope, on the mere basis that **other** aspects of the plans used by their builder – unrelated in any way to the building envelope – differed in some ways from the plans approved by the ARC.

As previously shown, the page of plans approved by the ARC showing the building envelope, and the page submitted to the City and used by the builder, were identical with respect to all aspects of the building envelope. (Ass'n Exhibit D, at D-3; Ass'n Exhibit G, at G-2)

It is possible to infer a waiver from "such conduct as warrants an inference of intentional relinquishment." *Schafke, supra.* But using plans *identical* in all respects relevant to the building envelope is hardly conduct of that sort.

### III. BUILDING SETBACK (pp. 16-18)

First, here too, it appears the conclusion that the applicable Design Guideline is "clear and ambiguous" overlooks the undisputable and undisputed fact that a 20' setback is merely "typical" rather than "mandatory" – which, at minimum, renders the Guideline ambiguous and thus non-mandatory under *Fong* and *Hiner*.

Second, here again, it is inappropriate to infer a waiver of the ARC's approval of a building envelope with a 10' front setback, under the applicable legal standard set forth in *Schafke* and other Hawaii Supreme Court decisions.

6

Third, the Order partially misconstrues another of Grandes' arguments, in that Grandes' are arguing that the 3 ½" difference from a 20" front setback is immaterial for several reasons, not just "because there are other homes in Na Pali Haweo within 20' of their front property lines."

Fourth, materiality **is** relevant here for several reasons: (1) the Association's own CC&Rs merely require "substantial" compliance [Grande Ex. A, at 47, para. 9.9.2]; (2) the Design Guidelines merely "express 'intentions' rather than 'absolutes'" [Grande Ex. B, at 1]; (3) under HRS §§ 669-11(2) and 669-12(2), a residence's encroachment of less than 6 inches is considered a "*de minimus* structure position discrepancy" which "shall not be considered an encroachment"; and (4) the Association is seeking an injunction, and immaterial matters are not appropriate subjects for injunctive relief.

## IV. SKYLIGHTS (pp. 18-20)

This reconsideration motion does not ask that the Court go ahead and resolve the issues relating to skylights.

However, the conclusion that abandonment is a moot question (at 19) is, unfortunately, premature, and should therefore be withdrawn. Whether the Association's allegations relating to skylights were brought without exhausting the pre-litigation requirements of the CC&Rs, brought despite abandonment, and

7

brought despite similar equitable concerns (selective enforcement, etc.), are questions which remain relevant to the question of attorneys' fees and costs.

See also *Golf Carts, Inc. v. Mid-Pacific Country Club*, 53 Haw. 357, 360, 493 P.2d 1338, 1340 (Haw. 1972), quoted in *Reassure America Life Insurance Co. v. Rogers*, 248 F.Supp.2d 974, 987-988 (D. Haw. 2003) ("An offer to perform based upon [one party's] interpretation of [a] contract is not such a clear refusal to perform as to constitute an anticipatory breach.").

## V. FRONT GARDEN WALL (pp. 22-23)

Grandes have never disputed that the front garden wall – as constructed by the builder – turned out to deviate from the approved plans and violate the Design Guidelines.

However, they strongly dispute whether the Association exhausted the pre-litigation requirements of the CC&Rs before raising the front wall question in its Complaint initiating this action, and whether an injunction relating to the front wall is appropriate under the circumstances – questions the Order does not address, and apparently does not intend to resolve.

In an abundance of caution, Grandes would note that the Association did not exhaust required pre-litigation requirements before raising the front wall question, and that Grandes immediately agreed to fix the deviation/violation upon being

8

notified of it, so that injunctive relief with respect thereto would be totally inappropriate. See Grandes' Concise Statement, filed 6-8-06, para. 1-12, 44-45, 47-48, 51, 80-85; Grandes' Reply, filed 6-21-06, at 16-19; see also See also *Golf Carts, Inc., supra.*

## VI.  SLIDING GARAGE GATE (pp. 25-26)

Grandes do not dispute – and have never disputed – that the sliding gate to be installed at the front of their driveway, near the front property line, has not been installed **yet.**

However, there is no admissible evidence to support the Order's conclusion (at 26) that not installing the driveway gate yet "is a clear violation" of an **unspecified** Design Guideline. The Association argued that not installing the gate yet was a violation of Section 6.3.4 of the Design Guidelines. Ass'n Memo, filed 4-12-06, at 23. But the Order (at 25) indicates that Section 6.3.4 is not even before the Court.

Moreover, Grandes strongly dispute whether the Association exhausted the pre-litigation requirements of the CC&Rs before raising the driveway gate question **midway through** this action, and whether an injunction relating to the driveway gate is appropriate under the circumstances – questions the Order does not address, and apparently does not intend to resolve.

9

Here again, in an abundance of caution, Grandes would note that the Association did not exhaust required pre-litigation requirements before raising the driveway gate question, and that Grandes have always intended to install the driveway gate (if the Association wanted them to) once allowed to complete construction in the front setback area, so that injunctive relief with respect to the driveway gate would be totally inappropriate. See Grandes' Concise Statement, filed 6-8-06, para. 1-12, 46-48, 75-78; Grandes' Reply, filed 6-21-06, at 23; see also *Golf Carts, Inc., supra.*

The obvious intent of the pre-litigation requirements of the CC&Rs is to resolve disputes **without** litigation. The Association's raising in litigation of matters which are not even in dispute obviously circumvents that intent.

## CONCLUSION

For the foregoing reasons, the Order of July 18, 2006, should be partially reconsidered, and revised to the extent set forth above.

DATED: Honolulu, Hawai'i, August 1, 2006.

STEVEN B. JACOBSON
Attorney at Law
A Limited Liability Law Company

_____
STEVEN B. JACOBSON
Attorneys for Defendants
and Counterclaim Plaintiffs