IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | | |
|---|---|---|
| NA PALI HAWEO COMMUNITY ASSOCIATION, a Hawai'i non-profit corporation, | ) ) ) ) | CIVIL NO. 04-00413 DAE-LEK |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| ANTHONY CHARLES GRANDE, ET AL., | ) ) ) | |
| Defendants. | ) ) | |

**ORDER REGARDING SANCTIONS**
<u>**ASSOCIATED WITH SET ASIDE OF ENTRY OF DEFAULT**</u>

On November 19, 2004, this Court filed an order that, *inter alia*, set aside the entry of default against Defendants/Counter-claimants Anthony Charles Grande and Narindar Kaur Grande (the "Grandes") ("November 19, 2004 Order"). The Court also sanctioned the Grandes and ordered them to pay Plaintiff/Counter-defendant Na Pali Haweo Community Association's ("Na Pali") attorney's fees and costs incurred in connection with obtaining the entry of default and in responding to the Grandes' Motion (1) for Four-Day Extension of Time to File Answer to Complaint and/or (2) to Set Aside Entry of Default ("Motion to Set Aside"). On December 22, 2004, this Court issued a minute order awarding Na Pali $3,828.70 in fees and costs. The Grandes appealed the minute order to Untied States District Court Judge David Alan Ezra. The district court issued an order on July 5,

2005 ("July 5, 2005 Order"), vacating the November 19, 2004 Order in part on the ground that the Grandes were not given sufficient opportunity to respond to the sanctions issue. The district court remanded the matter to this Court for a hearing on the sanctions issue. On September 9, 2005, the Grandes filed their Opening Statement on Remand re Sanctions ("Grandes' Statement") and Na Pali filed its Supplemental Memorandum in Support of Imposition of Sanctions ("Na Pali's Memorandum"). In accord with Rule LR7.2(d) of the Local Rules of Practice of the United States District Court for the District of Hawai`i ("Local Rules"), the Court finds this matter suitable for disposition without a hearing. After reviewing the parties' submissions, the Court hereby finds that it was reasonable to condition the setting aside of the default on the payment of a sanction. The Court awards Na Pali attorney's fees in the amount of $3,386.96 and costs in the amount of $255.46, for a total award of $3,642.42.

## BACKGROUND

The parties are familiar with the factual and procedural history of this case and the Court will only discuss the events that are relevant to the sanctions issue.

On Jun 1, 2004, Na Pali filed suit against the Grandes in state court. The case was removed to federal court on July 8, 2004 and the answer was due on Thursday, July 15, 2004. Steven Jacobson, Esq., counsel for the Grandes, states that he promptly

prepared a draft Answer and Counterclaim.  According to Mr. Jacobson, shortly before the answer deadline, Mr. Grande, who is a pilot, was flying and could not review the draft until he returned home until July 16, 2004.  Realizing that Mr. Grande would not be able to approve the draft before the answer deadline, Mr. Jacobson attempted to contact counsel for Na Pali to arrange for an extension.  Mr. Jacobson states that, on July 13, 2004, he left telephone messages for two of Na Pali's attorneys and sent a letter confirming the request.  Counsel for Na Pali did not respond, but Mr. Jacobson did not think this was unusual because counsel for Na Pali had a history of responding slowly, or not at all, to his communications.  [Grandes' Statement at 8-9.]  Mr. Jacobson "assumed that [Na Pali's] counsel would respond to the extension request once they could." [Id. at 9.]  Once Mr. Grande returned on July 16, 2004, Mr. Jacobson finalized the Answer and Counterclaim and filed it on Monday, July 19, 2004.  [Id. at 9-10.]

Na Pali, however, obtained a Clerk's entry of default against the Grandes on July 16, 2004.  Mr. Jacobson did not learn of the default until after he filed the Answer and Counterclaim. [Id. at 10.]  Na Pali filed a motion to strike the answer ("Motion to Strike") on August 8, 2004.

The Grandes filed the Motion to Set Aside on September 27, 2004.  This Court issued an inclination on

3

October 25, 2004, stating that it was inclined to grant the Motion to Set Aside and that it was also inclined to find that the Grandes had acted in bad faith, warranting an award of attorney's fees and costs. The Court encouraged the parties to address the Court's inclination at the upcoming hearing, but the Court subsequently vacated the hearing date and decided the matter without a hearing.

