ORIGINAL

STEVEN B. JACOBSON
Attorney at Law
A Limited Liability Law Company

STEVEN B. JACOBSON          4117-0
 (sjacobson.law@hawaiiantel.net)
Post Office Box 240761
Honolulu, HI  96824-0761
Telephone:  (808) 377-1814

Attorneys for Defendants

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

DEC 0 8 2006

at 5 o'clock and 33 min. P M
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| NA PALI HAWEO COMMUNITY ASSOCIATION, a Hawaii non-profit corporation, | CIVIL NO. CV04-00413-DAE LEK |
| Plaintiff, | STATEMENT OF APPEAL; CERTIFICATE OF SERVICE |
| v. | JUDGE:  Hon. David Alan Ezra |
| ANTHONY CHARLES GRANDE; NARINDAR KAUR GRANDE; and DOES, | TRIAL DATE:  April 24, 2007 |
| Defendants. | |
| ANTHONY CHARLES GRANDE and NARINDAR KAUR GRANDE, | |
| Counterclaim Plaintiffs, | |
| v. | |
| NA PALI HAWAO COMMUNITY ASSOCIATION; et al., | |
| Counterclaim Defendants. | |

# TABLE OF CONTENTS

THE ORDERS APPEALED FROM                                    2

STATEMENT IN SUPPORT OF APPEAL                              2

THE REMAND ORDER and THE CURRENT ORDERS                    2

QUESTIONS PRESENTED                                         4

ARGUMENT                                                    6

I.    THE MAGISTRATE JUDGE ERRED IN HOLDING THAT THE
FEDERAL DISTRICT COURTS HAVE THE AUTHORITY, EVEN WHERE
(AS HERE) NO DEFAULT JUDGMENT HAS BEEN ENTERED, (1) TO
IMPOSE SANCTIONS WHILE EXERCISING THEIR POWER TO SET ASIDE
MERE SIMPLE DEFAULTS, and (2) TO IMPOSE SUCH SANCTIONS
WITHOUT A SPECIFIC FINDING OF BAD FAITH.                    6

II.  THERE SHOULD NOT BE ANOTHER REMAND FOR THE
MAGISTRATE JUDGE TO DETERMINE WHETHER SHE COULD FIND BAD
FAITH ON THE RECORD HEREIN.                                 12

III.  EVEN IF THE FEDERAL COURTS HAVE THE AUTHORITY TO
IMPOSE SANCTIONS IN SETTING ASIDE MERE DEFAULTS ENTERED
UNDER FRCP 55(a), AND EVEN IF THEY MAY DO SO WITHOUT MAKING
A SPECIFIC FINDING OF BAD FAITH, THE MAGISTRATE JUDGE ERRED
IN ENTERING THE UNWARRANTED AND EXCESSIVE SANCTIONS
AWARDED HERE.                                               22

IV.   THE MAGISTRATE JUDGE ERRED IN APPLYING POST-
JUDGMENT STANDARDS IN DENYING GRANDES' MOTION FOR
RECONSIDERATION.                                            28

CONCLUSION                                                  30

## TABLE OF AUTHORITIES

### CASES

Alyeska Pipeline Co. v. Wilderness Society, 421 U.S. 240 (1975)    20, 21

Anixter v. Home-Stake Production Co., 977 F.2d 1533 (10th Cir. 1992)    29

B.K.B. V. Maui Police Department, 276 F.3d 1091 (9th Cir. 2002)    21

Byrne v. Nezhat, 261 F.3d 1075 (11th Cir. 2001)    18-19

Carroll v. The Jaques Admiralty Law Firm, P.C., 110 F.3d 290 (5th Cir. 1997),
*aff'g* 926 F.Supp. 1282 (E.D. Tex. 1996)    17, 22

Chambers v. NASCO, Inc., 501 U.S. 32 (1991)    14, 16-17, 19, 20

Christiansburg Garment Co. v. EEOC, 434 U.S. 412 (1978)    21

Couveau v. American Airlines, Inc., 218 F.3d 1078 (9th Cir. 2000)    13

E. & J. Gallo Winery v. Cantine Rallo, S.P.A., 430 F.Supp.2d 1064 (E.D. Cal.
2006)    9, 23-24, 25

Emcasco Insurance Co. v. Sambrick, 834 F.2d 71 (3d Cir. 1987)    11, 12

F.D. Rich Co. v. United States, 417 U.S. 116 (1974)    21

Fayetteville Investors v. Commercial Builders, Inc., 936 F.2d 1462 (4th Cir. 1991)    29

Fink v. Gomez, 239 F.3d 989 (9th Cir. 2001)    14-15, 19-20

Foy v. Dicks, 146 F.R.D. 113 (E.D. Pa. 1993)    11, 25

Goldin v. Bartholow, 166 F.3d 710 (5th Cir. 1999)                          22

Goodwin v. Roper Industries, Inc., 113 F.R.D. 53 (D. Me. 1986)              11

Great Hawaiian Financial Corp. v. Aiu, 863 F.2d 617 (9th Cir. 1988)       29

Hart v. Parks, 2001 U.S. Dist. Lexis 24431 (C.D. Cal. 2001)        10, 11, 25

Hutto v. Finney, 437 U.S. 678 (1978)                                       21

IBEW Local No. 313 v. Skaggs, 130 F.R.D. 526 (D. Del. 1990)            11, 25

INA v. S/S Hellenic Patriot, 87 F.R.D. 136 (S.D.N.Y. 1980)                 12

Kryzak v. Dresser Industries, 118 F.R.D. 12 (D. Me. 1987)          11, 24, 25

Lingo Corp. v. Topix, Inc., 218 F.R.D. 385 (S.D.N.Y. 2003)             17-18

Martin v. Brown, 63 F.3d 1252 (3d Cir. 1995)                               18

Masalosalo by Masalosalo v. Stonewall Insurance Co., 718 F.2d 955 (9th Cir. 1983)
                                                                           21

National Gas Pipeline Co. v. Energy Gathering, Inc., 2 F.3d 1397 (5th Cir. 1993)
                                                                       14, 17

Nilsson v. Louisiana Hydrolec, 854 F.2d 1538 (9th Cir. 1988)  4, 8-9, 10, 11, 25

Pennsylvania  v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546
(1986)                                                                  20-21

