IN THE UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

NA PALI HAWEO COMMUNITY ASSOCIATION, a Hawaii non-profit corporation,

Plaintiff,

vs.

ANTHONY CHARLES GRANDE; NARINDAR KAUR GRANDE, JOHN DOES 1-10; JANE DOES 1-10L DOE PARTNERSHIPS 1-10; DOE CORPORATIONS 1-10; DOE ENTITIES 1-10; DOE GOVERNMENTAL UNITS 1-10

Defendants.

ANTHONY CHARLES GRANDE and NARINDAR KAUR GRANDE,

Counterclaim Plaintiffs,

vs.

NA PALI HAWEO COMMUNITY ASSOCIATION; RONALD K. AWA; and DOES 1-25,

Counterclaim Defendants.

CIVIL NO. 04-00413 DAE/BMK

MEMORANDUM IN SUPPORT OF MOTION

# MEMORANDUM IN SUPPORT OF MOTION

Counterclaim Defendants NA PALI HAWEO COMMUNITY ASSOCIATION (the "Association") and RONALD K. AWA ("Mr. Awa") hereby request that summary judgment be entered in their favor against Plaintiffs ANTHONY CHARLES GRANDE ("Mr. Grande") and NARINDAR KAUR GRANDE (collectively, the "Grandes") under the Grandes' Counterclaim filed herein on July 19, 2004 (the "Counterclaim"), attached hereto as Exhibit A.

The Grandes' Counterclaim lacks factual and legal merit. This Court has already ruled that the Grandes violated the governing documents in several respects. The Grandes have no basis to assert claims against the Association or Mr. Awa.

## I. BACKGROUND

The Grandes own real property in the Na Pali Haweo subdivision located at 1251 Kamehame Drive, Honolulu, Hawaii (the "Property"). (Exhibit A at ¶ 1; Exhibit B at 4; Exhibit C at 2.)

The Association is a Hawaii non-profit corporation responsible for enforcing the Association's Declaration of Covenants, Conditions, and Restrictions (the "CCRs"). (Exhibit A at ¶ 2; Exhibit B at 4.)

Mr. Awa is the Chair of the Association's Architectural Review Committee (the "ARC"). He is an architect licensed by the State of Hawaii. (Exhibit A at ¶ 3; Exhibit B at 4.)

The CCRs and Design Guidelines are the governing documents of the dispute between the parties. (Exhibit B at 12.)

Mr. Grande has admitted that he was given the CCRs and Design Guidelines at the time he purchased the property. (Exhibit D at 8, lines 17-21; id. at 113, lines 14-19.) Mr. Grande has further admitted that he understood that the Grandes' house must comply with the CCRs and the Design Guidelines. (Exhibit E at 11, lines 11-13.)

Mr. Grande failed to review the CCRs and the Design Guidelines before the dispute with the Association arose. (Exhibit D at 113-14, lines 24-25 and 1-3.)

## II. STANDARD OF REVIEW

Under FRCP Rule 56(c), summary judgment shall be entered when:

> … the pleadings, depositions, answers to interrogatories, and Admissions on file, together with the affidavits, if any, show that the moving party is entitled to judgment as a matter of law.

In its motion for summary judgment, the moving party has the initial burden of demonstrating for the court that there is no genuine issue of material fact and that the court may rule on the issues as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986) (citing Akickes v. S.H. Kress & Co., 398 U.S.

144 (1970)). Despite this burden, the moving party need not produce evidence negating the existence of an element for which the opposing party will bear the ultimate burden of proof at trial. See id. at 323.

Once the movant has met its initial burden, the opposing party has the affirmative burden of coming forward with specific facts evidencing a need for trial. See FRCP Rule 56(e). The opposing party cannot stand on its pleadings, nor simply assert that it will be able to discredit the movant's evidence at trial. See T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Assoc., 809 F.2d 626, 630 (9th Cir. 1987); FRCP Rule 56(e). There is no genuine issue of fact "where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita Elect. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

A material fact is one that may affect the decision, so that the finding of that fact is relevant and necessary to the proceedings. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine issue is shown to exist if sufficient evidence is presented such that a reasonable fact finder could decide the question in favor of the nonmoving party. See id. The evidence submitted by the nonmovant in opposition to a motion for summary judgment "is to be believed, and all justifiable inferences are to be drawn in [its] favor." Id. at 255.

