PERMISSION TO COPY DENIED, HRS 606.13, etc.                    1

IN THE CIRCUIT COURT OF THE FIRST CIRCUIT

STATE OF HAWAII

| | | |
|---|---|---|
| BRANDT HOMES, INC. | ) | CIVIL NO. 05-1-2061 |
| | ) | |
| vs. | ) | FURTHER NON-JURY TRIAL |
| | ) | |
| ANTHONY CHARLES GRANDE, ET AL. | ) | |
| | ) | |
| Defendants. | ) | |

PARTIAL TRANSCRIPT OF PROCEEDINGS

before the HONORABLE GLENN J. KIM, Judge presiding, Fourth Division, on Thursday, June 21, 2007.

APPEARANCES:

For the Plaintiff:   CID INOUYE, ESQ.
                     KELVIN KANESHIRO, ESQ.

For the Defendants:  STEVEN JACOBSON, ESQ.

For Na Pali Haweo:   ANTHONY WONG, ESQ.

REPORTED BY:
  JUNE SPOHN, CSR 236
  Official Court Reporter
  State of Hawaii

June Spohn, CSR 236
Official Court Reporter
First Circuit Court, State of Hawaii

EXHIBIT D

PERMISSION TO COPY DENIED, HRS 606.13, etc.

2

|  |  |  |
|---|---|---|
| | INDEX | |
| DEFENDANTS' WITNESS | DIRECT | CROSS |
| Anthony C. Grande, Jr. | 4 | 104 |
| (Resumed.) | 43 | |
| (Resumed.) | 49 | |
| (Resumed.) | 85 | |

| PLAINTIFFS' EXHIBITS | IN EVIDENCE |
|---|---|
| FF | 30 |
| HH | 38 |
| S | 113 |

| DEFENDANTS' EXHIBITS | |
|---|---|
| D-1 | 11 |
| D-2 | 11 |
| D-3 | 29 |
| D-15 | 92 |
| D-16 | 92 |
| D-40-A | 104 |
| D-40-C | 104 |
| D-42-A | 104 |
| D-42-C | 104 |
| D-43 | 104 |
| D-61 | 76 |

June Spohn, CSR 236
Official Court Reporter
First Circuit Court, State of Hawaii

PERMISSION TO COPY DENIED, HRS 606.13, etc.                                    3

| | | |
|---|---|---|
| 1 | D-70-H | 104 |
| 2 | D-70-O | 104 |

<pre>
                        June Spohn, CSR 236
                        Official Court Reporter
                First Circuit Court, State of Hawaii
</pre>

```
 1    THURSDAYS, JUNE 21, 2007                    10:59 O'CLOCK P.M.
 2                          --oOo--
 3                          *  *  *
 4              (Proceedings had, not transcribed.)
 5              Call your next witness, Mr. Jacobson.
 6              MR. JACOBSON:  Certainly.
 7              THE COURT:  I'm sorry.  I didn't hear you.
 8    You're calling Anthony Grande.
 9              MR. JACOBSON:  Oh, yes.  I apologize.
10    Mr. Grande.
11              THE COURT:  Thank you.
12                    ANTHONY C. GRANDE,
13    the defendant herein, called as a
      witness on his own behalf, having
14    been first duly sworn, was
      examined and testified as follows:
15
              THE CLERK:  Please have a seat.
16
                        DIRECT EXAMINATION
17
18    BY MR. JACOBSON:
19         Q.   Yes.  Could you please state your name for
20    the record?
21         A.   Yes.  Anthony C. Grande, Jr.
22         Q.   What does the C stand for?
23         A.   Charles.
24         Q.   You were -- you were one of the parties to
25    this action?
```

