1

IN THE CIRCUIT COURT OF THE FIRST CIRCUIT
STATE OF HAWAII

| | |
|---|---|
| BRANDT HOMES INCORPORATED, a Hawaii corporation,<br><br>    Plaintiff,<br><br>  vs.<br><br>ANTHONY CHARLES GRANDE and NARINDAR KAUR GRANDE; et al.,<br><br>    Defendants.<br>_____<br><br>ANTHONY CHARLES GRANDE and NARINDAR KAUR GRANDE,<br><br>    Counterclaimants,<br><br>  v.<br><br>BRANDT HOMES INCORPORATED; JEFFREY BRANDT; and NA PALI HAWEO COMMUNITY ASSOCIATION,<br><br>    Counterclaim-Defendants.<br>_____ | CIVIL NO. 05-1-2061-11<br>           KNB<br>(Foreclosure) |

DEPOSITION OF ANTHONY CHARLES GRANDE
Taken on June 14, 2007


EXHIBIT F

Page 2

1         DEPOSITION OF ANTHONY CHARLES GRANDE
2    Taken on behalf of Plaintiff and Counterclaim
3    Defendants Brandt Homes Incorporated and Jeffrey
4    Brandt at the offices of Reinwald O'Connor & Playdon
5    LLP, 2400 Makai Tower, Pacific Guardian Center, 733
6    Bishop Street, Honolulu, Hawaii, 96813, commencing at
7    10:13 a.m. on Thursday, June 14, 2007.
8
9    REPORTED BY:  JOAN IZUMIGAWA, CSR No. 136
                   Notary Public, State of Hawaii
10
11   APPEARANCES:
12   For Plaintiff and Counterclaim Defendants Brandt
     Homes Incorporated and Jeffrey Brandt:
13
         CID INOUYE, ESQ.
14       Reinwald O'Connor & Playdon LLP
         24th Floor, Makai Tower
15       Pacific Guardian Center
         733 Bishop Street
16       Honolulu, Hawaii  96813
         Ph:  (808) 524-8350
17
     For Defendants and Counterclaimants Anthony Charles
18   Grande and Narindar Kaur Grande:
19       STEVEN B. JACOBSON, ESQ.
         P.O. Box 240761
20       Honolulu, Hawaii  96824
         Ph:  (808) 377-1814
21
     Also present:  Jeffrey Brandt
22                  Marissa Lum
23
24
25

Page 3

1                       I N D E X
2
3
4
5    EXAMINATION BY:
6       Mr. Inouye                              4
7
8
9    EXHIBITS FOR IDENTIFICATION:
10       Exhibit A                              10
11       Exhibit B                              13
12       Exhibit C                              13
13       Exhibit D                              15
14       Exhibit E                              19
15       Exhibit F                              34
16       Exhibit G                              121
17       Exhibit H                              124
18       Exhibit I                              257
19       Exhibit J                              260
20       Exhibit K                              261
21
22
23
24
25

Page 4

1            ANTHONY CHARLES GRANDE,
2    Being first duly sworn to tell the truth, the whole
3    truth, and nothing but the truth, was examined and
4    testified as follows:
5                      EXAMINATION
6    BY MR. INOUYE:
7        Q. Please state your full name.
8        A. Anthony C. Grande, Jr.
9        Q. What is your address?
10       A. 125 Mar-Len Drive, Melbourne Beach, Florida.
11       Q. How old are you?
12       A. 43.
13       Q. Have you been deposed before?
14       A. Yes.
15       Q. On how many occasions?
16       A. I guess once.
17       Q. Generally what did that have to do with?
18       A. It was a previous business that I had.
19       Q. What kind of business was it?
20       A. Arcade.
21       Q. I'm sorry?
22       A. Arcade.
23       Q. Arcade?
24       A. Arcade, yeah.  Virtual reality arcade.
25       Q. Do you still have that business?

Page 5

1        A. No.  It was a long time ago.
2        Q. What was the nature of your deposition?  Why
3    were you being deposed?
4        A. I don't remember the details -- that much
5    detail; it was a while ago.  But it was a case that I
6    won.  That -- that's what you need to know, right?
7        Q. Well, I'm just wondering:  What was the
8    nature of the case?
9        A. Oh, okay.  They -- I paid them up front cash
10   to provide a service, to provide a -- a product, and
11   they did not deliver the product but they kept the
12   money.
13       Q. Were you a defendant, or were you a
14   plaintiff?
15       A. A plaintiff.
16       Q. Generally when was that?
17       A. In the 90s, mid 90s.
18       Q. Have you been in any other lawsuits --
19       A. No.
20       Q. -- as a plaintiff or defendant other than
21   this one?
22       A. Other than with the -- with the association
23   and everything?
24       Q. Right.
25       A. No.

