I hereby certify that this is
a true copy from the records
of the Bureau of Conveyances.

*M. Pang*

Registrar of Conveyances
Assistant Registrar, Land Court
State of Hawaii

**91-049173**

STATE OF HAWAII
BUREAU OF CONVEYANCES
RECORDED

'91 APR 18  AM 9 34

S. FURUKAWA, REGISTRAR

---

| LAND COURT | REGULAR SYSTEM |
|---|---|

AFTER RECORDATION, RETURN BY MAIL (X)   PICK-UP ( )

BEDFORD PROPERTIES INC.
P. O. Box 25007
Honolulu, HI 96825
Attn: Amy Daleo

This instrument has been prepared by
or certified by FORT-DENT TITLE &
ESCROW OF HAWAII as an accommodation only. It has not been examined as
to its execution or as to its effect on the title
to the property described therein.

*accom 91-167*

LEASE NO. _28,681_

## NA PALI HAWEO

## DECLARATION OF COVENANTS,

## CONDITIONS AND RESTRICTIONS

# EXHIBIT I

# TABLE OF CONTENTS

|  |  | PAGE |
|---|---|---|
| ARTICLE I | . . . . . . . . . . . . . . . . . . . | 1 |
| BACKGROUND AND PURPOSES | . . . . . . . . . | 1 |
| ARTICLE II | . . . . . . . . . . . . . . . . . | 2 |
| DEFINITIONS | . . . . . . . . . . . . . . . . | 2 |
| 2.1 | Architect . . . . . . . . . . . . | 2 |
| 2.2 | Architectural Committee . . . . . . | 2 |
| 2.3 | Architectural Committee Rules . . . | 2 |
| 2.4 | Articles . . . . . . . . . . . . . | 2 |
| 2.5 | Association . . . . . . . . . . . . | 2 |
| 2.6 | Board . . . . . . . . . . . . . . | 2 |
| 2.7 | Bylaws . . . . . . . . . . . . . . | 3 |
| 2.8 | Common Area . . . . . . . . . . . | 3 |
| 2.9 | Community-Wide Standard . . . . . | 3 |
| 2.10 | Declaration . . . . . . . . . . . | 3 |
| 2.11 | Declarant . . . . . . . . . . . . | 3 |
| 2.12 | Excavation . . . . . . . . . . . . | 3 |
| 2.13 | Exclusive Common Areas . . . . . | 3 |
| 2.14 | Fill . . . . . . . . . . . . . . | 3 |
| 2.15 | Fiscal Year . . . . . . . . . . . | 3 |
| 2.16 | Improvements . . . . . . . . . . | 4 |
| 2.17 | Lot . . . . . . . . . . . . . . | 4 |
| 2.18 | Manager . . . . . . . . . . . . . | 4 |
| 2.19 | Member . . . . . . . . . . . . . | 4 |
| 2.20 | Neighborhood . . . . . . . . . . | 4 |
| 2.21 | Neighborhood Assessments . . . . | 4 |
| 2.22 | Neighborhood Expenses . . . . . . | 4 |
| 2.23 | Operating Fund . . . . . . . . . | 4 |
| 2.24 | Owner . . . . . . . . . . . . . . | 4 |
| 2.25 | Project . . . . . . . . . . . . . | 5 |
| 2.26 | Residence . . . . . . . . . . . . | 5 |
| 2.27 | Residential Area . . . . . . . . | 5 |
| 2.28 | Residential Use . . . . . . . . . | 5 |
| 2.29 | Rules . . . . . . . . . . . . . . | 5 |
| 2.30 | Subdivision Map . . . . . . . . . | 5 |
| 2.31 | Supplemental Declaration . . . . | 6 |
| 2.32 | Trustees . . . . . . . . . . . . | 6 |
| ARTICLE III | . . . . . . . . . . . . . . . . | 6 |
| PROPERTY SUBJECT TO RESTRICTIONS | . . . . . . | 6 |
| 3.1 | The Project . . . . . . . . . . . | 6 |

i

| | | PAGE |
|---|---|---|
| 3.2 | Land Classification . . . . . . . . . . | 6 |
| 3.3 | Annexation . . . . . . . . . . . . . . | 7 |
| | 3.3.1  Declarant's Annexation Rights . . . . | 7 |
| | 3.3.2  Ownership of Common Area Within Annexed Property . . . . . . . . | 8 |
| | 3.3.3  Rights and Obligations of Owners . . | 8 |
| | 3.3.4  No Creation of Restrictions to Adjacent Property . . . . . . . . | 8 |
| 3.4 | Withdrawal . . . . . . . . . . . . . . | 9 |
| ARTICLE IV . . . . . . . . . . . . . . . . . . | | 9 |
| PROPERTY RIGHTS:  RESIDENTIAL AREA . . . . . . . . | | 9 |
| 4.1 | Design Guidelines . . . . . . . . . . | 9 |
| 4.2 | Signs . . . . . . . . . . . . . . . | 11 |
| 4.3 | Residential Area: Permitted Uses and Limitations; Construction and Alteration of Improvements . . . . . . . . | 11 |
| | 4.3.1  Residence and Use . . . . . . . . | 11 |
| | 4.3.2  Restrictions on Further Subdivision . . . | 12 |
| | 4.3.3  Rental of Lots . . . . . . . . | 12 |
| | 4.3.4  Improvements, Alterations and Repairs . . | 12 |
| | 4.3.5  Temporary Occupancy . . . . . . . . | 13 |
| | 4.3.6  Animals . . . . . . . . . . . | 13 |
| | 4.3.7  Garages . . . . . . . . . . . | 13 |
| | 4.3.8  Motor Vehicles . . . . . . . . | 14 |
| | 4.3.9  Parking . . . . . . . . . . . | 14 |
| | 4.3.10 Unreasonable Sources of Annoyance . . | 14 |
| | 4.3.11 Fires . . . . . . . . . . . . | 15 |
| | 4.3.12 Machinery and Equipment . . . . . | 15 |
| | 4.3.13 Diseases and Insects . . . . . . | 15 |
| | 4.3.14 Storage . . . . . . . . . . . | 15 |
| 4.4 | View Channels . . . . . . . . . . . | 15 |
| 4.5 | Exterior Maintenance of Residences . . . . . . | 15 |
| 4.6 | Exterior Maintenance of Lots . . . . . . . | 16 |
| 4.7 | Owner's Easements . . . . . . . . . . | 16 |
| | 4.7.1  Reciprocal Appurtenant Utility Easements . . . . . . . . | 16 |
| | 4.7.2  Common Area Easements . . . . . . | 16 |
| 4.8 | Residential Area:  Repair and Reconstruction . . . . . . . . | 16 |
| 4.9 | Variances . . . . . . . . . . . . . | 17 |

