NEELEY & ANDERSON LLP
A Limited Liability Law Partnership

JOYCE Y. NEELEY      (3134-0)
jneeley@neeley-anderson.com
LANCE S. FUJISAKI      (4224-0)
SCOTT R. GRIGSBY      (6673-0)
Pacific Guardian Center, Makai Tower
733 Bishop Street, Suite 2301
Honolulu, Hawai`i  96813
Telephone: (808) 536-8177
Facsimile: (808) 536-4977

X:\NaPaliHaweo\Grande\Usdc PLEADINGS\MSJ#2-fnl.wpd

Attorneys for Plaintiff
NA PALI HAWEO COMMUNITY ASSOCIATION

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

| | |
|---|---|
| NA PALI HAWEO COMMUNITY ASSOCIATION, a Hawaii nonprofit corporation,<br><br>    Plaintiff,<br><br>    vs.<br><br>ANTHONY CHARLES GRANDE; NARINDAR KAUR GRANDE; JOHN DOES 1-10; JANE DOES 1-10; DOE PARTNERSHIPS 1-10; DOE CORPORATIONS 1-10; DOE ENTITIES 1-10; AND DOE GOVERNMENTAL UNITS 1-10,<br><br><br>    Defendants.<br><br>ANTHONY CHARLES GRANDE and NARINDAR KAUR GRANDE,<br><br>    Counterclaim Plaintiffs, | CIVIL NO. CV04-00413 DAE/BMK (Injunctive Relief)<br><br>PLAINTIFF NA PALI HAWEO COMMUNITY ASSOCIATION'S MOTION FOR SUMMARY JUDGMENT AND PERMANENT INJUNCTION; MEMORANDUM IN SUPPORT OF MOTION; CONCISE STATEMENT OF FACTS; DECLARATION RONALD K. AWA; AFFIDAVIT OF LANCE S. FUJISAKI; EXHIBITS "A"-"DD"; CERTIFICATE OF SERVICE<br><br>JUDGE: Honorable David A. Ezra<br><br>TRIAL: July 15, 2008 |

vs.

NA PALI HAWEO COMMUNITY
ASSOCIATION; RONALD K. AWA
and DOES 1-25,

      Counterclaim Defendants.

PLAINTIFF NA PALI HAWEO COMMUNITY ASSOCIATION'S
MOTION FOR SUMMARY JUDGMENT AND
PERMANENT INJUNCTION

Plaintiff NA PALI HAWEO COMMUNITY ASSOCIATION ("Association") hereby moves for summary judgment against Defendants ANTHONY CHARLES GRANDE and NARINDAR KAUR GRANDE (collectively "Defendants") on the remaining issues as there are no genuine issues of material fact and the Association is entitled to judgment as a matter of law.

This Court previously granted the Association partial summary judgment on the main issues in this case, i.e., the building envelope and front setback violation of the Governing Documents as well as the front garden wall height violation and omission of a sliding garage gate. This Motion seeks to resolve the remaining issues upon which summary judgment was not granted and to have this Court enter a permanent injunction upon which final judgment may be entered. At this juncture, the Association requests summary judgment on the following violations:

1.    Defendants installed two skylights on the north roof slope which were bubble type with white frost, plastic lens and natural aluminum curbs, in violation of the Association's Governing Documents (which, after the filing of this action, were replaced with flat skylights).

2.    The frames of the two skylights, including flashing, do not match the adjacent roof.

3.    Defendants installed air conditioning equipment at the rear yard and screened the equipment with lattice work in violation of the Association's Governing Documents.

4.    Defendants installed two roof exhaust vents which were natural aluminum rather than the color matching the roof material, in violation of the Association's Governing Documents (which, after the filing of this action were replaced with acceptable roof vents).

5.    Defendants installed a sheet metal roof exhaust vent in violation of the Association's Governing Documents.

6.    Defendants failed to construct adequate enclosed storage space within the garage as required by the Association's Governing Documents.

7.    Defendants installed entry light fixtures on the entry column bases that had exposed bulbs, in violation of the Association's Governing Documents.

8.    The dwelling violates the Association's Governing Documents as it is substantially different from the Approved Plans as discussed in the attached memorandum at pages 20 and 21.

9.    Defendants failed to construct a concrete pad between the trash storage area and the driveway as shown on the Approved Plans, in violation of the Association's Governing Documents.

Furthermore, the Association seeks a permanent injunction, tailored to the summary judgment order, compelling Defendants to do as follows:

1.   Defendants shall strictly comply with the Approved Plans and correct the front building envelope encroachment as follows:

    a.   By no later than the date ordered by this Court, Defendants shall fully complete any and all remedial work on the dwelling as necessary to bring the dwelling on the property into strict conformance with the plans dated October 2000 ("Approved Plans"), as approved by the Association's Architectural Review Committee ("ARC"), including without limitation, (a) removal of any items constructed on the property but not shown on the Approved Plans, (b) construction of any items which were shown on the Approved Plans but omitted without approval of the ARC, (c) removal of any items shown on the Approved Plans but which deviate from the Approved Plans and construction of those items in accordance with the Approved Plans, and (d) correction of the front building envelope encroachment; and

    b.   By the date ordered by this Court, Defendants shall submit revised plans to correct the front building envelope encroachment to the ARC and obtain the ARC's approval of said plans. Said plans shall strictly conform with the requirements of the Governing Documents. By the date ordered by this Court, Defendants shall perform remedial work to correct the front building envelope encroachment, in strict conformance with the revised plans to be approved by the ARC. (The front building envelope encroachment is described in § A, pages 13-16, of this Court's Order Granting in Part and Denying in Part Plaintiff's Motion for Summary

Judgment and Denying in Part Defendants' Counter-Motion for Summary Judgment entered July 18, 2006.)

2. Alternatively, by the date ordered by this Court, Defendants may submit revised plans to the ARC and obtain the ARC's approval of said plans, provided that said revised plans shall strictly conform with the requirements of the Governing Documents, and resolve the various violations of the Governing Documents described above, including without limitation, the front building envelope encroachment described above. In the event Defendants choose to submit revised plans, by the date ordered by this Court, Defendants shall perform remedial work to correct all violations of the Governing Documents in strict conformance with the revised plans to be approved by the ARC.

This Motion is made pursuant to Rules 7, 56 and 65, Federal Rules of Civil Procedure, and is based on the attached memorandum, concise statement of facts, affidavit, declaration, exhibits and records and files herein.

DATED:  Honolulu, Hawai`i, <u>January 25, 2008</u>.

<u>/s/ Lance S. Fujisaki</u>
JOYCE Y. NEELEY
LANCE S. FUJISAKI
SCOTT R. GRIGSBY
Attorneys for Plaintiff
NA PALI HAWEO COMMUNITY ASSOCIATION

TABLE OF CONTENTS

I. BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

II. FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

III. ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

    A.     SUMMARY JUDGMENT IS REQUIRED IN THIS CASE.  . . . . . .  8

    B.     DEFENDANTS ARE REQUIRED TO COMPLY WITH THE DESIGN
           GUIDELINES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

    C.     DEFENDANTS HAVE VIOLATED UNAMBIGUOUS PROVISIONS
           OF THE DECLARATION AND DESIGN GUIDELINES . . . . . . .  11

           1.     Failure to Complete the Dwelling in Accordance with
                  Approved Plans Violates Design Guidelines . . . . . . . . . . . .  11
           2.     Skylights Violated Design Guidelines . . . . . . . . . . . . . . . . .  13
           3.     Exposed Air Conditioning Equipment Violates Design
                  Guidelines . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14
           4.     Roof Vents Violated Design Guidelines  . . . . . . . . . . . . . . .  15
           5.     Failure to Construct Storage Facilities in Garage . . . . . . . . .  16
           6.     Light Fixtures with Exposed Bulbs Violated Design
                  Guidelines . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19
           7.     Exterior Fenestrations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20
           8.     Concrete Pad at Trash Area  . . . . . . . . . . . . . . . . . . . . . . . . .  21

