IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

| | |
|---|---|
| NA PALI HAWEO COMMUNITY ASSOCIATION, a Hawaii non-profit corporation,<br><br>    Plaintiff,<br><br>    vs.<br><br>ANTHONY CHARLES GRANDE; NARINDAR KAUR GRANDE; JOHN DOES 1-10; JANE DOES 1-10; DOE PARTNERSHIPS 1-10; DOE CORPORATIONS 1-10; DOE ENTITIES 1-10; AND DOE GOVERNMENTAL UNITS 1-10,<br><br>    Defendants.<br><br>ANTHONY CHARLES GRANDE and NARINDAR KAUR GRANDE,<br><br>    Counterclaim Plaintiffs,<br><br>    vs.<br><br>NA PALI HAWEO COMMUNITY ASSOCIATION; RONALD K. AWA and DOES 1-25,<br><br>    Counterclaim Defendants. | CIVIL NO. CV04-00413 DAE/BMK (Injunctive Relief)<br><br>DECLARATION OF RONALD K. AWA |

## DECLARATION OF RONALD K. AWA

I, RONALD K. AWA, hereby declare under penalty of law that the following is true and correct:

1.  I am a licensed architect in the State of Hawaii and a member of the NA PALI HAWEO COMMUNITY ASSOCIATION'S ("Association") Architectural Review Committee ("ARC"). I am authorized to make this Affidavit on behalf of the Association and make this Affidavit based on my own personal knowledge and information.

2.  I have been a member of the ARC since mid-2000.

3.  I am in possession of the records of the ARC kept in the ordinary course of business and referenced herein, am familiar with the subject matter of this action, and am qualified to swear to the statements contained herein.

4.  Defendants ANTHONY CHARLES GRANDE and NARINDAR KAUR GRANDE ("Defendants") are the owners of a single family home ("Dwelling") and lot located at 1251 Kamehame Drive, also known as Lot No. 49 (Kamehame Ridge Subdivision, Unit II-Phase 2-A shown on file Plan Number 2028), Maunalua, Honolulu, Hawaii 96825 (the "Property").

5.  The Property is subject to the Declaration of Covenant, Conditions and Restrictions of Na Pali Haweo ("Declaration") and the Na Pali Haweo Design Guidelines ("Design Guidelines"). (The Declaration and Design Guidelines are

collectively referred to as "Governing Documents.")

6. In October 2000, Defendants submitted construction plans for a four bedroom, three bath home of approximately 3,335 square feet to the ARC for review and approval, along with a letter from Resh, stating: "The owner and I acknowledge receipt of the Design Guidelines and have used them in the design of the residence stated above."

7. The ARC approved the plans ("Approved Plans"), *see* Exhibit "D," subject to a modification to the height of the trash enclosure and the following clarification as to the skylight design: "Drawings appear to indicate bubble skylight which is not permitted. Also, confirm how the skylight is 'vented.' Clarify skylight type, design and finishes for conformance to 3.2.3(i)." *See* Exhibit "F."

8. Without notice to or approval by the ARC, Defendants submitted a different set of plans ("City Plans") to the City and County of Honolulu, Department of Planning and Permitting. *See* Exhibit "G".

9. A Building Permit was issued on September 6, 2001.

10. Defendants did not provide the Association with the City Plans.

11. The City Plans differed from the Approved Plans in that, among other things, the footprint of the Dwelling had been altered, floor area increased, roof line revised, the garage was remodeled and reduced in size, enclosed storage space was substantially eliminated, and exterior fenestrations were modified.

12. After construction started in 2003, the Association received complaints from Defendants' neighbors, Glen Y. Moribe and Sandra E. Moribe, that the Dwelling, then in the initial stages of construction, had exceeded the height limit imposed by the Design Guidelines.

13. I confirmed that the Dwelling violated the building envelope restrictions of the Governing Documents and the Association wrote numerous letters demanding that Defendants stop further work.

