1          A.      Yes.   He actually already had the plans

2     because he was bidding on them.

3          Q.      Okay.   There's a set of plans that we've --

4     that had been -- we've been talking about that are already

5     in evidence that -- or initialed, can you described the --

6     the signing, the initialing process?

7          A.      Yes.   That -- that was -- yeah.   Him and I

8     took the City plans, and we -- and we -- once that were

9     approved by the City, that is, we -- and we made a few

10    changes on that.   By changes, I mean, agreements that with

11    our signatures of what we wanted him to do and not do on

12    that -- on that.

13                 For instance, the gutters were originally

14    copper, and it was -- it was real expensive.   I tried to

15    save money as much as possible.   We were real tight on

16    money then to buy the land.   So I -- I changed the

17    aluminum, discussed it with Jeff and said we'll save money

18    that way by changing to aluminum.   We signed that.

19                 Front gate, for instance, we removed the

20    front gate.   That's a very expensive item.   And I was

21    going to try to get them in -- in Thailand, because I fly

22    there a lot.   I could get them made real cheap over there.

23    That's just another example what we had done.

24         Q.      All right.

25         A.      Initially, I should say.

June Spohn, CSR 236
Official Court Reporter
First Circuit Court, State of Hawaii

PERMISSION TO COPY DENIED, HRS 606-13, etc.    36

```
 1    correct?
 2         A.    Correct.  There is no agreement.
 3         Q.    And, in fact, you got sued by the association
 4    after this, correct?
 5         A.    Correct.
 6         Q.    All right.  It also says, furthermore, you
 7    may be responsible for attorneys fees if you do not
 8    prevail and other additional fees may be needed to be paid
 9    to the association, correct?
10         A.    Correct.
11         Q.    We urge you to work with the association to
12    expeditiously obtain all proper approvals before
13    proceeding with construction as required by the
14    construction contract, right?
15         A.    Correct.
16         Q.    And, in fact, what happened is you went
17    forward with Mr. Mitchell and completed the house even
18    though you did not have an agreement with the Association,
19    correct?
20         A.    I completed it, yes, Mitchell completed the
21    --
22         Q.    Okay.
23         A.    -- the --
24         Q.    The areas in the disputed area, right?
25         A.    Yeah.  They were disputed areas.  We didn't
```

```
 1    agree with what they were saying.  Yes.  They're disputed

 2    areas.

 3         Q.    But you completed work in the disputed areas

 4    before receiving an agreement with the Association,

 5    correct?

 6         A.    Well, the Association approved the plans.  So

 7    he completed the building.  Yes.  He completed it.

 8         Q.    You completed the building even in the

 9    disputed areas even though the Association was telling you

10    to stop, right?

11         A.    Yes.

12         Q.    Okay.  All right.

13         A.    I had to cut my losses.  Right.

14         Q.    Attached to this letter was a Indemnity

15    Agreement, correct?

16         A.    Yes.

17         Q.    And Brandt Homes didn't want to proceed

18    forward with the project unless you indemnify them

19    concerning the non-compliant areas, correct?

20         A.    That's correct.

21         Q.    All right.  But you did not agree to that,

22    correct?

23         A.    Correct.  I did not agree with that.  I was

24    not going to -- I did not agree with that.

25         Q.    All right.  All right.  Now, between January
```

                    June Spohn, CSR 236
                  Official Court Reporter
              First Circuit Court, State of Hawaii