PERMISSION TO COPY DENIED, HRS 606-13, etc.

```
 1       A.      Yes.  He actually already had the plans
 2  because he was bidding on them.
 3       Q.      Okay.  There's a set of plans that we've --
 4  that had been -- we've been talking about that are already
 5  in evidence that -- or initialed, can you described the --
 6  the signing, the initialing process?
 7       A.      Yes.  That -- that was -- yeah.  Him and I
 8  took the City plans, and we -- and we -- once that were
 9  approved by the City, that is, we -- and we made a few
10  changes on that.  By changes, I mean, agreements that with
11  our signatures of what we wanted him to do and not do on
12  that -- on that.
13              For instance, the gutters were originally
14  copper, and it was -- it was real expensive.  I tried to
15  save money as much as possible.  We were real tight on
16  money then to buy the land.  So I -- I changed the
17  aluminum, discussed it with Jeff and said we'll save money
18  that way by changing to aluminum.  We signed that.
19              Front gate, for instance, we removed the
20  front gate.  That's a very expensive item.  And I was
21  going to try to get them in -- in Thailand, because I fly
22  there a lot.  I could get them made real cheap over there.
23  That's just another example what we had done.
24       Q.      All right.
25       A.      Initially, I should say.
```

June Spohn, CSR 236
Official Court Reporter
First Circuit Court, State of Hawaii

```
 1   correct?
 2        A.    Correct.  There is no agreement.
 3        Q.    And, in fact, you got sued by the association
 4   after this, correct?
 5        A.    Correct.
 6        Q.    All right.  It also says, furthermore, you
 7   may be responsible for attorneys fees if you do not
 8   prevail and other additional fees may be needed to be paid
 9   to the association, correct?
10        A.    Correct.
11        Q.    We urge you to work with the association to
12   expeditiously obtain all proper approvals before
13   proceeding with construction as required by the
14   construction contract, right?
15        A.    Correct.
16        Q.    And, in fact, what happened is you went
17   forward with Mr. Mitchell and completed the house even
18   though you did not have an agreement with the Association,
19   correct?
20        A.    I completed it, yes, Mitchell completed the
21   --
22        Q.    Okay.
23        A.    -- the --
24        Q.    The areas in the disputed area, right?
25        A.    Yeah.  They were disputed areas.  We didn't
```

                    June Spohn, CSR 236
                    Official Court Reporter
              First Circuit Court, State of Hawaii

PERMISSION TO COPY DENIED, HRS 606-13, etc.

37

```
 1   agree with what they were saying.  Yes.  They're disputed
 2   areas.
 3        Q.   But you completed work in the disputed areas
 4   before receiving an agreement with the Association,
 5   correct?
 6        A.   Well, the Association approved the plans.  So
 7   he completed the building.  Yes.  He completed it.
 8        Q.   You completed the building even in the
 9   disputed areas even though the Association was telling you
10   to stop, right?
11        A.   Yes.
12        Q.   Okay.  All right.
13        A.   I had to cut my losses.  Right.
14        Q.   Attached to this letter was a Indemnity
15   Agreement, correct?
16        A.   Yes.
17        Q.   And Brandt Homes didn't want to proceed
18   forward with the project unless you indemnify them
19   concerning the non-compliant areas, correct?
20        A.   That's correct.
21        Q.   All right.  But you did not agree to that,
22   correct?
23        A.   Correct.  I did not agree with that.  I was
24   not going to -- I did not agree with that.
25        Q.   All right. All right.  Now, between January
```

June Spohn, CSR 236
Official Court Reporter
First Circuit Court, State of Hawaii