ANTHONY CHARLES GRANDE
NARINDAR KAUR GRANDE
125 Mar-Len Drive
Melbourne Beach, FL 32951
(321)-728-2942
Defendants Pro Se

ORIGINAL

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

MAR 03 2008

at ___ o'clock and ___ min ___ M.
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| NA PALI HAWEO COMMUNITY ASSOCIATION, a Hawaii non-profit corporation,<br><br>Plaintiff,<br><br>v.<br><br>ANTHONY CHARLES GRANDE; NARINDAR KAUR GRANDE; and DOES,<br><br>Defendants.<br><br>ANTHONY CHARLES GRANDE and NARINDAR KAUR GRANDE,<br><br>Counterclaim Plaintiffs,<br><br>v.<br><br>NA PALI HAWAO COMMUNITY ASSOCIATION; RONALD K. AWA; and DOES 1-25, | CIVIL NO. CV04-00413-DAE BMK<br><br>DEFENDANTS' AND COUNTERCLAIMANTS' MEMORANDUM IN OPPOSITION TO MOTIONS FOR SUMMARY JUDGMENT FILED BY PLAINTIFF AND COUNTERCLAIM DEFENDANTS; CONCISE STATEMENT OF MATERIAL FACTS IN OPPOSITION; DECLARATION OF ANTHONY CHARLES GRANDE; EXHIBITS 1-3; CERTIFICATE OF SERVICE<br><br>Hearing Date: March 18, 2008<br>Hearing Time: 9:00 a.m.<br>Judge: Hon. David Alan Ezra |

Counterclaim Defendants

## DEFENDANTS' AND COUNTERCLAIMANTS' MEMORANDUM IN OPPOSITION TO MOTIONS FOR SUMMARY JUDGMENT FILED BY PLAINTIFF AND COUNTERCLAIM DEFENDANTS

Defendants and Counterclaimants Anthony Charles Grande and Narindar

Kaur Grande, pro se, oppose the summary judgment motions filed by the Na Pali

Haweo Community Association ("Association") and Mr. Awa, which seek

untimely reconsideration of the Court's Order of July 18, 2006.

## I.    THE NEW SUMMARY JUDGMENT MOTIONS SHOULD BE DENIED WITHOUT FURTHER ADO UNDER LR 60.1, AND BECAUSE THE ALLEGATIONS THEY RAISE ARE OTHERWISE NOT PROPERLY BEFORE THE COURT.

LR 60.1.  This Court has already decided, in its Order filed July 18, 2006,

that there are genuine issues of material fact which require a trial of this action.

Because the current motions of the Association and Awa merely seek

reconsideration of the issues upon which summary judgment was previously

denied in that Order – adding only a request for a permanent injunction – they must

be denied as untimely and otherwise improper under LR 60.1.

It is too late for the Association and Awa to seek reconsideration of any

purported "manifest error of law or fact" in the Order of July 18, 2006.  Under LR

60.1(c), the Association and Awa were required to seek relief alleging any

manifest error within ten days of July 18, 2006.

Moreover, the Association and Awa offer no newly-discovered-and-previously-unavailable evidence or intervening changes in the law which could potentially trigger LR 60.1(a-b).

The Association and Awa do not even pretend to be in compliance with LR 60.1.

Failure to Comply With Pre-Litigation Requirements in the Association's CC&Rs. Furthermore, the issues the Association and Awa would present are not properly before the Court in any event.

Similarly, the Association and Awa failed to comply with the mandatory pre-requisites to suing for any of the alleged violations which are the subjects of their current motions. Those pre-requisites are set forth in the Association's own CC&Rs – the very same CC&Rs which the Association and Awa are purportedly trying to "strictly" enforce. See Rhue v. Cheyenne Homes, 449 P.2d 361,363 (Colo. 1969).

