IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| NA PALI HAWEO COMMUNITY ASSOCIATION, a Hawaii non-profit corporation,<br><br>   Plaintiff,<br><br> v.<br><br>ANTHONY CHARLES GRANDE; NARINDAR KAUR GRANDE, and DOES,<br>   Defendants.<br><br>ANTHONY CHARLES GRANDE and NARINDAR KAUR GRANDE,<br><br>   Counterclaim Plaintiffs,<br><br> v.<br><br>NA PALI HAWAO COMMUNITY ASSOCIATION; RONALD K. AWA; and DOES 1-25,<br><br>   Counterclaim Defendants | CIVIL NO. CV04-00413-DAE BMK<br><br>CONCISE STATEMENT OF MATERIAL FACTS |

CONCISE STATEMENT OF MATERIAL FACTS

1

1.Grandes are no longer able to make the payments due under the first mortgage on the subject property , and so advised Merrill Lynch, the holder of the first mortgage on the property, on January 11, 2008.

Declaration, para. 2; Exhibit 1

2. Grandes are in default, and an action to foreclose their interests in the property is expected soon – indeed, was expected already.

Declaration, para. 3

3. The architect who designed the house on the property, and was helping Grandes in attempting to resolve matters with the Association by continuing to prepare new sets of plans through last June without requiring payment, advised them in June that he was unable to continue because of ill health – and that he was mentally exhausted after so many years of attempting to meet the Association's ever-shifting requests.

Declaration, para. 4

4. Grandes no longer have the financial resources to hire a new architect, or to keep submitting revised sets architectural plans to "remediate" the alleged violations until Awa and the Association finally agree on every detail thereof (they presented several plans, and partial sets of plans, to the Association between 2003 and 2007), or to hire contractors to make changes to the house.

Declaration, para. 5

5. Because of a job transfer, Grandes moved to the Mainland in

Declaration, para. 6

early 2004, before the subject house
was available for occupancy. Mr.
Grande's pay thereafter declined as
his employer, Northwest Airlines, cut
salaries and went into bankruptcy.

6. Mr. and Mrs. Grande are deeply in                     Declaration, para. 7
debt (including having maxed out
their credit cards) because, in addition
to their living expenses on the
Mainland, they tried to maintain the
Merrill Lynch mortgage on the
subject property, while trying to
resolve matters with the Association
as expeditiously as possible, and deal
with both the Association's lawsuit
and a second lawsuit with the builder
of the house in Hawaii State Court.

7. Because of this lawsuit, and an                       Declaration, para. 8
attendant lien recorded by the
Association which prevented them
from obtaining permanent financing,
the Merrill Lynch loan is still a
construction loan, at comparatively-
higher construction loan rates. They
were not able to obtain a permanent
loan when mortgage relates were low,
and while home mortgages were still
plentifully available.

8. Because of their financial                            Declaration, para. 9
situation, which also resulted in the
withdrawal of their attorney from this
lawsuit last summer, the Grandes
have obtained bankruptcy counsel and
anticipate filing for bankruptcy
shortly.

9.  Grandes' inability to pay or refinance their mortgage, maintain the services of architects and counsel, retain new contractors, and make any alterations necessary to remediate any actual non-compliance that exists – if any – is the direct result of the Association and Awa's acts and omissions.

Declaration, para. 10 et seq.

10. The Association recorded a lien against the subject property on September 13, 2005, for its purported fees and costs, and attorney Fujisaki has subsequently told the Grandes that they owe in excess of $200,000 attorneys' fees and costs under that lien.  Fujisaki has further advised that the Association is unwilling to unconditionally subordinate that lien to a larger first mortgage – with the additional amounts the Grandes would borrow (at a lower interest rate) dedicated to paying architect's fees, contractors' costs and remediation costs.

Declaration, para. 11

11. The Grandes checked with a number of lenders, and none would loan them the total amount necessary to pay off the Merrill Lynch first mortgage + the amount of the Association's fee demand (either to be bonded-around or paid) + the amounts needed for an architect and new contractors and yet-to-be-determined "remediation."

Declaration, para. 12

| | |
|---|---|
| 12.  Awa's and the Association's shifting remediation demands likewise precluded any agreement on what might be done, when the Grandes might still have had the resources to do something. | Declaration, para. 13 et seq; Exhibit 2 |
| 13. For more than two years, from 2004 through 2006, the Association's representatives (Awa, Fujisaki, etc.) assured the Grandes that, if the question of the allegedly excessive height could be resolved, the alleged 3 ½" front setback violation would be waived. | Declaration, para. 14 |
| 14. Nevertheless, when the Association finally agreed to a proposal dealing with the building height on May 31, 2006, Awa and the Association changed their minds and required that the alleged 3 1/2" setback be dealt with too. | Declaration, para. 15; Ex. 2 |
| 15.  After the Court's Order of July 18, 2006, Mr. Grande offered to repaint the skylight frames and roof vent whatever color the Association wanted, and even provided the Association with paint chips it could choose from.  However, the Association never agreed to a color, and never provided a paint chip showing the color it wanted. | Declaration, para. 16 |
| 16. The eyebrow roof over the garage door of the house was never "deleted."  Grandes' contractor walked off the job before completing this item.  Thereafter, Mr. Grande | Declaration, para. 17 |

repeatedly advised the Association that Grandes intended to complete the eyebrow roof when the other ultimately agreed-upon alterations were made. Their claim against their contractor includes his failure to complete the eyebrow roof.

17. The rounding of the upper corners of the garage door opening was never deleted. It had not been done yet when the contractor walked off the job. Grandes' claim against the contractor likewise includes his failure to round the corners of the upper garage door opening.

Declaration, para. 18

DATED: March 3, 2008

/
/
/
/
/

ANTHONY CHARLES GRANDE