IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| NA PALI HAWEO COMMUNITY ASSOCIATION, a Hawaii non-profit corporation,<br><br>Plaintiff,<br><br>v.<br><br>ANTHONY CHARLES GRANDE; NARINDAR KAUR GRANDE, and DOES,<br>Defendants.<br><br>ANTHONY CHARLES GRANDE and NARINDAR KAUR GRANDE,<br><br>Counterclaim Plaintiffs,<br><br>v.<br><br>NA PALI HAWAO COMMUNITY ASSOCIATION; RONALD K. AWA; and DOES 1-25,<br><br>Counterclaim Defendants | CIVIL NO. CV04-00413-DAE BMK<br><br>DECLARATION OF ANTHONY CHARLES GRANDE |

## DECLARATION OF ANTHONY CHARLES GRANDE

Anthony Charles Grande declares as follows:

1. I am one of the Defendants in this action. My wife Narindar is the other defendant. I have personal knowledge of the facts in this Declaration, and could and would competently testify to them if called as a witness.

2. We are no longer able to make the payments due under the first mortgage on the subject property, and so advised Merrill Lynch, the holder of the first mortgage on the property, on January 11, 2008. Exhibit 1 is a true and correct copy of the letter we had counsel send to Merrill Lynch on our behalf.

3. Having ceased making the mortgage payments, we are in default, and an action to foreclose our interests in the property is expected soon – indeed, was expected already.

4. The architect who designed the house on the property, and was helping us in attempting to resolve matters with the Association by continuing to prepare new sets of plans through last June without requiring payment, advised us in June that he was unable to continue because of ill health -- and that he was mentally exhausted after so many years of attempting to meet the Association's ever-shifting requests.

5. We no longer have the financial resources to pay a new architect, or to keep submitting revised sets architectural plans to "remediate" the alleged violations until Awa and the Association finally agree on every detail thereof (we presented several sets of plans, and partial sets of plans, to the Association between 2003 and 2007), or to pay contractors to make changes to the house.

6. Because of a job transfer, we were required to move to the Mainland in early 2004, before the subject house was available for occupancy. My pay

thereafter declined as my employer, Northwest Airlines, cut salaries and went into bankruptcy.

7. We are deeply in debt (including maxing out our credit cards) because, in addition to our living expenses on the Mainland, we tried to maintain the Merrill Lynch mortgage on the subject property, while trying to resolve matters with the Association as expeditiously as possible, and deal with both the Association's lawsuit and a second lawsuit with the builder of the house in Hawaii State Court.

8. Because of this lawsuit, and an attendant lien recorded by the Association which prevented us from obtaining permanent financing, the Merrill Lynch loan is still a construction loan, at comparatively-higher construction loan rates. We were not able to obtain a permanent loan when mortgage rates were low, and while home mortgages were still plentifully available.

9. Because of our financial situation, which also resulted in the withdrawal of our attorney from this lawsuit last summer, we have obtained bankruptcy counsel and anticipate filing for bankruptcy shortly.

10. Our inability to pay or refinance our mortgage, pay for the services of architects and counsel, retain new contractors, and make any alterations necessary to remediate any actual non-compliance that exists – if any – is the direct result of the Association's and Awa's acts and omissions.

11. The Association recorded a lien against the subject property on September 13, 2005, for its purported fees and costs, and attorney Fujisaki has told us that we owe in excess of $200,000 attorneys' fees and costs under that lien. He has further advised that the Association is unwilling to unconditionally subordinate that lien to a larger first mortgage -- with the additional amount we would borrow (at a lower interest rate) dedicated to paying architect's fees, contractors' costs and remediation costs.

12. We checked with a number of lenders, and none would loan us the total amount necessary to pay off the Merrill Lynch first mortgage + the amount of the Association's fee demand (either to be bonded-around or paid) + the amounts needed for an architect and new contractors and yet-to-be-determined "remediation."

13. Awa's and the Association's shifting remediation demands likewise precluded any agreement on what might be done, when we might still have had the resources to do something.

14. For more than two years, from 2004 through 2006, the Association's representatives (Awa, Fujisaki, etc.) assured us that, if the question of the allegedly excessive front height could be resolved, the alleged 3 ½" front setback violation would be waived.

15. Nevertheless, when the Association finally agreed to a proposal dealing with the building height on May 31, 2006, Awa and the Association changed their minds and required that the alleged 3 1/2" setback be dealt with too, as shown in Exhibit 2 which is part of a response sent to our counsel that day.

16. After the Court's Order of July 18, 2006, I offered to repaint the skylight frames and roof vent whatever color the Association wanted, and even provided the Association with paint chips it could choose from. However, the Association never agreed to a color, and never provided a paint chip showing the color it wanted.

17. The eyebrow roof over the garage door of the house was never "deleted." Our contractor walked off the job before completing this item. Thereafter, I repeatedly advised the Association that we intended to complete the eyebrow roof when the other ultimately agreed-upon alterations were made. Our claim against the contractor includes his failure to complete the eyebrow roof.

18. The rounding of the upper corners of the garage door opening was never deleted. It had not been done yet when the contractor walked off the job. Our claim against the contractor likewise includes his failure to round the corners of the upper garage door opening.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 3d day of March, 2008, at Melbourne Beach, Florida.

_____
ANTHONY CHARLES GRANDE