**PLAINTIFF NA PALI HAWEO COMMUNITY ASSOCIATION
MEMORANDUM IN SUPPORT OF MOTION FOR AWARD OF
ATTORNEYS' FEES AND COSTS AND EXPERT'S FEES AND COSTS**

## I. INTRODUCTION

Plaintiff NA PALI HAWEO COMMUNITY ASSOCIATION ("NPH") is entitled to a full award of its reasonable attorneys' and experts' fees and costs as it is the prevailing party. In assessing the reasonableness of NPH's fees, NPH emphasizes that from the outset of this case, Defendants knew they violated the governing documents of NPH, Defendants knew they were unlikely to prevail, and Defendants knew of their exposure to NPH's claim for reimbursement of fees and costs. Regrettably, despite these facts, since Day One of this case, Defendants' conduct has been dilatory, litigious, unreasonable, and has caused NPH to incur substantial and ever-increasing fees and costs. As shown below, examples of Defendants' misconduct abound. During settlement negotiations, Defendants proposed three different solutions to the building envelope encroachment. Each of Defendants' proposals required NPH to expend significant resources and time to carefully review and respond to the proposals, yet Defendants repudiated each of the proposals after they were approved. Defendants did not comply with deadlines, many of which were set by agreement of the parties under the supervision of this Court. Defendants have filed motions for reconsideration and appeals of nearly every order entered. *See* Ex. S. Defendants' filings have been voluminous. For example, in connection with their Counter Motion for Summary Judgment filed June 8, 2006, Defendants filed a ***Concise*** Statement of Facts that spanned ***28*** pages and contained ***123*** allegations of fact, each of which NPH had to address and rebut. NPH requests that this Court grant it an award of fees and costs as set forth in the Motion and established below.

## II. FACTS

NPH filed this action to enforce its governing documents against Defendants based upon various violations of the governing documents involving their dwelling ("Dwelling") and property ("Property") in the Na Pali Haweo Planned Community. United States District Court Judge David A. Ezra's July 18, 2006, and March 20, 2008, orders establish NPH as the prevailing party on all claims with the exception of several relatively minor issues which were rendered moot by Defendants' correction of the violations after filing of this action.

As shown below, NPH did everything it could to resolve this case at the least expense but its efforts to do so were hampered by Defendants' capricious changes in position and refusal to take necessary and basic steps to resolve violations, such as retaining a competent architect to submit as-built and proposed plans, continuing to use an architect who claimed to experience life-threatening health issues when services were needed and whose draftsman could not communicate with NPH's representatives because he allegedly could not speak English. Moreover, although settlement of this case was imminently feasible, Defendants showed little or no initiative to explore options to arrive at a win/win solution.

The most unusual aspect of this case is the amount of time spent on negotiations to resolve the dispute and motions, and relatively minimal time on discovery. Because much of the fees were incurred in drafting letters and e-mail which thus far are not part of the record, NPH has attached as Exhibits "L" - "O" selected correspondence between NPH and Defendants for this Court's review. Absent the ability to review the various communications, it would be difficult for this Court to determine the reasonableness of NPH's fees. However, this is not a complete copy of all written

2

communications. Hundreds of e-mails were exchanged between counsel for NPH and Defendants. In addition, the Association's attorneys, Neeley and Anderson LLP A Limited Liability Law Partnership ("N&A") exchanged nearly 1,000 e-mails with its client, co-counsel and the court and drafted 10 letters to the Board which are privileged communications and not part of the record, although such communications were reasonably and necessarily prepared in connection with this case and to enforce the governing documents. The number and breadth of communications reflect the complexities and difficulties of this case, and justify the reasonableness of fees and costs incurred.

As noted below, a portion of the costs, including expert's fees and costs, were shared with NPH's insurer. NPH is seeking reimbursement of only its out of pocket expenses and not the portion of expenses paid for by NPH's insurer which defended the Counterclaim Defendants. It is the understanding of the undersigned that a motion for fees and costs will not be filed on behalf of the Counterclaim Defendants.

Although NPH has summarized its fees per the phases described in LR54.3(d)1., it may be more helpful to review this case in the context of the following 6 phases.

## A. PHASE 1

Phase 1 of this case, which spans from March 2, 2004, through October 2004, includes the initial discovery of violations on the Property, filing of the Complaint and the preparation of a Motion for Summary Judgment which was held in abeyance pending settlement negotiations. NPH incurred approximately $13,046 in attorneys' fees (plus taxes) during Phase 1.

On March 4, 2004, N&A wrote to Defendants and their architect demanding that all non-compliant construction on the Dwelling cease and that revised plans be

submitted to the NPH Architectural Review Committee ("ARC") by March 16, 2004. *See* Ex. U to MSJ#2.[1]

On May 25, 2004, as Defendants failed to cease and desist construction, N&A wrote to Defendants' counsel Steven B. Jacobson, Esq., again demanding that all non-compliant construction on the Dwelling cease and that revised plans be submitted to the ARC. *See* Ex. W to MSJ#2.

On June 1, 2004, NPH filed its Complaint in the Circuit Court of the First Circuit, State of Hawaii which included a demand for injunctive relief against Defendants.

By letter dated June 7, 2004, NPH offered to mediate this matter with Defendants before the Mediation Center of the Pacific, provided Defendants agreed to cease all unauthorized construction. *See* Ex. X to MSJ#2. On June 10, 2004, Defendants' counsel advised that his clients were willing to mediate but Defendants refused to cease unauthorized construction. Defendants continued unauthorized work. *See* Ex. Y to MSJ#1.

On June 23, 2004, NPH repeated its offer to mediate if Defendants would simply give their assurances that they would cease any unauthorized construction. No response was received. *See* Ex. Z to MSJ#1.

On July 8, 2004, Defendants removed this case to federal court on grounds of diversity.

