NEELEY & ANDERSON LLP
A Limited Liability Law Partnership

JOYCE Y. NEELEY        (3134-O)
(JNeeley@neeley-anderson.com)
PHILIP L. LAHNE        (3709-O)
LANCE S. FUJISAKI      (4224-O)
SCOTT R. GRIGSBY       (6673-O)
Pacific Guardian Center, Makai Tower
733 Bishop Street, Suite 2301
Honolulu, Hawai`i 96813
Telephone: (808) 536-8177
Facsimile: (808) 536-4977

X:\NaPaliHaweo\Grande\Usdc PLEADINGS\Rule 26(a)(2) disclosures Nishimoto-fnl.wpd

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAI`I

| | |
|---|---|
| NA PALI HAWEO COMMUNITY ASSOCIATION, a Hawaii nonprofit corporation,<br><br>    Plaintiff,<br><br>vs.<br><br>ANTHONY CHARLES GRANDE; NARINDAR KAUR GRANDE; JOHN DOES 1-10; JANE DOES 1-10; DOE PARTNERSHIPS 1-10; DOE CORPORATIONS 1-10; DOE ENTITIES 1-10; AND DOE GOVERNMENTAL UNITS 1-10,<br><br>    Defendants.<br><br>ANTHONY CHARLES GRANDE and NARINDAR KAUR GRANDE,<br><br>    Counterclaim Plaintiffs,<br><br>vs. | CIVIL NO. CV04-00413 DAE/LEK (Injunctive Relief)<br><br>DISCLOSURE OF EXPERT TESTIMONY OF JAMES I. NISHIMOTO, AIA, PURSUANT TO RULE 26(a)(2); EXHIBITS "A"-"L";<br><br><br><br><br><br>Judge: Honorable Leslie E. Kobayashi<br><br>TRIAL:  December 12, 2006 |

**EXHIBIT "F"**
**Page 1 of 24**

NA PALI HAWEO COMMUNITY
ASSOCIATION; RONALD K. AWA
and DOES 1-25,

     Counterclaim Defendants.

---

## DISCLOSURE OF EXPERT TESTIMONY OF JAMES I. NISHIMOTO, AIA<br>PURSUANT TO RULE 26(a)(2)

Plaintiff NA PALI HAWEO COMMUNITY ASSOCIATION ("Association") hereby submits its Disclosure of Expert Testimony of James I. Nishimoto, AIA, pursuant to Rule 26(a)(2) of the Federal Rules of Civil Procedure. The scope of the opinions set forth herein pertain to the Association in its capacity as Plaintiff, and do not address the claims, defenses or issues arising from the Counterclaim filed herein, which will be addressed at a later time, if appropriate.

STATEMENT OF OPINIONS AND  BASES AND REASONS FOR OPINIONS

I have inspected the property owned by Defendants Anthony Charles Grande and Narindar Kaur Grande ("Grandes") situate at 1251 Kamehame Drive, also known as Lot No. 49 (Kamehame Ridge Subdivision, Unit II-Phase 2-A shown on File Plan Number 2028), Maunalua, Honolulu, Hawaii 96825, including the dwelling thereon ("Dwelling"), as well as other homes within the community.

Na Pali Haweo is an upscale subdivision located on the east end of Oahu on the summit of a ridge line of Hawaii Kai. The home sites range from 375 to 750 feet above sea level, with views of the Hawaii Kai golf course, Maunalua Bay, Diamond Head, Koko Head Park and the neighboring islands of Molokai, Lanai and Maui.

**EXHIBIT "F"**
**Page 2 of 24**

<u>Overview of Governing Documents</u>

Each of the lots in Na Pali Haweo are subject to the Na Pali Haweo Declaration of Covenants, Conditions & Restrictions ("Declaration") and the Na Pali Haweo Design Guidelines.

Article IX of the Declaration sets forth the procedures for the creation of an Architectural Review Committee ("ARC")[1] and the design review of construction, reconstruction, refinishing, alterations and excavations. Article IV, Section 4.1 provides that "[a]ny construction or reconstruction of, or the refinishing or alteration of any part of the exterior of, any Improvement upon any Lot is absolutely prohibited until and unless the Owner of such Lot *first obtains the approval therefor from the Architectural Committee and otherwise complies with all of the provisions of the Design Guidelines and/or this Declaration.*" Article IV, § 4.1 provides that in reviewing applications, the ARC shall consider: (a) quality of workmanship and design, (b) harmony of external design with existing structures, and (c) location in relation to surrounding structures, topography and finishing grade elevation.