In the November 19, 2004 Order, this Court granted the Grandes' Motion to Set Aside because the Grandes timely sought relief from the default and may have meritorious defenses, and because Na Pali would not be prejudiced. [November 19, 2004 Order at 8-10.] The Court, however, found that the Grandes' conduct warranted the imposition of sanctions in the form of Na Pali's attorney's fees and costs incurred in filing the entry of default and in responding to the Motion to Set Aside. The Court imposed the sanction pursuant to its inherent power to regulate practice in cases pending before it. The Court ordered Na Pali to submit documentation of their fees and costs by December 6, 2004. [Id. at 10-12.]

Na Pali timely filed an affidavit, claiming $7,689.30 in attorney's fees and costs. [Aff. of Lance S. Fujisaki ("Fujisaki Aff.")] The Court issued a minute order on December 22, 2004, awarding Na Pali $3,828.70 in attorney's fees and costs. On appeal, the district court vacated the award,

ruling that the Grandes were denied due process because they were not given sufficient opportunity to respond to the Court's inclination to impose sanctions. The district court remanded the matter for a hearing on the sanctions issue. [July 5, 2005 Order at 10-11.]

In lieu of a hearing, this Court ordered the Grandes and Na Pali to submit supplemental briefing. The Grandes argue that no sanctions should be awarded. They emphasize that they filed and served the Answer and Counterclaim two business days, and only four calendar days, after the answer deadline. The Grandes' argue that Mr. Jacobson has never in his thirty years of litigation practice, seen either an entry of default taken without advance warning where the defendant had already appeared, or a party request an entry of default without first responding to outstanding requests for an extension of time to file the answer. The Grandes argue that Na Pali's requesting the entry of default and refusing the extension of time violated widely accepted principles of civility and professional conduct. [Grandes' Statement at 10-12.] The Grandes state that, if they had known Na Pali was not going to agree to the extension and intended to request entry of default, they would have sought an extension from the Court. They also point out that Mr. Jacobson could have filed an unreviewed answer by the original deadline, but they argue that it would have been a violation of Federal

Rule of Civil Procedure 11(b).  [Id. at 12-13.]

The Grandes note that Mr. Jacobson asked Na Pali's counsel if Na Pali would stipulate to setting aside the entry of default on August 11, August 20, and September 13, 2004.  Na Pali did not give its answer until September 13, 2004.  Na Pali's refusal to enter into a stipulation forced the Grandes' to file the Motion to Set Aside.  The Grandes argue that Na Pali's position against the set aside was merely for tactical advantage; Na Pali never argued that it would suffer cognizable prejudice.  [Id. at 13-14.]

The Grandes argue that neither the late filing of the Answer and Counterclaim nor the Motion to Set Aside delayed the progress of the case.  The scheduling conference and the early settlement conference both took place on the originally scheduled dates.  The Grandes also point out that, in opposing the Motion to Set Aside, Na Pali never requested sanctions.  [Id. at 15-16.]

The Grandes assert there is no evidence that they engaged in the type of bad faith conduct required to justify the imposition of sanctions under the Court's inherent power.  They argue that this is not the type of rare or exceptional case where sanctions should be awarded.  [Id. at 17-18.]  The Grandes state that the late filing was not for the purpose of delaying or disrupting the case.  [Id. at 21.]  They contend that any delay in the case was the result of Na Pali's seeking the entry of

default, refusing to stipulate to set aside the entry of default aside, and opposing the Motion to Set Aside.  [Id. at 23-24.]

The Grandes also argue that the Court does not have the inherent power to impose sanctions upon them for the actions of their counsel.  [Id. at 24-25.]  Further, they assert that the Court cannot impose inherent power sanctions until the entire case is resolved, and then the Court can only shift fees from the winning party to the losing party.  [Id. at 26.]