Phillips v. Weiner, 103 F.R.D. 177 (D. Me. 1984)                           24

Pickholtz v. Rainbow Technologies, Inc., 284 F.3d 1365 (Fed. Cir. 2002)    15

Powerserve International, Inc. v. Lavi, 293 F.3d 508 (2d Cir. 2001)     11, 12

Primus Automotive Financial Services, Inc. v. Batarse, 115 F.3d 644 (9th Cir.
1997)                                                                14, 15, 18

Roadway Express, Inc. v. Piper, 447 U.S. 752 (1980)          14, 19-20, 21-22

Straub v. Vaisman & Co., Inc., 540 F.2d 591 (3d Cir. 1976)          21

Toon v. Wackenhut Corrections Corp., 250 F.3d 950 (5th Cir. 2001)          17

Walbex Trading Co. v. YPFB, 109 F.R.D. 692 (S.D.N.Y. 1986)          12

Zambrano v. City of Tustin, 885 F.2d 1473 (9th Cir. 1989)          13, 14, 15-16, 30

## STATUTE and RULES

28 U.S.C. § 1927          4, 10, 20

FRCP 1          27

FRCP 11          20

FRCP 11(b)          24, 27

FRCP 15(a)          24

FRCP 37          4, 10

FRCP 54(b)          28, 29, 30

FRCP 55(a)          5, 6, 7, 8, 9, 10, 11, 22

FRCP 55(b)          5, 7, 9, 11

FRCP 55(c)          6, 7, 8-9, 10

FRCP 60(b)          7, 8, 9, 10, 11, 12, 28, 29

Local Rule 60.1          30

## MISCELLANEOUS

Advisory Committee Note to the 1946 Amendment to FRCP Rule 60(b)    29

American Board of Trial Advocates, "Principles of Civility, Integrity and
Professionalism," No. 18    26

American College of Trial Lawyers, "Code of Trial Conduct," Section 13(b)    26

Guidelines of Professional Courtesy and Civility for Hawaii Lawyers,
Section 2    24

Iowa Judicial Branch, Standards of Professional Conduct, "Lawyers' Duties To
Other Counsel," No. 20    26

Minnesota Supreme Court, "Professionalism Aspirations," Commentary, Section
III.F.2    26-27

Supreme Court of Texas, "The Texas Lawyers Creed," Section III.11    26

U.S. Court of Appeals, Seventh Circuit, Standards for Professional Conduct Within
the Seventh Federal Judicial Circuit, "Lawyers' Duties To Other Counsel," No. 18
    25-26

U.S. District Court, Central District of California, Civility and Professionalism
Guidelines, Guideline B8    25

U.S. District Court, District of Arizona, "Lawyers' Duties To Other Counsel," No.
18    25

Utah Supreme Court, "Utah Standards of Professionalism and Civility," No. 16
    27

West Virginia State Bar, "Standards of Professional Conduct," Section B.9    26

## STATEMENT OF APPEAL

## THE ORDERS APPEALED FROM

Defendants Anthony Grande and Narindar Grande (collectively "Grandes") hereby appeal from:

1.      The Magistrate Judge's Order filed September 25, 2006, assessing fee-shifting sanctions against Mr. and Mrs. Grande in the amount of $3,642.42; and

2.      The Magistrate Judge's Order filed December 4, 2006, denying reconsideration of the Order of September 25, 2006.

## STATEMENT IN SUPPORT OF APPEAL

## THE REMAND ORDER and THE CURRENT ORDERS

In its July 2005 remand Order resolving Grandes' prior appeal on sanctions, this Court found that the Magistrate Judge had imposed her *sua sponte*[1] sanctions of $3,828.70 upon them in November 2004, for filing their answer to the complaint two business and four calendar days after its due date, "relying on the court's inherent powers." Order of 7-5-05, at 3, 4.

---

[1] See, *e.g.*, Order of 9-25-06, at 6 ("in opposing the motion to set aside, Na Pali never requested sanctions").

2

This Court then held that "It is well-recognized that courts have an inherent power to impose sanctions," but that "A court's inherent power to sanction is also limited," and that "Before imposing an inherent power sanction, *the court must make a specific finding of bad faith* on the part of the party sanctioned." *Id.* at 6, 8 (emphasis added).

This Court then vacated the prior sanctions order against Grandes and remanded for "hearing on the issue of sanctions." *Id.* at 11.

On remand, however, although she nevertheless re-imposed sanctions, the Magistrate Judge did not even address, let alone "make a specific finding of," bad faith – such a finding would be impossible given the facts of this case. See Order filed 9-25-06, at 8-11.

Instead, the Magistrate Judge tried to get around the absence of "bad faith" by not relying upon the federal district courts' "inherent powers" after all. *Id.* incl. n. 1.

Taking a new tack, the Magistrate Judge re-imposed sanctions – without the benefit of an oral hearing[2] and after waiting for over a year – based upon case law which she now views as establishing, supposedly, that statutory or rule-based powers allow the federal district courts to "set . . . aside a default . . . conditioned

---

[2] There was additional briefing.

3

upon the payment of a sanction" – without any need to exercise "inherent powers," without any need to bother with finding "bad faith," or anything else. *Id.*

The Magistrate Judge acknowledged that the Second Circuit, Southern District of New York, Southern District of Illinois, and Wright & Miller, have all disagreed, saying that any power to impose sanctions in setting aside a default does come from a federal district court's "inherent powers." *Id.* at 11.

However, the Magistrate Judge expressly declined to follow those authorities, asserting that they are somehow "inconsistent" with the Ninth Circuit's decision in Nilsson v. Louisiana Hydrolec, 854 F.2d 1538, 1546-47 (9th Cir. 1988). *Id.* at 10.

The Magistrate Judge did not reveal which specific statutes or rules she viewed as giving her the non-inherent power to impose sanctions without a bad faith finding in instances of default. See *id.* at 9-11, incl. n. 1.

In that regard, the Magistrate Judge merely observed that another court had viewed Nilsson as "impl[ying] that the authority of the sanction is [FRCP] 37, or, alternatively, 28 USC § 1927." *Id.* at 10.

## QUESTIONS PRESENTED

Under these circumstances, the questions presented by this appeal are:

1) Did the Magistrate Judge err in concluding that, in cases where no default judgment under FRCP 55(b) has been entered, the federal district courts nonetheless have the authority to impose sanctions while setting aside defaults entered under FRCP 55(a), and may do so without making a specific finding of bad faith?