In ruling on a motion for summary judgment, the court must bear in mind the actual quantum and quality of proof necessary to support liability under the applicable law. See id. at 254. The court must assess the adequacy of the non-movant's response and determine whether the nonmovant's showing would be sufficient to carry its burden of proof. See Celotex, 477 U.S. at 322.

Although highly fact-based cases are not generally suitable for summary judgment, the nonmoving party must demonstrate that sufficient evidence of a factual dispute exists to require a jury or judge to resolve the parties' differing versions of the truth at trial. In ruling on such a motion, this court may not make credibility determinations or weigh conflicting evidence. See Musick v. Burke, 913 F. 2d 1390, 1394 (9th Cir. 1990).

## III. DISCUSSION

### A. The Association And Mr. Awa Are Entitled To Summary Judgment As A Matter Of Law And Undisputed Fact

The Association's CC&Rs and Design Guidelines are the documents which govern this dispute between the Association and the Grandes. See, AOAO Maalaea Kai, Inc., v. Stillson, 108 Haw. 2, 9, 116 P.3d 644, 651 (Haw. 2005); Pelosi v. Wailea Ranch Estates, 10 Haw. App. 424, 435-36, 876 P.2d 1320, 1326-27 (1994), cert. denied, 77 Haw. 373, 884 P.2d 1149 (Haw. 1994); DeMund v. Lum, 5 Haw. App. 336, 342-43, 690 P.2d 1316, 1321 (1984), cert. denied, 67 Haw. 685, 744 P.2d 781 (Haw. 1984); see also, Exhibit B at 12-13.

The rulings of this Court and other evidence show that the Grandes violated the governing documents, not the Association or Mr. Awa. There is no sufficient basis for liability to be assessed against the Association and Mr. Awa, and summary judgment should be granted in their favor.

**B. <u>The Counterclaim Is Predicated On Assertions That Lack Merit</u>**

The Counterclaim asserts, correctly, that the Grandes were advised by the Association, after they commenced construction, that the construction did not comply with the Association's governing documents. (Exhibit A at ¶ 6.)

While that is correct, the Counterclaim is predicated on three assertions that lack merit, as follows: (1) The Grandes (allegedly) submitted plans in conformity with the governing documents yet they were rejected (Exhibit A at ¶ 6); (2) the Grandes (allegedly) were stone-walled because Mr. Awa required $500 for each telephone discussion (id.); and (3) the Association (allegedly) acted unreasonably, outside of its powers, failed to decide whether to allow a variance, and the construction (allegedly) is in full compliance with the governing documents (id at ¶¶ 6-7).[1]

These assertions lack merit, and are addressed immediately below.

---

[1] The Counterclaim seeks damages and a declaration by the Court proclaiming that the Grandes are in full compliance with all lawful requirements that the Association "can impose upon them." (Exhibit A at ¶ 9.)

**1. The Grandes Built Their Home From A Different Set Of Plans Rather Than The ARC-Approved Plans**

The Grandes assert they submitted plans in conformity with the governing documents, yet they were rejected. (Exhibit A at ¶ 6.)

While it is correct that the Grandes submitted plans that were approved by the ARC in 2000 (see Exhibit B at 5), the Counterclaim omits the fact that the Grandes built their house from plans different from the ARC-approved plans.

This Court previously determined that the Grandes submitted a different set of plans to the City and County of Honolulu Department of Planning and Permitting than the plans approved by the ARC, without the prior knowledge of the ARC, in violation of the CCRs and Design Guidelines. (See Order Granting In Part And Denying In Part Plaintiff's Motion For Summary Judgment And Denying In Part Defendants' Counter-Motion For Summary Judgment filed herein on July 18, 2006, attached hereto as Exhibit B, at 5-6.[2])

Mr. Grande's trial testimony in Hawaii First Circuit Court confirms his improper use of different sets of building plans. Mr. Grande conceded that after the ARC approved one set of plans, he changed the plans to allow for "a lot of

---

2 The Hawaii First Circuit Court, in a recent trial between the Grandes and their building contractor, found that the Grandes submitted ***three*** different sets of plans to ***three*** different entities: the Association; the City and County of Honolulu; and the Grandes' contractor. (Findings Of Fact And Conclusions Of Law; Order filed in Hawaii First Circuit Court on September 14, 2007, see Exhibit C, at 3-4, ¶¶ 8, 9, 12.)

enhancements" to make the house "a lot better." (Exhibit D at 13, lines 5-10, 22-24.) He also admitted that the ARC-approved plans were never given to the Grandes' contractor (Jeff Brandt of Brandt Homes). (Exhibit D at 115, lines 23-25.)