June Spohn, CSR 236
Official Court Reporter
First Circuit Court, State of Hawaii

PERMISSION TO COPY DENIED, HRS 606.13, etc.                    8

```
 1   something quick so I -- I made a purchase of one of the
 2   lands we presently have at 1251.
 3        Q.   When you say I, was that -- was this -- was
 4   this I or is it we?
 5        A.   We.  We.
 6        Q.   And this was -- this was after you were
 7   married?
 8        A.   Yeah.  Yes.
 9        Q.   You were married in 1999.  Do you recall when
10   you purchased the lot?
11        A.   2000.
12        Q.   Who did you purchased the lot from?
13        A.   From the developer.  Development had a
14   realtor that was working on the property and mobile-home-
15   type thing, and they were showing the properties, and we
16   went there to him and purchased it from them.
17        Q.   Okay.  At the time you purchased the
18   property, what -- were you given documents?
19        A.   Yes, sir.
20        Q.   What were those documents?
21        A.   The C.C.R.s and Design Guidelines, and
22   miscellaneous other -- just minor papers I need to sign, I
23   guess, for legal reasons.  I don't know.
24        Q.   Okay.  How many documents total were you
25   given say?
```

June Spohn, CSR 236
Official Court Reporter
First Circuit Court, State of Hawaii

```
 1        A.      Architectural Review Committee.
 2        Q.      And is -- is that part of some other body?
 3        A.      It's part of the Association at Na Pali
 4   Haweo, where the property is located.
 5        Q.      After you submitted to A.R.C., what happened?
 6        A.      They approved the plans, and then we started
 7   to look for a builder.
 8        Q.      Okay.  Were there changes made to the plans
 9   afterwards?
10        A.      Yes.
11        Q.      Okay.  Over what period of time?  Could --
12   could -- can you describe what changes?
13        A.      Yeah.  There was -- I -- I'd go to work, and
14   I -- I talked to a lot of pilots that had built houses
15   before.  They just gave me good ideas of how to improve
16   the house.  I bring the plans with me all the time, and we
17   -- we pull it out and show, you know, talk about it, and
18   they gave me good ideas and things to change.
19        Q.      Okay.  And then what happened with those
20   ideas?
21        A.      So I -- I come back to Ed Resh and say that,
22   okay, you should change this and make it better.  And we
23   made a lot of enhancements and make the house a lot
24   better.
25        Q.      Okay.  Were there -- were there enhancements
```

June Spohn, CSR 236
Official Court Reporter
First Circuit Court, State of Hawaii

PERMISSION TO COPY DENIED, HRS 606.13, etc.

14

```
 1   that were made for reasons other than the ones you just
 2   described?
 3        A.    No.  It was all to make the house better.
 4        Q.    Was there any problems with the way it was
 5   designed as to where the windows were?
 6        A.    Oh, yeah.  It -- yeah.  There was --
 7        Q.    What were those?
 8        A.    For instance, okay.  The -- we had some
 9   windows on the uphill side.  Our house is a little lower
10   than, for instance, Moribe, uphill, our neighbor.  And Ed
11   has some windows placed in our bedroom, for instance,
12   right behind our bed so that with the angle he could look
13   right down at in our bed.  And I didn't think that was a
14   good place for the window.  So I -- I figured I didn't
15   want him to look in my bedroom.  But we -- we just deleted
16   those windows.
17              And then otherwise, my downhill neighbor, we
18   had very large windows.  It made it look right into our
19   living room, and I -- I'm a private person.  I don't like
20   people looking in my house so we moved those windows
21   forward.
22        Q.    Did you talk to Mr. Resh about whether those
23   need to be submitted for the A.R.C. approval?
24        A.    Yes, sir.
25        Q.    And what -- what was -- what was the
```

June Spohn, CSR 236
Official Court Reporter
First Circuit Court, State of Hawaii

1    conversation?

2        A.    He said it's normal to have changes along the
3    way.  Everybody has changes with their house along the way
4    so we wait to the end, and we submit it all at once at the
5    end for final approval.  'Cause you're not going to pay
6    the five hundred dollars per submittal just for a faucet
7    change or something like that.  It's -- so it's going to
8    be little changes that we needed.  There's a few little
9    change that we made, and I wasn't going to pay five
10   hundred per submitted.  I don't think that is fair.