Page 158

1  A. So I can't prove it according to the plans
2  in exhibit but --
3  Q. You don't have any proof of your statement,
4  right? Right? Isn't that true? Isn't that true?
5  Your statement that the side was unfinished by the
6  garage, you don't have any pictures in your exhibits
7  showing that, right?
8  A. I can prove it because of the work that was
9  done on it that I have receipts for that he -- he did
10 the stucco on.
11 Q. He did the -- there was unfinished stucco,
12 but it doesn't say in the receipts if he did it on
13 the side of the garage, right?
14 A. Well, take it however you want to take it.
15 Q. Does it say in the receipts that he had to
16 do stucco on the side of the garage? You said you
17 can prove it. Be my guest. Where is -- in the
18 receipt does it say they did stucco on the side of
19 the garage?
20    MR. JACOBSON: Objection to argumentative
21 question.
22 A. I -- I --
23    MR. JACOBSON: You can ask him if he has a
24 document showing --
25    MR. INOUYE: He just told me, Counsel, that

Page 159

1  he can prove it.
2  Q. BY MR. INOUYE: I'm asking for where in the
3  documents that -- does it show that they did stucco
4  on the side of the garage in the invoice? You don't
5  have pictures of it.
6  A. Let me look for the invoice.
7  Q. You probably want to look at Exhibit 58.
8  Why don't you read for me what the description of the
9  work says.
10 A. Is this Exhibit 58?
11 Q. I don't know.
12    MR. INOUYE: They're your exhibits, Counsel.
13 A. I'm just saying give me a chance to find it,
14 here.
15 Q. BY MR. INOUYE: Exhibit 58 in fact says,
16 Install base coat of plaster in front of garage and
17 lid of eaves and lanais, correct? Isn't that
18 correct? Isn't that what it says?
19 A. Yes.
20 Q. It doesn't say doing any work on the sides
21 of the garage, right? Does it?
22 A. Well, yes. You can take it --
23 Q. And in fact --
24 A. No, no, no.
25 Q. Wait. In fact, if you look at the next

Page 160

1  sentence, it says, Install finish coat of plaster in
2  front of garage, right?, and it says, and lid of
3  eaves and lanai, correct?
4  A. That's correct.
5  Q. Correct?
6  A. That's what it says.
7  Q. It doesn't say anything about finishing
8  plaster on the side of the garage?
9  A. That's correct. It does not say "side,"
10 correct.
11 Q. All right. So your exhibit that you have
12 actually contradicts what you say, right?
13 A. If you say so. I don't -- no, I don't -- I
14 don't think it does, but the -- but if you do,
15 that's -- that's your interpretation of it.
16 Q. Okay. So what you're saying is, Exhibit 58
17 says that they did work on the sides of the garage,
18 right? That's what you're saying, right?
19 A. Yes.
20 Q. Tell me where the word "side" is. Where
21 they say they did install --
22 A. It does not say "side."
23 Q. All right. Now, let's go back to our
24 Exhibit PP. It says --
25 A. TT?

Page 161

1  Q. PP.
2  A. Okay.
3  Q. Page 3. By no later than March 16, 2004,
4  submit to the architectural review committee plans
5  which address each of the issues and/or deficiencies
6  discussed in the January 28, 2004, letter from Ronald
7  Awa, AIA, excluding the front setback issue which is
8  under consideration by the board. Do you see that?
9  A. Yes, sir.
10 Q. You had known of the deficiencies as of
11 January 28, 2004, that the association was claiming,
12 right?
13 A. They -- yeah.
14 Q. All right. Did you ask your architect to
15 address those architectural issues?
16 A. Actually, I didn't know --
17    MR. JACOBSON: Excuse me. Excuse me.
18    Object to the question as vague, as
19 ambiguous. I'm not sure what you mean by "address."
20 It's this term I'm objecting to.
21 Q. BY MR. INOUYE: Go ahead. You can answer.
22 A. Restate the question.
23 Q. Did you ask your architect, Mr. Resh, to
24 address the issues or deficiencies discussed in the
25 January 28, 2004, letter in this March 4, 2004,