ii

PAGE

ARTICLE V . . . . . . . . . . . . . . . . . . . . 17

PROPERTY RIGHTS:  COMMON AREA . . . . . . . . . . . 17

   5.1   Common Area Ownership . . . . . . . . . . . 17

   5.2   Common Area Maintenance . . . . . . . . . . 18

      5.2.1   Limitation on Construction . . . . . 18
      5.2.2   Maintenance by Association . . . . . . 18
      5.2.3   Damage or Destruction of Common Area . . 19

         5.2.3.1   Election Not to Repair or
                Reconstruct . . . . . . . . 19
         5.2.3.2   Disbursement of Proceeds . . . . 19

      5.2.4   Neighborhood Maintenance . . . . . . 20

   5.3   Owners' Easements of Enjoyment in Common Area . 20
   5.4   Delegation of Right of Use . . . . . . . . . 21
   5.5   Restriction of Severability of Common Area . . 22
   5.6   Indemnification . . . . . . . . . . . . . . 22
   5.7   Exclusive Common Areas; Neighborhoods . . . . 23
   5.8   Entry Way Common Area . . . . . . . . . . . 23

ARTICLE VI . . . . . . . . . . . . . . . . . . . 23

NA PALI HAWEO COMMUNITY ASSOCIATION . . . . . . . . . 24

   6.1   The Organization . . . . . . . . . . . . . 24

      6.1.1   Nonprofit Corporation . . . . . . . . 24
      6.1.2   Successor Associations . . . . . . . 24

   6.2   Membership . . . . . . . . . . . . . . . . 24

      6.2.1   Classes of Members . . . . . . . . . 24

         6.2.1.1   Class A Members . . . . . . . 24
         6.2.1.2   Class B Members . . . . . . . 24

      6.2.2   Member's Rights and Duties . . . . . 24
      6.2.3   Rights Upon Dissolution . . . . . . . 25

   6.3   Voting . . . . . . . . . . . . . . . . . . 25

      6.3.1   Members Entitled to Vote . . . . . . 25

         6.3.1.1   Class A Members . . . . . . . 25

iii

PAGE

6.3.1.2   Class B Member . . . . . . . . . 25

6.3.2   Voting Procedures . . . . . . . . . . . . 26

6.4   Assessments and Dues . . . . . . . . . . . 26
6.5   Initial Board of Directors . . . . . . . . . 26
6.6   Subsequent Board of Directors . . . . . . . 26
6.7   Duties of the Association . . . . . . . . . 26

6.7.1   Members and Annexed Property . . . . . 26
6.7.2   Acceptance of Property by the
          Association . . . . . . . . . . . . 27
6.7.3   Annual Membership Meetings . . . . . . 27
6.7.4   Common Area Maintenance . . . . . . . 27
6.7.5   Operation of Common Area . . . . . . . 27
6.7.6   Title to Property Upon Disolution . . . 27
6.7.7   Payment of Taxes . . . . . . . . . . 27
6.7.8   Insurance . . . . . . . . . . . . . . 28

6.7.8.1   Fire and Property Damage
            Insurance . . . . . . . . 28
6.7.8.2   Public Liability Insurance . . 28
6.7.8.3   Fidelity Bonds . . . . . . . 29
6.7.8.4   Neighborhood Insurance . . . . 29
6.7.8.5   Other Insurance . . . . . . . 29
6.7.8.6   Premiums . . . . . . . . . . 29
6.7.8.7   Review . . . . . . . . . . . 29

6.7.9   Rule Making . . . . . . . . . . . . . 29
6.7.10   Architectural Committee . . . . . . . 29
6.7.11   Enforcement of Declaration and Rules . . 30
6.7.12   Accounting Statements . . . . . . . . 30
6.7.13   Other . . . . . . . . . . . . . . . 30

6.8   Powers and Authority of the Association . . . . 30

6.8.1   Right of Entry and Enforcement . . . . 31
6.8.2   Easements and Rights of Way;
          Dedication; Sale or Exchange . . . . 32
6.8.3   Employment of Manager . . . . . . . . 32
6.8.4   Services . . . . . . . . . . . . . . 32
6.8.5   Professional Services . . . . . . . . 33
6.8.6   Utilities . . . . . . . . . . . . . . 33
6.8.7   Other Property . . . . . . . . . . . 33
6.8.8   Maintenance of Project . . . . . . . . 33
6.8.9   Mortgage of Property . . . . . . . . . 33
6.8.10   Delegation . . . . . . . . . . . . . 34

6.9   Project Rules . . . . . . . . . . . . . . 34

iv

G 0362

PAGE

6.9.1   Rulemaking Power . . . . . . . . . . 34
6.9.2   Distribution of Rules . . . . . . . 34
6.9.3   Amendment of Rules . . . . . . . . . 34

6.10   Breach of Rules or Regulations . . . . . . . 35
6.11   Liability and Indemnity of the
        Board of Directors . . . . . . . . . . 35