    D.     DEFENDANTS HAD ACTUAL AND CONSTRUCTIVE
           KNOWLEDGE OF THE LAW AND THE GOVERNING
           DOCUMENTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  22

    E.     INJUNCTIVE RELIEF IS APPROPRIATE IN THIS CASE. . . . . .  22

           1.     The Declaration Authorizes An Award of Injunctive Relief .  22
           2.     Authorities Support An Award of Injunctive Relief  . . . . . . .  23

IV. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  28

TABLE OF AUTHORITIES

**STATE CASES**:

Abington Limited Partnership v. Heublein, 257 Conn. 570, 778 A.2d 885 (Conn. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Ass'n of Apartment Owners of Kukui Plaza v. City and County of Honolulu, 7 Haw. App. 60, 742 P.2d 974 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Association of Apartment Owners of Wailea Elua v. Wailea Resort Company, Ltd., 100 Hawai`i 97, 58 P.3d 608 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Beattie v. State ex rel. Grande River Dam Authority, 41 P.3d 377, 2002 OK 3 (Okla. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Bishop Trust Co., Ltd. v. Central Union Church, 3 Haw. App. 624, 656 P.2d 1353 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

California Federal Sav. and Loan Ass'n v. Bell, 6 Haw. App. 597, 735 P.2d 499 (Haw. App. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Chang v. Magbee, 45 Haw. 454, 370 P.2d 479 (1962) . . . . . . . . . . . . . . . . . . 9, 24

Cho Mark Oriental Food, Ltd. v. K & K Int'l, 73 Haw. 509, 836 P2d 1057 (1992)  9

Clark v. Wodehouse, 4 Haw. App. 507, 669 P.2d 170 (1983) . . . . . . . . . . . . 9, 25

Clarkin v. Reimann, Jr., 2 Haw. App. 618, 638 P.2d 857 (1981) . . . . . . . . . . . . . 8

D'Elia v. Association of Apartment Owners of Fairway Manor, 2 Haw. App. 347, 632 P.2d 296 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

DeMund v. Lum, 5 Haw. App. 336, 690 P.2d 1316 (1984) . . . . . . . . . . . . . . 9, 25

Fahser v. Hilgart, 630 N.W.2d 277 (Wis. App. 2001) . . . . . . . . . . . . . . . . . . . 26

Fassler v. Okemo Mountain, Inc., 148 Vt. 538, 536 A.2d 930 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Fox v. Kings Grant Maintenance Association, 167 N.J. 208, 770 A.2d 707 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Grayco Land Escrow, Ltd., 57 Haw. 436, 559 P.2d 264, *cert. denied,* 433 U.S. 910, 97 S.Ct. 2976, 53 L.Ed.2d 1094 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

<u>Il Giardino, LLC v. Belle Haven Land Company</u>, 254 Conn. 502, 757 A.2d 1103 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

<u>Kapena v. Kaleleonalani</u>, 6 Haw. 579 (1885) . . . . . . . . . . . . . . . . . . . . . . . . . . 22

<u>Laverty v. Alaska Railroad Corp.</u>, 13 P.3d 725 (Alaska 2000) . . . . . . . . . . . . . . 26

<u>Lee v. Puamana Community Association</u>, 109 Haw. 561, 128 P.3d 874 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

<u>McNamee v. Bishop Trust Co.</u>, 62 Haw. 397, 616 P.2d 205 (1980) . . . . . . . . . 24

<u>Nahrstedt v. Lakeside Village Condominium Ass'n, Inc.</u>, 8 Cal.4th 361, 33 Cal.Rptr.2d 63, 878 P.2d 1275 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

<u>Pelosi v. Wailea Ranch Estates</u>, 10 Haw. App. 424, 876 P. 2d 1320 (1994), <i>reconsideration denied,</i> 10 Haw. App. 631, 879 P.2d 591, <i>cert. denied</i>, 77 Haw. 373, 884 P.2d 1149 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

<u>Pelosi v. Wailea Ranch Estates</u>, 91 Haw. 478, 985 P.2d 1045 (Hawai'i 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

<u>Plymouth Canton Community Crier, Inc. v. Prose</u>, 619 N.W.2d 725 (Mich. App. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

<u>Reed & Martin, Inc. v. City and County of Honolulu</u>, 50 Haw. 347, 440 P.2d 526 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

<u>Sandstrom v. Larsen</u>, 59 Haw. 491, 583 P.2d 971 (1978) . . . . . . . . . . . . . . . . . . 23

<u>SGM Partnership v. Nelson</u>, 5 Haw. App. 526 (1985) . . . . . . . . . . . . . . . . . . . . . 22

<u>Skow v. Goforth</u>, 618 N.W.2d 275 (Iowa 2000) . . . . . . . . . . . . . . . . . . . . . . . . . 26

<u>St. Clair v. Krueger</u>, 579 Idaho 702, 769 P.2d 579 (1989) . . . . . . . . . . . . . . . . . . 9

<u>Stillwater Lakes Civic Association, Inc. v. Krawitz</u>, 772 A.2d 118 (2001) . . . . . 26

<u>Waikiki Malia Hotel, Inc. v. Kinkai Properties Ltd. Partnership</u>, 75 Haw. 370, 862 P.2d 1048 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

**FEDERAL CASES**:

<u>Application of Suekichi Tsuji</u>, 4 U.S. Dist. Ct. Haw. 52 (1911) . . . . . . . . . . . . . . 22

Field v. Liberty Mut. Ins. Co., 769 F. Supp. 1135 (D. Haw. 1991) . . . . . . . . . . . .  8

Gee v. Tenneco, Inc., 615 F.2d 857 (9th Cir.1980) . . . . . . . . . . . . . . . . . . . . . . . .  8

**OTHER AUTHORITIES**:

10A C. Wright, A. Miller, and M. Kane, Federal Practice and Procedure,
Civil 2d § 2730.1 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

Restatement of the Law of Property, Third, Servitudes (1998) § 8.3 . . . . . . . . .  25

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

| | |
|---|---|
| NA PALI HAWEO COMMUNITY ASSOCIATION, a Hawaii non-profit corporation,<br><br>      Plaintiff,<br><br>      vs.<br><br>ANTHONY CHARLES GRANDE; NARINDAR KAUR GRANDE; JOHN DOES 1-10; JANE DOES 1-10; DOE PARTNERSHIPS 1-10; DOE CORPORATIONS 1-10; DOE ENTITIES 1-10; AND DOE GOVERNMENTAL UNITS 1-10,<br><br>      Defendants.<br><br>ANTHONY CHARLES GRANDE and NARINDAR KAUR GRANDE,<br><br>      Counterclaim Plaintiffs,<br><br>      vs.<br><br>NA PALI HAWEO COMMUNITY ASSOCIATION; RONALD K. AWA and DOES 1-25,<br><br>      Counterclaim Defendants. | CIVIL NO. CV04-00413 DAE/BMK (Injunctive Relief)<br><br>MEMORANDUM IN SUPPORT OF MOTION |

<u>MEMORANDUM IN SUPPORT OF MOTION</u>

## I. <u>BACKGROUND</u>

This Court previously granted NA PALI HAWEO COMMUNITY ASSOCIATION ("Association") partial summary judgment on the main issues in this case, i.e., the building envelope and front setback violations of the Governing Documents as well as the front garden wall height violations and omission of a sliding garage gate. This Motion seeks to resolve the remaining issues upon which summary judgment was not granted and to have this Court enter a permanent injunction upon which final judgment may be entered.

Defendants ANTHONY CHARLES GRANDE and NARINDAR KAUR GRANDE (collectively "Defendants") constructed a dwelling on their property in violation of the Governing Documents of the Association. The various violations could have and should have been easily resolved long ago, at minimal cost, however, the violations went unresolved due to Defendants "stubborn refusal to wholeheartedly attempt to reach some sort of accommodation with the Association."[1] At this juncture, the Association requests summary judgment on following violations:

1.    Defendants installed two skylights on the north roof slope which were bubble type with white frost, plastic lens and natural aluminum curbs, in violation of the Association's Governing Documents (which, after the filing of this action, were replaced with flat skylights).