14. Defendants have violated numerous provisions of the Declaration and Design Guidelines, as described and depicted in Exhibit "Q" to the Association's Concise Statement of Facts, and as summarized below:

   a. Defendants installed two skylights on the north roof slope which were bubble type with white frost, plastic lens and natural aluminum curbs, in violation of the Association's Governing Documents (which, after the filing of this action, were replaced with flat skylights).

   b. The frames of the two skylights, including flashing, do not match the adjacent roof.

   c. Defendants installed air conditioning equipment at the rear yard and screened the equipment with lattice work in violation of the Association's Governing Documents.

   d. Defendants installed two roof exhaust vents which were natural

     aluminum rather than the color matching the roof material, in violation of the Association's Governing Documents (which, after the filing of this action, were replaced with acceptable roof vents.)

  e. Defendants installed a sheet metal roof exhaust vent in violation of the Association's Governing Documents.

  f. Defendants failed to construct adequate enclosed storage space within the garage as required by the Association's Governing Documents.

  g. Defendants installed entry light fixtures on the entry column bases that had exposed bulbs, in violation of the Association's Governing Documents.

  h. The Dwelling violates the Association's Governing Documents as it is substantially different from the Approved Plans as described below in ¶ 33.

  i. Defendants failed to construct a concrete pad between the trash storage area and the driveway as shown on the Approved Plans, in violation of the Association's Governing Documents.

(The summary above does not include violations for which this Court's granted partial summary judgment.)

  15. Defendants installed "bubble" skylights, which are prohibited by Article III, Section 3.2.3(i) of the Design Guidelines. Further, the skylights installed by

Defendants had white glazing, were not designed as an integral part of the roof, and the skylight framing was galvanized steel or natural aluminum rather than bronze anodized or colored to match the roof, all in violation of Article III, Section 3.2.3 (i) and Article IV, Sections 4.1, 4.3 and 4.3.4 of the Declaration.

16. The ARC warned Defendants not to install bubble skylights by letter dated October 24, 2000. However, Defendants disregarded this warning.

17. After this action was filed, without notifying the Association, Defendants completed remedial work on the skylights although they were required to obtain approval from the Association before performing work under the Governing Documents.

18. The frames of the two existing skylights, including flashing, do not match the adjacent roof.

19. The Dwelling is in violation of Article III, Section 3.2.14 of the Design Guidelines as air conditioning equipment was installed although not shown on the Approved Plans.

20. Although initially unscreened, after the Association filed this action, Defendants installed lattice screening around the air conditioning equipment without requesting approval from or notifying the ARC. Lattice work is a prohibited material under the Design Guidelines.

21. Defendants were required to obtain approval from the Association before

performing the work under the Governing Documents.

22. Defendants installed two commercial aluminum turbine-style roof vents which not only differed from those depicted on the Approved Plans, and thus were not approved by the ARC, but the roof vents were not colored to match the roof and were visible from the street.

23. The Approved Plans show that roof vents were to be flush mounted to the surface of the roof.

24. Defendants also installed a third sheet metal roof vent which was not shown on the Approved Plans and is not colored to match the roof.

25. The third sheet metal roof vent violates, and the two commercial aluminum turbine-style roof vents violated, Article III, Section 3.2.3(f) and Article VI, Section 6.3.4 of the Design Guidelines and Article IV, Sections 4.1, 4.3 and 4.3.4 of the Declaration.

26. Without notifying the Association or requesting approval from the ARC, Defendants completed remedial work on the two turbine-style vents.

27. The garage of the Dwelling is substantially different from the Approved Plans. The area of the garage is substantially smaller, resulting in the elimination of the enclosed storage area of at least 100 square feet as required by the Design Guidelines.

28. The enclosed toilet room is substantially less than 100 square feet. The

City Plans indicate that the room is approximately 35 square feet.

29. The following summarizes the differences between the conditions on the Approved Plans versus the as-built conditions as reflected on the City Plans:

| Conditions on Approved Plans | As-Built Conditions |
|---|---|
| 1. Area of enclosed storage facility is 125 square feet (per Defendants' architect's notations on plans) shown by cross-hatching on Exh. "AA-2," with the following characteristics:<br><br>a. A portion of the storage facility was beneath the interior spiral staircase from the first to the second floor. *See* Exh. "AA-2." The height of the storage facility beneath the spiral staircase would be approximately 5' at the lowest point and substantially higher at the highest point.<br><br>b. The storage facility was enclosed by a circular wall following the shape of the interior spiral staircase. *See* Exh. | 1. Major alterations were made to the area cross-hatched on Exh. "AA-2."<br><br>a. Dedicated enclosed storage facility was not constructed. Exh. "AA-6."<br><br>b. The spiral staircase shown on Approved Plans does not protrude into garage. Exh. "AA-6."<br><br>c. In lieu of the enclosed storage facility, Defendants installed a laundry area with washer, dryer and laundry sink. Exh. "AA-6."<br><br>d. The right corner of the garage adjacent to the kitchen (which should have been part of the enclosed storage facility) is an enclosed toilet room with sink, water heater and distiller. The |