The Association's CC&Rs expressly provide that "**no. . . action** to enforce **any** . . limitation, restriction, covenant, condition, [or] obligation . . may be made or taken without first giving not less than thirty (30) days' written notice and demand to the Owner concerned to cure or rectify the default or breach involved." (Concise Statement filed 6-8-06, para. 1)

After the 30 day warning period has expired, "If the Owner shall have failed to remedy [any alleged substantial] noncompliance . . . the [ARC] shall notify the [Association's] Board [of Directors which] shall then set a date on which a hearing before the Board shall be held regarding the alleged noncompliance." (Concise Statement filed 6-8-06, para. 3)

After the Board of Directors' hearing, "After considering all such information, the Board shall determine whether there is noncompliance and, if so, the nature thereof and the estimated cost of correcting or removing the same. If a noncompliance exists, the Board shall require the Owner to remedy or remove the same within a period of not more than forty-five (45) days from the date of the Board ruling." (Concise Statement filed 6-8-06, para. 5)

Under the CC&Rs, it is only *after* expiration of the 45-day period for remediation and compliance that the Association is allowed to take legal action for allegedly uncorrected violations. (Concise Statement filed 6-8-06, para. 6)

The obvious purpose of these provisions is to protect property owners within Na Pali Haweo from having unnecessary – *and unnecessarily broadened* – claims brought against them in litigation by the Association.

Mr. and Mrs. Grande never received a 30-day warning notice, or a hearing before the Association's Board of Directors, or a 45-day pre-litigation cure period after any Board of Directors ruling – there is no such Board of Directors ruling –

on **any** of the alleged violations raised in its current summary judgment motion.

(Concise Statement filed 6-8-06, para. 7-12)

Consequently, those items are not properly before this Court, in the present

motions or in this action.  See, again, Rhue v. Cheyenne Homes, 449 P.2d 361, 363

(Colo. 1969).  They should, if anything, be dismissed.

II.    SUMMARY JUDGMENT SHOULD BE DENIED BOTH BECAUSE MR.
AND MRS. GRANDE WOULD BE UNABLE TO COMPLY WITH THE
MANDATORY AFFIRMATIVE PERMANENT INJUNCTION SOUGHT BY
THE ASSOCIATION AND AWA, AND BECAUSE THEIR INABILITY TO
COMPLY IS A DIRECT RESULT OF THE ACTS AND OMISSIONS OF THE
ASSOCIATION AND AWA.

The Association and Awa are asserting that a house built on a lot in Hawaii

Kai, still currently owned by the Grandes but about to be foreclosed, is out of

compliance with Association requirements.

The Association and Awa are asking that a mandatory affirmative permanent

injunction be granted against the Grandes – requiring them to somehow hire a new

architect, to somehow keep submitting revised sets architectural plans to

"remediate" the alleged violations until Awa and the Association finally agree

upon every detail thereof, and to then hire contractors to make all the changes

provided in the finally-accepted plans to Awa's and the Association's satisfaction.

Included within the request for a mandatory affirmative permanent

injunction are the requests that the Court reconsider and find that various violations

do in fact exist.

All of the Association's and Awa's requests should be denied, *inter alia*, because:

First, Mr. And Mrs. Grande no longer have effective control over the subject property, to make alterations or for any other purpose, and they are about to lose their ownership interest. Accordingly, it would be impossible for them to comply with the mandatory affirmative permanent injunction being sought.

Mr. and Mrs. Grande are no longer able to make the mortgage payments and so advised Merrill Lynch, the holder of the first mortgage on the property, on January 11, 2008. (Concise Statement, *infra*, para. 1; Exhibit 1)

Having ceased making the mortgage payments, they are in default and an action to foreclose their interests in the property is expected soon – indeed, was expected already. (Concise Statement, *infra*, para. 2)

Second, Mr. and Mrs. Grande lack the financial resources to pay a new architect, to somehow keep submitting revised sets architectural plans to "remediate" the alleged violations until Awa and the Association finally agree on every detail thereof, and to then hire contractors to make all the changes in the finally-accepted plans to Awa's and the Association's satisfaction. (Concise Statement, *infra*, para. 3 et seq.)

For that reason as well, it would be impossible for Mr. and Mrs. Grande to comply with the mandatory affirmative permanent injunction being sought.