Preparation of the Complaint required review and analysis of the 81 page NPH Declaration of Covenants, Conditions and Restrictions ("DCC&R") and the 36 page

---

[1]    As used herein, "MSJ#1" refers to the Motion for Summary Judgment filed April 12, 2006. "MSJ#2" refers to the Motion for Summary Judgment and Permanent Injunction filed January 25, 2008.

Design Guidelines, meeting with the Chair of the ARC, and review and analysis of numerous letters and plans. The Complaint included numerous violations of the governing documents.

In July 2004, N&A began work on a Motion for Summary Judgment. In addition, fees were incurred in defending against Defendants' motions relating to entry of default. By order entered December 22, 2004, this Court awarded NPH $3,828.70 in fees and costs. N&A is not seeking reimbursement of any of the fees and costs requested in the Affidavit filed December 6, 2004.

On October 18, 2004, Defendants filed a Motion to Consolidate (1) Hearing on Plaintiff's Motion to Strike Answer and Dismiss Counterclaim with (2) Hearing on Motion of Defendants and Counterclaim Plaintiffs Anthony Grande and Narindaur Grande for Four-Day Extension of Time to File Answer to Complaint and/or to Set Aside Entry of Default, which was denied.

On October 4, 2004, a scheduling conference was held before United States Magistrate Judge Leslie E. Kobayashi. The parties agreed to return for a settlement conference on November 16, 2004.

## B. PHASE 2

Phase 2 spans from November 2004 through December 2005, during which the parties met with Judge Kobayashi 10 times to attempt to resolve this case. During Phase 2, attorneys' fees of approximately $32,678.45 were incurred. The fees and costs incurred were reasonable given the number of meetings that occurred and the services rendered and required. During Phase 2, Defendants submitted two proposals to fix the building envelope violation, both of which were approved by NPH in concept, and both of which were later repudiated by Defendants.

During Phase 2, the following court appearances/meetings occurred:

1. 11/16/04 Settlement Conference
2. 3/2/05 Status Conference
3. 5/5/05 Settlement Conference
4. 7/11/05 Status Conference
5. 8/25/05 Status Conference
6. 9/30/05 Settlement Conference
7. 11/18/05 Status Conference
8. 11/29/05 (Grandes and their contractor only)
9. 12/6/05 Status Conference
10. 12/23/05 Status Conference

On November 16, 2004, the first Settlement Conference was held to discuss resolution of this case. Judge Kobayashi expressed her opinion that this case should be settled and she vacated the trial date. The Grandes agreed to produce building plans for the Dwelling, the parties were to conduct a site inspection by the end of February 2005, NPH informed Defendants that it would retain an expert, NPH agreed to provide Defendants with a list of deficiencies and a further settlement conference was scheduled for April 12, 2005.

On February 22, 2005, the parties conducted a site inspection of the Property. Attending the inspection were NPH's expert architect, James I. Nishimoto, President of Group 70 International, surveyor Lance T. Stevens of Control Point Surveying, Inc., NPH's counsel and Mr. Awa.

On or about March 22, 2005, and April 1, 2005, Mr. Nishimoto's report was provided to Defendants. The report provided a very detailed analysis of the violations and included the surveyor's report. Ex. G. *See also* Ex. T to MSJ#1. Preparation of the report required Mr. Nishimoto to review and analyze the DCC&R and Design Guidelines and plans submitted by Defendants. Mr. Nishimoto incurred fees of $5,168.93 in conducting the site inspection, meeting with N&A and representatives

of NPH, and preparing his report.

On September 13, 2005, the Association recorded a Notice of Default and Lien against the Property. Fees were incurred to prepare the lien and review the governing documents. Ex. L at 25-29.

On May 5, 2005, a Settlement Conference was held at which time Defendants agreed to submit plans to NPH addressing various deficiencies by no later than June 20, 2005. A further Settlement Conference was scheduled for August 2, 2005.

On May 19, 2005, to facilitate resolution of this case, NPH provided Defendants with a schematic drawing showing a possible solution to the building envelope violation. The schematic drawing was prepared by NPH's expert witness, Mr. Nishimoto. Ex. L at 9. June 20, 2005, was the deadline for submitting plans, however, the Defendants filed an ex parte motion for a one-month extension to submit the plans as Defendants' architect had a "severe health episode." Judge Kobayashi granted this motion by order entered June 23, 2005.

On July 11, 2005, a Status Conference was held. NPH requested an extension of time to respond to the plans which should have been submitted by June 20, 2005, but which had not yet been submitted.

On July 20, 2005, Defendants submitted incomplete plans for remedial work. By e-mail dated July 28, 2005, N&A advised Defendants' counsel of various deficiencies in the plans. Fees were incurred in various communications with Defendants concerning the deficiencies in the plans. See, e.g., Ex. L at 10.

By letter dated August 11, 2005, N&A provided Defendants with an extremely detailed response to the proposed plans, describing the various deficiencies. As explained in the Conclusion of the letter, subject to various reservations, NPH

approved Defendants' proposed design concepts. Ex. L at 17-21. This letter reflects the very detailed and thorough work performed by N&A and Mr. Awa.

A Status Conference was held on August 26, 2005. Having reached an agreement on the July 20, 2005, proposal, the main topic of discussion was the scheduling of a Settlement Conference with Defendants on September 28, 2005. The parties were ordered to meet and confer on specifed issues. *See* 8/26/05 Minutes.

On September 21, 2005, NPH's counsel met with Mr. Jacobson in preparation for the September 28, 2005, Settlement Conference. To focus Defendants on resolving this case, by e-mail dated September 22, 2005, Ex. L at 35, NPH informed Defendants that they should take the following steps prior to the Settlement Conference:

> 1. Obtain and circulate to all counsel an estimate of when the architect/draftsman retained by the Grandes will be able to complete plans showing the as-built conditions of the dwelling as well as required remedial work.
>
> 2. Obtain and circulate to all counsel an estimate of the cost of preparing plans showing the as-built condition of the dwelling as well as required remedial work.
>
> 3(a) Advise all counsel of the identity of the contractor previously retained by the Grandes.
>
> 3(b) Confirm and advise all counsel that the contractor previously retained by the Grandes is willing and able to complete the dwelling and perform remedial work to resolve various violations per the March 22, 2005, report from architect James Nishimoto and our prior discussions. (If the contractor is not willing or able to perform the subject remedial work, please identify an alternate contractor to perform the work.)
>
> 4(a) Obtain and circulate to all counsel a bid or estimate for the remedial work required to address the building envelope violation, as approved in concept by the Board per my August 11, 2005, letter to you.
>
> 4(b) Advise all counsel as to the date by which the contractor can complete the work set forth in 4(a).