Article IV, § 4.1 of the Declaration mandates the developer to create the Design Guidelines to, in part, set forth requirements for the design and construction of homes. These include, for example, setback requirements, building envelope requirements, requirements for storage facilities, and prohibitions against certain types of building materials and building methods. The Design Guidelines also provide guidance for the

---

[1]   The Declaration refers to the Architectural Review Committee as the Architectural Committee.

3

EXHIBIT "F"
Page 3 of 24

general appearance and style of homes within the community. Article IV, Section 4.1 of the Declaration provides: "All Owners, builders, and developers shall conduct their activities strictly in accordance with the Design Guidelines." The Design Guidelines currently in effect were created by the developer.

Design Objectives

The Design Guidelines are intended to achieve various design objectives discussed therein, including without limitation the following:

1.      Promote architecture which focuses on qualities of surface, ventilation, light, massing, and space as it relates to the outdoor environment.

2.      Promote the elegant use of simple forms, subdued roofing, long overhangs, landscaped courtyards, and careful placement and treatment of accent windows to help create scale and character.

3.      Encourage breaking up of large masses to articulate several volumes to reduce the impact of scale, and the use of porches, balconies, entry treatments, shadows from openings and projections to provide relief and rhythm to large surfaces, and visual interest and scale. The term "scale" is an architectural term which refers to the relationship of a human being to building masses or walls.

4.      Emphasize that it is "essential" that roof forms are appropriately articulated with respect to the individual lot, the neighboring houses and the community as a whole.

5.      Promote construction which allows access to views of the surrounding landscape, access to prevailing marine wind and sunshine, and access to open space.

4

EXHIBIT "F"
Page 4 of 24

As a result, the three dimensional aspect of the house and its location within the lot is important to the community as a whole.

I have inspected the Na Pali Haweo project and find that these design objectives have been generally achieved within the community.

### Comparison Between Design Guidelines and Land Use Ordinance

To achieve the design objectives of access to open space, views of the surrounding landscape, marine wind and sunshine, the Design Guidelines impose design requirements that are much more restrictive than the City and County of Honolulu Land Use Ordinance ("LUO"). For example, lots within Na Pali Haweo are subject to a front property line setback of twenty (20) feet, *i.e.*, twice the distance mandated by the LUO of ten (10) feet.

The building envelope for Na Pali Haweo is also more restrictive than the building envelope specified in the LUO. The building envelope represents the maximum height, setback, and bulk of each house to effectuate the design concept for Na Pali Haweo. It is comprised of the height setback, the yard setbacks and the maximum height restriction. The purpose of the building envelope restriction is to reduce the apparent mass and scale of the house and to promote access to views, prevailing marine wind, sunshine and open space. The building envelope for Na Pali Haweo is measured twenty (20) feet from the property line; by comparison, the building envelope is measured ten (10) feet from the property line under the LUO. *See* illustrations at page 13 of the Design Guidelines.

In addition, the maximum lot coverage at Na Pali Haweo is restricted to 1/3 of the lot area whereas the LUO allows lot coverage equal to ½ of the lot area; and some

5

**EXHIBIT "F"**
**Page 5 of 24**

lots within Na Pali Haweo are subject to view channels and/or special height restrictions to maximize visual access to views from surrounding lots. *See* Article III, § 3.2(c) of the Design Guidelines.

Deficiencies Within Grandes' Property

My inspection of the Property revealed the following violations of the Association's Design Guidelines and/or deviations from the approved drawings submitted by the Grandes as part of the Design Review Submittal Process.

1.  Building encroachment of approximately 3-½ inches into the required twenty feet front setback at left building appendage in violation of Article III, Section 3.2.1 (d) of the Design Guidelines. (Reference Site Survey plan drawing, Exhibit "B," Attachment No. 1.)

Article III, Section 3.2.1 (d) of the Design Guidelines provides that dwellings shall be subject to a setback of 20 feet from the front property line. It is my opinion that this requirement is reasonable and necessary to establish and maintain the design character of Na Pali Haweo. The purpose of the 20 foot setback is to allow for greater open space between the street and sidewalks, and dwellings. The 20 foot front setback violation is of concern because when combined with the building envelope encroachment and other deviations from the approved plans, they all contribute to the imposing mass and scale of the Dwelling. The position taken by the Association and its ARC relating to the above violation is reasonable and consistent with the purpose and intent of the Design Guidelines.