Na Pali responds that the facts of the case support this Court's finding in the November 19, 2004 Order that the Grandes' failure to timely file the answer and/or to file a motion for extension of time was in bad faith.  Both Mr. and Mrs. Grande were served with the Complaint and the summons, which warned that the failure to timely answer could result in default judgment against them.  Further, the late filing was not due to any confusion about the answer deadline.  The Grandes argued that their failure to timely file the Answer and Counterclaim was excusable neglect because Mr. Grande was away flying from July 8 to 16, 2004 and could not review anything until his return.  Na Pali points out that the Grandes never claimed that Mr. Jacobson was unable to contact Mr. Grande during that time, nor do they explain why he could not have timely filed an answer on Ms. Grandes' behalf.  Na Pali also disputes the Grandes' claims that Mr. Jacobson requesting an extension of time to file the

answer before the deadline.  [Na Pali's Memorandum at 3-7.]

Na Pali argues that it has been prejudiced because of the time and expense it has incurred in: 1) obtaining the entry of default; 2) opposing the Motion to Set Aside; 3) opposing the Grandes' motion for partial reconsideration of the November 19, 2004 Order; and 4) opposing the Grandes' appeal to the district court.  Na Pali argues that all of these were caused by the Grandes' failure to abide by the rules of court.  Na Pali therefore argues that it was appropriate for this Court to condition setting aside the entry of default on the payment of a sanction.  [Id. at 9.]

## DISCUSSION

I.   **Imposition of Sanctions**

The Ninth Circuit has held that "it is appropriate to condition setting aside a default upon the payment of a sanction."  Nilsson Robbins, Dalgarn, Berliner, Carson & Wurst v. Louisiana Hydrolec, ("Nilsson") 854 F.2d 1538, 1546-47 (9th Cir. 1988) (per curiam).  By doing so, the court can rectify any prejudice that the non-defaulting party suffers as a result of the reopening of the litigation.  See id. at 1546 (citing 10 C. Wright, A. Miller & M. Kane, Federal Practice & Procedure § 2700, at 538 (1983)).  The most common type of prejudice suffered by the non-defaulting party is the additional expense incurred because of "the delay, the hearing on the Rule 55(c) motion, and

the introduction of new issues." Id.  The requirement that the defaulting party pay court costs can ameliorate these burdens and such a sanction "can serve to 'promote the positive purposes of the default procedures without subjecting either litigant to their drastic consequences.'" Id. (quoting 10 Wright, Miller & Kane, supra, § 2700, at 539).

There has been much discussion in this case concerning the court's inherent power to impose sanctions as a means of managing the cases before it.  Upon further review, this Court finds that nothing in the Nilsson opinion indicates that the Ninth Circuit relied upon court's inherent power in holding that setting aside a default may be conditioned upon the payment of a sanction.[1]  In fact, the Ninth Circuit noted that in Hawai`i Carpenters' Trust Funds v. Stone, 794 F.2d 508, 512 (9th Cir. 1986), it "observed that this circuit has not ruled whether a district court has authority to condition the setting aside of a default upon payment of attorneys' fees and costs under Fed.R.Civ.P. 55(c)." Nilsson, 854 F.2d at 1546.  The court noted that it ultimately did not need to reach the issue in Hawai`i Carpenters' Trust Funds, but that it was required to rule on the

---

[1] Nilsson does cite 10 C. Wright, A. Miller & M. Kane, Federal Practice & Procedure § 2700 (1983).  That section also states: "The court's inherent power and use of discretion also enables it to set aside default entries on various conditions." 10 Wright, Miller & Kane, supra, § 2700, at 537-38.  Nilsson, however, did not cite § 2700 for that proposition.

9

issue in Nilsson.  See id.  Thus, it does not appear that the Ninth Circuit held that the court's inherent power provided the authority for the imposition of sanctions as a condition of setting aside a default.

District courts within the Ninth Circuit have not relied on their inherent power when applying Nilsson.  See E. & J. Gallo Winery v. Cantine Rallo, S.P.A., 430 F. Supp. 2d 1064, 1095 (E.D. Cal. 2005) (finding that some fee-shifting was appropriate where the defendant had actual notice of the action but failed to answer, "whether caused by a communication failure or some other act of negligence, inadvertence, or inattention");[2] Hart v. Parks, No. CV00-07428ABC(RNBX), 2001 WL 636444, at *5 n.15 (C.D. Cal. May 31, 2001) (stating that Nilsson implies that the authority for the sanction is Federal Rule of Civil Procedure 37, or, alternatively, 28 U.S.C. § 1927).  Similarly, other district courts have also set aside entries of default and ordered monetary sanctions against the defaulting defendant, even though there was no finding of bad faith.  See, e.g., Foy v. Dicks, 146 F.R.D. 113 (E.D. Penn. 1993); Int'l Bhd. of Elec. Workers, Local Union No. 313 v. Skaggs, 130 F.R.D. 526 (D. Del.