2) Should there be a remand allowing the Magistrate Judge another opportunity to consider whether she should enter "a specific finding of bad faith"?

3) Even if the federal district courts have the authority to impose sanctions when setting aside mere defaults entered under FRCP 55(a), and even if they may do so without making "a specific finding of bad faith," did the Magistrate Judge err, in this instance, when she assessed as sanctions (a) plaintiff's fees and costs incurred in obtaining the entry of Grandes' default the day after their answer was due, even though plaintiff and its counsel knew that Grandes had retained defense counsel and intended to respond (Grandes had already appeared!), and even though – even under plaintiff's version of the facts – such fees and costs would have been avoided if plaintiff's counsel had checked with Grandes' counsel to re-confirm that they would be answering (in conformity with usual standards of civility); and (b) plaintiff's fees and costs incurred in *unsuccessfully* opposing Grandes' motion to set aside the default, even though such fees and costs would have been avoided if plaintiff had simply agreed to set aside the default and/or not opposed the motion

to set it aside, and even though the opposition could not possibly have been successful under the circumstances?

ARGUMENT

I.    THE MAGISTRATE JUDGE ERRED IN HOLDING THAT THE FEDERAL DISTRICT COURTS HAVE THE AUTHORITY, EVEN WHERE (AS HERE) NO DEFAULT JUDGMENT HAS BEEN ENTERED, (1) TO IMPOSE SANCTIONS WHILE EXERCISING THEIR POWER TO SET ASIDE MERE SIMPLE DEFAULTS, and (2) TO IMPOSE SUCH SANCTIONS WITHOUT A SPECIFIC FINDING OF BAD FAITH.

The Magistrate Judge was simply wrong in holding that she could impose sanctions upon Mr. and Mrs. Grande without a specific finding of bad faith, while setting aside a mere default entered against them under FRCP 55(a).[3]

The Federal Rules:  First, the Magistrate Judge was wrong because there is nothing in FRCP 55(c), empowering them to set aside mere defaults entered under FRCP 55(a), which further empowers the federal district courts to impose sanctions when doing so.

---

[3] The Magistrate Judge correctly noted that Grandes' answer was due on Thursday, July 15, 2004, the Clerk's entry of Grandes' default was entered on Friday, July 16, 2004, Grandes' answer was filed on Monday, July 19, 2004, and Grandes' motion to set aside the default was filed on September 27, 2004 after plaintiff's counsel finally rejected requests of August 11, August 20, and September 13, 2004, that they agree to set it aside.  (Order of 9-25-06, at 2-3, 6)  No default judgment was ever entered.  (Record, *passim*)

As to mere defaults entered under FRCP 55(a), such as in this case,[4] FRCP 55(c) merely states *in toto*, without any mention of "terms" or "conditions," that "For good cause shown the court may set aside an entry of default."

It is only where a default *judgment* has been entered under FRCP 55(b), in addition to a default under FRCP 55(a), that the latter part of FRCP 55(c) works together with FRCP 60(b) to authorize, as a condition of setting aside *both* the default judgment *and* the underlying default entry, the imposition of "such terms as are just."

Specifically, the latter part of FRCP 55(c) states (emphasis added): ". . . *if* a judgment by default has been entered, may likewise set it [*i.e.,* an entry of default] aside *in accordance with Rule 60(b)*." Then FRCP 60(b) expressly authorizes the imposition of "such terms as are just" as conditions of setting aside *both* the FRCP 55(a) default entry *and* the FRCP 55(b) default judgment.

Because no default judgment was entered in this action, neither the latter part of FRCP 55(c) nor FRCP 60(b) can be used to as a basis for awarding sanctions here. See Record, *passim*.

Nilsson: Second, contrary to the Magistrate Judge (at 8-11), no rule allowing sanctions to be awarded absent bad faith, when federal district courts

---

[4] See note 3 above.

merely set aside FRCP 55(a) default entries, was created in Nilsson v. Louisiana

Hydrolec, 854 F.2d 1538 (9th Cir. 1988) (*per curiam*).[5]

Nilsson involved the setting aside of multiple default *judgments* under FRCP

60(b), not just entries of default. *Id.* at 1541-42, 1547 (three defaults, three default

judgments, and four awards of monetary sanctions for violating discovery orders).

There was not even an opportunity, in Nilsson, for the Ninth Circuit to

render a holding on whether and when sanctions can be assessed while setting

aside mere FRCP 55(a) default entries.

Part "B1" of the "Discussion" in Nilsson, upon which the Magistrate Judge

is relying, is specifically titled and subtitled "Imposition of Sanctions . . . Default

*Judgment*." *Id.* at 1546-47.

Nilsson itself states, in describing the authority upon which its holding is

based (*id.* at 1546, emphasis added):

> "In discussing the conditioning of defaults, we have noted that other
> circuits have held that *Fed.R.Civ.P. 60(b)* allows district courts to
> impose such conditions *on relief from judgment of default*. Id.. at 512,
> referring to Wokan v. Alladin International, Inc., 485 F.2d 1232, 1234
> (3d Cir. 1973); Thorpe v. Thorpe, 124 U.S. App. D.C. 299, 364 F.2d
> 692, 694 (D.C.Cir. 1966).

Thus, Nilsson merely approves the imposition of "such terms as are just," as

clearly authorized by FRCP 60(b), and as provided in *the latter part* of FRCP Rule

---

[5] Nilsson was rendered *per curiam* after one of the original panel members had
been replaced twice.

55(c) – in situations where, as in <u>Nilsson</u> but *not* here, *both* FRCP 55(a) defaults *and* FRCP 55(b) default judgments have been entered.

There is no genuine mystery about the authorities upon which <u>Nilsson</u>'s holding, that sanctions can be imposed when setting aside defaults *which have been accompanied or followed by default judgments*, is based. <u>Nilsson</u> itself cites FRCP 60(b), and the obvious authorities are the latter part of FRCP 55(c) and FRCP 60(b)!!

<u>Gallo</u>: The Magistrate Judge cites (at 10) <u>E. & J. Gallo Winery v. Cantine Rallo, S.P.A.</u>, 430 F. Supp. 2d 1064, 1095 (E. D. Cal. 2006) (Judge Wanger), as an application of her vision of <u>Nilsson</u>.

However, <u>Gallo</u> likewise involved the setting aside of a default *judgment* under FRCP 60(b), rather than the mere setting aside of an entry of default under FRCP 55(c). <u>Id.</u> at 1068, 1085-95.