Further, the Grandes refused to have plans prepared that addressed issues and deficiencies specified by the Association, notwithstanding explicit requests by the Association to do so. (Exhibit F at 161, line 3 to 164, line 14.)

The Association urged the Grandes to expeditiously obtain all approvals before proceeding with construction, yet the Grandes hired a replacement contractor to complete the house anyway, even in the disputed areas that the Association was telling them to stop, because – according to Mr. Grande – he wanted to cut his losses. (Exhibit E at 36, lines 11-20 and at 37, lines 3-13; see also, Exhibit B at 9, "Despite the Association's repeated demands and letters, construction on the Dwelling still appeared to continue.")

There is no basis for the Counterclaim's assertion that the Grandes submitted plans that conformed with the governing documents that were rejected.

**2. The Grandes Refused To Submit Revised Plans To The ARC For Approval Because Mr. Grande Did Not Want to Pay The Submittal Fee**

The Grandes' Counterclaim asserts that they were stone-walled because Mr. Awa required $500 for each telephone discussion. (Exhibit A at ¶ 6.) No competent evidence exists to support that assertion.

Rather, Mr. Grande has admitted that he and his spouse never submitted revised plans to the Association for ARC approval in part because the Grandes wanted to avoid paying a fee of $500 per submittal, which he did not consider to be fair. (Exhibit D at 14, lines 22-24 and at 15, lines 2-10.) According to Mr. Grande, they wanted "to save money as much as possible" and were "real tight on money" after buying the land. (Exhibit D at 20, lines 14-16.)

The ARC properly charged a fee of $500 for submittals that involve major addition/renovation for $25,000 or more, per the ARC's Fee Schedule in effect at the time. (See Exhibit G.[3])

Nor were the Grandes "stone-walled." As this Court has noted, the Association engaged in numerous communications and other actions in an attempt to have the Grandes bring the Property into compliance. See, Exhibit B at 6-7 (recapping several communications initiated by the Association with the Grandes' architect and the Grandes about apparent violations and meetings and site inspections at the Property); id. at 9 (noting "the Association's repeated demands

---

[3] Owners are responsible for paying fees as established by the ARC. (Exhibit H at 30, § 6.2; see also, Exhibit I at 46, § 9.6.)

and letters"); id. at 9-10 (mentioning communications between counsel, including the Association's offers to mediate with the Grandes).

### 3. **The Grandes Violated The CCRs And Design Guidelines And Acted Unreasonably, Not The Association Or The ARC**

The Counterclaim contends that the Association acted unreasonably and outside of its powers and failed to decide whether to allow a variance, and that the construction is in full compliance with the governing documents. (Exhibit A at ¶¶ 6-7.) These assertions also lack merit as indicated below.

#### (a) **Violations By The Grandes**

It was the Grandes, not the Association nor ARC Chair Ronald K. Awa, who acted unreasonably and who violated the CCRs and Design Guidelines. Two courts of competent jurisdiction, including this Court, have already concluded that the Grandes violated the governing documents.

This Court previously considered and rejected the Grandes' strained contention that their house complied with the governing documents, and granted summary judgment on four separate violations in favor of the Association against the Grandes. The Court issued summary judgment against the Grandes on

violations which included: (i) the house's building envelope[4]; (ii) property setback[5]; (iii) front garden wall[6], and (iv) sliding garage gate.[7]

Moreover, this Court has previously ruled that "the Grandes cannot rely on the previously approved plans [ ... ] because they did not use the first set of plans that were approved by the Association." (Exhibit B at 16.)