11       Q.    Okay.

12       A.    So --

13       Q.    And your understanding with --

14       A.    It's what Ed said.  It's the way -- way it's
15   done.

16       Q.    Okay.  And then what -- what happened with
17   respect to the plans?  Were they submitted?  Were the
18   plans eventually submitted to the City for approval?

19       A.    Yes.

20       Q.    Okay.  And those were the plans with -- with
21   the revisions you're talking about?

22       A.    Yes.

23       Q.    Okay.  Then what happened?

24       A.    Then the City approved it.

25       Q.    Okay.  What happened after the City approved

June Spohn, CSR 236
Official Court Reporter
First Circuit Court, State of Hawaii

PERMISSION TO COPY DENIED, HRS 606.13, etc.

35

```
 1              MR. JACOBSON:  That was the question I
 2   intended to ask.
 3              THE COURT:  Go ahead.
 4              MR. JACOBSON:  Q.  You understood that I was
 5   asking you about what happened after the meeting --
 6       A.      Yes, sir.
 7       Q.      -- when you answered that question.
 8              Okay.  And was it -- was any decision made on
 9   what to do after that meeting?
10       A.      Well, we were, we -- I was making a lot of
11   phone calls to the Association.  There was -- it -- there
12   was no decision made at this point yet, because the
13   Association was just not dealing with us.  They were not
14   accepting anything we were suggesting.  We were suggesting
15   things, and I was talking to Ron Awa on the phone a lot.
16       Q.      At some point did -- was -- was it determined
17   that a variance would be applied for?
18       A.      Yes, sir.
19       Q.      How did that decision come about?
20       A.      Well, my -- my neighbor, downhill neighbor,
21   he was on the A.R.C. -- around me, and he said don't worry
22   about it.  He said just put in for a variance and we'll
23   approve it.  So that's -- that's what we did.  We put in
24   for a variance, and it was denied.
25       Q.      Okay.  Handing you Exhibits HH.  What is that
```

June Spohn, CSR 236
Official Court Reporter
First Circuit Court, State of Hawaii

```
 1              MR. JACOBSON:  HH.
 2              THE COURT:  -- Is received into evidence.
 3                      (Plaintiffs' Exhibit HH was
 4                      Received in Evidence.)
 5              MR. JACOBSON:  Q.  Do you recall what the
 6     response was as to the application for a variance?
 7        A.    Denied.  They denied, yeah.
 8        Q.    I'm handing you document marked as
 9     Defendants' Exhibit 4.  What is that document?
10        A.    It's from Hawaiiana Management again, Jeff
11     Kloetzel.
12        Q.    You referred a minute ago to the -- when you
13     say the Association denied it, is this the letter of
14     denial that you received?
15        A.    Just finish reading here.  Yes, sir.
16        Q.    And you received that from the Association?
17        A.    Yes, sir.
18              MR. JACOBSON:  Move Exhibit D-4 into
19     evidence.
20              THE COURT:  Mr. Inouye.
21              MR. INOUYE:  My objection regarding this
22     exhibit is it's -- there's a lot of hearsay in this
23     document.  It's Jeff Kloetzel statements, and there are a
24     lot of issues in here that Mr. Grande certainly can't --
25     it's Mr. Kloetzel's words, and that's why I have a problem
```

                          June Spohn, CSR 236
                          Official Court Reporter
                  First Circuit Court, State of Hawaii

```
 1   with it.  If the last four paragraphs are of items that
 2   are statements that are hearsay, and it was authored by
 3   Mr. Kloetzel, and, therefore, I don't think it's
 4   appropriate for this witness to authenticate it.
 5            MR. JACOBSON:  Let me withdraw the request to
 6   go into evidence.
 7            THE COURT:  It's up to you, Mr. Jacobson.
 8            MR. JACOBSON:  Okay.
 9            THE COURT:  It's up to you.
10            MR. JACOBSON:  Okay.
11            THE COURT:  I -- well --
12            MR. JACOBSON:  I'm sorry.
13       Q.   It was -- was the variance denied on or about
14   October 29 of 2003?
15       A.   Yes, sir.
16       Q.   Okay.  What happened after that?
17       A.   A lot happened after that.  Do you mean
18   specifically?
19       Q.   Okay.  What happened -- what did you do after
20   the variance application been denied?
21       A.   Oh, we talked to Alice Moorehead, and -- and
22   Jeff.  We -- well --
23       Q.   No.  Okay.  And you talked to them, what --
24   what happened?
25       A.   We met up on -- at the -- at the house at one
```

June Spohn, CSR 236
Official Court Reporter
First Circuit Court, State of Hawaii

PERMISSION TO COPY DENIED, HRS 606.13, etc.