## Page 162

1 letter?
2  A. I don't recall.
3  Q. Did you -- he would be the -- Mr. Resh would
4 be the one who would generate plans, right? Not you.
5 You're not an architect --
6  A. Correct.
7  Q. -- right?
8  A. Correct.
9  Q. Okay. So if plans were to be generated to
10 address these issues, they have to be done by
11 Mr. Resh, right?
12  A. Correct.
13  Q. You don't recall whether you asked him to
14 address these issues, right? Is that correct?
15    MR. JACOBSON: Is that what you just said?
16    THE WITNESS: That -- yeah.
17  A. Yeah. I don't recall.
18  Q. BY MR. INOUYE: Why don't you go to Exhibit
19 KK. See that document?
20  A. Yeah.
21  Q. So this is 6 days later, right? And the
22 association is asking for you to submit plans by
23 March 16, right?
24    MR. JACOBSON: Wait a second. Exhibit KK is
25 dated December 17, 2003?

## Page 163

1    MR. INOUYE: No, it's not.
2    KKK, I'm sorry.
3  A. Okay. State your question again now I'm on
4 the right one.
5  Q. BY MR. INOUYE: All right. Exhibit KKK is a
6 letter dated March 10, 2004, right?
7  A. Mm-hm. Yes.
8  Q. Okay. This is 6 days after the letter from
9 the association dated March 4, 2004, right?
10  A. Yes.
11  Q. The association is asking you to submit
12 plans no layer than March 16, 2004, right?
13  A. That's what it says here, yes.
14  Q. And Mr. Resh writes to the Kamehame Ridge
15 architectural review committee and says that he had
16 not been asked by you to submit requested drawings by
17 March 16, right?
18  A. I was probably on a trip. That's probably
19 why. I was probably on a trip.
20  Q. Okay. Are you saying that between March 4th
21 and March 10th, you're not available at all?
22  A. I don't recall. I don't remember.
23  Q. But nevertheless, you don't disagree with
24 what Mr. Resh is saying? That you had not been
25 asked -- he had not been asked by you to submit

## Page 164

1 drawings, right? You don't disagree with that, do
2 you?
3  A. Yeah, I don't -- I don't think so.
4  Q. Do you disagree with that or --
5  A. I don't -- I -- I think it's correct.
6  Q. So Exhibit KKK is not inaccurate? You
7 didn't ask Mr. Resh to get the drawings to --
8  A. That's right.
9  Q. -- Na Pali by March 16, 2004, right?
10  A. That's correct.
11  Q. And you're saying it's because why?
12  A. I don't remember why.
13  Q. For whatever reason, you didn't do it?
14  A. Yeah.
15  Q. All right. Why don't you -- all right. Why
16 don't you go to Exhibit LLL. It's a letter dated May
17 25, 2004, from Neeley Anderson to your counsel, Steve
18 Jacobson. Do you recognize this letter?
19  A. Yes.
20    (Discussion off the record.)
21    (Recess: 3:10 p.m. to 3:20 p.m.)
22    MR. INOUYE: I understand that the motion
23 regarding Ed Resh is on tomorrow at 8:30, and so I'm
24 notifying you because I understand that. I'm
25 checking on the other 2 that were filed yesterday. I

## Page 165

1 think those are set tomorrow, too, but I'm having
2 them check on that.
3  Q. BY MR. INOUYE: We were on Exhibit LLL.
4 It's a letter from Lance Fujisaki to Steve Jacobson
5 dated May 25, 2004. Do you recognize that document?
6  A. Yes, sir.
7  Q. Did you see it around May 25, 2004?
8  A. Most likely sometime after that date or
9 shortly after that date.
10  Q. It says in this letter that, The Grandes
11 failed to provide us with documents requested in our
12 March 4, 2004, letter, right?
13  A. That's what it says.
14  Q. The March 4th letter requested plans by
15 March 16, and your recollection is, You didn't ask
16 Resh to do that, correct?
17  A. That's correct.
18  Q. And then -- so this is May 25, 2004. Did
19 you ask Resh to do those plans by May of 2004?
20  A. Actually, Resh was very sick at that time so
21 we were -- I say I didn't ask him, but actually he --
22 he really was so sick that he was having a tough time
23 getting them done and I had a tough time getting
24 ahold of him. This -- this is -- yeah, it was really
25 hard for him at that time. He was going through a