ARTICLE VII . . . . . . . . . . . . . . . . . . . . . 36

FUNDS AND ASSESSMENTS . . . . . . . . . . . . . . . . 36

7.1   Operating Fund . . . . . . . . . . . . . . . . 36
7.2   Maintenance and Operation Assessments . . . . 36

        7.2.1   Regular Assessments . . . . . . . . 36
        7.2.2   Time and Manner of Payment of
                Assessments . . . . . . . . . . . 37
        7.2.3   Neighborhood Assessments . . . . . 38

7.3   Reimbursement Assessment . . . . . . . . . . . 38
7.4   Capital Improvement Fund . . . . . . . . . . . 38
7.5   Capital Improvement Assessment . . . . . . . . 38
7.6   Special Assessments . . . . . . . . . . . . . 39
7.7   Default in Payment of Assessments . . . . . . 39
7.8   Association Funds . . . . . . . . . . . . . . 42
7.9   Failure to Fix Maintenance Assessments . . . . 42
7.10  Parties Exempt from Assessments . . . . . . . 43

ARTICLE VIII . . . . . . . . . . . . . . . . . . . . . 43

CAPITAL IMPROVEMENTS . . . . . . . . . . . . . . . . . 43

8.1   Petition; Association Approval . . . . . . . . 43
8.2   Owner Approval . . . . . . . . . . . . . . . . 44
8.3   Construction of Improvement . . . . . . . . . 44

ARTICLE IX . . . . . . . . . . . . . . . . . . . . . . 44

ARCHITECTURAL COMMITTEE . . . . . . . . . . . . . . . 44

9.1   Organization . . . . . . . . . . . . . . . . . 44
9.2   Designation of Members and Terms of Office . . 44

        9.2.1   Initial Members . . . . . . . . . . 44
        9.2.2   Terms of Office . . . . . . . . . . 44
        9.2.3   Appointment and Removal . . . . . . 44
        9.2.4   Resignations . . . . . . . . . . . 45
        9.2.5   Vacancies . . . . . . . . . . . . . 45

v

G 0363

                                                                    PAGE

9.3    Duties . . . . . . . . . . . . . . . . . 45
9.4    Meetings . . . . . . . . . . . . . . . . 45
9.5    Architectural Committee Rules . . . . . . 45
9.6    Design Review Applications . . . . . . . . 46
9.7    Proceeding with Work . . . . . . . . . . . 46
9.8    Failure to Complete Work . . . . . . . . . 46
9.9    Inspection of Work . . . . . . . . . . . . 46
9.10   Waiver; Governmental Approvals . . . . . . 48
9.11   Estoppel Certificate . . . . . . . . . . . 48
9.12   Liability and Indemnity of the
       Architectural Committee . . . . . . . . . 48
9.13   Nonexistence of Architectural Committee . . 49
9.14   Non-liability for Approval . . . . . . . . 49

ARTICLE X . . . . . . . . . . . . . . . . . . . 49

LIMITATION OF RESTRICTIONS ON DECLARANT . . . . . 49

10.1   Limitation of Restrictions . . . . . . . . 49
10.2   Declarant's Right To Assign Rights . . . . 50
10.3   Easement Over Common Area . . . . . . . . . 50
10.4   Reservation of Right to Grant Easements . . 51
10.5   Construction of Residences; Variance . . . 51

ARTICLE XI . . . . . . . . . . . . . . . . . . . 51

MORTGAGES . . . . . . . . . . . . . . . . . . . . 51

11.1   Notices of Action . . . . . . . . . . . . . 51
11.2   Mortgage Consent Required If No Restoration . 52
11.3   Mortgagee Consent for Termination of
       Association . . . . . . . . . . . . . . . . 52
11.4   Mortgagee Consent of Amendments . . . . . . 52
11.5   No Priority . . . . . . . . . . . . . . . . 53
11.6   Notice to Association . . . . . . . . . . . 53
11.7   Applicability . . . . . . . . . . . . . . . 54
11.8   Failure of Mortgagee to Respond . . . . . . 54

ARTICLE XII . . . . . . . . . . . . . . . . . . . 54

MISCELLANEOUS PROVISIONS . . . . . . . . . . . . . 54

12.1      Amendment and Duration . . . . . . . . . 54

          12.1.1   Amendment By Declarant . . . . . 54
          12.1.2   Amendment By Owners . . . . . . . 54
          12.1.3   Consent of Trustees . . . . . . . 55
          12.1.4   Duration . . . . . . . . . . . . 55

12.2      Enforcement and Nonwaiver . . . . . . . . 55

vi

G 0364

PAGE

| | | | |
|---|---|---|---|
| 12.2.1 | Right of Enforcement | | 55 |
| 12.2.2 | Violations and Unreasonable Sources of Annoyance | | 55 |
| 12.2.3 | Violation of Law | | 56 |
| 12.2.4 | Remedies Cumulative | | 56 |
| 12.2.5 | Nonwaiver | | 56 |

12.3  Condemnation of Common Area . . . . . . . . 56
12.4  Security . . . . . . . . . . . . . . . . . . . 57
12.5  Construction and Severability;
      Singular and Plural; Titles . . . . . . . . 57

| | | | |
|---|---|---|---|
| 12.5.1 | Restrictions Construed Together | | 57 |
| 12.5.2 | Restrictions Severable | | 57 |
| 12.5.3 | Singular Includes Plural | | 58 |
| 12.5.4 | Captions | | 58 |

12.6  Assignment of Power . . . . . . . . . . . . . 58
12.7  Notices, Documents, Delivery . . . . . . . . 58
12.8  Notification Upon Sale . . . . . . . . . . . 59

ATTACHMENTS

Exhibit A          Real Property Description
Exhibit B          Description of Additional Property

vii

G 0365

DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS
OF
NA PALI HAWEO SUBDIVISION

THIS DECLARATION, effective upon recordation in the Bureau of Conveyances of the State of Hawaii, is made by the TRUSTEES OF THE ESTATE OF BERNICE PAUAHI BISHOP, whose place of business and post office address is 567 South King Street, Suite 200, Honolulu, Hawaii 96813 (herein, with their successors in trust and assigns, called the "Trustees"), and HAWAII KAI DEVELOPMENT COMPANY, a Nevada corporation, whose place of business and post office address is Hawaii Kai Corporate Plaza, 6600 Kalanianaole Highway, Suite 300, Honolulu, Hawaii 96825 (herein, with its successors and assigns, called "Declarant").