_____

[1]    Findings of Fact of the Circuit Court of the First Circuit in <u>Brandt Homes Inc. v. Anthony Charles Grande and Narindar Kaur Grande, et al.</u>, Circuit Court of the First Circuit (Civil No. 05-1-2061-11 GJK), ¶ 33, Exh. "BB."

2.    The frames of the two skylights, including flashing, do not match the adjacent roof.

3.    Defendants installed air conditioning equipment at the rear yard and screened the equipment with lattice work in violation of the Association's Governing Documents.

4.    Defendants installed two roof exhaust vents which were natural aluminum rather than the color matching the roof material, in violation of the Association's Governing Documents (which, after the filing of this action, were replaced with acceptable roof vents.)

5.    Defendants installed a sheet metal roof exhaust vent in violation of the Association's Governing Documents.

6.    Defendants failed to construct adequate enclosed storage space within the garage as required by the Association's Governing Documents.

7.    Defendants installed entry light fixtures on the entry column bases that had exposed bulbs, in violation of the Association's Governing Documents.

8.    The Dwelling violates the Association's Governing Documents as it is substantially different from the Approved Plans as described in detail on pages 20 and 21, including without limitation, the omission of a roof eyebrow above the garage, an arched clerestory window above the entry door, arched corners within the garage wall opening, planters at the front entry, a metal railing at the balcony corner, windows on the left side of the house and separation between roof elements over the entry and the master bedroom.

9.    Defendants failed to construct a concrete pad between the trash storage area and the driveway as shown on the Approved Plans, in violation of the Association's Governing Documents. *See* Decl. of Ronald K. Awa ("Awa").

The Association also requests this Court enter a permanent injunction as set forth in the Motion.

## II.  <u>FACTS</u>

This Court's Order Granting in Part and Denying in Part Plaintiff's Motion for Summary Judgment and Denying in Part Defendants' Counter-Motion for Summary Judgment entered July 18, 2006 ("MSJ Order"), contains a detailed Factual Background based upon the record in this case. Given this Court's findings of fact, and in the interest of judicial economy, the Association will not repeat the facts summarized in the MSJ Order, which are hereby incorporated by reference, except to the extent necessary.

A.    <u>Procedural History</u>

Following entry of the MSJ Order, the parties renewed settlement negotiations before U.S. Magistrate Judge Leslie E. Kobayashi and later U.S. Magistrate Judge Barry M. Kurren. A tentative settlement was reached in December 2006, and on March 21, 2007, Judge Kurren vacated the trial date due to settlement of this case. *See* Court Minutes dated March 21, 2007.

In June 2007, trial commenced in a mechanics' lien action filed by Brandt Homes Incorporated ("Brandt Homes"), the contractor retained by the Defendants to construct the Dwelling. <u>Brandt Homes Inc. v. Anthony Charles Grande and Narindar Kaur Grande, et al.</u>, Circuit Court of the First Circuit (Civil No. 05-1-2061-11 GJK).

Following trial, on September 14, 2007, the Hon. Glenn J. Kim, Judge of the Circuit Court of the First Circuit, State of Hawai`i, entered Findings of Fact and Conclusions of Law in the state case ruling that Defendants breached their contract with Brandt Homes by failing to pay for work performed. *See* Exh. "BB." The Court awarded Brandt Homes $32,493.38 for breach of contract plus attorneys' fees of $78,311.89 and costs of $4,985.28. *See* Exh. "BB" at 11.[1]

On August 15, 2007, Defendants' counsel withdrew, in part, citing Rule 1.16(b) of the Rules of Professional Conduct, excluding 1.16(b)(1-2), stating in part that a lawyer may withdraw if "a client insists upon pursuing an objective that the lawyer considers repugnant or imprudent." *See* Motion For Leave to Withdraw as Counsel filed June 28, 2007. The motion to withdraw was granted on August 15, 2007.

Despite the tentative settlement in March 2007, based upon Defendant Anthony Charles Grande's comments to Judge Kurren at a status conference on November 14, 2007, the Court set this case for trial on July 15, 2008, and scheduled no further settlement conferences until May 2, 2008.

B.    <u>Factual Background</u>

Defendants are the owners of a single family home ("Dwelling") and lot located at 1251 Kamehame Drive (the "Property"). *See* Exh. "C." The Property is subject to the Declaration of Covenant, Conditions and Restrictions of Na Pali Haweo ("Declaration") and the Na Pali Haweo Design Guidelines ("Design Guidelines"). *See*

---

[1] Exhibit "BB" reflects an award of attorneys' fees not to exceed $8,123.35. However, Exhibit "BB" is being amended to reflect an award of fees of $78,311.89 and costs of $4,985.28. The amended FOF/COL/Order will be submitted upon entry.

Exh. "A" Article IV, Section 4.1 and Exh. "B." (The Declaration and Design Guidelines are collectively referred to as "Governing Documents.")

In October 2000, Defendants submitted construction plans ("Approved Plans") for a four bedroom, three bath home to the ARC for review and approval (Exh. "D"), along with a letter from their architect, Edward A. Resh ("Resh"), stating: "The owner and I acknowledge receipt of the Design Guidelines and have used them in the design of the residence stated above." *See* Exh. "E" and Decl. of Awa at ¶ 6. Defendants were required to submit plans "strictly in accordance with the Design Guidelines." *See* Exh. "A" at Article IV, Section 4.1. The ARC approved the plans subject to a modification to the height of the trash enclosure and the following clarification as to the skylight design: "Drawings appear to indicate bubble skylight which is not permitted. Also, confirm how the skylight is 'vented.' Clarify skylight type, design and finishes for conformance to 3.2.3(i)." *See* Exh. "F" and Decl. of Awa at ¶ 7.

Without notice to or approval by the ARC, Defendants submitted a different set of plans ("City Plans") to the City and County of Honolulu, Department of Planning and Permitting. *See* Exh. "G." A Building Permit was issued on September 6, 2001. Defendants did not provide the Association with the City Plans. The City Plans differed from the Approved Plans in that, among other things, the footprint of the dwelling had been altered, floor area increased, roof line revised, the garage was remodeled and reduced in size, enclosed storage space was substantially eliminated, and exterior fenestrations were modified. *See* Decl. of Awa at ¶ 8-11.

At trial in the mechanics' lien action, Mr. Grande explained that various changes were made to the Approved Plans to save money: "I tried to save money as much as possible. We were real tight on money then to buy the land. So I -- I changed the aluminum, discussed it with Jeff and said we'll save money that way by changing to aluminum. Front gate, for instance, we removed the front gate. That's a very expensive item." Exh. "CC" at 20, lines 3-23.

After construction started in 2003, the Association received complaints from Defendants' neighbors, Glen Y. Moribe and Sandra E. Moribe ("Moribes"), that the Dwelling, then in the initial stages of construction, had exceeded the height limit imposed by the Design Guidelines. *See* Exh. "H." The Association confirmed that the Dwelling violated the building envelope restrictions of the Governing Documents and wrote numerous letters demanding that Defendants stop further work. *See* Decl. of Awa at ¶ 12-13.

After discovering violations of the Governing Documents on the Property, the Association demanded that the Grandes strictly conform with the Approved Plans, Exh. "K," and cease and desist construction on all non-compliant portions of the Dwelling. Exh. "P." Although Brandt Homes complied with the Association's demands, the Grandes hired a replacement contractor to complete the house anyway, including the non-compliant areas because – according to Mr. Grande – he wanted to cut his losses. *See* Exh. "CC" at 36, lines 11-20 and at 37, lines 3-13; *see also*, MSJ Order at 9 ("Despite the Association's repeated demands and letters, construction on the Dwelling still appeared to continue.") and Exh. "BB" at 6, ¶25 and 9, ¶43.