| | |
|---|---|
| "AA-2."<br><br>c. Entry into the storage facilities was through the opening marked, "5'0" OPENING UNDER FLR. SLAB WITH CONC. BEAM TO SPAN." *See* Exh. "AA-2." | area of the toilet room is approximately 35 square feet. *See* Exh. "AA-6." |
| 2. Length of garage (along left boundary): approximately 39 feet 10 inches. | 2. Length of garage (along left boundary) was reduced to approximately 34 feet 10 inches. |
| 3. Approved Plans include a room containing toilet, water heater and distiller, adjacent to kitchen at the rear of garage (this room is beneath the kitchen counter) in area hatched on Exh. "AA-2" and "AA-4." | 3. Room containing water heater and distiller adjacent to kitchen was not constructed; instead, the kitchen was extended into this area. |

| | |
|---|---|
| 4. Washer/dryer and lavatory at rear of garage in area, denoted by horizontal lines on Exh. "AA-2." | 4. The area in the garage which should have contained the washer/dryer and lavatory was constructed as kitchen space, i.e., the kitchen wall was pushed into the garage to expand the kitchen space, thus reducing the length and floor area of the garage. |

30.    The points discussed above are summarized on annotated plans attached to the Association's Motion for Summary Judgment and Permanent Injunction ("Association's Motion") as Exhibit "AA" which annotations truly and accurately describe the various features of the Approved Plans and as-built conditions. Also attached as Exhibit "AA" are true and accurate excerpts of the Approved Plans.

31.    The Dwelling violated Article III, Section 3.2.6 of the Design Guidelines in that the front entry light fixtures on the entry column bases have exposed bulbs.

32.    Without notifying the Association, Defendants replaced the light fixtures with fixtures that do not have exposed bulbs. Defendants were required to obtain approval from the Association before performing the work under the Governing Documents.

33.    Defendants violated the Declaration and Design Guidelines by constructing a substantially different dwelling from that shown on the Approved

Plans. The unapproved deviations include:

    a.    <u>Front Elevation</u>

        (1)    The roof eyebrow above the garage was deleted

        (2)    The upper corners of the garage door opening were changed from an arched to a squared-off design

        (3)    The arched clerestory window above the entry door was deleted and substituted with a decorative window

        (4)    The windows at the living room are lower than the approved drawings

        (5)    Planters at the entry were not installed

        (6)    The roof over the entry and the roof over the master bedroom were not constructed as separate and distinct elements

    b.    <u>Right Elevation</u>

        (1)    The back corner has been moved out to align with the living room exterior wall causing a change in the building square footage and also causing a higher ridgeline and a less variegated elevation than shown on the Approved Plans

        (2)    Windows at the back corner are smaller than the Approved Plans

        (3)    Windows at the living room are lower than the Approved Plans

        (4)    The decorative panel on the Approved Plans was deleted

    c.    <u>Left Elevation</u>

        (1)    Defendants deleted windows on the left side of the Dwelling, and

        (2)    Defendants deleted the metal railing at the balcony corner.

34.    As a result of the various deviations from the approved plans, there is minimal relief and rhythm to the large wall surfaces. Moreover, the alteration of the back corner of the building, item b.(1) above, results in a larger building mass with less variegated walls and roof forms that are not appropriately articulated.

35.    The Approved Plans call for a concrete pad at the trash area (between the driveway and trash storage area) which has not been constructed.

36.    Attached to the Association's Motion as Exhibits "DD-1" through "DD-8" are photographs of the Dwelling which truly and accurately depict the Dwelling, and which contain annotations which truly and accurately describe the various violations of the governing documents.

    DATED:    Honolulu, Hawaii, January 25, 2008.

                                          _____
                                          Ronald K. Awa