Because of a job transfer, Mr. and Mrs. Grande were required to move to the Mainland before the subject house was available for occupancy, and his pay declined along with the fortunes of his employer – Northwest Airlines – which went into bankruptcy. (Concise Statement, *infra*, para. 5)

Mr. and Mrs. Grande went deeply into debt (including maxing out their credit cards) while – in addition to meeting their living expenses on the Mainland – they tried to maintain the Merrill Lynch mortgage on the subject property,[1] resolve matters with the Association as expeditiously as possible, and deal with both the Association's lawsuit and a second lawsuit with the builder of the house in Hawaii State Court. (Concise Statement, *infra*, para. 6)

The architect who designed the house, and was helping the Grandes in attempting to resolve matters with the Association by continuing to prepare new sets of plans through last June without requiring payment, has been unable to continue because of ill health – and was mentally exhausted after so many years of attempting to meet the Association's ever-shifting requests. (Concise Statement, *infra*, para. 3)

---

[1] Because of this lawsuit, and an attendant lien recorded by the Association which prevented the Grandes from obtaining permanent financing, the Merrill Lynch loan is still a construction loan, at comparatively-higher construction loan rates. The Grandes were unable to obtain a permanent loan when mortgage relates were low, and while home mortgages were still plentifully available. (Concise Statement, *infra*, para. 7)

Lacking the resources to pay a new architect, Mr. and Mrs. Grande likewise lack the financial resources – as well as the control of the property – which would be required for them to pay contractors to complete all of the additional work Awa and the Association purportedly seek and want.

Indeed, because of their financial situation, which resulted in the withdrawal of their attorney last summer, Mr. and Mrs. Grande have obtained bankruptcy counsel and anticipate filing for bankruptcy shortly. (Concise Statement, *infra*, para. 8)

Third, Mr. and Mrs. Grande's inability to pay or refinance their mortgage, maintain the services of architects and counsel, retain new contractors, and make any alterations necessary to remediate any actual non-compliance that exists – if any – is the direct result of the Association's and Awa's acts and omissions. (Concise Statement, *infra*, para. 9 et seq.)

The Association recorded a lien against the subject property on September 13, 2005, for its purported fees and costs, and has contended that in excess of $200,000 attorneys' fees and costs are owed to it. The amount of that demand and lien, and the Association's unwillingness to unconditionally subordinate that lien to a larger first mortgage – with the additional amount the Grandes would borrow (at a then-lower interest rate) dedicated to paying architect's fees, contractors' costs and remediation costs – made it impossible for the Grandes to obtain the funds

they needed to pay such fees and costs – even if an agreement on what was to be done could have been reached. (Concise Statement, *infra*, para. 10)

No lender would loan the Grandes the total amount necessary to pay off their Merrill Lynch first mortgage + the amount of the Association's fee demand (either to be bonded-around or paid) + the amounts needed for an architect and new contractors and yet-to-be-determined "remediation." (Concise Statement, *infra*, para. 11)

Awa's and the Association's shifting remediation demands likewise precluded any agreement on what might be done, when they might still have had the resources to do something. (Concise Statement, *infra*, para. 12 et seq.)

The principal issues as to alleged violations supposedly involve (1) the front height of the Grandes' house being in excess of 20', and (2) the house's front setback being 3 ½" inches less than 20 feet. See Order of July 18, 2006, at 13-18.

For more than two years, the Association's representatives assured the Grandes that, if the question of the allegedly excessive height could be resolved, the alleged 3 ½" front setback violation would be waived. (Concise Statement, *infra*, para. 13)

In the related State Court suit between Grandes and their contractor, Circuit Judge Kim has totally rejected the Grandes' claim against the contractor, and assessed over $70,000 of fees against them, based upon his finding that "this very

minor discrepancy alone [the 3 ½"] would have caused no significant difficulty for the Grandes" and would have been the subject of "an easily-granted variance" but for the building height issue.[2]  (Exhibit 3, para. 33, at 7, para. 45, at 9, and para. 3, at 10; judicial notice requested).