In an ominous sign of things to come, by letter to Judge Kobayashi dated

September 21, 2005, Defendants disclaimed any responsibility for the conditions on the Property and challenged this Court's authority to compel Defendants to comply with NPH's governing documents. *See* Ex. L at 31.

Also in September 2005, NPH prepared a Supplemental Memorandum in Support of Imposition of Sanctions filed on September 9, 2005, which Judge Kobayashi granted by order entered September 25, 2006, awarding NPH $3,642.42. As Defendants have not paid NPH this sum, NPH requests that this Court reflect in the order granting this motion that the previous award has not been paid. (The instant Motion does not include any fees and costs previously requested.)

On September 26, 2005, N&A prepared a letter to Judge Kobayashi with a detailed response to the letter from Mr. Jacobson. NPH requests that this Court carefully examine the September 26, 2005, letter as it thoroughly discusses NPH's position at that juncture. *See* Ex. K, at 1-7.

On September 30, 2005, the parties attended an all day settlement conference before Judge Kobayashi. Defendants, who traveled from Florida to attend the conference, repudiated the July 20, 2005 proposed plans explaining that they had not approved the plans. Judge Kobayashi candidly informed Defendants that if this case were litigated, they would probably lose on all claims and be liable for NPH's legal fees and costs, in addition to their own fees and costs. Judge Kobayashi's comments were highly prescient. The conference culminated in a settlement agreement matrix drafted by NPH's counsel which described in detail what Defendants needed to do to resolve the violations. Ex. Q. The Grandes agreed to submit schematic plans by October 14, 2005. The attorneys would meet within 3 weeks. The Grandes were to begin having plans prepared in accordance with the agreement.

Although two attorneys from Neeley & Anderson attended the settlement conference, NPH was charged for only one attorney. Fees were subsequently incurred in attending a Board meeting regarding the ongoing litigation with the Defendants.

On October 21, 2005, the parties attended a Status Conference. The Grandes had not yet submitted plans although they were required to do so by October 14, 2005. Ex. L at 36.

On November 1, 2005, NPH sent an e-mail, Ex. L at 38, urging Defendants to submit the schematic plans and outlining the issues that Defendants should be prepared to address at the November 18, 2005, Status Conference:

> For the 11/17/05 status conference, we should be prepared to discuss:
> 1. Deadline for preparation and submission of revised plans to the ARC.
> 2. The identity of the contractor whom the Grandes have retained to perform the remedial work.
> 3. Deadline for completion of remedial work.

On November 18, 2005, a Status Conference was held which Defendants attended via telephone. The Grandes had not yet submitted schematic plans which should have been submitted on October 14, 2005. Judge Kobayashi requested that Defendants complete the schematic plans by November 25, 2005, and she offered to meet with Defendants and their contractor on November 28, 2005, to review the plans. The ARC would then have an opportunity to review the schematic plans and decide whether it would accept the new design concept.

On November 29, 2005, Defendants submitted schematic plans for correction of the front building envelope encroachment. The plans included three different proposals to fix the building envelope violation. The Association approved the third proposal and disapproved the other proposals. Ex. P.

A Status Conference was held on December 6, 2005, attended by NPH's ARC

Chair and project manager. NPH's counsel informed Judge Kobayashi that NPH was approving the third option submitted by Defendants. NPH's counsel prepared the proposed text of the Minutes which Judge Kobayashi approved and incorporated into her Minutes dated December 13, 2005. Ex. P. The Minutes confirmed that NPH approved the schematic drawing submitted by Defendants and, *to avoid any confusion*, a full size copy of the drawing was attached to the Minutes. The Minutes also indicated that a settlement conference would be held on December 23, 2005, at which time Defendants would be required to discuss the timing of their submission of complete plans and the status of their retention of a contractor to perform remedial work. Ex. P.

At the December 23, 2005, Settlement Conference, Defendants attending, via telephone, repudiated the proposed plans submitted on November 29, 2005, and attached to the Minutes. Ex. P. Defendants stated that the subject plans were inadvertently submitted. This was the second time that Defendants repudiated plans they submitted. Defendants reported they retained a new architect to explore an alternate proposal. At this point, it became clear that Defendants were not negotiating in good faith. Judge Kobayashi terminated further settlement negotiations and scheduled this case for trial on August 29, 2006.

## C. PHASE 3

Phase 3 spanned from December 24, 2005, through October 24, 2006, and was marked by the preparation and filing of NPH's first MSJ and related motions and discovery. Attorneys' fees of approximately $71,744 were incurred during Phase 3.

### 1.    Summary Judgment Motion

✓    The single most time consuming event was the preparation of the MSJ

which was a technically complex document, containing 28 exhibits. N&A assisted in developing the architectural data and painstakingly discussed details of construction with NPH's expert, pored over numerous communications and plans, developed NPH's legal theories and researched legal issues, extracted background information for declarations, and reviewed various details of the case. The MSJ required research of injunctive relief and covenant enforcement cases. The memorandum, exhibits and declarations supporting the MSJ reflect the detailed and thorough work and time spent on this motion. Although allocated to the MSJ, these services also would have aided NPH in preparing for trial.

✓      Preparation of the MSJ required time-consuming meetings with the ARC Chair and Board concerning the investigation and examination of architectural elements within the Project.

✓      In preparation of the MSJ, Mr. Nishimoto reviewed building plans and submissions by Defendants and provided a detailed Declaration.