**EXHIBIT "F"
Page 6 of 24**

2.    Building encroachment within a front setback building envelope for a
setback of one foot for every two feet of additional height over twenty
feet in violation of Article III, Section 3.2.1(d) of the Design Guidelines.
(Reference elevation drawing, Exhibit "B," Attachment No. 2.)

The shaded area in Attachment No. 2 depicts the portion of the Dwelling that
protrudes through the building envelope. The shaded area includes two columns that
support the roof above the master bedroom, the roof beam at the front edge of the roof,
and a portion of the roof eaves.

Article III, Section 3.2.1(d) of the Design Guidelines defines the "building
envelope" as follows:

(d)    *Building Envelope.  All improvements shall be constructed in
accordance with applicable building line, setback and height provisions
set forth on the subdivision map and/or local ordinance.  No structure of
any nature shall be constructed or permitted on a Lot which violates any
provisions of the requirements of the Land Use Ordinance of the City and
County of Honolulu, as amended, or any other declaration of building
restrictions recorded against the Lot, whichever is more restrictive.*

***The Building Envelope sets the maximum height, setback, and
bulk of each house.  It does not represent the ultimate shape or
architectural appearance of the building.***

***No part of any structure or auxiliary structure may protrude
outside the building envelope*** *except roof overhangs, eaves, sunshades,
sills,  beam  ends,  awnings,  planters,  and  other  architectural
embellishments or appendages with less than a 30 inch vertical thickness.
Roof overhangs may protrude* ***not more than 2-1/2 feet outside the
envelope.*** *Chimneys may protrude outside the envelope only to meet code
requirements of the City/County, but should not encroach within 5' of the
property line.*

7

The provisions of the Design Guidelines relating to the building envelope are reasonable restrictions and requirements designed to establish and maintain the design character of the Na Pali Haweo subdivision.

The position taken by the Association and its ARC relating to the above violation is reasonable and consistent with the purpose and intent of the Design Guidelines. It is my opinion that the ARC correctly determined that the roof above the master bedroom encroached beyond the front building envelope and correctly required the Grandes to correct this condition.

It is my opinion that the plans submitted by the Grandes on April 19, 2006, are substantially different from those submitted on November 3, 2003, and January 9, 2004. For example, the plans submitted on November 3, 2003, indicate a new column but do not show any reduction in the roof above the master bedroom balcony. The plans submitted on January 9, 2004, for example, reflect the new columns but do not reflect the elimination or relocation of the roof beam at the balcony edge. In addition, the reduction in the roof eaves occurs only at the front edge, and not the left corner and right side. The plans received on April 19, 2006, indicate relocation of columns and the roof beam, and removal of roof eaves on the front, left corner and right side.

I have reviewed plans submitted by the Grandes on April 19, 2006, and with regard to the proposed remedy for the building envelope violation, it is my opinion that the proposed remedy is acceptable.

I have also reviewed plans approved by the ARC on October 17, 2000. The Design Guidelines provide that owners must submit plans that "[s]how required Building Envelope setbacks" and that "[t]he maximum permitted Building Envelope

EXHIBIT "F"
Page 8 of 24

must be shown in relation to the proposed structure for all elevations." *See* Article VI, § 6.3.1 of the Design Guidelines. The Grandes violated these provisions as the plans submitted in October 2000 did not correctly show the required Building Envelope setbacks and maximum permitted Building Envelope in relation to the proposed structure.

        3.      Two skylights on the north roof slope are bubble type with white frost, plastic lens, and natural aluminum curbs in violation of Article III, Section 3.2.3(i) of the Design Guidelines. (Reference photograph, Exhibit "B," Attachment No. 3).

Article III, Section 3.2.3(i) of the Design Guidelines sets forth restrictions on installation of skylights:

> (i)    *Skylights. Skylights are to be designed as an integral part of the roof.* **Skylight glazing must be clear, solar bronze or gray;** *white or reflective glazing is prohibited. Skylight framing material  must be* **bronze anodized or colored to match adjacent roof. Natural aluminum is prohibited**. *No bubble or plastic skylights will be allowed and skylights facing the street shall be non-operable and subject to the approval of the Architectural Review Committee.*

The provisions of the Design Guidelines relating to skylights are reasonable restrictions and requirements to establish and maintain the design character of the Na Pali Haweo subdivision. The position taken by the Association and its ARC relating to the above violation is reasonable and consistent with the purpose and intent of the Design Guidelines.