---

[2] In contrast, a court cannot impose sanctions under its inherent power unless it makes a specific finding that the party to be sanctioned acted in bad faith or engaged in conduct tantamount to bad faith.  See Roadway Express, Inc. v. Piper, 447 U.S. 752, 767 (1980), superceded by statute on other grounds, Morris v. Adams-Millis Corp., 758 F.2d 1352, 1357 n.7 (10th Cir. 1985); Fink v. Gomez, 239 F.3d 989, 994 (9th Cir. 2001).

1990); Kryzak v. Dresser Indus., 118 F.R.D. 12 (D. Me. 1987). Other courts have stated that the authority to impose conditions upon setting aside a default comes from a court's inherent power. See, e.g., Powerserve Int'l, Inc. v. Lavi, 239 F.3d 508, 515 (2d Cir. 2001) ("In determining whether to exercise its discretion to set aside a default, a district court has inherent power to impose a reasonable condition on the vacatur in order to avoid undue prejudice to the opposing party." (citation omitted)); Bluegrass Marine Inc. v. Galena Road Gravel, Inc., 211 F.R.D. 356, 359 (S.D. Ill. 2002) (citing 10A Wright, Miller & Kane, Federal Practice & Procedure: Civil 3d, § 2700, at 170); Walpex Trading Co. v. Yacimientos Petroliferos Fiscales Bolivianos, 109 F.R.D. 692, 697 (S.D.N.Y. 1986) (citing 10 Wright, Miller & Kane, supra, § 2700, at 537-38).  This Court, however, declines to apply those decisions because they are inconsistent with Nilsson. Thus, this Court, without resorting to its inherent power, may condition the setting aside of an entry of default upon the payment of sanctions.

In the present case, the Grandes have had notice of the potential sanction and had the opportunity to respond through their statement.  The Grandes concede that Mr. Jacobson could have timely filed an answer that Mr. Grande had not reviewed and, if necessary, moved to amend the answer later.  Presumably, Ms. Grande could have reviewed the answer because the Grandes

11

have never alleged that she was unavailable during the period in question. Even though Mr. Grande was out-of-town, the Grandes were still required to answer the Complaint by July 15, 2004 or be held in default.

The Court acknowledges that the parties dispute whether Mr. Jacobson actually sought an extension from Na Pali's counsel. The Court, however, need not decide what actually happened because, even assuming that Mr. Jacobson did request the extension and the request went unanswered, that does not excuse the Grandes' failure to timely file an answer. At some point, it became clear that Na Pali's counsel was not going to respond to the request for an extension by the answer deadline. At that point, it became incumbent upon Mr. Jacobson to ensure that the Grandes did not miss the deadline. He could have timely filed an answer or filed a motion for an extension of time. Instead, Mr. Jacobson deliberately chose to do nothing.

Contrary to the Grandes' argument, their failure to comply with the rules of court have caused delay, albeit not to such an extent that would have warranted denying the Motion to Set Aside. Na Pali faced the delay and additional expense of obtaining the entry of default and responding to the Motion to Set Aside. Further, the dispute has injected additional issues into the case, such as whether Mr. Jacobson actually did request an extension from Na Pali's counsel before the answer deadline.

This Court finds that, under the circumstances of this case, it was appropriate to condition the setting aside of the default upon the payment of Na Pali's reasonable attorney's fees and costs incurred in obtaining the entry of default and in opposing the Motion to Set Aside.  In so ruling, the Court rejects the Grandes' argument that this Court cannot impose sanctions upon them for the actions of their attorney because a client is generally charged with his counsel's negligent acts.  See Community Dental Servs. v. Tani, 282 F.3d 1164, 1168 (9th Cir. 2002).