The Court's Order in <u>Gallo</u> expressly states that it resolved a "Motion to Set Aside Default Under Rule 60(b)(1)" – not a motion under FRCP 55(c). <u>Id.</u> at 1085; see also at 1068, 1085-95.

Consequently, <u>Gallo</u> does not, and cannot, support the Magistrate Judge's theory that sanctions can be awarded, absent bad faith, when federal district courts merely set aside FRCP 55(a) default entries under FRCP 55(c).

Hart: The Magistrate Judge also cites (at 10) Hart v. Parks, 2001 U.S. Dist. LEXIS 24331, at 15-16 & n.15 (C.D. Cal. 2001) (Judge Collins), as purportedly supporting her reading of Nilsson.

However, Hart itself recognizes *sub silento* that FRCP 55(c) does *not* authorize the imposition of sanctions where a mere FRCP 55(a) default is involved. *Id.* at 16, n. 15. Hart overlooks Nilsson's reliance upon FRCP 60(b), see 854 F.2d at 1546, and otherwise misses that Nilsson involved default *judgments* being set aside under Rule 60(b), opining as follows (without mentioning Rule 55(c)) as to the authorities upon which Nilsson might be based (*id.*):

> "Though Nilsson is not explicit, it appears that the authority for conditioning a set-aside of default on payment of attorneys' fees is based on the sanction power of Federal Rule of Civil Procedure 37. Alternatively, it might be authorized for unnecessary multiplication of proceedings, sanctionable per 28 U.S.C. § 1927.

The quoted language from Hart is of course wrong. Nilsson "explicitly" cited Rule 60(b); FRCP 37 has nothing to do with setting aside defaults or default judgments entered for not answering complaints; and 28 USC § 1927 *inter alia* only authorizes awards against an "attorney or other person admitted to conduct cases."[6]

Foy and Skaggs – Emcasco's Third Circuit Progeny: The Magistrate Judge (at 10-11) points to two district court cases from within the Third Circuit which

purport to apply <u>Emcasco Insurance Co. v. Sambrick</u>, 834 F.2d 71 (3d Cir. 1987).

See <u>Foy v. Dicks</u>, 146 F.R.D. 113, 115-119 (E.D. Pa. 1993); <u>IBEW Local No. 313</u>

<u>v. Skaggs</u>, 130 F.R.D. 526, 528-530 (D. Del. 1990).

However, <u>Emcasco</u> is, like <u>Nilsson</u>, another case where a default *judgment*

had been entered, so it likewise deals with when – an under what "terms"[7] – an

FRCP Rule 55(b) default judgment *and* an underlying FRCP 55(a) entry of default

may *together* be set aside under FRCP 60(b). *Id.* at 72, 73-75.

<u>Kryzak</u>:  The Magistrate Judge's citation (at 11) of <u>Kryzak v. Dresser</u>

<u>Industries</u>, 118 F.R.D. 12 (D. Me. 1987), is likewise inapposite, because the district

judge in <u>Kryzak</u> mistakenly thought that he could apply "Rule 60(b)(1)" terms and

conditions in setting aside mere FRCP 55(a) default entries.  See <u>Goodwin v.</u>

<u>Roper Industries, Inc.</u>, 113 F.R.D. 53, 55 & n. 1 (D. Me. 1986), *cited on another*

*point in* <u>Kryzak</u>, 118 F.R.D. at 14.

<u>The Second Circuit</u>:  The Magistrate Judge misread <u>Powerserve</u>

<u>International, Inc. v. Lavi</u>, 293 F.3d 508 (2d Cir. 2001), as well.  She saw

<u>Powerserve</u> (at 11) as establishing that sanctions can be imposed under the

"inherent powers" doctrine when setting aside mere FRCP 55(a) default entries.

---

[6] Judge Collins declined to award fees against the LA City attorneys in <u>Hart v.</u>
<u>Parks</u>.  *Id.* at 18, n. 16.

[7] Notably, the Third Circuit thought that it would be "most expedient to have the
parties proceed on the merits without further effort devoted to fixing appropriate
sanctions" in <u>Emcasco</u>.  *Id.* at 75.

But Powersave similarly involved a default *judgment*, and thus the district courts'

powers when addressing a default *judgment* under FRCP Rule 60(b). *Id.* at 510,

514-515.

Similarly, Walpex Trading Co. v. YPFB, 109 F.R.D. 692, 698 (S.D.N.Y.

1986)(cited at 11), is based upon INA v. S/S Hellenic Patriot, 87 F.R.D. 136, 137,

139 (S.D.N.Y. 1980), which dealt with a default *judgment*.

## II.  THERE SHOULD NOT BE ANOTHER REMAND FOR THE MAGISTRATE JUDGE TO DETERMINE WHETHER SHE COULD FIND BAD FAITH ON THE RECORD HEREIN.

This Court has already remanded once, to allow the Magistrate Judge an

opportunity to see if she could make "a specific finding of bad faith."  After more

than a year, the Magistrate Judge was unable to do so.  No further energy of the

court or the parties should have to be devoted to that question.

Sound Judicial Administration:  At this point, over two years after the filing

of answers, with an upcoming April 2007 trial date, it is far past time for this

action to move on past the initial responsive pleading stage and *sua sponte*

sanctions relating thereto.  See Emcasco, 834 F.2d at 75 ("it would be "most

expedient to have the parties proceed on the merits without further effort devoted

to fixing appropriate sanctions").

No Bad Faith:  Any remand would be a waste of the time and resources of everyone involved, because no finding of "bad faith" by the Magistrate Judge could possibly withstand appellate scrutiny.

Under the Supreme Court's and Ninth Circuit's "bad faith" standard, inherent power sanctions cannot possibly be available where, as here, an initial responsive pleading was filed only two business and four calendar days late, so that its lateness was *de minimus*, and so that it is impossible to infer any purpose or intent to create delay or disruption.  See also the other facts noted in Part III, *infra*.

In Couveau v. American Airlines, Inc., 218 F.3d 1078, 1081 (9th Cir. 2000) (emphasis added), where the Supreme Court-Ninth Circuit standard was applied to a late opposition to a *potentially dispositive motion* (for summary judgment),[8] the Ninth Circuit held that "a one-time, two-day delay in filing opposition papers, even if unexcused, does not amount to 'recklessness, gross negligence, *repeated*-although-unintentional-flouting of court rules or willful misconduct' that would warrant monetary sanctions against counsel."