Further, the Hawaii First Circuit Court determined after a recent trial involving the Grandes that the Grandes' plans and the construction of their house were in violation of the Design Guidelines. (Exhibit C at 4, ¶¶ 12-15; id. at 7, ¶ 33 (referencing "material breaches of the Guidelines")).[8]

**(b) <u>The Association Acted Within Its Powers</u>**

The Grandes' contention that the Association exceeded its powers lacks merit. It is the owners who are required to conduct their activities strictly in

---

[4] <u>See</u> Exhibit B at 13-16.

[5] <u>See</u> Exhibit B at 16-18.

[6] <u>See</u> Exhibit B at 22-23.

[7] <u>See</u> Exhibit B at 25-26.

[8] The Hawaii First Circuit Court further found that: (i) the Grandes' contractor provided a cost estimate to the Grandes to bring the front roof into compliance with the Design Guidelines but the Grandes never responded (Exhibit C at 5, ¶ 22); and (ii) the Grandes' conduct amounted to a "stubborn refusal to wholeheartedly attempt to reach some sort of accommodation with the Association." (Exhibit C at 7, ¶ 33.)

accordance with the Design Guidelines. (Exhibit I at 9-10, § 4.1.) The Design Guidelines apply to all construction activities in the Project, and are a part of the CC&Rs and have the same effect. (Id.; Exhibit H at 1, § 1.1.)

Construction of any improvement on any lot is absolutely prohibited until and unless the owner first obtains approval from the ARC and complies with all provisions of the Design Guidelines and/or the CC&Rs. (Exhibit I at 9-10, § 4.1; id. at 46, § 9.7; Exhibit H at 3, § 1.3.)

The Association has the duty to take action, including the hiring of legal counsel and undertaking legal action, as may be reasonably necessary to enforce the CC&Rs and the ARC rules. (Exhibit I at 30, § 6.7.11; id. at 31, § 6.8.1; id. at 35, § 6.10; id. at 55-56, § 12.2.1.)

Here, the Association undertook reasonable enforcement actions, consistent with the governing documents.

**(c) <u>The Grandes' Variance Request</u>**

The Grandes' Counterclaim asserts that the Association declined to make a final decision about whether to allow a variance. (Exhibit A at ¶ 6.)

This contention lacks factual and legal merit. Mr. Grande contradicts his Counterclaim by stating in sworn testimony that his variance request was denied on or about October 29, 2003. (Exhibit D at 35, lines 20-24; 38, lines 5-7; 39, lines 13-15.) In fact, the Association, through the ARC, told the Grandes that the

ARC did not have authority to grant the variance request. (Exhibit B at 8; see also, id. at 16.)

Further, the ARC may, but is not required to, authorize variances from compliance with the Design Guidelines under certain specified circumstances, as determined in the sole discretion of the ARC. (Exhibit I at 17, § 4.9.)

**C. Mr. Awa Is Entitled To Summary Judgment For The Additional Reason That The CCRs Immunize Him From Personal Liability**

The CC&Rs provide that members of the ARC shall not be personally liable to any owner for any damage, loss or prejudice suffered or claimed on account of: "(i) approval or disapproval of any plans, drawings, or specifications, whether or not defective; (ii) the construction or performance of any work, whether or not pursuant to approved plans, drawings and specifications; (iii) the Improvement or any manner of improvement of any lot [...] ." (Exhibit I at 48, § 9.12.)

The Counterclaim makes it clear that Mr. Awa is being sued in his official ARC capacity for alleged actions as the Chair of the ARC. (See Exhibit at ¶ 3, asserting that Mr. Awa is a licensed architect and Chair of the ARC; see also, id. at ¶ 6, asserting that Mr. Awa attempted to charge the Grandes for telephone discussions about what the Association deemed as compliance with the Governing Documents.)

Mr. Awa is immunized from the Grandes' claims. The Grandes are precluded by the CC&Rs from pursuing any "damage, loss or prejudice suffered or

claimed" on account of "approval or disapproval of any plans [...] whether or not defective" or "the construction or performance of any work." The Counterclaim attempts to do just that. (Exhibit A at pages 7-9.)

For this additional reason, summary judgment should be granted.

## IV. CONCLUSION

Defendants respectfully request that the Court GRANT this Motion.

DATED: Honolulu, Hawaii, January 25, 2008.

/s/ John D. Zalewski
JOHN D. ZALEWSKI
Attorney for Counterclaim Defendants
NA PALI HAWEO COMMUNITY
ASSOCIATION and RONALD K. AWA