113

```
 1              MR. INOUYE:  At this time, we offer Exhibit S
 2   into evidence.
 3              MR. JACOBSON:  Relevance.  Foundation.
 4              THE COURT:  So you object on relevance and
 5   foundation grounds?
 6              MR. JACOBSON:  Also hearsay.  Mr. Tengan
 7   isn't a witness.
 8              THE COURT:  Well, based on Mr. Grande, what
 9   he just testified to and what he testified to on direct
10   examination, over your objection, I'm going to receive
11   this into evidence.
12                      (Plaintiffs' Exhibit S was
13                       Received in Evidence.)
14              MR. INOUYE:  Q.  Now, you received the Design
15   Guidelines in the year 2000; is that correct?
16        A.    That's correct.  When we bought the property.
17        Q.    And the C.C.R.s you would have received in
18   the same time frame, the year 2000?
19        A.    Yes, sir.
20        Q.    All right.  And did you reviewed either the
21   C.C.N.R.s or -- did you review the Design Guidelines at
22   the time you got them?
23        A.    No.
24        Q.    And prior to this litigation, did you review
25   either the Design Guidelines or the C.C.N.R.s?
```

June Spohn, CSR 236
Official Court Reporter
First Circuit Court, State of Hawaii

1   A.   Parts of them.

2   Q.   What parts did you review?

3   A.   Well, once it started happening, I started
4   reading the specific areas, and I still didn't quite
5   understand it.

6   Q.   Okay. 'Cause you're not an expert, the
7   C.C.N.R.s or the Design Guidelines?

8   A.   That's correct.

9   Q.   Did you get the C.C.N.R.s? Did you give the
10  C.C.N.R.s to Ed Resh?

11  A.   Either I gave them to him or he already had
12  them. I'm pretty sure he already had them. That's why I
13  -- I can't remember I actually handed it to him.

14  Q.   What about the Design Guidelines, did you
15  give them to Ed Resh?

16  A.   Same thing. I know he had a copy. I don't
17  know if I'd given him one. He build a number of houses up
18  there.

19  Q.   Okay. So as far as you knew, he was fairly
20  familiar with the Design Guidelines?

21  A.   Yes.

22  Q.   By the way, how much did you pay Ed Resh for
23  the work on this job?

24  A.   I paid him around ten, about eleven thousand
25  and then some changes added, another five hundred or a

```
 1  thousand.
 2       Q.   So totalled you paid him about eleven
 3  thousand dollars?
 4       A.   Eleven, twelve, yeah.
 5       Q.   All right.  And Ed Resh was your architect on
 6  this project; is that right?
 7       A.   Yes, sir.
 8       Q.   You hired him, right?
 9       A.   Yes, sir.
10       Q.   He -- he prepared the plans for you on your
11  behalf?
12       A.   Yes.
13       Q.   Is that right?
14       A.   Yes.
15       Q.   All right.  Now, as I understand, the first
16  set of plans that were drawn were drawn and then they were
17  submitted to the A.R.C. for approval; is that right?
18       A.   Yes.
19       Q.   All right.  And these plans, the A.R.C. plans
20  are plans that are different from the plans that you gave
21  to Mr. Brandt; is that right?
22       A.   In some ways, yes.
23       Q.   And you never gave the A.R.C. approved plans
24  to Mr. Brandt, correct?
25       A.   That's correct.
```

June Spohn, CSR 236
Official Court Reporter
First Circuit Court, State of Hawaii