ARTICLE I

BACKGROUND AND PURPOSES

A. The initial property subject to this Declaration consists of the following:

(1) Fifty-eight (58) residential Lots, and the common area within the real property described in and shown on File Plan 1998 entitled "Kamehame Ridge Subdivision Unit II-Phase I" filed in the Bureau of Conveyances of the State of Hawaii; and

(2) Three (3) residential Lots, and the common area within the real property described in and shown on File Plan 2035 entitled "Kamehame Ridge Subdivision Unit II-Phase IA" filed in the Bureau of Conveyances of the State of Hawaii; and

(3) Seventy-one (71) residential Lots, and the common area within the real property described in and shown on File Plan 2028 entitled "Kamehame Ridge Subdivision Unit II-Phase II-A" filed in the Bureau of Conveyances of the State of Hawaii; and

(4) Sixty-one (61) residential Lots, and the common area within the real property described in and shown on File Plan 2033 entitled "Kamehame Ridge Subdivision Unit II-Phase II-B" filed in the Bureau of Conveyances of the State of Hawaii,

all as more fully described in Exhibit A attached hereto. Additional property may later be annexed and made subject to this Declaration in one or several increments by Supplemental Declarations from time to time as set forth in Section 3.3. That property may consist of portions or all of the real property described in Exhibit A and/or Exhibit B; and any consolidations or resubdivisions thereof. The property which is from time to time subject to this Declaration shall be referred to as the "Project."

Declaration any land it may now own or hereafter acquire other than that described in Exhibit A or such amendment.

3.4  Withdrawal:  The Declarant reserves the right to amend this Declaration, with the consent of the Trustees, at any time so long as it holds an unexpired option to expand the community pursuant to this Article, without prior notice and without the consent of any person or entity other than the Trustees, for the purpose of removing certain portions of the Project then owned by the Declarant or its affiliates from the provisions of this Declaration, provided such withdrawal is not unequivocally contrary to the overall, uniform scheme of development for the Project.  For so long as any Common Area, Lot or other property subject to this Declaration is owned in fee simple by the Trustees, the Trustees reserve the right to amend this Declaration, with the consent of Declarant, without prior notice and without the consent of any person or entity other than the Declarant, for the purpose of removing certain portions of the Project then owned by the Trustees or its affiliates from the provisions of this Declaration, provided such withdrawal is not unequivocally contrary to the overall, uniform scheme of development for the Project.

ARTICLE IV

PROPERTY RIGHTS:  RESIDENTIAL AREA

4.1  Design Guidelines:  The Declarant shall prepare the initial design and development guidelines and applications and review procedures (the "Design Guidelines") which shall be applicable to all construction activities within the Project.  The initial Design Guidelines may be amended from time to time by the Declarant (prior to its adoption by the Architectural Committee) without prior notice or consent of any person or entity.  The Design Guidelines may contain general provisions applicable to all of the properties within the Project, as well as specific provisions which vary from one portion of the Project to another depending upon the location, unique characteristics, and intended use.  The Architectural Committee, acting on behalf of the Board of Directors, shall adopt such Design Guidelines at its initial organizational meeting and, thereafter shall have sole and full authority to amend the provisions which apply solely to residential construction or construction activities within the Project.

The Architectural Committee shall make the Design Guidelines available to Owners, builders, and developers who seek to engage in development of or construction upon  all of any portion of the Project.  In the discretion of the Declarant, such Design Guidelines may be recorded in the Bureau of Conveyances of the State of Hawaii, in which event the recorded version, as it may unilaterally be amended from time to time by the Architectural Committee by recordation of amendments thereto, shall control in the event of any dispute as to which version of the Design Guidelines was in effect at any particular

c:\bedford\napali\ccr.5
April 8, 1991                                    9

G 0374

time.   All Owners, builders, and developers shall conduct their activities strictly in accordance with the Design Guidelines.

Any amendments to the Design Guidelines adopted from time to time by the Architectural Committee in accordance with this Section shall apply to construction and modifications commenced after the date of such amendment only, and shall not apply to require modifications to or removal of structures previously approved by the Architectural Committee once the approved construction or modification has commenced.

The Design Guidelines shall include detailed application and review procedures.  In addition, plans and specifications showing the nature, kind, shape, color, size, materials, and location of such modifications, additions, or alterations, shall be submitted to the Architectural Committee for approval as to quality of workmanship and design and as to harmony of external design with existing structures, and as to location in relation to surrounding structures, topography, and finishing grade elevation.  No permission or approval shall be required to repaint in accordance with originally approved color scheme, or to rebuild in accordance with originally approved plans and specifications.

Any construction or reconstruction of, or the refinishing or alteration of any part of the exterior of, any Improvement upon any Lot is absolutely prohibited until and unless the Owner of such Lot first obtains the approval therefor from the Architectural Committee and otherwise complies with all of the provisions of the Design Guidelines and/or this Declaration.  The Association may remove any Improvement constructed, reconstructed, refinished, altered or maintained in violation of this Section and the Owner thereof shall reimburse the Association for all expenses incurred in connection therewith.  Any Owner proposing to construct or reconstruct, or to refinish or alter the Lot, or any part of the exterior of, any Improvement on or within his Lot, or to perform any work which under this Section requires the prior approval of the Architectural Committee, shall apply to the Architectural Committee for approval.