6

In 2003 when the problems were discovered, Brandt Homes estimated that it would cost $8,450 to bring the front area of the house into compliance with the Governing Documents. Exh. "BB" at 5, ¶ 22. At trial in the state case, the Court found that "it was reasonable for Brandt to comply with the Association's order to the Grandes to cease work on the non-compliant portions of the house despite the Grandes' insistence that he continue . . . ." *See* Exh. "BB" at 8, ¶ 36.

The Association filed this action to resolve the building envelope and setback violations as well other violations discovered by the Association. At an early stage of this case, the Association attempted to mediate this dispute with Defendants, however, an agreement could not be reached. *See* Exh. "T" and "U." Also, the parties participated in settlement discussions before this Court for over one  year while this case was held in abeyance. After reaching an impasse, the parties filed motions for summary judgment and this Court granted the Association partial summary judgment concerning the building envelope issue. *See* MSJ Order. Settlement negotiations continued and a tentative settlement was reached. However, the settlement was not finalized and ultimately, this Court set this case for trial. Thus, despite the efforts of two U.S. Magistrate Judges, due to the stubborn refusal of Defendants to work with the Association to resolve this case, this case could not be resolved.

## III. <u>ARGUMENT</u>

### A.  SUMMARY JUDGMENT IS REQUIRED IN THIS CASE

A court sitting in diversity applies state substantive law, including state choice of law rules. *See* <u>Gee v. Tenneco, Inc.</u>, 615 F.2d 857, 861 (9th Cir.1980); <u>Field v. Liberty Mut. Ins. Co.</u>, 769 F. Supp. 1135, 1138 (D. Haw. 1991). As a general rule, matters relating to interests in land are governed by the local law of the *situs* of the land. <u>In re Grayco Land Escrow, Ltd.</u>, 57 Haw. 436, 559 P.2d 264, *cert. denied,* 433 U.S. 910, 97 S.Ct. 2976, 53 L.Ed.2d 1094 (1977); <u>California Federal Sav. and Loan Ass'n v. Bell</u>, 6 Haw. App. 597, 604, 735 P.2d 499, 504 (Haw. App. 1987).

A grant of summary judgment is appropriate in actions where, as here, the interpretation of a document is at issue:

> As a general rule, the construction and legal effect to be given a contract is a question of law to be decided by the court.

<u>Bishop Trust Co., Ltd. v. Central Union Church</u>, 3 Haw. App. 624, 628, 656 P.2d 1353, 1356 (1983). *Accord*, <u>Reed & Martin, Inc. v. City and County of Honolulu</u>, 50 Haw. 347, 440 P.2d 526 (1968); <u>Clarkin v. Reimann, Jr.</u>, 2 Haw. App. 618, 638 P.2d 857 (1981). Hawai`i courts have recognized that in construing restrictive covenants governing the use of land, they are guided by the same rules that are applicable to the construction of contracts. <u>Pelosi v. Wailea Ranch Estates</u>, 10 Haw. App. 424, 876 P. 2d 1320 (1994), *reconsideration denied,* 10 Haw. App. 631, 879 P.2d 591, *cert. denied*, 77 Haw. 373, 884 P.2d 1149 (1994).

8

In <u>Pelosi</u>, the ICA held that "[a]s long as the terms of a covenant are not ambiguous, *i.e.,* not 'capable of being reasonably understood in more ways than one,' <u>we are required to interpret the terms 'according to their plain, ordinary, and accepted sense in common speech</u>." <u>Id</u>. at 435, 876 P.2d at 1327, citing <u>Cho Mark Oriental Food, Ltd. v. K & K Int'l</u>, 73 Haw. 509, 520, 836 P2d 1057, 1064 (1992). In ruling that summary judgment should have been granted, the court stated that "if the language of the covenant is clear and unambiguous, and the meaning of the covenant can be readily discerned from the instrument itself, the legal <u>effect and construction of the covenant is a question of law, appropriate for summary judgment disposition</u>," <u>Id</u>. citing 10A C. Wright, A. Miller, and M. Kane, <u>Federal Practice and Procedure</u>, Civil 2d § 2730.1, at 279-81 (1983); <u>Fassler v. Okemo Mountain, Inc.</u>, 148 Vt. 538, 540-541, 536 A.2d 930, 931 (1987) (emphasis added). See also <u>DeMund v. Lum</u>, 5 Haw. App. 336, 690 P.2d 1316 (1984). The appellate courts in Hawai`i have fully reviewed, as questions of law, the meaning of restrictive covenants, *see, e.g*., <u>Chang v. Magbee</u>, 45 Haw. 454, 370 P.2d 479 (1962), <u>Clark v. Wodehouse</u>, 4 Haw. App. 507, 669 P.2d 170 (1983), and acknowledged that the interpretation of restrictive covenants presents, in the first instance, a question of law for the courts. <u>St. Clair v. Krueger</u>, 579 Idaho 702, 769 P.2d 579 (1989).

## B.     **DEFENDANTS ARE REQUIRED TO COMPLY WITH THE DESIGN GUIDELINES**

At the outset, it should be noted that the Declaration provides that all owners, including Defendants, must strictly comply with the Design Guidelines. Article IV, § 4.1 of the Declaration provides:

4.1 <u>Design Guidelines</u> . . . ***All Owners, builders, and developers shall conduct their activities strictly in accordance with the Design Guidelines.***

Any construction or reconstruction of, or the refinishing or alteration of any part of the exterior of, any Improvement upon any Lot is absolutely prohibited until and unless the Owner of such Lot ***first obtains the approval therefor from the Architectural Committee and otherwise complies with all of the provisions of the Design Guidelines and/or this Declaration***. The Association may remove any Improvement constructed, reconstructed, refinished, altered or maintained in violation of this Section and the Owner thereof shall reimburse the Association for all expenses incurred in connection therewith. Any Owner proposing to construct or reconstruct, or to refinish or alter the Lot, or any part of the exterior of, any Improvement on or within his Lot, or to perform any work which under this Section requires the prior approval of the Architectural Committee, shall apply to the Architectural Committee for approval . . . .

*See* Exh. "A" (emphasis added). *See also* Exh. "A," Article XII, § 12.5.1.

Article IV, Sections 4.3 and 4.3.4 of the Declaration likewise provide, in part, that construction of improvements shall be undertaken pursuant to the Design Guidelines and Declaration:

4.3     <u>Residential Area: Permitted Uses and Limitations; Construction and Alteration of Improvements:</u> Absolutely ***no construction or alteration*** of Improvements may be undertaken on a Lot without prior approval of the Architectural Committee ***pursuant to the Design Guidelines and this Declaration . . . .***

4.3.4 <u>Improvements, Alterations and Repairs</u>: No Improvement, repair, Excavation, Fill or other work which in any way alters the exterior appearance of any Lot or the Improvements located thereon from its natural or improved state existing on the date such Lot was first conveyed or demised by the Trustees to Owner shall be made or done ***without the prior written approval of the Architectural Committee given pursuant to the provisions of the Design Guidelines and this Declaration***, except as specifically authorized herein. All repairs, maintenance and care of the exterior surfaces of Residences and Lots shall be undertaken by Owner in accordance with this Article IV and the standards established in the Design Guidelines and/or Architectural Committee Rules.

*See* Exh. "A" (emphasis added). *See also* Exh. "A," Article I, § C.

Article VI, Section 6.3.4 of the Design Guidelines provides in part:

*Any proposed changes or deviations from the approved plans occurring during construction must be submitted to the Architectural Review Committee for approval, prior to the execution of such changes.*

*See* Exh. "B."

The Hawai`i Intermediate Court of Appeals has emphasized that courts have *no power* to amend explicit and unambiguous provisions of declarations, regardless of whether those provisions are fair. D'Elia v. Association of Apartment Owners of Fairway Manor, 2 Haw. App. 347, 632 P.2d 296, 297 (1981). Although these comments were made regarding a condominium declaration, they apply equally to this case. This Court has no authority to amend or reform the clear and unambiguous provisions of the Association's Governing Documents.