Nevertheless, when the Association finally agreed to a proposal dealing with the building height on May 31, 2006, Awa and the Association changed their minds and rejected Grandes' overall proposal anyway, requiring that the alleged 3 1/2" setback be dealt with too.  (Concise Statement, *infra*, para. 14; Exhibit 2, esp. para. 1 [3 ½" setback] and 2[20' front height]).

### III.    THERE ARE, AT MINIMUM, GENUINE ISSUES PRECLUDING SUMMARY JUDGMENT AS TO THE ALLEGED VIOLATIONS AS TO WHICH SUMMARY JUDGMENT IS SOUGHT.

The Court has already determined, in its Order of July 18, 2006, that there are genuine issues of material fact precluding summary judgment as to all of the alleged violations again raised in the Association's and Awa's new moving papers. LR 60.1 and the CC&Rs bar reconsideration of those violations by motion at this late date, and any consideration of them at all, as shown in Part I above.  In addition:

---

[2] These determinations are neither *res judicata* nor collateral estoppel under *Silver v. Queens Hospital*, 63 Haw. 430, 439-40, 629 P.2d 1116, 1123-24 (1981), and won't be unless and until the state court action is finally resolved in the contractor's favor, but they are instructive.

Flatness of Bubble Skylights, Color of Roof Vents, and Light Fixtures With Allegedly Exposed Bulbs. In its Order of July 18, 2006 (at 18-20, 21-22, 26), the Court already denied summary judgment as to the flatness of the bubble skylights, the color of the roof vents, and whether the front light fixtures had exposed bulbs, holding that there are, at minimum, genuine issues of material fact on those questions.

The Association's moving papers now admit that the skylights are flat, that the roof vents are the desired color, and that the front light fixtures don't have exposed bulbs – thereby admitting that those questions are moot too. (Moving Memo, at 1-2, para. 1, 4, and at 13-14, 15-16, 19)

Color of Skylight Framing and "The Existing Single Sheet Metal Vent." The Order of July 18, 2006 (at 18-20, 21-22) has already determined that there are genuine triable issues as to the color of the skylight framing and the vent.

Mr. and Mrs. Grande had already repainted twice, in an effort to end those issues too, as shown during the prior motion. Subsequent to the Court's Order, Mr. and Mrs. Grande offered to re-paint again, using whatever color the Association wanted, and even provided the Association with paint chips it could choose from. However, the Association never agreed to a color. (Concise Statement, *infra*, para. 15)

Air Conditioning Equipment and Screening.    The July 18, 2006 Order has already established (at 20-21) the existence of genuine issues as to the air conditioning equipment and screening.

Garage Storage Space.    This issue was exhaustively briefed before, and the Court has already determined that there are genuine issues as to it.  Order of July 18, 2006, at 23-25.

Concrete Pad.  The Order of July 18, 2006, at 27-28, determined that there are genuine issues as to the concrete pad, and there is no evidence on that question which could not have been presented before.  See LR 60.1(a).

Miscellaneous Fenestrations.  The Order of July 18, 2006, at 27, denied summary judgment as to the miscellaneous fenestrations.  As to certain of the miscellaneous fenestrations, Mr. and Mrs. Grande would add:

Eyebrow Roof Over the Garage.  The eyebrow roof was not "deleted."  Mr. and Mrs. Grande's contractor walked off the job before completing this item. Thereafter, they repeatedly advised the Association that they intended to complete the eyebrow roof at the time the other ultimately agreed-upon alterations were made.  Grandes' claim against the contractor includes his failure to complete the eyebrow roof.  (Concise Statement, *infra*, para. 16)

The Upper Corners of the Garage Door Opening.  This is another item that was not "deleted," but rather left incomplete when the contractor walked off the

job. Grandes' claim against the contractor likewise includes his failure to round the corners of the upper garage door opening. (Concise Statement, *infra*, para. 17)

WHEREFORE, the new motions for summary judgment should be denied.

DATED: March 3, 2008.

ANTHONY CHARLES GRANDE

NARINDAR KAUR GRANDE