✓      After NPH filed its MSJ, Defendants aggressively litigated this case, serving a request for production of documents and two requests for answers to interrogatories, filing voluminous papers with the Court and doing everything within their power to force NPH to expend significant fees to prosecute this action.

✓      The fees and costs were exacerbated by Defendants' Counter-Motion for Summary Judgment filed June 8, 2006, and Defendants' vigorous opposition to NPH's MSJ. Attached to Defendants' opposition were Declarations of Owen Chock (Defendants' expert), Edward Resh (Defendants' architect) and Defendants.

✓      Testament to the complexity of the issues, Defendants requested and obtained leave from Judge Ezra to file a Concise Statement of Facts in excess of 5

pages, with 24 exhibits. Defendants' counsel's Declaration states:

> This is an extraordinarily fact-centered case. The plaintiff Association has accused Mr. and Mrs. Grande with twenty-two purported "violations" of purported Association regulations . . . Most have separate and distinct facts relating to them. There are also questions of whether the Association has complied with its own regulations and prelitigation requirements. It is impossible to present all the facts essential to Mr. and Mrs. Grande's counter-motion for summary judgment within the usual number of pages and words provided in the Local Rules.

*See* Declaration filed June 8, 2006. On June 8, 2005, Defendants filed a <u>27 page Concise Statement of Facts with 123 separate items</u>.

✓      NPH incurred substantial fees to prepare a 123 page Reply Memo/Memo in Opp to Defendants' MSJ (including exhibits). This document contained 7 declarations/affidavits and 20 exhibits.

✓      NPH incurred additional fees in drafting a 20 page Concise Statement of Facts in Opposition to Defendants' MSJ.

✓      At the hearing on the MSJ's, Judge Ezra had a discussion with the parties off the record in which he called it a tragedy that this case had gone as far as it had and he described the resources spent on this case as on par with the Hyatt Regency construction defects litigation, but noting that this case involves merely a single family residence. He speculated that the amount of fees that would be expended in this case could pay to build the home from the ground up.

✓      During the June 26, 2006, hearing, Judge Ezra indicated that he was not persuaded by Defendants' arguments, *e.g.*, he described Defendants' argument that the Design Guidelines state "intentions and not absolutes" as a "loser argument," he was troubled that Defendants submitted a set of plans to the ARC for approval, but submitted a different set to the Building Department and their contractor with major

differences, he stated that Defendants could not "cherry pick" favorable parts of the plans and attempt to bind the ARC to other parts after abandoning the plans, and he commented that Defendants were providing the Court with only half the story in that they failed to acknowledge their architect's error in preparing the plans.

✓    Despite Judge Ezra's clear instructions that the parties should settle this case (which was also NPH's position as clearly evidenced by its efforts), one day later, Defendants' counsel delivered a letter to Judge Ezra making additional legal arguments and stating, in essence, that Defendants would not settle this case: "the Court should understand that this action has not been, and is not yet, in an optimal posture for settlement." Ex. M, at 13-15.

✓    On July 18, 2006, Judge Ezra issued an order granting partial summary judgment on the main issues in the case, namely: (1) the building envelope violation which requires reconstruction of a portion of the roof above the garage, (2) the building setback violation, (3) front wall height violation and (4) lack of a front driveway gate.

### 2.    Reconsideration

On August 1, 2006, Defendants filed a Motion for Reconsideration of Judge Ezra's July 18, 2006, order which was <u>denied</u> by order entered October 20, 2006. In addition, on October 15, 2006, Defendants filed a motion for reconsideration of the sanctions order which was also <u>denied</u>.

### 3.    Settlement/Status Conference

Judge Ezra ordered the parties to participate in a further settlement conference, which was held before Judge Kobayashi on June 30, 2006. However, the settlement conference was completely unproductive as Defendants represented that they had no

funds to fix the violations.

On July 7, 2006, another settlement conference was held before Judge Kobayashi which N&A attended to request an extension of the trial date. However, during most of the conference, Judge Kobayashi conferred privately with Defendants.

An additional meeting was held on July 13, 2006, with Judge Ezra, however, again Defendants expressed no interest in resolving this case.

### 4.    Expert Disclosures

Despite requests by NPH that the expert disclosures be deferred until after the MSJ was decided to minimize fees, Defendants insisted that NPH submit expert disclosures on June 13, 2006. Given the factual details and highly technical aspects of the governing documents, preparation of the expert disclosures was extremely time consuming, causing NPH to incur substantial fees. Ex. F and T.

### 5.    Response to Proposed Plans

On April 19, 2006, Defendants submitted revised plans to the ARC. NPH incurred attorneys' and architects' fees in reviewing the plans and responding to the submission. Ex. M at 6-11. The plans were approved in concept with regard to the building envelope violation.

Phase 3 concluded upon the denial of Defendants' motion for reconsideration of Judge Ezra's partial summary judgment order.

## D. PHASE 4

During Phase 4, which spanned from October 25, 2006, through November 14, 2007, the parties, armed with Judge Ezra's MSJ order, again attempted to settle this case and NPH incurred attorneys' fees of approximately $37,212.

During Phase 4, settlement/status conferences were held on the following dates:

1.     November 2, 2006
2.     December 13, 2006
3.     March 21, 2007
4.     April 23, 2007
5.     August 6, 2007

In addition, counsel met face to face on November 6 and 22, 2007, and December 4, 2007, and had numerous telephone discussions regarding settlement.

## 1.     SETTLEMENT EFFORTS

On December 13, 2006, after time consuming negotiations, the parties reached a detailed agreement including submission of plans, completion of work by an agreed deadline, deposit of $200,000 with the Clerk of the Court to secure payment of fees and costs to NPH as ordered by this Court and filing of motions for fees and costs, and release of NPH's lien. Ex. K, at 21-26.

On January 27, 2007 - 24 days after the January 3, 2007 deadline - Defendants delivered plans to NPH for the ARC's review. Legal and architect's fees were incurred to review the proposed submission.