I have seen photographs of the replacement skylights and believe the skylights, with the exception of frames, are now generally acceptable. The position taken by the Association and its ARC relating to the above violation is reasonable and consistent

9

with the purpose and intent of the Design Guidelines. It is my opinion that the ARC correctly determined that the frames of the skylights required painting to match the roof color and correctly required the Grandes to correct this condition and to submit the manufacturer's brochure or similar product information for skylights.

    4.    Air conditioning equipment is exposed at the rear yard, with no fence or earth embankment screening in violation of Article III, Section 3.2.14 of the Design Guidelines. (Reference photograph, Exhibit "B," Attachment No. 4).

Article III, Section 3.2.14 of the Design Guidelines provides:

*Mechanical Equipment. All air conditioning, heating equipment and soft water tanks must be screened from view and be insulated for sound attenuation. Air conditioning units are not permitted on roofs.*

The provisions of the Design Guidelines relating to mechanical equipment and air conditioning systems are reasonable restrictions and requirements to establish and maintain the design character of the Na Pali Haweo subdivision and to minimize transmission of noise. The position taken by the Association and its ARC relating to the above violation is reasonable and consistent with the purpose and intent of the Design Guidelines.

I have reviewed photographs of the air conditioner screening on the Property and opine that the ARC has reasonably concluded that the screening does not meet the requirements of the Design Guidelines. Article III, § 3.2.2(a) and § 3.2.7(c) of the Design Guidelines prohibit the existing prefabricated lattice work for exterior wall surfaces and fences.

**EXHIBIT "F"**
**Page 10 of 24**

5.     Roof exhaust vents (two) are natural aluminum finish instead of a color matching the roof material and are visible from the street in violation of Article III, Section 3.2.3(f) of the Design Guidelines (Reference photographs, Exhibit "B," Attachment No. 3).

Article III, Section 3.2.3(f) of the Design Guidelines sets forth restrictions on installation of vents.

> *Vents.*  *All vents, stacks and pipes must be colored to match the roof or wall material from which they project, must not be visible from the street, and are to be grouped so as to minimize roof penetrations.*

The provisions of the Design Guidelines relating to roof vents are reasonable restrictions and requirements to establish and maintain the design character of the Na Pali Haweo subdivision.  The position taken by the Association and its ARC relating to the above violation is reasonable and consistent with the purpose and intent of the Design Guidelines.

I have reviewed photographs of the replacement roof vents and opine that the ARC has reasonably concluded that the replacement roof vents may be approved subject to submission of the manufacturer's brochure or similar product information for vents.

6.     Sliding garage gate is missing leaving a double wall receptor exposed, which is a change or deviation from the approved plans in violation of Article VI, Section 6.3.4 of the Design Guidelines. (Reference photograph, Exhibit "B," Attachment No. 5).

The omission of the sliding garage gate and exposed double wall receptor creates an unfinished appearance at the front of the Property. The position taken by the

**EXHIBIT "F"**
**Page 11 of 24**

Association and its ARC relating to the above violation is reasonable and consistent with the purpose and intent of the Design Guidelines.

7.    Front entry light fixtures on the entry column bases have exposed bulbs in violation of Article III, Section 3.2.6 of the Design Guidelines. (Reference photograph, Exhibit "B," Attachment No. 6).

Article III, Section 3.2.6 of the Design Guidelines provides:

**Exterior Lighting.**  *All exterior lighting is to be indirect and shielded to prevent spillover onto adjacent lots and street. Exposed bulbs, spotlights, reflectors and lenses are prohibited.*

I have reviewed photographs of the replacement exterior lighting installed by the Grandes and opine that the ARC has reasonably concluded that replacement exterior lighting is acceptable.

8.    Portions of the garden wall at the front property line exceed the height indicated on the approved drawings and as permitted by Article III, Section 3.2.7 of the Design Guidelines. (Reference photographs and Site Survey drawing, Exhibit "B," Attachment No. 7.)