**II.   Amount of Sanctions**

    **A.   Attorney's fees**

Under federal law, reasonable attorney's fees are generally based on the traditional "lodestar" calculation set forth in Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).  See Fischer v. SJB-P.D., Inc., 214 F.3d 1115, 1119 (9th Cir. 2000). The court must determine a reasonable fee by multiplying "the number of hours reasonably expended on the litigation" by "a reasonable hourly rate."  Hensley, 461 U.S. at 433.  Second, the court must decide whether to adjust the lodestar amount based on an evaluation of the factors articulated in Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 70 (9th Cir. 1975), which have not been subsumed in the lodestar calculation.  See Fischer, 214 F.3d at 1119 (citation omitted).

>The factors the Ninth Circuit articulated in Kerr are:
>
>(1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

Kerr, 526 F.2d at 70. Factors one through five have been subsumed in the lodestar calculation. See Morales v. City of San Rafael, 96 F.3d 359, 364 n.9 (9th Cir. 1996). Further, the Ninth Circuit, extending City of Burlington v. Dague, 505 U.S. 557, 567 (1992), held that the sixth factor, whether the fee is fixed or contingent may not be considered in the lodestar calculation. See Davis v. City & County of San Francisco, 976 F.2d 1536, 1549 (9th Cir. 1992), vacated in part on other grounds, 984 F.2d 345 (9th Cir. 1993). Once calculated, the "lodestar" is presumptively reasonable. See Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 483 U.S. 711, 728 (1987); see also Fischer, 214 F.3d at 1119 n.4 (stating that the lodestar figure should only be adjusted in rare and exceptional cases).

In the Fujisaki Affidavit, Na Pali requested the following attorney's fees associated with: 1) the entry of default; 2) the Motion to Set Aside; and 3) the Motion to Strike:

14

| ATTORNEY | HOURS | RATE | LODESTAR |
|---|---|---|---|
| Joyce Y. Neeley | 3.2 | $190 | $  608.00 |
| Gisela Iglesias | 14.2 | $185 | $2,627.00 |
| Lance S. Fujisaki | 11.3 | $185 | $2,090.50 |
| Robin L. Miller paralegal | 11.7 | $150 | $1,755.00 |
|  |  | Subtotal | $7,080.50 |
| Total Hawai`i General Excise Tax (4.166%) | | | $  294.97 |
| | | TOTAL REQUEST | $7,375.47 |

[Fujisaki Aff. at ¶ 5; Exhs. A & B to Fujisaki Aff.]  This amount represents $154.17 for the entry of default, $5,128.61 for the Motion to Set Aside, and $2,092.69 for the Motion to Strike. [Fujisaki Aff. at ¶¶ 4, 12.]

### 1. **Reasonable Hourly Rate**

In determining whether an hourly rate is reasonable, the Court considers the experience, skill, and reputation of the attorney requesting fees.  See Webb v. Ada County, 285 F.3d 829, 840 & n.6 (9th Cir. 2002).  The reasonable hourly rate should reflect the prevailing market rates in the community.  See id.; see also Gates v. Deukmejian, 987 F.2d 1392, 1405 (9th Cir. 1992), as amended on denial of reh'g, (1993) (noting that the rate awarded should reflect "the rates of attorneys practicing in the forum district").  It is the burden of the fee applicant to produce satisfactory evidence, in addition to an affidavit from the fee applicant, demonstrating that the requested hourly rate

reflects prevailing community rates for similar services.  See Jordan v. Multnomah County, 815 F.2d 1258, 1263 (9th Cir. 1987).

Although it is usually required that counsel submit additional evidence that the rate charged is reasonable, see id., this Court is well aware of the prevailing rates in the community for similar services performed by attorneys of comparable experience, skill and reputation.  Based on this Court's knowledge of the prevailing rates in the community at the relevant time, this Court finds the requested hourly rates to be manifestly reasonable.