Clearly, there is no material difference between the two-day "delay" in Corveau and the two-business, four-calendar day "delay" here.  The late filing of

---

[8] The Supreme Court's "bad faith" standard applied in Couveau, where sanctions were sought under a local rule of the Central District of California, because as the Ninth Circuit held in Zambrano v. City of Tustin, 885 F.2d 1473, 1480, 1481-1482 (9th Cir. 1989), local fee-shifting rules are "valid only in so much" as they are consistent with the Supreme Court's standard.

an *initial* responsive pleading cannot by definition be evidence of a "repeated"

pattern, either.  Plus, this action does *not* involve a late opposition to a potentially

dispositive motion.

The standards for exercising a court's inherent powers are, of necessity, very

strict.  United States is a democracy, and "because inherent powers are shielded

from direct democratic controls," and "[b]ecause of their very potency," "inherent

powers must be exercised with restraint and discretion."  Roadway Express, Inc. v.

Piper, 447 U.S. 752, 764 (1980); Chambers v. NASCO, Inc., 501 U.S. 32, 44

(1991); Primus Automotive Financial Services, Inc. v. Batarse, 115 F.3d 644, 649

(9th Cir. 1997); Zambrano v. City of Tustin, 885 F.2d 1473, 1480 (9th Cir. 1989).

See also National Gas Pipeline Co. v. Energy Gathering, Inc., 2 F.3d 1397, 1406,

1411-1412 (5th Cir. 1993) (the District Court did not have inherent power to order

an attorney to produce his personal tax returns).

Inherent-power sanctions are to be awarded only in "rare and exceptional"

cases.  Primus Automotive, *supra*.

"An improper purpose or intent" is required before there can be an award of

inherent power fee-shifting sanctions, so that it is not enough that a cited action

may have been taken after a deadline.  Fink v. Gomez, 239 F.3d 989, 992 (9th Cir.

2001).  In Fink, the Ninth Circuit pointed out that it had previously reversed "the

imposition of sanctions" "on a *chronically* late attorney" because "*mere tardiness*

14

does not demonstrate the *improper purpose or intent* required for *inherent power* sanctions." *Id.* (emphasis added).

Accord, Pickholtz v. Rainbow Technologies, Inc., 284 F.3d 1365, 1378 (Fed. Cir. 2002), "[Bad faith] conduct requires an improper intent or purpose that cannot be inferred from mere tardiness *per se*."

Fink goes on to explain that in general, "mere recklessness, without more, does not justify sanctions under a court's inherent power" either. *Id.* at 993-994. In order for there to be "bad faith" sufficient to allow exercise of a district court's inherent sanctioning power, or conduct "tantamount to" inherent-power bad faith, there must not only be "willful actions, including recklessness," but also "an additional factor such as frivolousness, harassment, or an improper purpose." *Id.* at 994. "Negligence . . . would not meet the appropriate standard." *Id.* at 993.

In Primus Automotive, 261 F.3d at 649 (emphasis added), the Ninth Circuit further explained that because "the bad faith requirement sets a high threshold," inherent power sanctions should "be reserved for 'the *rare* and *exceptional* case where the action is clearly frivolous, legally unreasonable or without legal foundation, or brought for an improper purpose.'"

Earlier, in Zambrano, 885 F.2d at 1480, the Ninth Circuit established that "conduct amounting to recklessness, gross negligence, repeated-although-unintentional flouting of court rules, or willful misconduct" is necessary for the

"bad faith" requirement to be met. "[W]e do not think that the imposition of financial sanctions for mere negligent violation . . . is consistent with the intent of Congress or with the restraint required of the federal courts in sanction cases. Attorneys should not be 'disciplined by financial reprisal for conduct attributable to mistake, inadvertence, *or error in judgment*.'" *Id.* (emphasis added).

See also <u>Chambers</u>, 501 U.S. at 47-48, where the Supreme Court said that "inherent power . . . is both broader and narrower than other means of imposing sanctions[,]" observing that inherent power is narrower because "while the narrow exceptions to the American rule effectively limit a court's inherent power to impose attorney's fees as a sanction to cases in which a litigant has engaged in bad-faith conduct or willful disobedience of a court's orders, many of the other mechanisms permit a court to impose fees as a sanction for conduct which merely fails to meet a reasonableness standard."

Other U.S. courts, outside of the Ninth Circuit, agree with the Ninth Circuit's extremely limited "bad faith" standard. Inherent power sanctions have been affirmed elsewhere in rare and extraordinary circumstances, but not otherwise.

For example, in <u>Chambers</u> itself, where an inherent-power fee-shifting award was affirmed, the sanctioned defendants "had . . . 'attempted to deprive [the District] Court of jurisdiction by acts of fraud, . . . filed false and frivolous

pleadings, and attempted, by other tactics of delay, oppression, harassment and massive expense to reduce plaintiff to exhausted compliance.'" *Id.,* 501 U.S. at 41. Nothing of that kind occurred in this action!

Carroll v. The Jaques Admiralty Law Firm, P.C., 110 F.3d 290 (5th Cir. 1997), was of the same extreme ilk. There "bad faith" inherent-power sanctions were confirmed for a party's "hurling 'vulgar and profane words' at [deposing] counsel and threatening [deposing] counsel with an act of physical violence . . . [which] 'disrupted the litigation by forcing [deposing] counsel to terminate the deposition.'" *Id.* at 297.

Similarly, in Toon v. Wackenhut Corrections Corp., 250 F.3d 950, 952 (5th Cir. 2001), the Court affirmed inherent-power sanctions where a party's attorneys deliberately breached the confidentiality provision of a settlement agreement in a court filing, to the settling defendant's substantial injury.

In National Gas Pipeline Co., 2 F.3d at 1409-11, the Court affirmed a district court's use of its inherent powers to order a party's attorney to turn over client records in his possession, and to sanction the attorney for failing to do so on *multiple* occasions, including after the attorney had entered into an agreed order to produce them.

On the other hand, in Lingo Corp. v. Topix, Inc., 218 F.R.D. 385, 386 (S.D.N.Y. 2003), *no* sanctions were awarded – even though the defendant failed to

17

file an answer despite *repeated* requests and *warnings* that a default and default judgment would be sought, the defendant forced the filing of a motion to compel by failing to respond to discovery requests, the defendant failed to respond to a summary judgment motion and then missed a new response date set by the court, and the defendant failed to appear for scheduling and settlement conferences.