Nothing contained herein shall be construed to limit the right of an Owner to remodel or redecorate the interior of structures comprising a Lot in any manner desired.  However, modifications or alterations to the interior of screened porches, balconies, decks, patios, and similar portions of the Lot visible from outside the Lot shall be subject to approval.  In the event that the Architectural Committee fails to approve or to disapprove such plan within fifty (50) days after submission of all information and materials reasonably requested, the plans shall be deemed approved.  However, no approval, whether expressly granted or deemed granted pursuant to the foregoing, shall be inconsistent with the Design Guidelines unless a variance has been granted in writing by the Architectural Committee pursuant to Section 4.9 below.

c:\bedford\napali\ccr.5
April 8, 1991                                    10

G 0375

in the Project. In the event said Owner does not commence such rebuilding or repair within a reasonable time, which in no event shall exceed one (1) year from the occurrence of such damage or destruction, the Association may bring suit to compel Owner to perform said rebuilding or repair.

4.9 <u>Variances</u>: The Architectural Committee may, but shall not be required to, authorize variances from compliance with any of the provisions of the Design Guidelines when circumstances such as, but not limited to, topography, natural obstructions, hardship, or aesthetic or environmental considerations require, as determined in the sole discretion of the Architectural Committee, but only in accordance with duly adopted rules and regulations. Such variances may only be granted, however, when unique circumstances exist and no variance shall (a) be effective unless in writing, (b) be contrary to the restrictions set forth in the body of this Declaration or any applicable Supplemental Declaration, or (c) estop the Architectural Committee from denying a variance in other circumstances. For purposes of this Section, the inability to obtain approval of any governmental agency, the issuance of any permit, or the terms of any financing shall not be considered a hardship warranting a variance. No variance from the requirements of Sections 4.3.1 will be permitted unless the Owner or his architect has obtained the prior written approval for such variance from the Director of Land Utilization of the City and County of Honolulu.

ARTICLE V

PROPERTY RIGHTS:   COMMON AREA

5.1 <u>Common Area Ownership</u>: The Common Area shall be conveyed and/or demised to and owned and/or leased by the Association and the Association shall accept the conveyance of the Common Area transferred to it pursuant to this Section. The Association will from time to time promptly upon Declarant's or Trustees' request, execute and deliver to or accept from the Trustees conveyances (lease or fee) demising to the Association such Common Area or parts thereof as Declarant or Trustees may specify. Fee simple transfers shall be for a consideration of one dollar ($1.00). Leases shall be at a rent of one dollar ($1.00) per year plus all real property taxes and assessments thereon accruing and all rates and other charges connected therewith during such term. Conveyances may provide for the Association's use, possession, maintenance, repair and administration of the Common Area in a manner satisfactory to the Trustees and consistent with the provisions of this Declaration. If within thirty (30) days from the date of the Declarant's or Trustees' request therefor, the Association shall fail to accept, execute and deliver to the Trustees any of the aforesaid conveyances, the Association hereby irrevocably appoints the Declarant as its attorney-in-fact with full power and authority to accept, execute and deliver to the Trustees any such conveyances for and on behalf of the Association and in the

c:\bedford\napali\ccr.5
April 8, 1991                              17

G 0382

6.7.11    Enforcement of Declaration and Rules:    The Association shall have the duty to take such other action, whether or not expressly authorized by this Declaration, including the hiring of legal counsel and undertaking legal action, as may be reasonably necessary to enforce the covenants, conditions and restrictions contained herein, the Rules and the Architectural Committee Rules.

6.7.12    Accounting Statements:    The Board shall prepare and distribute the following financial statements and reports as follows:

(i)    A balance sheet rendered as of an accounting date that is the last day of the month closest in time to six (6) months from the date of the incorporation of the Association, and an operating statement for such period.  The operating statement for said period shall include a schedule of assessments received or receivable itemized by Lot number and name of the assessed person and entity. Thereafter, the Association shall prepare a balance sheet and operating statement as of the last day of the Association's fiscal year.

(ii)    A pro forma operating budget for each fiscal year consisting of (i) estimated revenue and expenses on an accrual basis, (ii) amount of cash reserves currently available for replacement or major repair of Common Area facilities and for contingencies, and (iii) an itemized estimate of the remaining life of the major components of the Common Area for which the Association is responsible, a description of the methods of funding used to defray the costs of future repairs, replacements or additions to such components, and a general statement of the procedures used by the Board in calculating and establishing reserves to defray such costs. The budget shall be prepared consistently with the prior fiscal year's pro forma operating budget, and shall include adequate reserves for contingencies and for maintenance, repairs and replacement of the Common Area improvements and other Association owned or maintained improvements or personal property.

(iii)    An annual report consisting of a balance sheet rendered as of the last day of the fiscal year, an operating statement for the fiscal year, and a statement of changes in financial position for the fiscal year.

6.7.13    Other:    The Association shall carry out the duties of the Association as set forth in other sections of this Declaration, the Articles and the Bylaws.

6.8    Powers and Authority of the Association:    The Association shall have all of the powers of a nonprofit corporation organized under the laws of the State of Hawaii in operating for the benefit of its Members, subject only to such limitations upon the exercise of such powers as are expressly set forth in the Articles, the Bylaws and this Declaration.  It shall have the power to do any and all lawful

G 0395

things which may be authorized, required or permitted to be done under and by virtue of said restrictions, and to do and perform any and all acts which may be necessary or proper for or incidental to the exercise of any of the express powers of the Association for the peace, health, comfort, safety or general welfare of the Owners. Without in any way limiting the generality of the foregoing, the Association and the Board shall have the following powers and authority.