### C.    DEFENDANTS HAVE VIOLATED UNAMBIGUOUS PROVISIONS OF THE DECLARATION AND DESIGN GUIDELINES

#### 1.    Failure to Complete the Dwelling in Accordance with Approved Plans Violates Design Guidelines

The Association seeks summary judgment on the ground that Defendants violated Article IV, §§ 4.1, 4.3 and 4.3.4 of the Declaration and Section 6.3.4 of the Design Guidelines by substantially deviating from the Approved Plans as follows:

1.    Defendants installed two skylights on the north roof slope which were bubble type with white frost, plastic lens and natural aluminum curbs in violation of the Association's Governing Documents (which, after the filing of this action, were replaced with flat sky lights).

11

2.     The frames of the two skylights, including flashing, do not match the adjacent roof.

3.     Defendants installed air conditioning equipment at the rear yard and screened the equipment with lattice work in violation of the Association's Governing Documents.

4.     Defendants installed two roof exhaust vents which were natural aluminum rather than the color matching the roof material, in violation of the Association's Governing Documents (which, after the filing of this action, were replaced with acceptable roof vents).

5.     Defendants installed a sheet metal roof exhaust vent in violation of the Association's Governing Documents.

6.     Defendants failed to construct adequate enclosed storage space within the garage as required under the Association's Governing Documents.

7.     Defendants installed entry light fixtures on the entry column bases that had exposed bulbs, in violation of the Association's Governing Documents.

8.     The Dwelling violates the Association's Governing Documents as it is substantially different from the Approved Plans as discussed on pages 20 and 21.

9.     Defendants failed to construct a concrete pad at the trash area (Exh. "Q" at ¶ 11).

(Exh. "Q" at ¶ 9 and Attachments 8 -11). *See* Decl. of Awa at ¶ 14.

## 2. Skylights Violated Design Guidelines

Article III, Section 3.2.3(i) of the Design Guidelines sets forth restrictions on installation of skylights:

> (i)    *Skylights. Skylights are to be designed as an integral part of the roof.* **Skylight glazing must be clear, solar bronze or gray;** *white or reflective glazing is prohibited. Skylight framing material must be* **bronze anodized or colored to match adjacent roof. Natural aluminum is prohibited.** *No bubble or plastic skylights will be allowed and skylights facing the street shall be non-operable and subject to the approval of the Architectural Review Committee.*

*See* Exh. "B" (emphasis added). Defendants installed "bubble" skylights, which are prohibited by Article III, Section 3.2.3(i) of the Design Guidelines. Further, the skylights installed by Defendants had white glazing, were not designed as an integral part of the roof, and the skylight framing was galvanized steel or natural aluminum rather than bronze anodized or colored to match the roof, all in violation of Article III, Section 3.2.3 (i) and Article IV, Sections 4.1, 4.3 and 4.3.4 of the Declaration. *See* Exh. "Q" at ¶ 3 and Decl. of Awa at ¶¶ 14.a.-b. and 15. *The ARC warned Defendants not to install bubble skylights by letter dated October 24, 2000. However, Defendants disregarded this warning. See* Exh. "F."

After this action was filed, without notifying the Association, Defendants completed remedial work on the skylights although they were required to obtain approval from the Association before performing work under the Governing Documents. *See* Exh. "V," Exh. "W," Exh. "X" and Decl. of Awa at ¶ 17. Although the type of skylights currently installed meets the requirements of the Governing Documents, the Association is entitled to summary judgment as the skylights installed

13

at the time this action was filed clearly violated the Governing Documents. Furthermore, the frames of the two skylights, including flashing, do not match the adjacent roof.

### 3.   Exposed Air Conditioning Equipment Violates Design Guidelines

Article III, Section 3.2.14 of the Design Guidelines provides:

> ***Mechanical Equipment.*** *All air conditioning, heating equipment and soft water tanks must be screened from view and be insulated for sound attenuation. Air conditioning units are not permitted on roofs.*

*See* Exh. "B." The Dwelling is in violation of Article III, Section 3.2.14 of the Design Guidelines as air conditioning equipment was installed although not shown on the Approved Plans. *See* Exh. "Q" at ¶ 4 and Decl. of Awa, ¶¶ 19-20.

Furthermore, although initially unscreened, after the Association filed this action, Defendants installed lattice screening around the air conditioning equipment without requesting approval from or notifying the ARC. Lattice work is a prohibited material under the Design Guidelines. *See* Exh. "B," §3.2.7, and Decl. of Awa, ¶ 20.

Defendants were required to obtain approval from the Association before performing the work under the Governing Documents. *See* Decl. of Awa, ¶ 21. In addition, in response to Defendants' December 6, 2005, letter, Exh. "V," the Association informed Defendants that no work should be performed until the Association could respond to their letter, Exh. "W," and via a January 5, 2006, letter, Exh. "X," the Association informed Defendants that before proceeding with remedial

work, they must submit plans for review and approval by the ARC. Defendants ignored these communications and proceeded with remedial work without ARC approval.

### 4.    Roof Vents Violated Design Guidelines

Article III, Section 3.2.3(f) of the Design Guidelines sets forth restrictions on installation of vents:

> *Vents. All vents, stacks and pipes must be colored to match the roof or wall material from which they project, must not be visible from the street, and are to be grouped so as to minimize roof penetrations.*

*See* Exh. "B" (emphasis added). Defendants installed two commercial aluminum turbine-style roof vents which not only differed from those depicted on the Approved Plans, and thus were not approved by the ARC, but the roof vents were not colored to match the roof and were visible from the street. *See* Exh. "Q" at ¶ 5 and Decl. of Awa, ¶ 22. Defendants also installed a third sheet metal roof vent which was not shown on the Approved Plans and is not colored to match the roof. *See* Exh. "DD-6" and Decl. of Awa, ¶ 24. The roof vents violate or violated Article III, Section 3.2.3(f) and Article VI, Section 6.3.4 of the Design Guidelines and Article IV, Sections 4.1, 4.3 and 4.3.4 of the Declaration. The Approved Plans show that roof vents were to be flush mounted to the surface of the roof. *See* Exh. "D" at Sheet A-5 and Decl. of Awa as ¶ 23.

Without notifying the Association or requesting approval from the ARC, Defendants completed remedial work on the two turbine-style vents. *See* Exh. "V," Exh. "W," Exh. "X" and Decl. of Awa at ¶ 26. Defendants ignored various communications from the Association and proceeded with remedial work without ARC approval. Although the currently installed flush mounted roof vents meet the

requirements of the Governing Documents, the Association is entitled to summary judgment as Defendants violated the Governing Documents by initially installing turbine-style roof vents. Furthermore, the existing single sheet metal vent violates the Governing Documents.

### 5.    Failure to Construct Storage Facilities in Garage

The garage of the Dwelling is substantially different from the Approved Plans. The area of the garage is substantially smaller, resulting in the elimination of the enclosed storage area of at least 100 square feet as required by the Design Guidelines. Article III, Section 3.2.4(b) of the Design Guidelines provides, in part:

> *(b)    Garages. A double-car garage containing not less than four hundred (400) square feet of parking area and a clear width of not less than eighteen (18') feet between outside support shall be attached to the residence; provided, however, that a detached double-car garage may be substituted in cases where an attached garage is not feasible.* **Every garage, whether attached or detached, which has a vehicular entrance facing a street shall contain not less than an additional one hundred (100) square feet of enclosed and covered area for service and storage facilities.** *Carports and single-car garages will not be permitted. The purpose of this requirement is to ensure that garages have adequate storage and thereby improve the aesthetic appearance of garages which face the street.*

*See* Exh. "B" (emphasis added).