On March 5, 2007, the plans were disapproved as they failed to respond to issues previously discussed. Ex. N at 4. NPH urged Defendants to have their architect meet with the ARC Chair to facilitate preparation of acceptable plans. *See* discussion below. On March 21, 2007, Judge Kurren was sufficiently satisfied that the parties had reached an agreement and vacated the trial date due to settlement of this case. *See* Court Minutes dated March 21, 2007.

## 2.     MEETING OF ARCHITECTS

If Defendants were truly motivated to resolve this case, it would never have been a problem to arrange a meeting between architects. However, for three months, from March through May 2007, N&A had numerous communications with Defendants

and counsel for Defendants' architect to reach an agreement for a meeting of architects. This issue was discussed in detail in N&A's April 20, 2007, letter to Judge Kurren. Ex. K at 23.This was the main topic at the Status Conference on April 23, 2007. Thus, due to Defendants' intransigence and failure to retain a new architect, NPH incurred thousands of dollars in fees to arrange the meeting between architects, which was eventually held on May 17, 2007.

### 3.   FURTHER SETTLEMENT DISCUSSIONS

After the architects met, revised plans were submitted on July 24, 2007, two months after the architects' meeting. The plans were again disapproved because they were incomplete. Among other things, various sheets were missing, as-built plans were not included, and the plans were deficient in other respects. Ex. N at 61.

On August 6, 2007, Mr. Grande attended a settlement conference before Judge Kurren. N&A methodically discussed each violation and how the violations could be cured. Defendants were allowed to hand write changes into their landscape plans so as to avoid retaining a landscape architect. It appeared that Defendants were in agreement with what they needed to do to resolve the violations. Defendants agreed to explore financing to pay for remedial work, submit a paint sample for the roof vent and skylight framing and flashing and retain an architect. NPH agreed to respond to various questions.

Settlement discussions continued through November 2007 and culminated with Defendants' offer to convey the Property to NPH subject to, among other things, NPH assuming Defendants' $694,633.84 mortgage and paying Defendants and/or their attorney $150,000, and assuming Defendants' obligations to their contractor. NPH rejected the proposal. Ex. N at 97.

At the November 14, 2007, status conference, after Judge Kurren heard from N&A and Mr. Grande, Judge Kurren terminated settlement discussions and assigned this case for trial on July 15, 2008.

### 4.    MOTION TO DISQUALIFY MAGISTRATE

In February 2007, NPH incurred fees to oppose the motion to disqualify Judge Kobayashi. NPH opposed the motion because it was completely unwarranted. However, Judge Kobayashi ultimately recused herself because Joyce Y. Neeley, a partner in N&A, was appointed chair of the Committee for Application.

### 5.    OTHER MOTIONS

In Phase 4, on May 12, 2006, Defendants filed a Motion for Joinder of Additional Parties which this Court denied. On June 27, 2006, Defendants filed a Motion for Reconsideration which this Court also denied. On October 5, 2006, Defendants filed a motion for reconsideration of the order regarding sanctions which this Court denied. NPH incurred additional legal fees in responding to each of Defendants' motions. In August 2007, Mr. Jacobson withdrew as counsel citing the rule that a lawyer may withdraw if "a client insists upon pursuing an objective that the lawyer considers repugnant or imprudent."

### E. PHASE 5

During Phase 5 of this case, which spanned from December 2007 through March 2008, NPH prepared and filed its second MSJ which was granted on March 20, 2008. During Phase 5, attorneys' fees of approximately $15,860 were incurred.

Before proceeding with work on the MSJ, N&A sent Defendants a letter, enclosing a Stipulated Judgment, urging Defendants to sign the stipulation to minimize additional legal fees. Ex. N at 101-111. Defendants did not respond to the

letter.

Given that the first MSJ was filed in April 2006, nearly two years prior, a significant amount of work was needed to update the motion with new information and documents. In addition to revisions to the text of the motion, a significant effort was made to annotate various exhibits to emphasize the differences between the plans approved by the ARC versus plans used to construct the Dwelling.

Judge Ezra specifically referenced these exhibits in the Order entered March 20, 2008, which granted NPH summary judgment and a permanent injunction. Order at 23. Judge Ezra's order granted NPH virtually the same relief that would have been provided had Defendants signed the Stipulated Judgment.

### F. PHASE 6

Phase 6 of this case spans from March 21, 2008, to the present and involves the preparation of this Motion. Attorneys' fees of $9,140 were incurred during Phase 6. The Association requests leave to provide an updated summary of fees and costs incurred in the preparation of any responsive documents, including a reply memorandum, in the event Defendants file an opposition.

Preparation of this motion was extremely time consuming as it required NPH to summarize and document meetings, communications, research and other services rendered to enforce NPH's governing documents over the course of four years. Without thoroughly discussing what occurred in this case, this Court would not have a sufficient basis to evaluate the reasonableness of fees and costs incurred.

In addition to the above work, NPH seeks reimbursement of fees for communications between NPH and its counsel which were reasonably necessary to facilitate the rendition of legal services in this matter.

## III. ARGUMENT

### A. NPH IS ENTITLED TO RECOVER ATTORNEYS' FEES UNDER § 421J-10, § 607-14 AND THE DCC&R.

A federal court sitting in diversity must apply state law in determining whether the prevailing party is entitled to attorney's fees. *See Farmers Ins. Exch. v. Law Offices of Conrado Joe Sayas, Jr.,* 250 F.3d 1234, 1236 (9th Cir.2001). Under Hawai'i law, it is well-settled that attorneys' fees shall be awarded when provided by statute, stipulation, or agreement. *Food Pantry, Ltd. v. Waikiki Business Plaza, Inc.,* 58 Haw. 606, 618, 575 P.2d 869, 878 (1978). NPH seeks an award of attorneys' fees under the provisions of its DCC&R and §§ 421J-10 and 607-14, Hawaii Revised Statutes.