Article III, Section 3.2.7 of the Design Guidelines sets forth restrictions on walls and fences:

*3.2.7  Fences.*

*(a)    Height of Fences.  No garden wall or fence being along property lines or within the setback areas, whether or not used as a retaining wall, shall have an **exposed face higher than six feet (6') from existing grade** and the area between such walls or fences and the property line at street frontage shall be adequately landscaped.*

*The front streetscape forms the visual experience of the community.  Front setback areas and front facades are an important part of this visual experience.  These areas should be designed to create a*

12

**EXHIBIT "F"**
**Page 12 of 24**

cohesive neighborhood environment that complements the hillside character yet allows for individual expression within each Lot.

*Walls or fences constructed within the front twenty foot (20') setback shall comply with the following:*

*(a)    Be no higher than five feet (5') above the finished grade on the side of the wall facing adjacent property;*

. . .

*No fences, hedges or walls shall be erected or maintained on any Lot other than as are initially installed by Declarant unless first approved by the Architectural Review Committee.*

I have reviewed plans submitted by the Grandes on April 19, 2006, and with regard to the proposed remedy for the garden wall violation, it is my opinion that the plans are ambiguous as to what the Grandes will do to remedy the violation. The plans do not indicate adequately where the walls will be cut or otherwise modified to meet the height restrictions of the Design Guidelines. For example, top of wall elevations are not provided for each step of the walls. Also, Sheet A-1 of the plans show a dotted line drawn above the wall; however, there is no notation as to what this line means and dotted lines have multiple meanings in the architectural profession.

The provisions of the Design Guidelines relating to walls and fences are reasonable restrictions and requirements to establish and maintain the design character of the Na Pali Haweo subdivision. The position taken by the Association and its ARC relating to the above violation is reasonable and consistent with the purpose and intent of the Design Guidelines.

9.     Exterior fenestrations have been modified from the approved/submitted drawings in violation of, among other things, Article IV, § 4.1 and Article

**EXHIBIT "F"**
**Page 13 of 24**

IX, § 9.7 of the Declaration, and Article VI, Section 6.3.4 of the Design Guidelines:

a.   Front Elevation (Reference photograph & submitted drawing, Exhibit "B," Attachment No. 8):

1) Roof eyebrow above the garage is missing.

2) Garage wall opening is squared-off at the top corners vs. an arch.

3) The arched clerestory window above the entry door has been deleted and substituted with a decorative window.

4) The windows at the living room are lower than the submitted drawings.

5) Planters indicated on the submitted drawings located on the side of the front entry balcony are missing. Further, the locations of the adjacent metal railings are inconsistent between elevation and plan.

6) The roof over the entry and the roof over the master bedroom are not separate and distinct elements as shown in the submitted drawings.

Based upon the plans submitted April 19, 2006, I understand that the Grandes have confirmed that they intend to construct the roof eyebrow above the garage opening and to modify the roof over the master bedroom to create separate and distinct elements. The ARC approved both of these proposed design elements. The plans, however, indicate that the Grandes are eliminating the remaining design elements listed above.

14

EXHIBIT "F"
Page 14 of 24

It is my opinion that when considered in the aggregate, the squared-off vs. arched garage opening, the deletion of the arched clerestory window above the entry door and substitution of a much smaller decorative window, lowering of windows at the living room and elimination of planters on the side of the front entry balcony do not provide relief and rhythm to the large wall surfaces. In my opinion, the ARC acted reasonably in disapproving the plans based upon the Grandes' failure to resolve the deviations from the approved plans.

> b.     Right (South) Elevation (Reference photograph & submitted drawing, Exhibit "B," Attachment No. 9 & 11):
>
> 1) The back corner has been moved out to align with the living room exterior wall causing a change in the building square footage. This resultant plan change has also affected the roofline, resulting in a higher ridgeline and a less variegated elevation.
>
> 2) Windows at the back corner are smaller than the submitted drawings.
>
> 3) The windows at the living room are lower than the submitted drawings.
>
> 4) The decorative panel indicated on the submitted drawings has been deleted.

The plans submitted April 19, 2006, do not resolve the foregoing deviations and do not show any changes to the right side of the Property. It is my opinion that when considered in the aggregate, the change in the back corner of the building to align with the living room exterior wall, reduction in the size of windows at the back corner, the

15

lowering of windows at the living room, and the deletion of the decorative panel, do not provide relief and rhythm to the large wall surfaces. Furthermore, the alteration of the back corner of the building resulted in a larger building mass with less variegated walls and roof forms that are not appropriately articulated. In my opinion, the ARC acted reasonably in disapproving the plans based upon the Grandes' failure to resolve the deviations from the approved plans.

        c.      Left (North) Elevation (Reference photograph & submitted drawing, Exhibit "B," Attachment No. 10):

                1) Exterior windows at the second floor Master Bedroom have been revised.