### 2. **Hours Reasonably Expended**

Beyond establishing a reasonable hourly rate, a party seeking attorney's fees bears the burden of proving that the fees and costs taxed are associated with the relief requested and are reasonably necessary to achieve the results obtained.  See Tirona v. State Farm Mut. Auto. Ins. Co., 821 F. Supp. 632, 636 (D. Haw. 1993) (citations omitted).  A court must guard against awarding fees and costs which are excessive, and must determine which fees and costs were self-imposed and avoidable.  See id. at 637 (citing INVST Fin. Group v. Chem-Nuclear Sys., 815 F.2d 391, 404 (6th Cir. 1987)).  A court has "discretion to 'trim fat' from, or otherwise reduce, the number of hours claimed to have been spent on the case."  Soler v. G & U, Inc., 801 F. Supp. 1056, 1060 (S.D.N.Y. 1992) (citation omitted).  Time expended on work deemed

"excessive, redundant, or otherwise unnecessary" shall not be compensated.  See Gates, 987 F.2d at 1399 (quoting Hensley, 461 U.S. at 433-34).

      Na Pali's counsel expended 0.8 hours on the entry of default.  The Court finds those hours to be manifestly reasonable.

      Na Pali's counsel expended 27.0 hours on the Motion to Set Aside.  The Court notes that counsel's hours expended on the Motion to Set Aside include improper block billing and duplicative time spent on the same tasks by multiple attorneys.  The Court will therefore deduct 1.0 hour from both Joyce Neely and Robin Miller, and 4.0 hours from both Gisela Iglesias and Lance Fujisaki.

      Finally, Na Pali's counsel expended 12.6 hours on the Motion to Strike.  Insofar as this Court did not order the Grandes to pay Na Pali's attorney's fees and costs for the Motion to Strike, this Court will exclude all hours expended thereon.

      **3.  Total Award**

      Based on the foregoing, this Court finds that Na Pali has established the appropriateness of an award of attorney's fees as follows:

| ATTORNEY | HOURS | RATE | LODESTAR |
|---|---|---|---|
| Joyce Y. Neeley | 2.2 | $190 | $   418.00 |
| Gisela Iglesias | 7.7 | $185 | $1,424.50 |

| | | | |
|---|---|---|---|
| Lance S. Fujisaki | 6.4 | $185 | $1,184.00 |
| Robin L. Miller paralegal | 1.5 | $150 | $ 225.00 |
| | | Subtotal | $3,251.50 |
| | Total Hawai`i General Excise Tax (4.166%) | | $ 135.46 |
| | | TOTAL | $3,386.96 |

Having considered the applicable Kerr factors, this Court finds it unnecessary to adjust the lodestar amount. The Court therefore awards Na Pali attorney's fees in the amount of $3,386.96.

**B.    Costs**

Na Pali also requests $11.18 in costs associated with the entry of default and $244.28 in costs associated with the Motion to Set Aside.[3]  The costs consist of the following:

| | |
|---|---|
| Photocopying | $201.90 |
| Postage | $ 19.17 |
| Facsimile | $ 11.50 |
| In-house costs | $232.57 |
| Hawai`i General Excise Tax (4.166%) | $ 9.69 |
| Outside copying costs | $ 13.20 |
| TOTAL | $255.46 |

[Fujisaki Aff. at ¶ 6; Exh. A to Fujisaki Aff.]  Counsel's in-

---

[3] Na Pali requests $58.37 in costs associated with the Motion to Strike. Insofar as this Court did not award Na Pali its attorney's fees and costs associated with the Motion to Strike, the Court will not address those costs.

house photocopying charge is $0.15 per page.  Mr. Fujisaki certified that the requested costs were necessarily incurred in connection with the entry of default and the Motion to Set Aside. [Fujisaki Aff. at ¶¶ 7-8.]

The Court finds these costs to be manifestly reasonable and awards Na Pali $255.46 in costs.

## **CONCLUSION**

On the basis of the foregoing, the Court finds that it was reasonable to condition the setting aside of the entry of default on the Grandes' payment of Na Pali's reasonable attorney's fees and costs incurred in connection with the entry of default and the Motion to Set Aside.  The Court awards Na Pali attorney's fees in the amount of $3,386.96 and costs in the amount of $255.46, for a total award of $3,642.42.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAI`I, September 22, 2006.



  /S/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States Magistrate Judge

**NAPALI HAWEO COMMUNITY ASS'N V. CHARLES GRANDE, ET AL; CIVIL NO. 04-00413 DAE-LEK; ORDER REGARDING SANCTIONS ASSOCIATED WITH SET ASIDE OF ENTRY OF DEFAULT**