No Inherent Power Sanctions Absent Participation.   Inherent power sanctions are unavailable against Mr. and Mrs. Grande in any event, because they themselves did not personally do, or omit to do, anything.  (Order of 9-25-06, *passim*)

Inherent-power fee-shifting sanctions must be based "solely" upon the sanctioned person's "own improper conduct" "without considering" the conduct of anyone else.  Byrne v. Nezhat, 261 F.3d 1075, 1123 (11th Cir. 2001) ("the [district] court impermissibly relied solely on the actions of counsel" in "summarily stat[ing] that [a party to litigation] acted in bad faith"); see Primus Automotive, 115 F.3d at 650 ("any [inherent power] sanctions imposed against [an attorney] should be based solely on his 'own improper conduct without considering the conduct of the parties or any other attorney'"), *quoting* Martin v. Brown, 63 F.3d 1252, 1265 (3d Cir. 1995).

The inherent power sanctions award in Byrne was reversed because "Nothing in the record indicate[d] that Manov knew that a baseless claim had been

brought on her behalf or that she was pursuing the Nezhats for a harassing or other impermissible purpose . . . . [The Court's] failure to specify Manov's conduct renders us unable to affirm." *Id.* at 1124.

The requirement of personal involvement is why it was necessary for the Supreme Court in Chambers, 501 U.S. at 41, to take specific note of (1) the trial court's rejection of Mr. Chambers' argument "that he had merely followed the advice of counsel," and (2) the trial court's finding that Mr. Chambers was instead "'the strategist' . . . behind a scheme devised 'first, to deprive the court of jurisdiction and, second, to devise a plan of obstruction, delay, harassment and expense sufficient to reduce NASCO to a condition of exhausted compliance.'"

No Inherent Power Sanctions Available Until A Case Is Finished, and Then Only For the Prevailing Party. Furthermore, the inherent power to shift fees and costs for "bad faith" only exists *after* the losing and prevailing parties in a lawsuit have been determined – and can only operate to shift fees and costs from the winning to the losing party. Because this action is still pending, the prevailing party herein has yet to be determined.

As the Ninth Circuit explained in Fink, "The Supreme Court in *Roadway Express . . ,* 447 U.S. [at] 761, delivered the *definitive summary* of the bases upon which a federal court may levy sanctions *under its inherent power.* The court reiterated the federal court's inherent power to levy sanctions, including attorneys'

fees, . . . 'when *the losing party* has acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" Fink, 239 F.3d at 991 (emphasis added).

Chambers dealt with a fee and cost assessment in favor of a prevailing party, and against an appellant losing party, entered after the District Court had determined that suit's victor. *Id.,* 501 U.S. at 40. Chambers points out, 501 U.S. at 44-45, that the "inherent power" of the federal courts to assess attorneys' fees is narrowly circumscribed because "the so-called 'American Rule' prohibits fee shifting in most cases," and that the exceptions to the American Rule fall into three limited categories "explained" in Alyeska Pipeline Co. v. Wilderness Society, 421 U.S. 240 (1975).

Turning to Alyeska, its "bad faith" fee-shifting category likewise states that "a court may assess attorney's fees . . . when the *losing* party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons."[9] *Id.* at 258-259 (emphasis added).

The 1983 amendments to 28 U.S.C. Sec. 1927 and Rule 11 did not affect the established limitations upon "inherent power" "bad faith" fee-shifting sanctions. Chambers, *supra*; Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546, 561-562 & n. 6 (1986) (emphasis added) (the American Rule's

---

[9] Alyeska's only other exceptions to the American Rule against fee-shifting are obviously inapplicable here, since there is no judgment creating a common fund, and no violation of a court order. See *id.*, 421 U.S. at 257-259.

"bad faith" exception empowers the District Courts "to award fees against a *losing* party who has acted in bad faith, vexatiously, wantonly, or for oppressive reasons."

See also Hutto v. Finney, 437 U.S. 678, 689 (1978) (emphasis added) (it is "a *losing* litigant's bad faith" which "may justify an allowance of fees to the prevailing party"); Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 417 n.9 (1978) (emphasis added) ("The propriety of the American common-law rule of awarding attorney's fees against a *losing* party who has acted in bad faith was expressly reaffirmed in *Alyeska*."); F.D. Rich Co. v. United States, 417 U.S. 116, 129 (1974) (emphasis added) ("We have long recognized that attorneys' fees may be awarded to a *successful* party when his opponent has acted in bad faith, vexatiously, wantonly, or for oppressive reasons."); Straub v. Vaisman & Co., Inc., 540 F.2d 591, 600 (3d Cir. 1976) (emphasis added) ("a federal court may award counsel fees to a *successful* litigant where 'an unfounded action or defense is brought or maintained in bad faith, vexatiously, wantonly, or for oppressive reasons."); B.K.B. v. Maui Police Department, 276 F.3d 1091, 1099 (9th Cir. 2002) (Judge Mollway waited until *after* the trial, and until *after* she denied a motion for a new trial, to enter an "inherent power" fee-shifting award.); Masalosalo by Masalosalo v. Stonewall Insurance Co., 718 F.2d 955, 956, 957 (9th Cir. 1983) (sanctions award entered *post*-judgment; expressly recognizes the "losing party" limitation on "inherent power" fee-shifting awards set forth in Roadway Express;

cites and quotes from <u>Roadway Express</u> itself); <u>Carroll</u>, 110 F.3d 290, *aff'g* 926

F.Supp. 1282, 1287 (E.D. Tex. 1996) (involving a fee-shifting sanctions order

entered against the losing party *after* judgment had been entered); <u>Goldin v.</u>

<u>Bartholow</u>, 166 F.3d 710, 714, 722 (5th Cir. 1999) (same).