6.8.1 **Right of Entry and Enforcement:** The Board and its agents and representatives shall have the power and right at any time and from time to time and without liability to any Owner or Owners for trespass, damage or otherwise, to enter upon any Lot in the Residential Area to (i) inspect such Lot and any Improvements for the purpose of ascertaining whether the Declarations or Rules are being complied with, (ii) enforce any of the provisions of this Declaration, or (iii) to maintain and repair the Improvements located on said Lot either as provided in this Declaration or if for any reason whatsoever the Owner thereof fails to maintain or repair any portion of a Lot as required by this Declaration. No such entry shall be made until the Board gives the Owner of the Lot a minimum of forty-eight (48) hours (emergencies excepted) written notice and an opportunity for a hearing before the Board regarding any alleged failure to so maintain and repair. In addition to any other enforcement rights described in this Declaration and the Bylaws, or authorized by law and subject to any restrictions on the Association's enforcement rights, including any due process requirements, imposed by this Declaration, the Bylaws or by law, the Association may take any of the following actions against any person or entity whose act or failure to act violates or threatens to violate any provision of this Declaration, the Bylaws, the Rules, or the Architectural Committee Rules: (i) suspend voting rights in the Association, (ii) suspend use privileges for the Common Area, (iii) commence and maintain actions and suits for damages and/or to restrain and enjoin any breach or threatened breach, and to enforce, by mandatory injunction or otherwise. The determination of whether to impose any of the foregoing sanctions shall be within the sole discretion of the Association. Any legal action may be brought in the name of the Association on its own behalf and or on behalf of any Owner or Owners who consent, and the prevailing party in any such action shall be entitled to recover costs and reasonable attorneys' fees. The Association may take more than one of the foregoing enforcement actions against any one violation or threatened violation. The Association, in its sole discretion, may resolve or settle any dispute, including any legal action, under such terms and conditions as it considers appropriate. The Association may not cause a forfeiture or abridgment of an Owner's right to the full use and enjoyment of his or her Lot except by judgment of a court or a decision arising out of arbitration or on account of a foreclosure or conveyance in lieu of foreclosure for failure of the Owner to pay assessments duly levied by the Association.

c:\bedford\napali\ccr.5
April 8, 1991

31

G 0396

Board, and ratification thereof by the Members, if so required, or at such later date as the Board may deem appropriate upon its adoption of said amendment to the Rules.

6.10  **Breach of Rules or Regulations:**  In the event of a breach of any Rule, or of any of the restrictions contained in this Declaration, the Articles or the Bylaws, by a Lot Owner, his family, guests, employees, invitees, licensees or tenants, the Board, for and on behalf of all other Lot Owners, shall enforce the obligations of each Owner to obey the Rules or restrictions in any manner provided by law or in equity, including but not limited to appropriate hiring of legal counsel, the pursuing of legal action, suspension of the Owner's right to use the Common Area Improvements of the Project or suspension of the Owner's voting rights for as long as such violation shall continue.  In addition to the other remedies herein set forth, the Board, by majority vote, may levy a fine against such Owner, after appropriate notice and hearing as herein provided, which fine may be assessed on a continuing basis for each day that such violation shall continue.  The payment of such fine may be enforced in the same manner as set forth in Section 7.6 hereof.  Prior to imposing any penalty provided herein for breach of any Rules enacted hereunder or restrictions contained in this Declaration, the Board shall send written notice to the Lot Owner specifying the nature of the infraction and provide an opportunity to the Lot Owner to a hearing before the Board regarding such infraction and the penalty to be imposed.  In the event that the Board determines that said infraction has occurred and that a penalty shall be imposed, after a reasonable opportunity for a hearing has been provided, the determination of the Board shall be final.  In the event legal counsel is retained or legal action is instituted by the Board pursuant to this Section, any settlement prior to judgment or any judgment rendered in any such action shall include costs of collection, court costs and reasonable attorneys' fees.

6.11  **Liability and Indemnity of the Board of Directors:**  The members of the Board shall not be personally liable to any of the Members or to any other person, including Declarant and the Trustees, for any mistake of judgment or otherwise except for their own gross negligence or willful misconduct.  The Association shall indemnify each Director  of the Association against all costs, expenses and liabilities, including the amount of judgments, amounts paid in compromise settlements and amounts paid for services of counsel and other related expenses which may be incurred by or imposed on such Director in connection with any claim, action, suit, proceeding, investigation or inquiry hereafter made, instituted, or threatened, in which such Director may be involved as a party or otherwise by reason of his being or having been a Director, or by reason of any action taken or authorized or approved by him or any omission to act as Director, whether or not he continues to be a Director at the time of the incurring or imposition of such costs, expenses or liabilities, except such costs, expenses or liabilities as shall relate to matters

c:\bedford\napali\ccr.5
April 8, 1991                          35

G 0400

in derogation of the minimum standards required by this Declaration. A copy of the Architectural Committee Rules, as they may from time to time be adopted, amended or repealed, certified by an architect member of the Architectural Committee, shall be kept available at all times at the office of the Association and at the office of Declarant, for the inspection of any Owner, architect or agent of the Owner or architect.

9.6  Design Review Applications:  The content, format, required information to be submitted, form of approval, fees, procedure and other matters relating to design review applications is set forth in the Design Guidelines, and may be amended from time to time by the Architectural Committee.

9.7  Proceeding with Work:  Upon receipt of approval from the Architectural Committee, pursuant to the Design Guidelines and this Declaration, the Owner shall, as soon as practicable and/or within the time period specified by the Architectural Committee, satisfy all conditions hereof and diligently proceed with the commencement and completion of all construction, reconstruction, refinishing, alterations and excavations pursuant to said approval.  If the Owner shall fail to comply with this Section, any approval given shall be deemed revoked unless the Architectural Committee, upon written request of the Owner made prior to the expiration of said time period, extends the time for such commencement.  No such extension shall be granted except upon a finding by the Architectural Committee that there has been no change in the circumstances upon which the original approval was granted.

9.8  Failure to Complete Work:  The Owner shall in any event complete the construction, reconstruction, refinishing or alteration of any such Improvement within a reasonable time not to exceed eighteen (18) months after commencing construction thereof, except and for so long as such completion is rendered impossible or would result in great hardship to the Owner due to strikes, fires, national emergencies, natural calamities or other supervening forces beyond the control of the Owner or his agents.  If the Owner fails to comply with this Section, the Architectural Committee shall notify the Board of such failure, and the Board shall proceed in accordance with the provisions of Section 9.9 below as though the failure to complete the Improvements were a noncompliance with approved plans.