Defendants' original plans, approved by the ARC, reflected a storage area of approximately 125 square feet, thus, meeting the requirements of Article III, § 3.2.4(b). *See* Exh. "D" at 2 (see notation at lower right corner).  However, Defendants did not construct the garage per the Approved Plans.

Previously, this Court denied the Association summary judgment on this point stating that the Design Guidelines were not "abundantly clear" whether the term

16

"service facilities" includes a toilet room. This Court ruled, "The meaning of the term 'service facilities' within the Design Guidelines is an issue of fact and is precluded from summary judgment." The Association seeks summary judgment on this point for two reasons.

First, Defendants' architect correctly interpreted the enclosed storage facilities requirement in drafting the Approved Plans. The Approved Plans reflect dedicated enclosed storage facilities of 125 square feet. *See* Exh. "D" at 2, and Decl. of Awa, ¶ 29. Defendants' argument that § 3.2.4(b) of the Design Guidelines is unclear is simply disingenuous and contradicts their conduct.

Second, even if, assuming for argument, a toilet room may be included in the required 100 square foot service facilities under § 3.2.4(b) of the Design Guidelines (which the Association strongly disputes), summary judgment should be granted in any event as the enclosed toilet room is substantially less than 100 square feet. Drawings indicate that the room is approximately 35 square feet. Decl. of Awa, ¶ 29.

It should be noted that the deficiency in the storage facilities is the result of major changes to the dimensions and footprint of the garage as summarized below:

| Conditions on Approved Plans | As-Built Conditions |
| --- | --- |
| 1. Area of enclosed storage facility is 125 square feet (per Defendants' architect's notations on plans) shown by cross-hatching on Exh. "AA-2" with the following characteristics: a. A portion of the storage facility was beneath the interior spiral staircase from the first to the second floor. *See* Exh. "AA-2." The height of the storage | 1. Major alterations were made to the area cross-hatched on Exh. "AA-2." a. Dedicated enclosed storage facility was not constructed. Exh. "AA-6." b. Spiral staircase shown on Approved Plans does not protrude into garage. Exh. "AA-6." c. In lieu of the enclosed storage facility, Defendants constructed an |

| | |
|---|---|
| facility beneath the spiral staircase would be approximately 5' at the lowest point and substantially higher at the highest point.<br>b. The storage facility was enclosed by a circular gyp board wall following the shape of the interior spiral staircase. *See* Exh. "AA-3" and "AA-4."<br>c. Entry into the storage facilities was through the opening marked, "5'0" OPENING UNDER FLR. SLAB W/ CONC. BEAM TO SPAN." *See* Exh. "AA-2." | enclosed laundry area (a washer, dryer and laundry sink). Exh. "AA-6."<br>d. The right corner of the garage adjacent to the kitchen (which should have been part of the enclosed storage facility) is an enclosed toilet room with sink, water heater and distiller. The area of the toilet room is approximately 35 square feet. *See* Exh. "AA-6." |
| 2. Length of garage (along left boundary): approximately 39 feet 10 inches. Exh. "AA-2." | 2. Length of garage (along left boundary) was reduced to approximately 34 feet 10 inches. Exh. "AA-6." |
| 3. Approved Plans include a room containing toilet, water heater and distiller, adjacent to kitchen at the rear of garage (this room is beneath the kitchen counter) in the area hatched on Exh. "AA-2" and "AA-4." | 3. Room containing water heater and distiller adjacent to kitchen was not constructed; instead, the kitchen was extended into this area. |
| 4. Washer/dryer and lavatory at rear of garage in area, denoted by horizontal lines on Exh. "AA-2." | 4. The area in the garage which should have contained the washer/dryer and lavatory was constructed as kitchen space, i.e., the kitchen wall was pushed into the garage to expand the kitchen space, thus reducing the length and floor area of the garage. |

*See* Decl. of Awa at ¶ 29. Thus, the garage deviates from plans previously approved by the ARC and violates Article III, Section 3.2.4(b) of the Design Guidelines in that it has less than 100 square feet of enclosed storage space. *See* Exh. "Q" at ¶ 10 and Decl. of Awa at ¶¶ 27-28.

Defendants were notified of this violation by letters dated August 29, 2003,

November 6, 2003, November 26, 2003, January 28, 2004 and March 4, 2004. *See* Exhs. "J", "M", "Q", "O" and "R."

Further, when Defendants were informed that the storage area did not meet the Design Guidelines' requirements, they were directed to submit revised plans to the ARC for approval. Defendants did submit revised plans, however, those plans were not approved by the ARC. *See* Exhs. "M", "N" and "O." Defendants have, therefore, constructed these portions of the Dwelling in violation of Article IV, Sections 4.1, 4.3 and 4.3.4 of the Declaration.

### 6.     Light Fixtures With Exposed Bulbs Violated Design Guidelines

Article III, Section 3.2.6 of the Design Guidelines provides:

> ***Exterior Lighting***. *All exterior lighting is to be indirect and shielded to prevent spillover onto adjacent lots and street. Exposed bulbs, spotlights, reflectors and lenses are prohibited.*

*See* Exh. "B." The Dwelling violated Article III, Section 3.2.6 of the Design Guidelines in that the front entry light fixtures on the entry column bases have exposed bulbs. *See* Exh. "Q" at ¶ 7 and Decl. Awa at ¶ 14.g.

Without notifying the Association, Defendants replaced the light fixtures with fixtures that do not have exposed bulbs. Defendants were required to obtain approval from the Association before performing the work under the Governing Documents. *See* Exh. "V," "W" and "X." Although the currently installed light fixtures meet the requirements of the Design Guidelines, the Association is entitled to summary judgment as Defendants violated the Governing Documents by installing fixtures with exposed bulbs.

### 7.    Exterior Fenestrations

This Court denied summary judgment regarding the miscellaneous exterior fenestrations under the mistaken impression that Article VI, § 6.3.4 of the Design Guidelines was not included in Exh. "B" to the Motion for Summary Judgment. The Court noted that "there is no controlling document for the Court to interpret as a matter of law . . ." MSJ Order at 27. However, § 6.3.4 was attached to the MSJ as Exh. "B" (see page 33 of Exh. "B"). (As noted above, § 6.3.4 requires owners to obtain approval from the ARC before making changes to the Approved Plans.)

The "controlling documents" which support summary judgment include § 6.3.4 of the Design Guidelines as well as § 4.1, 4.3 and § 4.3.4 of the Declaration. Defendants violated these provisions by constructing a substantially different dwelling from that shown on the Approved Plans. The unapproved deviations include:

a.    <u>Front Elevation</u>

(1)    The roof eyebrow above the garage was deleted

(2)    The upper corners of the garage door opening were changed from an arched to a squared-off design

(3)    The arched clerestory window above the entry door was deleted and substituted with a decorative window

(4)    The windows at the living room are lower than the approved drawings

(5)    Planters at the entry were not installed

(6)    The roof over the entry and the roof over the master bedroom were not constructed as separate and distinct elements

      b.    <u>Right Elevation</u>

(1)    The back corner has been moved out to align with the living room exterior wall causing a change in the building square footage and also causing a higher ridgeline and a less variegated elevation than shown on the Approved Plans

(2)    Windows at the back corner are smaller than the Approved Plans

(3)    Windows at the living room are lower than the Approved Plans

(4)    The decorative panel on the Approved Plans was deleted

      c.    <u>Left Elevation</u>

(1)    Defendants deleted windows on the left side of the Dwelling, and

(2)    Defendants deleted the metal railing at the balcony corner

*See* Decl. of Awa, ¶ 33, and Exh. "Q."

As a result of the various deviations from the approved plans, there is minimal relief and rhythm to the large wall surfaces. Moreover, the alteration of the back corner of the building, item b.(1) above, results in a larger building mass with less variegated walls and roof forms that are not appropriately articulated. See Decl. of Awa.

### 8.    Concrete Pad at Trash Area

The Approved Plans call for a concrete pad at the trash area (between the driveway and trash storage area) which has not been constructed. *See* Exh. "Y," "Z" and "Q" (at ¶ 9 and Attachments 8 -11), and Decl. of Awa at ¶ 35.