Article VII, § 7.3 of the DCC&R grants NPH a reimbursement assessment for amounts expended as a result of owners' failure to comply with the DCC&R:

> 7.3 <u>Reimbursement Assessment</u>: The Board shall levy an assessment against an Owner whose failure to comply with this Declaration, the Rules or the Architectural Committee Rules results in monies being expended by the Association . . . Monies so expended shall include, without limitation, engineers', architects', attorneys', and accountants' fees when reasonably incurred by the Association.

Ex. A. *See also* § 6.8.1 and 6.10 of DCC&R.

Article XII, § 12.2.1 grants NPH court costs and attorneys' fees incurred in the enforcement of the DCC&R:

> 12.2.1 <u>Right of Enforcement</u>: Except as otherwise provided herein, Declarant, the . . . Association, or any Owner or Owners shall have the right to enforce any and all of the limitations, covenants, conditions, restrictions, obligations, liens and charges now or hereafter imposed by this Declaration upon the Owners or upon any Lot in the Project, and the ***costs of enforcement, including court costs and attorneys' fees, shall be paid by any Owner who violates any such limitation, restriction, covenant or condition***, or fails to pay and satisfy when due any such lien or charge . . .

*Id.* (emphasis added).

The Hawai`i Legislature, recognizing the importance of the enforcement of governing documents of community associations and of HRS Chapter 421J, provided for the <u>full</u> recovery of attorneys' fees and costs in such actions. Thus, HRS § 421J-10 provides, in relevant part:

> **Attorneys' fees and expenses of enforcement.** (a) All costs and expenses, including reasonable attorneys' fees, incurred by or on behalf of the association for:
>
> (1)    Collecting any delinquent assessments against any unit or the owner of any unit;
>
> (2)    Foreclosing any lien on any unit; or
>
> (3)    ***Enforcing any provision of the association documents or this chapter; against a member, occupant, tenant, employee of a member, or any other person who in any manner may use the property, shall be promptly paid on demand to the association by such person or persons***; provided that if the association is not the prevailing party, all costs and expenses, including reasonable attorneys' fees, incurred by any such person or persons as a result of the action of the association, shall be promptly paid on demand to the person by the association. The reasonableness of any attorney's fees paid by a person or by an association as a result of an action pursuant to paragraph (2) shall be determined by the court.

(Emphasis added). It is indisputable that the attorneys' fees and costs incurred by NPH were the direct result of Defendants' refusal to comply with the governing documents. (It should be noted that §§ 7.3 and 12.2.1 provide NPH with a broader right of recovery than § 421J-10. While § 421J-10 permits an award of fees to the association if it is the "prevailing party," the DCC&R gives NPH a broad right of reimbursement of fees and costs for enforcement of the governing documents.)

NPH is clearly the prevailing party and is entitled to an award of all attorneys' fees and costs incurred in this action. Chapter 421J was enacted to afford procedural

safeguards to members of homeowners' associations and to provide that all costs and expenses be paid to an association in enforcing its governing documents. The statute does not impose a limitation on attorneys' fees to be awarded. The legislative history confirms that the intention of Chapter 421J was, in part, to allow "community associations to recover *all* of their costs, including reasonable attorneys' fees incurred in the collection of assessments and enforcement of covenants." Hse. Stand. Com. Rep. No. 980, in 1997 House Journal, at 1480-81. *See* Ex R. (Emphasis added). Awarding all attorneys' fees incurred in this action against Defendants is consistent with the legislative purpose of Chapter 421J and furthers the interests of justice by holding Defendants responsible for the results of their refusal to voluntarily comply with the governing documents.

**B.    NPH'S ATTORNEYS' FEES ARE REASONABLE BASED ON THE SERVICES RENDERED.**

Hawai'i courts calculate reasonable attorneys' fees based on a method that is virtually identical to the traditional "lodestar" calculation set forth in *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). *See DFS Group L.P. v. Paiea Props.*, 110 Hawai'i 217, 222, 131 P.3d 500, 505 (2006). The court must determine a reasonable fee by multiplying the number of hours reasonably expended by a reasonable hourly rate. *Id.* at 222-23, 131 P.3d at 505-06.

The Hawaii Supreme Court indicated in *Sharp v. Hui Wahine, Inc.*, 49 Haw. 241 (1966), rehearing denied, 47 Haw. 257 (1966), that the primary test for determining the value of attorneys' services is the customary and usual charge made by the legal profession in the community. Under Rule 1.5 of the Hawaii Rules of Professional Conduct ("HRPC"), the following factors may be considered when making a

determination of whether fees are reasonable:

(1)    the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2)    the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3)    the fee customarily charged in the locality for similar legal services;

(4)    the amount involved and the results obtained;

(5)    the time limitations imposed by the client or by the circumstances;

(6)    the nature and length of the professional relationship with the client;

(7)    the experience, reputation, and ability of the lawyer or lawyers performing the services;

(8)    whether the fee is fixed or contingent, and in contingency cases the risk of no recovery and the conscionability of the fee in light of the net recovery to the client;

(9)    the relative sophistication of the lawyer and the client; and

(10)   the informed consent of the client to the fee agreement.

N&A represents numerous planned community associations in the State of Hawaii and has significant experience in representing associations in matters involving the enforcement of restrictive covenants. The representation of NPH in this matter by N&A (which is a small firm) precluded other employment during the hours spent on this action. The fact that N&A was successful herein, demonstrates the competence of the legal services provided.

As set forth below, the hourly rates for the attorneys in the law firm of N&A LLP, A Limited Liability Law Partnership ("N&A") range from $185 to $205 per hour for partners and $150 to $180 per hour for associates, which are consistent with the hourly rates for other attorneys in the same locality, if not lower. Invoices are attached hereto as Ex. J. Fees are summarized by category in Exhibit B.

In order to minimize the hardship to NPH, counsel has discounted and adjusted fees for its services. Ex. B, Summary for Category I. NPH is entitled to reimbursement

of its attorneys' fees, costs and expert's fees and costs in this matter.