                2) The metal railing at the balcony corner has been deleted and a solid railing wall constructed in place.

The plans submitted April 19, 2006, do not resolve the foregoing deviations and do not show any change to the left side of the Property. The deviations from the approved plans have resulted in a large building mass that does not provide relief and rhythm to the large wall surfaces. The position taken by the Association and its ARC relating to the above violations is reasonable and consistent with the purpose and intent of the Design Guidelines.

        10.     The enclosed storage space within the garage, as required by Article III, Section 3.2.4(b) of the Design Guidelines and as indicated on the approved drawings, is not provided. (Reference photographs and submitted drawing, Exhibit "B," Attachment No.12 & 13.)

Article III, Section 3.2.4(b) of the Design Guidelines provides, in part:

**EXHIBIT "F"**
**Page 16 of 24**

> (b)    *Garages*. *A double-car garage containing not less than four hundred (400) square feet of parking area and a clear width of not less than eighteen (18') feet between outside support shall be attached to the residence; provided, however, that a detached double-car garage may be substituted in cases where an attached garage is not feasible.* **Every garage, whether attached or detached, which has a vehicular entrance facing a street shall contain not less than an additional one hundred (100) square feet of enclosed and covered area for service and storage facilities.** *Carports and single-car garages will not be permitted. The purpose of this requirement is to ensure that garages have adequate storage and thereby improve the aesthetic appearance of garages which face the street.*

The foregoing provision applies to the Grandes' garage as it has a vehicular entrance facing the street. The plans submitted on April 19, 2006, do not reflect 100 square feet of enclosed and covered area for service and storage facilities. The provisions of the Design Guidelines relating to service and storage facilities within garages are reasonable restrictions and requirements. The position taken by the Association and its ARC relating to the above violation is reasonable and consistent with the purpose and intent of the Design Guidelines.

11.    The concrete pad at the trash area as noted in the approved submitted drawings is missing as noted by landscape architect Mike Miyabara, which is a change or deviation from the approved plans in violation of Article VI, Section 6.3.4 of the Design Guidelines. (Reference Exhibit "L," Sheet L-2).

Sheet L-2 of the plans submitted on April 19, 2006, describes concrete pads outside of the trash enclosure. The concrete pads have not been constructed. The position taken by the Association and its ARC relating to the above violation is reasonable and consistent with the purpose and intent of the Design Guidelines.

**EXHIBIT "F"**
**Page 17 of 24**

The provisions of the Design Guidelines relating to changes or deviations from the approved plans are reasonable restrictions and requirements to establish and maintain the design character of the Na Pali Haweo subdivision.

For reasons discussed above, I do not believe the Dwelling is in substantial compliance with the final plans approved on October 17, 2000.

DATA AND INFORMATION CONSIDERED IN FORMING OPINIONS

I conducted an inspection of the Grandes' property located at 1251 Kamehame Drive, Maunalua, Honolulu, Hawaii 96825, including the Dwelling. My architectural firm Group 70 International retained the services of Control Point Surveying, Inc. to conduct a survey of the Grandes' property, which I considered in rendering my opinions. In addition, I considered the data, documents, drawings, photographs and other information referenced herein, including without limitation plans of the Dwelling dated November 3, 2003, January 9, 2004, the Declaration, documents filed with the Court, and photographs of the Dwelling taken during construction.

TRIAL EXHIBITS

The exhibits may include any of the documents, drawings, diagrams, and photographs attached hereto or referenced herein.

**EXHIBIT "F"**
**Page 18 of 24**

WITNESS QUALIFICATIONS

I am a licensed architect in the State of Hawaii and have been retained by the Association as an expert witness in the captioned matter. I am the President and Chief Operating Officer of the architectural firm Group 70 International and I have been a licensed architect in the State of Hawaii since 1980.

I have not authored any publications within the preceding ten (10) years. A copy of my Resume is attached as Exhibit "A".

COMPENSATION OF WITNESS

To date, the fees charged by me for the services rendered in this matter total approximately $5,742.15. My hourly rate for testifying is $200 per hour.

LISTING OF CASES IN WHICH WITNESS TESTIFIED

I have not testified as an expert at trial or by deposition within the preceding four (4) years.