<u>III.  EVEN IF THE FEDERAL COURTS HAVE THE AUTHORITY TO
IMPOSE SANCTIONS IN SETTING ASIDE MERE DEFAULTS ENTERED
UNDER FRCP 55(a), AND EVEN IF THEY MAY DO SO WITHOUT MAKING
A SPECIFIC FINDING OF BAD FAITH, THE MAGISTRATE JUDGE ERRED
IN ENTERING THE UNWARRANTED AND EXCESSIVE SANCTIONS
AWARDED HERE.</u>

In any event, the Magistrate Judge clearly erred in entering any award of

sanctions in this action, let alone such a large award.  The Magistrate Judge's

award consisted of fees and costs incurred by plaintiff in (1) obtaining the entry of

Grandes' default the day after their answer was due, and (2) *un*successfully

opposing Grandes' motion to set aside their default.  Neither award was

appropriate.

<u>Fees and Costs Incurred in Entering Grandes' Default</u>:  Plaintiff obtained the

entry of Grandes' default the very day after Grandes' answer was due, although

plaintiff and its counsel knew that Grandes' intended to defend this action

(Grandes having removed it to federal court), and without re-checking with

Grandes' already-appearing counsel to re-confirm that they would answer (if they

had any doubt about Grandes' intentions).  (Order of 9-25-06, at 2-3, 4; Jacobson

Declaration, filed 9-27-04, para. 2-5, 9-11)

Furthermore, although plaintiff *belatedly* chose to dispute it, Grandes'

counsel had asked plaintiff's counsel for a short extension of time to answer, and

was awaiting their response when they instead requested that Grandes' default be

entered.[10]  (Jacobson Declaration, filed 9-16-04, para. 2; Ass'n Reply, etc., filed 9-

23-04, *passim* [no dispute], esp. Fujisaki Declaration, *passim* [no dispute]);

Jacobson Declaration, filed 9-27-04, para. 7-11)

Under these circumstances, the fees and costs plaintiff incurred in

precipitously racing down to court before Grandes could file their answer are not

properly awarded as sanctions.

In Gallo, 430 F. Supp. 2d at 1095 (cited by the Magistrate Judge at 10), the

District Court held that fee and cost sanctions should not be awarded for any work

performed by plaintiff Gallo's attorneys once Gallo had been informed of

defendant Rallo's "intention to defend."  Judge Wanger explained that, from that

point on, "the fees incurred by E&J Gallo to defend the default judgment were by

its own choice," even though a default *judgment* had also been entered.  *Id.*

---

[10]  Plaintiff's denial was based upon a demonstrably false affidavit alleging that
only one person at the Neeley & Anderson firm answers telephone calls.
(Jacobson Declaration, filed 10-16-04, para. 2; see Kekuewa Declaration, filed 9-
27-04, para. 2)

By comparison to this case, the plaintiffs' attorneys in <u>Gallo</u> had sent Rallo's attorney advance written notice that its default would be taken if an answer was not filed. *Id.*.

If Grandes' counsel had been given notice of plaintiff's intentions herein, he would have known that he needed to move for an *ex parte* extension, [11] or he could have filed an answer unreviewed by Mr. Grande by Thursday, July 15, 2004, albeit in violation of FRCP Rule 11(b), followed by an amended Answer after client consultation.[12]

In <u>Phillips v. Weiner</u>, 103 F.R.D. 177, 178, 182 (D. Me. 1984) (Judge Carter), upon which <u>Kryzak</u>, *supra*, 118 F.R.D. at 13-14 (Judge Carter) (cited by the Magistrate Judge at 11) is based, the District Court did not even think of entering *sua sponte* sanctions – as the Magistrate Judge did here[13] – where the plaintiff requested a default entry the day after the answer was due, 47 minutes before an extension motion was filed.

---

[11] See also Section 2(a) of the Guidelines of Professional Courtesy and Civility for Hawaii Lawyers provides that "A lawyer who manifests professional courtesy and civility" will "[a]gre[e] to reasonable extensions of time . . . without requiring motions or other formalities."

[12] Such an amended answer could have created a 17-day delay in closing the pleadings, as an amended answer would not have been due until Wednesday, August 4 – some 17 days *after* Grandes' Answer and Counterclaim were actually filed. FRCP Rule 15(a) allows parties to file amended answers, correcting inaccuracies and other shortcomings in their original answers, within 20 days after their original answers are filed.

The facts of this case are nothing like those in the cases cited by the Magistrate Judge.  Compare, <u>Nilsson</u>, 854 F.2d at 1541, 1547 (three defaults, three default judgments, and four awards of monetary sanctions for violating discovery orders); <u>Gallo Winery</u>, *supra* (advance notice of intention to take default given); <u>Hart</u>, 2001 U.S. Dist. LEXIS 24331, at 1-2, 4-5, 15 (long delay in answering required plaintiffs to respond to an order to show cause why the action should not be dismissed; only $1,850 in fees awarded); <u>Foy</u>, 146 F.R.D. at 113, 117 & n.9 (repeated pattern of defaults by defense counsel); <u>Skaggs</u>, 130 F.R.D. at 529 (pleading not addressed until "well after a response was due," and there was a 3 ½ month delay in responding to a motion for entry of a default judgment); and <u>Kryzak</u>, 118 F.R.D. at 13-14 (delay of approximately two months in answering).

Furthermore, in taking Grandes' default without advance warning, plaintiff's counsel violated widely accepted norms of professional civility and conduct. Civility and Professionalism Guidelines, Central District of California, Guideline B8 ("We will not cause any default or dismissal to be entered without first notifying opposing counsel, when we know his or her identity."); United States District Court, District of Arizona, "Lawyers' Duties To Other Counsel," No. 18 ("We will not cause any default … to be entered without first informing opposing counsel, when we know his or her identity."); Standards for Professional Conduct

---

[13] See, *e.g.*, Order of 9-25-06, at 6 ("in opposing the motion to set aside, Na Pali

Within the Seventh Federal Judicial Circuit, "Lawyers' Duties To Other Counsel,"

No. 18 ("We will not cause any default … to be entered without first informing

opposing counsel, when we know his or her identity."); American College of Trial

Lawyers, "Code of Trial Conduct," Section 13(b) ("When a lawyer knows the

identity of a lawyer representing an opposing party, the lawyer should not take

advantage of the opposing lawyer by causing any default … to be entered without

first inquiring about the opposing lawyer's intention to proceed."); American

Board of Trial Advocates, "Principles of Civility, Integrity and Professionalism,"

No. 18 ("Never cause the entry of a default … without first notifying opposing

counsel, unless material prejudice has been suffered by my client."); Supreme

Court of Texas, "The Texas Lawyers Creed," Section III.11 ("I will not take

advantage, by causing any default … to be rendered, when I know the identity of

an opposing counsel, without first inquiring about that counsel's intention to

proceed."); Iowa Judicial Branch, Standards of Professional Conduct, "Lawyers'

Duties To Other Counsel," No. 20 ("We will not cause any default … to be entered

without first informing opposing counsel, when we know his or her identity."); The

West Virginia State Bar, "Standards of Professional Conduct," Section B.9 ("A

lawyer should not cause any default … to be entered without first notifying

opposing counsel, when the identity of opposing counsel is known."); Minnesota

---

never requested sanctions").