9.9  Inspection of Work:  Inspection of work and correction of defects therein shall proceed as follows:

9.9.1  Upon the completion of all framing for Improvements to be constructed upon any Lot and upon the completion of any construction, reconstruction, alteration or refinishing of the exterior of any Improvements, or upon the completion of any other work for which approved plans are required under this Article, the Owner shall give written notice thereof to the Architectural Committee.

c:\bedford\napali\ccr.5
April 8, 1991                    46

G 0411

9.10    Waiver; Governmental Approvals:    The approval by the Architectural Committee of any plans, drawings or specifications for any work done or proposed, or for any other matter requiring the approval of the Architectural Committee under this Declaration, shall not be deemed to constitute a waiver of any right to withhold approval of any similar plan, drawing, specification or matter subsequently submitted for approval. Under no circumstances shall the approval by the Architectural Committee be considered satisfaction of any requirement to obtain from local government agencies permits for construction, the responsibility for which shall be solely that of the Owner.

9.11    Estoppel Certificate:    Within thirty (30) days after written demand is delivered to the Architectural Committee by any Owner, and upon payment to the Association of a reasonable fee (as fixed from time to time by the Board), the Architectural Committee shall record an estoppel certificate executed by any two (2) of its members, certifying (with respect to any Lot of said Owner) that, as of the date thereof, either: (i) all Improvements made and other work done upon or within said Lot comply with these restrictions, or (ii) such Improvements or work do not so comply, in which event the certificate shall also identify the noncomplying Improvements or work and set forth with particularity the basis of such noncompliance. Any purchaser from the Owner, or from any one deriving any interest in the Lot through him, shall be entitled to rely on said certificate with respect to the matters therein set forth, such matters being conclusive as between the Association, Declarant, all Owners and such persons deriving any interest through them.

9.12    Liability and Indemnity of the Architectural Committee:    The members of the Architectural Committee shall not be personally liable to the Association or to any Owner or to any other person, including Declarant and the Trustees, for any damage, loss or prejudice suffered or claimed on account of: (i) the approval or disapproval of any plans, drawings and specifications, whether or not defective; (ii) the construction or performance of any work, whether or not pursuant to approved plans, drawings and specifications; (iii) the Improvement or any manner of improvement of any Lot; or (iv) the execution and recording of an estoppel certificate pursuant to Section 9.11, whether or not the facts therein are correct. The Association shall indemnify each member of the Architectural Committee against all costs, expenses and liabilities, including the amount of judgments, amounts paid in compromise settlements and amounts paid for services of counsel and other related expenses which may be incurred by or imposed on such member in connection with any claim, action, suit, proceeding, investigation or inquiry hereafter made, instituted, or threatened, in which such member may be involved as a party or otherwise by reason of his being or having been a member of the Architectural Committee, or by reason of any action taken or authorized or approved by him or any omission to act as such member, whether or not he continues to be a member of the Architectural Committee at the time of the incurring or

G 0413

imposition of such costs, expenses or liabilities, except such costs, expenses or liabilities as shall relate to matters as to which he is liable by reason of his willful misconduct toward the Association or an Owner in the performance of his duties as such member of the Architectural Committee. In the absence of such final adjudication of the existence of such liability, the Architectural Committee and each member may conclusively rely upon an opinion of legal counsel selected by the Architectural Committee. The foregoing right of indemnification shall not be exclusive of other rights to which any such member of the Architectural Committee may be entitled as a matter of law or otherwise, and shall inure to the benefit of the heirs, legal representatives and assigns of each such member of the Architectural Committee.

9.13   Nonexistence of Architectural Committee:  In the event that at any time through death, absence from this State, resignation, or for any other reason, there shall not be an Architectural Committee or there shall not be a quorum necessary to act on a particular matter the approval or action by the Architectural Committee being required hereunder for such matter and such situation lasts for a period of not less than twenty (20) days, then, and until there shall again be an Architectural Committee with sufficient members, all matters requiring such approval or action may be approved or done by the President of the Association, and any other officer of the Association, and their certificate that there had been no Architectural Committee, or that the required members were not present, and that they were acting pursuant to the authority of this Section shall be conclusive between the Owners, the Association, or from anyone deriving any interest in a Lot through an Owner, and any other person. The officers of the Association acting hereunder shall be entitled to employ an architect or engineer to render technical advice and to receive reasonable compensation to be set by the Board for his services.

9.14   Non-liability for Approval.  Any approval by the Architectural Committee pursuant to this Article IX, including but not limited to approval of plans and specifications, are approved solely as to style, design, appearance, location and/or compliance with this Declaration. Such approval does NOT constitute approval of engineering, design, compliance with zoning ordinances or compliance with building codes. The Architectural Committee, the members thereof, the Association, the Board and Declarant do not assume any liability or responsibility for such approval, or for any defect in any structure constructed from approved plans and specifications.

## ARTICLE X

## LIMITATION OF RESTRICTIONS ON DECLARANT

10.1   Limitation of Restrictions:  Declarant is undertaking the work of developing a residential subdivision. The completion of that work and the sale and other disposal of Lots is essential to the

G 0414

imposition of such costs, expenses or liabilities, except such costs, expenses or liabilities as shall relate to matters as to which he is liable by reason of his willful misconduct toward the Association or an Owner in the performance of his duties as such member of the Architectural Committee. In the absence of such final adjudication of the existence of such liability, the Architectural Committee and each member may conclusively rely upon an opinion of legal counsel selected by the Architectural Committee. The foregoing right of indemnification shall not be exclusive of other rights to which any such member of the Architectural Committee may be entitled as a matter of law or otherwise, and shall inure to the benefit of the heirs, legal representatives and assigns of each such member of the Architectural Committee.