## D. DEFENDANTS HAD ACTUAL AND CONSTRUCTIVE KNOWLEDGE OF THE LAW AND THE GOVERNING DOCUMENTS

As a matter of law, the recordation of the Declaration at the Bureau of Conveyances places all owners on constructive notice of the provisions of the Declaration. Ass'n of Apartment Owners of Kukui Plaza v. City and County of Honolulu, 7 Haw. App. 60, 742 P.2d 974 (1987). *See also* SGM Partnership v. Nelson, 5 Haw. App. 526, 529, 705 P.2d 49, 51 (1985):

> Constructive notice arises as a legal inference, . . . where, 'circumstances are such that a reasonably prudent person should make inquiries, [and therefore] the law charges a person with notice of facts which inquiry would have disclosed.'

Everyone is presumed to know the law. Ignorance of the law is not an excuse for any person to breach a duty or to omit to carry out that duty. Application of Suekichi Tsuji, 4 U.S. Dist. Ct. Haw. 52 (1911); Kapena v. Kaleleonalani, 6 Haw. 579 (1885). In addition, Defendants' architect, Edward Resh, acknowledged receipt of the Association's Design Guidelines and use of the same in designing the Dwelling. Exh. "E." Further, Defendants were given notice of the provisions of the Declaration and Design Guidelines by correspondence from the Association. *See* Exhs. "F","I", "J", "K", "L"-"O", "R", "S", and "U."

## E. INJUNCTIVE RELIEF IS APPROPRIATE IN THIS CASE

### 1. The Declaration Authorizes An Award of Injunctive Relief

The Declaration expressly authorizes the Association to bring an action to enjoin violations of the Governing Documents. The Association is specifically authorized and

obligated under the Declaration to bring this action. Article XII, Section 12.2.1 of the

Declaration provides in relevant part:

> [T]he Association, or any Owner or Owners shall have the right to enforce any and all of the limitations, covenants, conditions, restrictions, obligations liens and charges now or hereafter imposed by this Declaration upon the Owners or upon any lot in the Project.

> Article XII, Section 12.2.2 of the Declaration states, in relevant part:

> Every act or omission whereby a covenant, condition or restriction of this Declaration is violated in whole or in part is hereby declared to be a nuisance and may be enjoined or abated, whether or not the relief sought is for negative or affirmative action, by Declarant, the Trustees..., the Association, or an Owner or Owners.

*See* Exh. "A."

### 2.    Authorities Support An Award of Injunctive Relief

Hawai`i courts have made it clear that owners who live in community

associations and who violate restrictive covenants are subject to the remedy of

injunctive relief. For example, in Sandstrom v. Larsen, 59 Haw. 491, 583 P.2d 971

(1978), the Hawai`i Supreme Court upheld a decision by a trial court issuing a

mandatory injunction requiring owners to remove the top story of their residential

structure because the structure violated a restrictive height covenant applicable to their

property. In so holding, the Hawai`i Supreme Court set forth the following rationale:

> A basic consideration in the enforcement of restrictive covenants "is that they are enforceable through the equitable relief afforded by an injunction." McDonough v. W. W. Snow Construction Co., supra, 131 Vt. at 441, 306 A.2d at 122. As such, because the court is enforcing an established legal right embodied in the covenants, ***"the relative hardships to the parties has no application to the award of final relief to the plaintiff."***

> ...

23

> [A]lthough appellants may have mistakenly relied upon the ***incorrect advice of their architect***, such a mistaken assumption that they were acting legally and properly ***did not confer immunity upon them*** from the right of appellees or any other homeowners in the subdivision to seek, equitable enforcement of the restriction.
>
> . . .
>
> ***We are convinced that where a property owner deliberately and intentionally violates a valid express restriction running with the land or intentionally 'takes a chance', the appropriate remedy is a mandatory injunction to eradicate the violation.***

Id. at p. 499-500, 583 P.2d at 978 (quotation marks omitted) (emphasis added). The power to enforce the Governing Documents through injunctive relief proceedings is critical to the Association's ability to operate, manage and govern the project.

In Chang v. Magbee, 45 Haw. 454, 370 P.2d 479 (1962), the Hawai`i Supreme Court enforced a restrictive covenant prohibiting a parcel from being used as a boarding house, hospital or sanitarium. The court held that the use of the property for a convalescent or nursing home violated the covenant.

In McNamee v. Bishop Trust Co., 62 Haw. 397, 616 P.2d 205 (1980), the Hawaii Supreme Court reviewed the decision of a trial court affirming the decision of a managing committee of a community association disapproving an alteration. In that case, the plaintiffs sought permission to add a second story to their house, which the association's committee denied. The Supreme Court affirmed the trial court's decision in favor of the association, recognizing that the trial court should not be substituting its judgment for the committee and determining the reasonableness of the decision itself:

> The trial court's focus on the reasonableness of the Committee's actions rather than the reasonableness of plaintiffs' plans was well taken. ***Plaintiffs' presentation of their case was directed towards showing that***

> ***their plans for construction were reasonable. However, this is not a
> question for a court either at the trial or appellate level to consider. The
> body most suited for this determination was the [association's]
> designated board -- the Managing Committee***. The trial court's task was
> to see that the Committee's decision was not arbitrary or made in bad
> faith.

Id. at 402 at n.10, 616 P.2d at 209 at n. 10 (emphasis added).

In DeMund v. Lum, 5 Haw. App. 336, 690 P.2d 1316 (1984), the Hawai`i
Intermediate Court of Appeals enforced a restrictive covenant requiring lots to be used
"as a single-family residence only." The court held that the trial court did not err in
enjoining owners from renting portions of their homes. *See also*, Clark v. Wodehouse,
4 Haw. App. 507, 669 P.2d 170 (1983) (Intermediate Court of Appeals enforced a
height limit in a restrictive covenant.

In addition to Hawai`i case law, the Restatement of the Law of Property, Third,
Servitudes ("Restatement") recognizes that injunctive relief is normally available to
redress violations of restrictive covenants:

> ***Injunctive relief is normally available to redress violations of easements
> and restrictive covenants without proof of irreparable injury or a
> showing that a judgment for damages would be inadequate.*** The value
> of a restrictive covenant or easement is often difficult to quantify and may
> be impossible to replace. When it is enjoyed as an appurtenance to
> ownership of land, its value to the land owner may not be adequately
> reflected by market values. An award of damages instead of injunctive
> relief that would allow the other party to buy out the servitude obligation
> would seldom be appropriate so long as the servitude continues to serve
> the purpose contemplated at its creation. This consideration is even more
> important for conservation and preservation servitudes than for other
> types of servitudes.

*Restatement of the Law of Property, Third, Servitudes* (1998) ("*Restatement*"), § 8.3,
Comment b (emphasis added). The Hawai`i Supreme Court recently recognized the
*Restatement* in an opinion deciding the validity of restrictive covenants applicable to

a community association. <u>Lee v. Puamana Community Association</u>, 109 Hawai`i 561, 128 P.3d 874, 884 (2006). The Hawai`i Supreme Court has also recognized the *Restatement* in a case dealing with easements. *See* <u>Association of Apartment Owners of Wailea Elua v. Wailea Resort Company, Ltd.</u>, 100 Hawai`i 97, 109, 58 P.3d 608, 620 (2002).