Included in Exhibit D is a brief description of the qualifications of the attorneys and paralegals who have worked on this matter. (To facilitate the review of this Motion, N&A is willing to e-mail spreadsheets of fees and costs to this Court.)

The law firm of N&A has represented NPH since 2000 in general matters, covenant enforcement and collection matters. The fact that N&A was successful herein, demonstrates the competence of the legal services provided.

The following additional considerations support the reasonableness of NPH's fees:

### 1.    Purpose and Importance of Injunctive Relief

Defendants' covenant violations harmed the community by detracting from the appearance of the neighborhood. If NPH had not pursued this action against Defendants, their flagrant violation of the governing documents would have encouraged other homeowners to violate the governing documents and caused the problems to proliferate. Moreover, Defendants neighbors threatened to file suit if NPH did not enforce the governing documents and, indeed, even after NPH filed suit against Defendants, the neighbors filed suit against both NPH and Defendants concerning enforcement of the governing documents. *See Glen Y. Moribe, et al. v. Anthony Charles Grande, et al.*, Circuit Court of the First Circuit, State of Hawaii, Civil No. 04-1-2132-11 GWBC.

### 2.    NPH Gave Defendants Every Opportunity to Cure the Covenant Violations and Avoid Litigation

The discussion above establishes that NPH gave Defendants every opportunity to resolve this matter at every phase so as to minimize the legal fees and costs

incurred. NPH proceeded with expensive motions only after efforts to settle failed and NPH incurred substantial fees in reviewing and responding to Defendants' numerous submissions which they later repudiated. Moreover, NPH offered to mediate this matter with Defendants before The Mediation Center of the Pacific provided that Defendants ceased construction. Defendants refused to cease construction, leaving NPH with no choice but to proceed with this action.

### 3.   Miscellaneous

In his letter to Judge Ezra dated June 27, 2006, Mr. Jacobson conceded that the fees incurred by Defendants were substantial. Ex. M at 13-14. In Mr. Grande's November 7, 2007, e-mail, Defendants proposed to convey the Property to NPH in exchange for, among other things, NPH paying Mr. Jacobson $100,000 for his legal fees. These communications further support the reasonableness of NPH's fees.

### C.   THE ARCHITECTS' AND SURVEYOR'S FEES WERE REASONABLY AND NECESSARILY INCURRED.

Article VII, § 7.3 of the DCC&R, Ex. A, allows NPH to recover architect's and engineer's expenses in enforcement of the governing documents. NPH incurred architect's fees and costs of James I. Nishimoto, AIA, President of Group 70 International, Inc., ARC Chair Ronald K. Awa, ARC member Ronald Miyabara, and surveyor's fees of Lance Stevens as summarized in the attached Exhibits E, H and I. Article VII, § 7.3 of the DCC&R requires owners to reimburse NPH for all monies expended as a result of violations of the DCC&R: "Monies so expended shall include, without limitation, engineers', architects', attorneys', and accountants' fees when reasonably incurred by the Association." This Court has the discretion to determine that the expert's fees and costs are reasonable. *Geldert v. State*, 3 Haw. App. 259, 268,

25

649 P.2d 1165 (1982).

### 1.    Mr. Nishimoto/Group 70 International, Inc.

NPH retained Mr. Nishimoto of Group 70 as an expert witness to support NPH's enforcement of the governing documents and establish that the ARC acted reasonably in handling this matter. Mr. Nishimoto and Group 70's services are described in the invoices attached hereto as Exhibit E and the Declaration of James I. Nishimoto, attached.  The services performed included site inspections of the Property and/or project, review and analysis of plans and specifications, review and analysis of surveyor's report, preparation of a Report, *see* Ex. G, preparation of the expert disclosure report dated June 12, 2006, *see* Ex. F, and preparation of an affidavit and declaration. Mr. Nishimoto's services were shared with NPH's insurer. Thus, NPH is seeking reimbursement of 50% of the fees incurred, *i.e.*, $6,579.92.

### 2.    Ronald K. Awa, AIA

As Chair of the ARC, Mr. Awa charged NPH fees of $8,899.64 from September 2003 through February 2007 for the review of plans submitted by Defendants, attendance at meetings of the NPH Board of Directors. Mr. Awa's fees are summarized in Ex. H and in the attached Declaration.

### 3.    Mike Miyabara

Mr. Miyabara, a licensed landscape architect and member of the ARC, charged NPH $692.50 for the review of plans submitted by Defendants and consultation with the ARC. Ex. H. NPH is entitled to reimbursement of Mr. Miyabara's fees pursuant to § 7.3 of the DCC&R.

### 4.    Lance Stevens/ControlPoint Surveying, Inc. (Surveyor)

Mr. Stevens charged NPH $1,916.50 for his services in surveying the Dwelling

and Property in February 2005. His services were vital given that the major issues in this case concerned building envelope and setback encroachments. Ex. I. Mr. Stevens' services were shared with NPH's insurer. Thus, NPH is seeking reimbursement of 50% of the fees incurred, *i.e.*, $1,916.50.

## D.    TAXES ON ATTORNEYS' FEES SHOULD BE AWARDED IN FAVOR OF THE ASSOCIATION

NPH seeks reimbursement of taxes paid on fees under the holding in Blair v. Ing, 96 Hawai`i 327, 31 P.3d 184 (Hawai`i 2001). In that case, the Hawai`i Supreme Court ruled that under § 607-9 HRS, an accountant who prevailed in litigation was entitled to an award of his attorneys' fees of $21,370 plus $898.82 for general excise tax. *Id.* at 336, 31 P.3d at 193. Given that NPH has paid general excise taxes on fees incurred, it should be reimbursed these amounts to be made whole.