ATTACHMENTS

The following Exhibits are attached and incorporated into this report:

A.   Resume of James I. Nishimoto, AIA

B.   Listing of Violations - Grande Residence, with attachments, dated April 1, 2005

C.   Survey Map Lot 49 by Control Point Surveying, Inc., March 1, 2005

D.   Right Side Elevation

E.   Left Side Elevation

F.   Handwritten Notes: "Issues"

**EXHIBIT "F"**
**Page 19 of 24**

G.    Handwritten Notes: "Na Pali Haweo vs. Grande"

H.    Page 4-7: Section 21-4.50 Lots in two zoning districts / Section 21-4.60 Heights

I.    Digital Photos of Grande Residence, dated February 22, 2005, April 5, 2006, May 26, 2006, June 12, 2006 (32 photos total)

J.    Na Pali Haweo Design Guidelines

K.    Letter from Neeley & Anderson to Steven Jacobson, dated May 31, 2005, with attached Response to Plans Submitted by Anthony Charles Grande and Narindar Kaur Grande (Received April 19, 2006)

L.    Grande Residence Plans, "Approved with Comments 10/17/00"

The Association reserves the right to supplement this Disclosure as discovery is ongoing. Furthermore, the Association reserves the right to supplement this Disclosure to address issues raised by the Grandes, including without limitation opinions of their experts and/or other witnesses.

20

DATED: Honolulu, Hawai'i, June _12_ , 2006


_____
JAMES I. NISHIMOTO, AIA

21





## JAMES I. NISHIMOTO, AIA
Principal/President

**EDUCATION**
Bachelor of Arts - Architecture, University of Hawai'i, 1975
Designer Certification, EPA Asbestos Facilities Mitigation
Value Engineering Certification, U.S. Naval Facilities Engineering Command

**PROFESSIONAL REGISTRATIONS & ASSOCIATIONS**
Architect, State of Hawai'i, 1980
Hawai'i Society, American Institute of Architects
Society of American Military Engineers (SAME), Hawai'i Chapter
Colonel (Retired), U.S. Army Reserve
Building Owners & Manager Association (BOMA)

**COMMUNITY AFFILIATION**
Waikīkī Community Center, Board of Director

**PROFESSIONAL EXPERIENCE**
Mr. Nishimoto joined Group 70 in 1989, and was made a Principal in 1993.  He is an architect with over thirty years of professional experience and has been involved with some of the firms more complex projects, both new buildings and existing.  Building types that Mr. Nishimoto has had experience with include institutional, military, commercial, residential, and resort hotel facilities.  Mr. Nishimoto often carries his projects from the early planning and budgeting phases through document production and construction administration.  He also has extensive Project Management experience.

Mr. Nishimoto is also the project coordinator and Principal-in-Charge of the firm's Building Diagnostics department, where full use of his extensive experience in rehabilitation of distressed conditions are brought to bear.  Additionally, he has served as an expert witness in legal proceedings involving construction claims.

Jim is a retired Colonel, U.S. Army Reserve, with past assignments as the Deputy Chief of Staff Engineering and command of an Engineer Combat Battalion (Heavy).

**PROJECT LIST**
**Expert Witnessing**
- Park Residence Claims, Honolulu, Hawai'i
  DPR Case No. 00-0333
- Iokahi Greens in Ewa, Ewa Beach, Hawai'i
  Civil No. 01-1-2435-08 EEH
- Singson Residence Claims, Kailua, Hawai'i
  DPR Case No. 01-0007 M/A
- One Archer Lane Construction Defects, Honolulu, Hawai'i
- Iwamoto Residence, 'Aiea, Hawai'i
  Civil No. 01-1-2346-08
- Nakamura Residence Claims, Kapalua, Maui
  DPR No. 01-0019-M
- Aguano Residence Claims, Lihue, Kaua'i
  Civil No. 00-01-0084
- Fastening Specialties Warehouse Investigation, 'Aiea, Hawai'i
  Arbitration No. AAA 78-110-0083-97

Exhibit "A"
Exhibits "B-L" are
omitted

## JAMES I. NISHIMOTO, AIA (CONTINUED)

**PROJECT LIST**
- Kinoshita Residence Damages, Honolulu, Hawai'i
  Civil No. 98-5571-12
- Bank of America Building Curtain Wall Investigation, Honolulu, Hawai'i
  Civil No. 96-3216-08
- Palms at Wailea Exterior Investigation & Remediation, Honolulu, Hawai'i
  Civil No. 95-4491-12
- Healani Gardens Mediation, Kāne'ohe, Hawai'i
  Civil No. 95-0-002995-08
- Coco Palms Hotel Damage Mediation, Kaua'i, Hawai'i