Supreme Court, "Professionalism Aspirations," Commentary, Section III.F.2)

("We will not cause a default ... to be entered, when we know the identity of an

opposing counsel, without first making a good faith attempt to inquire about the

counsel's intention to proceed."); Utah Supreme Court, "Utah Standards of

Professionalism and Civility," No. 16 ("Lawyers shall not cause the entry of a

default without first notifying other counsel whose identity is known, unless their

clients' legitimate rights could be adversely affected.").

Grandes' counsel had never before, in over 30 years of litigation practice

including 18 years in Honolulu, seen a default taken without advance warning, and

without extending an opportunity to either file an answer or apply for a Court-

ordered extension, if defense counsel was known and/or had already appeared.

(Jacobson Declaration, filed 9-27-04, para. 1, 14)

Fees and Costs Incurred in Unsuccessfully Opposing Grandes' Motion To

Set Aside The Default. For the same reasons, and others, plaintiff should not have

been awarded any of its fees and costs in *un*successfully opposing Grandes' motion

to set aside the entry of their default.

Plaintiff should not have taken Grandes' default to begin with, and nothing

required plaintiff to file a baseless opposition to setting it aside. See FRCP 1 and

11(b).

It was plaintiff's "own choice" to oppose setting it aside. See <u>Gallo</u>, *supra*, denying fees and costs incurred in opposing a motion to set aside a default, since Gallo knew the defendant intended to defend, but proceeded with a default anyway.

Notably, plaintiff's $3,000+ opposition to setting the default aside could not possibly have succeeded. Although 30 pages long, the opposition did not even attempt to claim that plaintiff would suffer cognizable prejudice from the default being set aside. (Opposition, filed 10-8-04, *passim*)

All $3,000+ of fees and costs could have been avoided by plaintiff's simply agreeing to let the default be set aside. Plaintiff was asked *three times* if it would stipulate to the default being set aside, before finally refusing to do so. (Order of 9-25-06, at 6)

IV.   THE MAGISTRATE JUDGE ERRED IN APPLYING POST-JUDGMENT STANDARDS IN DENYING GRANDES' MOTION FOR RECONSIDERATION.

Under FRCP 54(b) and 60, there are material differences between motions for reconsideration of interlocutory orders and motions for review of final orders and judgments. The Magistrate Judge erred in applying Rule 60 standards in denying Grandes' reconsideration motion herein.

FRCP 54(b) which provides that any interlocutory court order "is subject to revision at any time before the entry of judgment." Under FRCP 54(b), a previously entered order may be set aside where, as here, "justice requires" that it be set aside, because "review of an interlocutory order under Rule 54 is not subject to the restrictive standards of motions for relief from final judgments under Rule 60." *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1472-1473 (4th Cir. 1991); Advisory Committee Note to the 1946 Amendment to FRCP Rule 60(b)("interlocutory judgments are not brought within the restrictive scope of [Rule 60(b)], but rather they are left subject to the complete power of the court rendering them to afford such relief from them as justice requires.").

As an example of the flexibility Rule 54(b) provides, see *Great Hawaiian Financial Corp. v. Aiu*, 863 F.2d 617, 622 (9th Cir. 1988), where the Ninth Circuit reversed Rule 11 sanctions awarded for the allegedly inappropriate filing of a Rule 54(b) reconsideration motion re-raising previously-rejected arguments, because the sanctioned arguments "were the same as those that . . . persuade[d the Ninth Circuit] to reverse" a summary judgment. See also *Anixter v. Home-Stake Production Co.*, 977 F.2d 1533, 1547-1549 (10th Cir. 1992) (affirming a trial court's reinstatement of claims dismissed upon pre-trial summary judgment, after additional evidence introduced at trial showed that they might be viable).

Insofar as LR 60.1 purports to limit the scope of FRCP 54(b), it is unenforceable. <u>Zambrano</u>, *supra*.

CONCLUSION

The Magistrate Judge's *sua sponte* sanction award should be reversed, with prejudice and without remand, with the question of sanctions relating to Grandes' answer being dropped.

DATED:  Honolulu, HI, December 8, 2006.

STEVEN B. JACOBSON
Attorney at Law
A Limited Liability Law Company


STEVEN B. JACOBSON
Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| NA PALI HAWEO COMMUNITY ASSOCIATION, a Hawaii non-profit corporation,<br><br>   Plaintiff,<br><br>  v.<br><br>ANTHONY CHARLES GRANDE; NARINDAR KAUR GRANDE, and DOES,<br>   Defendants.<br><br><br>ANTHONY CHARLES GRANDE and NARINDAR KAUR GRANDE,<br><br>   Counterclaim Plaintiffs,<br><br>  v.<br><br>NA PALI HAWAO COMMUNITY ASSOCIATION; RONALD K. AWA; and DOES 1-25,<br><br>   Counterclaim Defendants | CIVIL NO. CV04-00413-DAE LEK<br><br>CERTIFICATE OF SERVICE |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that copies of the foregoing document will

be served today by hand delivery upon each of the following:

JOYCE Y. NEELEY, ESQ.
LANCE S. FUJISAKI, ESQ.
SCOTT GRIGSBY, ESQ.
Neeley & Anderson LLP
733 Bishop Street, Suite 2301
Honolulu, Hawai'i 96813

Attorneys for Plaintiff
and Counterclaim Defendant
Na Pali Haweo Community Association

JOHN D. ZALEWSKI, ESQ.
Case Lombardi & Pettit
737 Bishop Street, Suite 2600
Honolulu, HI 96813

Attorneys for Plaintiff
and Counterclaim Defendants
Na Pali Haweo Community Association
and Ronald K. Awa

DATED: Honolulu, Hawaii, December 8, 2006.

STEVEN B. JACOBSON
Attorney at Law
A Limited Liability Law Company

_____
STEVEN B. JACOBSON
Attorneys for Defendants