9.13    Nonexistence of Architectural Committee:    In the event that at any time through death, absence from this State, resignation, or for any other reason, there shall not be an Architectural Committee or there shall not be a quorum necessary to act on a particular matter the approval or action by the Architectural Committee being required hereunder for such matter and such situation lasts for a period of not less than twenty (20) days, then, and until there shall again be an Architectural Committee with sufficient members, all matters requiring such approval or action may be approved or done by the President of the Association, and any other officer of the Association, and their certificate that there had been no Architectural Committee, or that the required members were not present, and that they were acting pursuant to the authority of this Section shall be conclusive between the Owners, the Association, or from anyone deriving any interest in a Lot through an Owner, and any other person. The officers of the Association acting hereunder shall be entitled to employ an architect or engineer to render technical advice and to receive reasonable compensation to be set by the Board for his services.

9.14    Non-liability for Approval.    Any approval by the Architectural Committee pursuant to this Article IX, including but not limited to approval of plans and specifications, are approved solely as to style, design, appearance, location and/or compliance with this Declaration. Such approval does NOT constitute approval of engineering, design, compliance with zoning ordinances or compliance with building codes. The Architectural Committee, the members thereof, the Association, the Board and Declarant do not assume any liability or responsibility for such approval, or for any defect in any structure constructed from approved plans and specifications.

ARTICLE X

LIMITATION OF RESTRICTIONS ON DECLARANT

10.1    Limitation of Restrictions:    Declarant is undertaking the work of developing a residential subdivision. The completion of that work and the sale and other disposal of Lots is essential to the

Notwithstanding the above, the percentage of votes necessary to amend a specific clause shall not be less than the prescribed percentage of affirmative votes required for action to be taken under that clause.  To be effective, any amendment must be recorded in the Bureau of Conveyances of the State of Hawaii.

If an Owner consents to any amendment to this Declaration or the Bylaws, it will be conclusively presumed that such Owner has the authority so to consent, and no contrary provision in any mortgage or contract between the Owner and a third party will affect the validity of such amendment.

No amendment may remove, revoke, or modify any right or privilege of the Declarant without the written consent of the Declarant or the assignee of such right or privilege.

12.1.3  Consent of Trustees.  So long as any Common Area, Lot or other property subject to the Declaration is owned in fee simple by the Trustees, any amendment to this Declaration shall require the prior written consent of the Trustees.

12.1.4  Duration:  The provisions of this Declaration including the covenants, conditions and restrictions contained herein, shall continue and be effective for period of eighty (80) years from the date of recordation and shall be automatically extended for consecutive ten (10) year periods thereafter unless, at least one (1) year prior to: (i) the end of the eighty (80) year initial term, or (ii) the end of a ten (10) year extension term; a Supplemental Declaration is recorded giving notice of the termination of this Declaration at the end of such term, approved in writing by the Trustees (so long as any Common Area, Lot or other property subject to the Declaration is owned in fee simple by the Trustees), the Director of Land Utilization of the City and County of Honolulu, and the Association based on the written consent of not less than seventy-five percent (75%) of the total Class "A" votes in the Association, including seventy-five percent of the Class "A" votes held by Members other than the Declarant, and the consent of the Class "B" Member, so long as such membership exists.

12.2  Enforcement and Nonwaiver:

12.2.1  Right of Enforcement:  Except as otherwise provided herein, Declarant, the Trustees (so long as any Common Area, Lot or other property subject to the Declaration is owned in fee simple by the Trustees), the Association, or any Owner or Owners shall have the right to enforce any and all of the limitations, covenants, conditions, restrictions, obligations, liens and charges now or hereafter imposed by this Declaration upon the Owners or upon any Lot in the Project, and the costs of enforcement, including court costs and attorneys' fees, shall be paid by any Owner who violates any such limitation, restriction, covenant or condition, or fails to pay and

c:\bedford\napali\ccr.5
April 8, 1991                                   55

satisfy when due any such lien or charge. Except as otherwise expressly provided herein, no entry upon the Lot of any Owner or other action to enforce any such limitation, restriction, covenant, condition, obligation, lien or charge may be made or taken without first giving not less than thirty (30) days' written notice and demand to the Owner concerned to cure or rectify the default or breach involved.

12.2.2    Violations and Unreasonable Sources of Annoyance: Every act or omission whereby a covenant, condition or restriction of this Declaration is violated in whole or in part is hereby declared to be a nuisance and may be enjoined or abated, whether or not the relief sought is for negative or affirmative action, by Declarant, the Trustees (as to any Common Area or Lot owned in fee simple by the Trustees), the Association, or an Owner or Owners. However, any other provision to this Declaration notwithstanding, only Declarant, the Trustees (as to any Common Area or Lot owned in fee simple by the Trustees), the Board, or their respective duly authorized agents may enforce by self-help any covenant, condition or restriction herein set forth. Except to the extent otherwise expressly provided herein, any Owner or Owners shall have the right to enforce any and all limitations, restrictions, covenants, conditions and obligations now or hereafter imposed by this Declaration, provided, however, anything herein to the contrary notwithstanding, no Owner as such shall have any right to enter upon the Lot of any other Owner or to abate any unreasonable sources of annoyance or enforce any provision hereof against another Owner or the Association except by proper legal proceedings and authority of a court having jurisdiction.

12.2.3    Violation of Law:    Any violation of any state, municipal or local law, ordinance or regulation pertaining to the ownership, occupation or use of any Lot within the Project is hereby declared to be a violation of this Declaration and subject to any or all of the enforcement procedures herein set forth.

12.2.4    Remedies Cumulative:    Each remedy provided by this Declaration is cumulative and not exclusive.

12.2.5    Nonwaiver:    The failure to enforce the provisions of any covenant, condition or restriction contained in this Declaration shall not constitute a waiver of any right to enforce any such provisions or any other provisions thereof.

12.3    Condemnation of Common Area:    If at any time all or any portion of any Common Area, or any interest therein, be taken for any public or quasi-public use, under any statute, by right of eminent domain or by private purchase in lieu of eminent domain, the entire award in condemnation shall be paid to the holder or holders of the fee title to such area as their interests may appear. Any such award to the Association shall be deposited into the Operating Fund. NO Owner shall be entitled to any portion of such award, and no Owner

c:\bedford\napali\ccr.5
April 8, 1991

56

G 0421