Moreover, the Hawai`i Supreme Court's analysis in recent decisions involving enforcement of restrictive covenants has been consistent with the analysis set forth in the *Restatement:*[2]

> "Every covenant has a burden to the covenantor and a benefit to the covenantee." <u>Waikiki Malia Hotel, Inc. v. Kinkai Properties Ltd. Partnership</u>, 75 Haw. 370, 382, 862 P.2d 1048, 1056 (1993). An individual may suffer a violation of his or her rights without suffering actual damages. It follows, therefore, that a breach of a covenant alone may be grounds for ***injunctive relief***, "even absent a showing of the amount of damage which has in fact been caused by that breach." <u>Sandstrom</u>, 59 Haw. at 501, 583 P.2d at 979; *see also Powell, supra*, § 60.07, at 60-120 (***injunctive relief*** may be granted for breach of covenant

---

[2] Numerous courts have cited and relied upon various sections of the *Restatement*. *See, e.g.,* <u>Laverty v. Alaska Railroad Corp.</u>, 13 P.3d 725 (Alaska 2000) (Alaska Supreme Court citing *Restatement* at § 1.2); <u>Il Giardino, LLC v. Belle Haven Land Company</u>, 254 Conn. 502, 757 A.2d 1103 (2000) (citing *Restatement* at § 4.11); <u>Skow v. Goforth</u>, 618 N.W.2d 275 (Iowa 2000) (Iowa Supreme Court citing *Restatement* at § 4.9); <u>Plymouth Canton Community Crier, Inc. v. Prose</u>, 619 N.W.2d 725 (Mich. App. 2000) (citing *Restatement* at § 2.16); <u>Anolick v. Holy Trinity Greek Orthodox Church</u>,2001 WL 85681 (citing *Restatement* at § 2.16); <u>Abington Limited Partnership v. Heublein</u>, 257 Conn. 570, 778 A.2d 885 (Conn. 2001) (citing *Restatement* at § 4.10); <u>Fox v. Kings Grant Maintenance Association</u>, 167 N.J. 208, 770 A.2d 707 (2001) (citing *Restatement* at § 6, et seq.); <u>Beattie v. State ex rel. Grande River Dam Authority</u>, 41 P.3d 377, 2002 OK 3 (Okla. 2002) (citing *Restatement* at §§ 1.2, 1.4); <u>Stillwater Lakes Civic Association, Inc. v. Krawitz</u>, 772 A.2d 118 (2001) (citing *Restatement* at § 1.1); <u>Fahser v. Hilgart</u>, 630 N.W.2d 277 (Wis. App. 2001) (citing *Restatement* at § 2.16).

"*irrespective* of the amount of actual monetary damage" (emphasis added)); <u>Cordogan v. Union Nat'l Bank of Elgin</u>, 64 Ill.App.3d 248, 21 Ill.Dec. 18, 380 N.E.2d 1194, 1199 (1978) (observing that "'it was well settled that equity would entertain bills for injunctions to prevent their breach although the breach would cause no substantial injury'" (citation omitted)).

<u>Pelosi v. Wailea Ranch Estates</u>, 91 Hawai'i 478, 494, 985 P.2d 1045, 1061 (Hawai'i 1999) (emphasis added).

The Association seeks a permanent injunction, tailored to the summary judgment order, compelling Defendants to do as follows:

1.    Defendants shall strictly comply with the Approved Plans and correct the front building envelope encroachment as follows:

    (a)    By no later than the date ordered by this Court, Defendants shall fully complete any and all remedial work on the Dwelling as necessary to bring the Dwelling into strict conformance with the Approved Plans, including without limitation, (a) removal of any items constructed on the Property but not shown on the Approved Plans, (b) construction of any items which were shown on the Approved Plans but omitted without approval of the ARC, (c) removal of any items shown on the Approved Plans but which deviate from the Approved Plans and construction of those items in accordance with the Approved Plans, and (d) correction of the front building envelope encroachment.

    (b)    By the date ordered by this Court, Defendants shall submit revised plans to correct the front building envelope encroachment to the ARC and obtain the ARC's approval of said plans. Said plans shall strictly conform

with the requirements of the Governing Documents. By the date ordered by this Court, Defendants shall perform remedial work to correct the front building envelope encroachment, in strict conformance with the revised plans approved by the ARC.

2.  Alternatively, by the date ordered by this Court, Defendants may submit revised plans to the ARC and obtain the ARC's approval of said plans, provided that said plans shall strictly conform with the requirements of the Governing Documents, and resolve the various violations of the Governing Documents described above. In the event Defendants choose to submit revised plans, by the date ordered by this Court, Defendants shall perform remedial work to correct all violations of the Governing Documents in strict conformance with the revised plans approved by the ARC.

The proposed injunction will provide Defendants the option of constructing the Dwelling in accordance with the Approved Plans (and correcting the building envelope encroachment), or in the alternative, submitting revised plans to correct the various violations of the Governing Documents. (In either event, Defendants will be required to correct the building envelope encroachment.)

## IV. <u>CONCLUSION</u>

It cannot be overemphasized that the Association's remaining claims for injunctive relief should be resolved via summary judgment as this motion seeks a ruling on the legal effect and construction of restrictive covenants. The Supreme Court

of California's comments in Nahrstedt v. Lakeside Village Condominium Ass'n, Inc., 8 Cal.4th 361, 33 Cal.Rptr.2d 63, 878 P.2d 1275 (1994), are particularly appropriate in this regard:

> Refusing to enforce the CC & R's contained in a recorded declaration, or enforcing them only after protracted litigation that would require justification of their application on a case-by-case basis, would *impose great strain on the social fabric of the common interest development.*

*Id.* at 1288 (emphasis added). If summary judgment is denied, the Association will be required to prepare for and proceed to trial with regard to enforcement of its Governing Documents and consume significant judicial resources and incur significant legal fees and costs to resolve legal points which are completely appropriate for summary disposition.

In addition to summary judgment, the Association seeks a permanent injunction compelling Defendants to correct all violations of the Governing Documents upon which summary judgment is granted.

The Association's claims for attorneys' fees and costs are reserved for subsequent determination by the Court.

DATED:  Honolulu, Hawai`i, January 25, 2008.


 /s/ Lance S. Fujisaki
JOYCE Y. NEELEY
LANCE S. FUJISAKI
SCOTT R. GRIGSBY
Attorneys for Plaintiff
NA PALI HAWEO COMMUNITY
ASSOCIATION

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

| | |
|---|---|
| NA PALI HAWEO COMMUNITY ASSOCIATION, a Hawaiʻi non-profit corporation, | CIVIL NO. CV04-00413 DAE/BMK |
| | CERTIFICATE OF SERVICE |
| Plaintiff, | |
| vs. | |
| ANTHONY CHARLES GRANDE; NARINDAR KAUR GRANDE; JOHN DOES 1-10; JANE DOES 1-10; DOE PARTNERSHIPS 1-10; DOE CORPORATIONS 1-10; DOE ENTITIES 1-10; AND DOE GOVERNMENTAL UNITS 1-10, | |
| Defendants. | |
| ANTHONY CHARLES GRANDE and NARINDAR KAUR GRANDE, | |
| Counterclaim Plaintiffs, | |
| vs. | |
| NA PALI HAWEO COMMUNITY ASSOCIATION; RONALD K. AWA and DOES 1-25, | |
| Counterclaim Defendants. | |

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a copy of the foregoing document was duly served

upon the following attorneys in the manner and on the date indicated below:

ANTHONY CHARLES GRANDE          FIRST CLASS U.S. MAIL
125 Mar-Len Drive
Melbourne Beach, Florida 32951

NARINDAR KAUR GRANDE            FIRST CLASS U.S. MAIL
125 Mar-Len Drive
Melbourne Beach, Florida 32951

JOHN D. ZALEWSKI, ESQ.          HAND DELIVERY
Case Lombardi & Pettit
Pacific Guardian Center, Mauka Tower
733 Bishop Street, Suite 2600
Honolulu, HI 96813
    Attorney for Counterclaim Defendants
    NA PALI HAWEO COMMUNITY ASSOCIATION
    and RONALD K. AWA

DATED:  Honolulu, Hawaiʻi, January 25, 2008.


                  /s/ Lance S. Fujisaki
                  JOYCE Y. NEELEY
                  LANCE S. FUJISAKI
                  SCOTT R. GRIGSBY
                  Attorneys for Plaintiff
                  NA PALI HAWEO COMMUNITY
                  ASSOCIATION

2