## E.    DEFENDANTS SHOULD BE TAXED COURT COSTS UNDER § 607-9 AND HRS § 421J-10.

NPH seeks reimbursement of costs of $6,829.41 under § 607-9 and § 421J-10, HRS, and §§ 7.3, 6.8.1, 6.10, and 12.2.1 of the DCC&R. Ex. C. Section 607-9, sets forth standards and guidelines for the taxation of costs of court:

> ***All actual disbursements, including but not limited to***, intrastate travel expenses for witnesses and counsel, ***expenses for deposition transcript originals and copies***, ***and other incidental expenses***, ***including copying costs***, intrastate long distance ***telephone charges, and postage***, sworn to by an attorney or a party, and deemed reasonable by the court, may be allowed in taxation of costs. In determining whether and what costs should be taxed, the court may consider the equities of the situation.

Haw. Rev. Stats. § 607-9 (1989) (emphasis added).

It should be emphasized that this 1989 amendment of Section 607-9 grants trial courts discretion to tax as costs "*[a]ll actual disbursements . . . and other incidental expenses . . . sworn to by an attorney or a party, and deemed reasonable by the court*." Trial courts are no longer restricted to the various categories of costs described in

27

§ 607-9. In addition, NPH is entitled to *all* relevant costs under § 421J-10, as quoted above, and the DCC&R which provides a much broader right of recovery than § 607-9. Thus, this Court is not necessarily bound by the restrictions of § 607-9. The following items should be awarded as taxable costs:

| | | |
|---|---|---|
| 1. Fees of the Clerk | $ | 353.00 |
| 2. Fees for service of summons and subpoena | $ | 325.00 |
| 3. Fees of the court reporter | $ | 659.69 |
| 4. Fees for exemplification and copies | | |
| a. Photocopying (N&A ) | $ | 1,835.70 |
| b. Photocopying (HonBlue) | $ | 494.07 |
| c. Photocopying (Professional Image) | $ | 1,032.22 |
| d. City and County of Honolulu | $ | 129.00 |
| e. Photocopying from Reinwald O'Connor & Playdon | $ | 182.82 |
| f. Title Guaranty (copies of recorded documents) | $ | 253.00 |
| 5. Facsimile charges (local) | $ | 236.50 |
| 6. Postage | $ | 278.41 |
| 7. Title report, recordation fees | $ | 450.00 |
| April 2008 - copies of this motion | $ | 600.00 |
| Subtotal | $ | 6,829.41 |
| GET prior to 12/31/06 = 4.166% | $ | 195.40 |
| GET 1/1/07 to present 4.712 | $ | 59.56 |
| **Total** | **$** | **7,084.37** |

Section 607-9 specifically authorizes taxation of copying costs and postage. Photocopy charges are based upon a rate of 15 cents per page for in-house copying multiplied by 12,233 copies. Photocopy charges were incurred for the copying of pleadings, documents filed in this case, documents requested by Defendants, correspondence and other documents. The photocopy charges are reasonable in light of the Court docket which shows over 217 documents filed spanning 2,508 pages, the filed documents fill 9 files, NPH has 18 files of correspondence, and 484 documents

were produced by Defendants in this case.

Outside copying charges were incurred for copying oversize plans (performed by Honblue) including the original plans dated October 2000, plans revised August 2003, plans revised October 2003, plans revised November 2003, plans revised January 2004, plans approved by the City, plans used by the contractor, and at least 4 sets of plans submitted during the litigation.

Copy charges were also incurred for documents produced by the City and Defendants' contractor. Additional charges were incurred for color copies of photographs and to respond to Defendants' request for production of documents.

Fax charges are taxable under the Hawaii Intermediate Court of Appeals' decision in *Bjornen v. State Farm Fire and Casualty Company*, 81 Haw. 105, 912 P.2d 602 (1996). The court stated:

> HRS Sec. 607-9 includes within the definition of taxable costs "[a]ll actual disbursements, including but not limited to, . . . intrastate long distance telephone charges[.]" A fortiori, it includes the ***actual disbursement of interstate long distance telephone charges***. We take judicial notice that ***FAX transmissions occur by way of intrastate and interstate telephone lines***.

*Id.* at 109, 912 P.2d at 606 (emphasis added).

NPH incurred court reporter charges of $659.69 for documents produced upon written deposition and preparation of the trial transcript of Mr. Grande in the related State mechanics' lien action, *Brandt Homes Inc. v. Anthony Charles Grande and Narindar Kaur Grande, et al.*, Circuit Court of the First Circuit (Civil No. 05-1-2061-11 GJK), portions of which were used in NPH's second MSJ. Half the cost of the trial transcript was borne by NPH's insurer.

Actual disbursements were made for such other reimbursable expenses such as sheriffs' fees in serving the Complaint, obtaining the title report to determine ownership

of the Property and determining the proper parties to this action, delivery charges, and postage. Although these charges are not specifically cited as items taxable as costs of court, § 607-9 authorizes this Court to tax as costs "[a]ll actual disbursements, including but not limited to" those enumerated in the statute. As discussed above, the list of costs described in § 607-9 is not intended to be an exclusive list of taxable costs, and § 607-9 allows courts to "consider the equities of the situation" in determining whether and what costs should be taxed.

Via e-mail sent to Defendants on April 3, 2008, N&A attempted to meet and confer with Defendants to resolve any disputes about the claimed costs, however, Defendants have failed to respond. Ex. V.

### IV. CONCLUSION

Although the fees and costs incurred are substantial, the critical point is that at every phase of this case, NPH gave Defendants the opportunity to cure their violations at the least expense, NPH proceeded only as a last resort after exhausting all remedies, and Defendants' conduct in this case exacerbated the of fees incurred. These points are illustrated by the examination of the various phases of this case set forth above.

Defendants must be held accountable for their actions, otherwise, the expenses incurred will be unfairly borne by innocent members of NPH who were not at all responsible for causing this case to be filed and litigated.

DATED:  Honolulu, Hawaii, April 11, 2008.

JOYCE Y. NEELEY
LANCE S. FUJISAKI
SCOTT R. GRIGSBY
Attorneys for Plaintiff
NA PALI HAWEO COMMUNITY
ASSOCIATION