### Building Diagnostics
- Honuakaha Housing Roofing and Waterproofing, Honolulu, Hawai'i
- 1350 Ala Moana Driveway Waterproofing, Honolulu, Hawai'i
- Kona Lagoon Hotel Due Diligence & Microbial Growth Investigation, Kailua-Kona, Hawai'i
- The Kahala Beach Concrete Spall Repair & Painting, Honolulu, Hawai'i
- Control Tower S-84, Corrosion Analysis & Preservation Plan, Ford Island, Pearl Harbor, Hawai'i
- Hawai'i Film Studio Flooring Investigation, Honolulu, Hawai'i
- Asbestos Abatement Projects, Various Locations, State of Hawai'i
- Ala Moana Hotel ADA Survey, Honolulu, Hawai'i
- Maui Marriott Hotel ADA Survey, Ka'anapali, Maui
- The Contessa Condominium Concrete Spall Repairs, Honolulu, Hawai'i
- Century Center Microbial Growth Remediation, Honolulu, Hawai'i
- Leeward Community College Railing Repairs, Waipahu, Hawai'i
- Queen Kapiolani Hotel Due Diligence, Honolulu, Hawai'i
- Hyatt Regency Hotel Facility Evaluation, Honolulu, Hawai'i
- Continental Air Cargo Facility Investigation & Due Diligence
- Lahaina Cannery Mall Roof Repair, Lahaina, Maui
- Hawai'i State Capitol Roof Repair, Honolulu, Hawai'i

### Military
- Housing Area 800 Renovation, Ft. Shafter, Hawai'i
- Housing Area 200 Renovation, Tripler Army Medical Center, Hawai'i
- BEQ, Renovate Building 118, Wheeler AAF, Hawai'i
- BEQ, Renovate Building 130, Schofield, Hawai'i
- Asia Pacific Center for Security Studies, Ft. DeRussy, Hawai'i
- Hickam Consolidated & Medical Training Facilities, Hickam AFB, Hawai'i
- Company Operations Facilities (COF), Schofield Barracks, Hawai'i
- Quad F Renovation, Schofield Barracks, Hawai'i

### Office & Commercial
- Queen's Medical Center Utility Plant, Honolulu, Hawai'i
- Hazardous Waste Facility, University of Hawai'i, Mānoa Campus
- Tokuhara Building, Honolulu, Hawai'i
- Stan Sheriff Center & Athletics Support Facilities RFQ Documentation, University of Hawai'i at Mānoa, Honolulu, Hawai'i
- Hawai'i Film Studio Office and Mill Complex, O'ahu, Hawai'i

Group 70 International, Inc. • Architecture • Planning • Interior Design • Building Diagnostics • Assets Management • Environmental Services
925 Bethel Street, 5th Floor • Honolulu, Hawai'i 96813-4307 • Ph (808) 523-5866 • Fax (808) 523-5874 • www.group70int.com • mail@group70int.com

Dec-27-04  11:33am   From-GROUP 70 INTERNATIONAL,INC.          808-523-5874      T-007  P.03/03  F-041

## JAMES I. NISHIMOTO, AIA (CONTINUED)

**PROJECT LIST**
- Kwai Chan Trust Building Renovation, Oʻahu, Hawaiʻi
- Hālawa Medium Security Facility, ʻAiea, Hawaiʻi
- Shriner's Hospital Outpatient Laboratory, Honolulu, Hawaiʻi
- Payless and Safeway Stores Interiors, Kuapā Kai Shopping Center, Honolulu, Hawaiʻi
- Territorial Savings & Loan Branch, Kāneʻohe, Hawaiʻi
- Wett Noodle Discotheque, Lahaina, Maui
- State Art Museum & Visitor Center, Honolulu, Hawaiʻi

**Housing**
- Makaha Valley Estates - PDH, Oʻahu, Hawaiʻi
- Lakeside Condominium Development, Honolulu, Hawaiʻi
- Plaza Landmark Condominium Tower, Honolulu, Hawaiʻi
- Kawaihae Crescent Condominiums, Honolulu, Hawaiʻi
- Bali Kai I, II & III Condominiums, Kailua-Kona, Hawaiʻi

**EXHIBIT "F"**
**Page 24 of 24**