JOYCE Y. NEELEY
M. ANNE ANDERSON
PHILIP L. LAHNE
LANCE S. FUJISAKI

ROBIN MILLER
PAMELA J. SCHELL
SCOTT R. GRIGSBY

## NEELEY & ANDERSON LLP
A LIMITED LIABILITY LAW PARTNERSHIP
733 BISHOP STREET, SUITE 2301
HONOLULU, HAWAII 96813

TELEPHONE
(808) 536-8177
FACSIMILE
(808) 536-4977

September 26, 2005

**VIA HAND DELIVERY**

The Honorable Magistrate Judge Leslie E. Kobayashi
United States District Court for the District of Hawai'i
300 Ala Moana Boulevard, Room C-353
Honolulu, Hawai'i 96813

> Re:  **Na Pali Haweo Community Association v. Anthony Charles**
> **Grande, et al., Civil No. CV04-00413 DAE/LEK**
> **Settlement Conference Statement;**
> **Settlement Conference: September 30, 2005 at 9:30 a.m.**

Dear Judge Kobayashi:

This law firm represents Plaintiff Na Pali Haweo Community Association regarding the above matter. The Association responds to the Grandes' September 21, 2005, letter as follows.

The August 26, 2005, Minutes required the parties to meet and confer on the following issues:

1)    retention of architect and contractor by the Grandes.

2)    revised plans when to be provided and/or parties positions on plans and any objections or additional comments.

3)    proposed construction schedule.

Counsel for the Grandes and the Association met on September 21, 2005, and in preparation for the settlement conference, the Association's counsel sent an e-mail to the Grandes' counsel, summarizing the information needed for the settlement conference. A copy of the e-mail is enclosed.

**EXHIBIT "K"**
**Page 1 of 58**

The Honorable Magistrate Judge Leslie E. Kobayashi
United States District Court for the District of Hawai'i
September 26, 2005
Page 2

## A.    Retention of Architect and Contractor

The Grandes intend to have architect Ed Resh and a draftsman associated with Mr. Resh prepare plans for the dwelling. The Association's position is that the Grandes may retain whomever they please to prepare plans for remedial work provided that the person they retain is capable of performing the work. During the course of this case, the Grandes have stated that Mr. Resh's health condition is not satisfactory and that he is not capable of assisting the Grandes. Given the record of delays in this case which have, in part, been attributed to Mr. Resh's health, the Association has concerns whether Mr. Resh is capable of being further involved.[1] Also, Mr. Resh has appeared reluctant or unwilling to become further involved in this case and he is a named defendant in the pending state court action; in that regard, there have been allegations that Mr. Resh's services on this project did not meet the appropriate standard of care. If the Grandes intend to rely upon Mr. Resh and his draftsman to prepare plans for remedial work and/or as-built plans of the dwelling, either Mr. Resh or Blake Bushnell, counsel for Mr. Resh, should be required to confirm in writing that Mr. Resh is willing and able to perform the specified work. For the Court's information, we have been advised that Mr. Bushnell intends to appear at the upcoming settlement conference.

Also troubling is the fact that the Grandes have not retained a contractor to perform the work.  The Grandes' counsel has advised the Association that Brandt Homes or the unidentified contractor that succeeded Brandt Homes may serve as the contractor.  However, the Grandes counsel has reported that he has apparently not even inquired as to whether Brandt Homes or any other contractor is willing and able

---

[1]    The Grandes have previously cited Mr. Resh's health condition as justification for failing to comply with the Association's demands or court deadlines.  For example, the Grandes contend that in May of 2004, Mr. Resh was not able to assist the Grandes in submitting revised plans to the Association due to heart problems and scheduled heart surgery.  See Declaration of Anthony Charles Grande, at paragraph 29, attached to Motion of Defendants and Counterclaim Plaintiffs Anthony Grande and Narindar Grande (1) For Four-Day Extension of Time to File Answer to Complaint and/or (2) To Set Aside Entry of Default, filed on September 27, 2004.  In June of 2005, Mr. Resh's health condition was again the basis for the Grandes' motion for an extension of time to submit proposed drawings.  See Declaration of Steven B. Jacobson, at paragraphs 9-11, attached to Ex Parte Motion of Defendants and Counterclaim Plaintiffs Anthony Grande and Narindar Grande For One Month Extension of Time To Have Proposed Drawings Prepared, filed on June 20, 2005.

The Honorable Magistrate Judge Leslie E. Kobayashi
United States District Court for the District of Hawai'i
September 26, 2005
Page 3

to perform the work. The Grandes' counsel has implied that the Grandes have not taken any other steps to retain a contractor.

**B.     Revised Plans – When to Be Provided and/or Parties' Positions on Plans and Any Objections or Additional Comments**

The Grandes' position is that their contractor is responsible for all deviations from plans approved by the Architectural Review Committee ("ARC") and that their contractor should therefore assume sole responsibility for submitting plans. The Grandes have refused to submit any additional plans to the Association. It is their position that no plans will be prepared or submitted until after they complete all remaining work.

The Association's position is as follows. First, the Declaration of Covenants, Conditions and Restrictions holds owners responsible for complying with the governing documents. Owners must submit plans in accordance with the governing documents. Owners must ensure that construction of improvements conforms with the governing documents. The Association has no ability to meaningfully evaluate the contemplated work unless and until adequate, consistent, and complete plans are submitted for approval. If the Grandes have a dispute with their contractor or any other party, they may not use that dispute as an excuse for failing to comply with the governing documents. The Grandes must first comply with the governing documents and may, thereafter, pursue claims against culpable parties. The Association has no duty, right or obligation to compel the Grandes' contractor to comply with the governing documents.

Second, as previously discussed at the May 15, 2005, settlement conference, the Grandes have substantially departed from the approved set of plans. For example, the house violates the 20 foot setback restriction, various fixtures and architectural features depicted in the approved plans were modified or not constructed, and various features not depicted on the plans were added. In addition, as discussed during the August 25, 2005, settlement conference, the house was constructed approximately 16 inches higher than shown on the plans. The plans approved by the ARC do not match what exists on the Grandes' lot. The Grandes must submit a new set of plans reflecting as-built conditions. The revised plans must be submitted as soon as possible as they are needed to verify that various features of the house comply with the governing documents.

**EXHIBIT "K"
Page 3 of 58**

The Honorable Magistrate Judge Leslie E. Kobayashi
United States District Court for the District of Hawai'i
September 26, 2005
Page 4

### C.     Proposed Construction Schedule

The Grandes have not proposed a construction schedule. The Grandes appear content with further delays in the resolution of this matter. They show no interest in correcting either the building envelope related problems or any of the other violations to which they have absolutely no defenses. They disclaim responsibility for performing any work on the house and simply pass on this responsibility to their contractor. Their apparent position is that litigation best serves their interest. The Association's position on the construction schedule is that the house must be brought into compliance with the governing documents and approved plans regardless of the Grandes' dispute with their contractor. To the extent the Grandes have claims against their contractor, they may pursue those claims separately, after covenant violations are resolved. At that stage, the expense of bringing the property into compliance will be quantified and settlement potential may be enhanced. Resolution of the covenant violations should not be delayed by the Grandes' claims against their contractor.

### D.     Response to Grandes' September 21, 2005, Letter

The Association is troubled by the tone of the Grandes' letter which deflects all responsibility for the violations of the governing documents or deviations from the approved plans. The Grandes have blamed everyone else for their problems and are objecting to any further work to resolve the covenant violations.

The Grandes' letter is also troubling as it defiantly questions this Court's authority to order them to correct the violations. These statements are surprising as this Court has never suggested that it would or could order the Grandes to correct the covenant violations absent an appropriate motion and opportunity to be heard. It is particularly disturbing that the Grandes make such statements and adopt such a litigious posture after having participated in settlement conferences and agreed to several schedules formulated by the Court over the past several months to resolve this matter.

The Grandes should understand that it is in their interest to resolve this case. The facts in this case are highly favorable to the Association and if, as expected, the Association prevails, it will be entitled to reimbursement of attorneys' fees and costs incurred in enforcing the governing documents. The attorneys' fees and costs incurred thus far are significant. If this case is not resolved, the attorneys' fees and costs will increase substantially and will likely exceed the cost of remedial work, which the Grandes will also have to bear.

**EXHIBIT "K"**
**Page 4 of 58**



The Honorable Magistrate Judge Leslie E. Kobayashi
United States District Court for the District of Hawai'i
September 26, 2005
Page 5

    The Grandes have made a number of statements in their September 21, 2005, letter that are simply untrue. While it would not be productive to respond to each statement, the Association will respond to the following statements to the extent they may have a bearing on settlement negotiations:

1.    *Upon measuring the front of the house when first erected, in August 2003, the Chair of the Association's ARC determined that the house's front height and setback conformed to all Association requirements, as shown in previous filings.*

    The Grandes' statements are not true. Any fault lies with the Grandes and/or their architect. The Chair of the ARC did not measure the house in August 2003 or take steps to certify that the house conformed to Association requirements. The Chair did inspect the house and, relying upon the accuracy of the dimensions shown on Mr. Resh's August 1, 2003, jobsite verification plans, found that construction appeared to be in conformance with the approved plans and the Association's design guidelines. However, it was subsequently discovered that the plans were not accurate as the Grandes' architect erred in marking the building height envelope, creating the erroneous impression that the house was within the envelope.

    Furthermore, it is not true that the house was "first erected, in August 2003." The Grandes are, in essence, suggesting that the house was substantially complete by the time the Association notified them of the building envelope violation. However, photographs confirm that when the Association notified the Grandes of the covenant violations, the roof framing was still under construction. The roof had not been installed. At that stage, it would have been relatively easy and inexpensive for the Grandes to modify the house to conform with the building envelope restriction.

    Finally, it must be emphasized that the Grandes are ultimately responsible for ensuring that their property complies with the governing documents. It is not the Association's responsibility to take measurements of owners' houses and to verify, as construction is proceeding, that construction meets the requirements of the governing documents. The Association is neither mandated to undertake, nor capable of performing, this responsibility.

The Honorable Magistrate Judge Leslie E. Kobayashi
United States District Court for the District of Hawai'i
September 26, 2005
Page 6

2.    *It was not until construction was all-but-finished in October
2003, as shown by previously-filed photographs, that the
Association remeasured the front of the house and decided that
there were discrepancies.*

It is simply untrue that construction was "all-but-finished" by October 2003.
In early October 2003, the roof above the master bedroom had not been installed.
Correction of the roof would have been relatively inexpensive and simple. It speaks
volumes that the Grandes pursued construction through completion despite
knowledge of the covenant violations. Further, the Association did not "remeasure"
the house in October 2003. In October 2003, the *Grandes' contractor* measured the
house and the building envelope violation was discovered. The Grandes have failed
to accurately report the facts.

3.    *There are, as a result, significant questions as to whether the
Association has waived, and is estopped, from requiring that the
elevation, height and/or setback be changed.*

The Grandes are suggesting the Association waived or is estopped from
enforcing the building envelope and/or building setback restriction. There is no merit
to this argument. The doctrine of waiver requires that the Grandes prove the
Association relinquished a known right. There is no evidence that the Association did
so.   Rather, the Association consistently communicated its intent to enforce the
building envelope restriction. The Association never indicated that it would permit
the Grandes to breach the building envelope restriction. Furthermore, the Grandes
were aware of the building envelope restriction based upon correspondence from the
Association, the Association relied upon plans prepared by the Grandes' architect
which incorrectly depicted the building envelope and the Grandes are, in any event,
ultimately responsible for measuring the house and complying with the governing
documents.

The doctrine of estoppel likewise does not apply in this instance. This Court
has noted that under Hawai'i law, a party invoking equitable estoppel must show that
he or she has detrimentally relied on the representation or conduct of the person
sought to be estopped, and that such reliance was reasonable. Water Com'n of County
of Hawai'i v. National American Ins. Co., 930 F. Supp. 1411. The Association did
not represent or otherwise communicate to the Grandes that it would not enforce the
building envelope restriction. The Association, in fact, did the opposite. Thus, the
doctrine of estoppel does not apply.

**EXHIBIT "K"**
**Page 6 of 58**

The Honorable Magistrate Judge Leslie E. Kobayashi
United States District Court for the District of Hawai'i
September 26, 2005
Page 7

> 4.    *In addition, there is a significant question as to whether the height in fact complies with Association requirements – it depends upon how the height is measured.*

The Association has provided the Grandes with documents explicitly showing that the house violates the building envelope of the Association's Design Guidelines. If the Grandes disagree with the documents, the onus is on them to rebut the evidence and show how the house complies with the building envelope. They have completely failed to do so. Moreover, if the Grandes believe there are bonafide questions as to whether the house complies with the building envelope, they should have disclosed information in advance to allow the Association to respond to their questions.

Thank you for your attention to this matter.

Sincerely,

NEELEY & ANDERSON LLP
A Limited Liability Law Partnership

Joyce Y. Neeley
Lance S. Fujisaki

JYN/LSF:etb
Enclosure:   September 22, 2005, E-mail from Lance S. Fujisaki to Steven B. Jacobson, Esq.

cc:    Steven B, Jacobson, Esq. (via fax & mail)

       John D. Zalewski, Esq. (via fax & mail)
       Case Bigelow & Lombardi

       Tony Wong, Esq. (via fax & mail)
       Matsui Chung Sumida & Tsuchiyama

       Cid H. Inouye, Esq. (via fax & mail)
       Reinwald O'Connor & Playdon

**EXHIBIT "K"**
**Page 7 of 58**

The Honorable Magistrate Judge Leslie E. Kobayashi
United States District Court for the District of Hawai'i
September 26, 2005
Page 8

     Stanford H. Nakamoto, Esq. (via fax & mail)
     Kiuchi & Nakamoto

     Blake W. Bushnell, Esq. (via fax & mail)
     Bushnell & Miller, LLLC

     Na Pali Haweo Community Association

X:\NaPaliHaweo\Grande\Usdc PLEADINGS\Judge Kobayashi2-fnl.wpd

**EXHIBIT "K"**
**Page 8 of 58**

## Lance S. Fujisaki

| | |
|---|---|
| **From:** | "Lance S. Fujisaki" <lfujisaki@neeley-anderson.com> |
| **To:** | "Steve Jacobson" <sjacobson.law@verizon.net> |
| **Cc:** | "John Zalewski" <jdz@casebigelow.com> |
| **Sent:** | Thursday, September 22, 2005 12:37 PM |
| **Subject:** | Na Pali Haweo/Grande |

9/22/05

Dear Steve:

This confirms that during our meeting on September 21, 2005, the Association requested that the Grandes take the following steps in preparation for the September 30, 2005, settlement conference:

1. Obtain and circulate to all counsel an estimate of when the architect/draftsman retained by the Grandes will be able to complete plans showing the as-built conditions of the dwelling as well as required remedial work.

2. Obtain and circulate to all counsel an estimate of the cost of preparing plans showing the as-built condition of the dwelling as well as required remedial work.

3(a) Advise all counsel of the identity of the contractor previously retained by the Grandes.

3(b) Confirm and advise all counsel that the contractor previously retained by the Grandes is willing and able to complete the dwelling and perform remedial work to resolve various violations per the March 22, 2005, report from architect James Nishimoto and our prior discussions. (If the contractor is not willing or able to perform the subject remedial work, please identify an alternate contractor to perform the work.)

4(a) Obtain and circulate to all counsel a bid or estimate for the remedial work required to address the building envelope violation, as approved in concept by the Board per my August 11, 2005, letter to you.

4(b) Advise all counsel as to the date by which the contractor can complete the work set forth in 4(a).

Thank you for your attention to this matter.

Lance S. Fujisaki

Neeley & Anderson LLP
A Limited Liability Law Partnership
733 Bishop Street, Suite 2301
Honolulu, Hawaii 96813
Telephone:  (808) 536-8177
Facsimile:  (808) 536-4977

==============================================================

9/26/2005

**EXHIBIT "K"**
**Page 9 of 58**

CONFIDENTIALITY NOTICE: This e-mail transmission, and any documents, files or previous e-mail messages attached to it may contain confidential information that is legally privileged. If you are not the intended recipient, or a person responsible for delivering it to the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of any of the information contained in or attached to this transmission is STRICTLY PROHIBITED. If you have received this transmission in error, please immediately notify us by reply e-mail and destroy the original transmission and its attachments without reading or saving it in any manner. Thank you.

9/26/2005

**EXHIBIT "K"**
**Page 10 of 58**

JOYCE Y. NEELEY
M. ANNE ANDERSON
PHILIP L. LAHNE
LANCE S. FUJISAKI
_____
PAMELA J. SCHELL
SCOTT R. GRIGSBY

NEELEY & ANDERSON LLP
A LIMITED LIABILITY LAW PARTNERSHIP
733 BISHOP STREET, SUITE 2301
HONOLULU, HAWAII 96813

TELEPHONE
(808) 536-8177
FACSIMILE
(808) 536-4977

May 9, 2006

**VIA FAX 541-1386**

The Honorable Magistrate Judge Leslie E. Kobayashi
United States District Court for the District of Hawai'i
300 Ala Moana Boulevard, Room C-353
Honolulu, Hawai'i 96813

Re:  **Na Pali Haweo Community Association v. Anthony Charles
Grande, et al., Civil No. CV04-00413 DAE/LEK**

Dear Judge Kobayashi:

This law firm represents Na Pali Haweo Community Association in the above-referenced action. We hereby request a status conference to discuss FRCP Rule 26 disclosure requirements, and related matters occasioned by the Association's pending motion for summary judgment. We have conferred with Mr. Jacobson regarding the FRCP Rule 26 disclosures and would like assistance from the Court regarding the disclosure requirements. Mr. John D. Zalewski, counsel for the Association and Mr. Ron Awa on the Counterclaim, joins in this request.

Thank you for your attention to this matter.

Sincerely,

NEELEY & ANDERSON LLP
A Limited Liability Law Partnership

Lance S. Fujisaki

LSF:etb
cc:  Steven B. Jacobson, Esq. (via e-mail & mail)

John D. Zalewski, Esq. (via e-mail & mail)
Case Lombardi & Pettit

Na Pali Haweo Community Association

X:\NaPaliHaweo\Grande\Usdc PLEADINGS\Judge Kobayashi3-fnl.wpd

**EXHIBIT "K"
Page 11 of 58**

JOYCE Y. NEELEY
M. ANNE ANDERSON
PHILIP L. LAHNE
LANCE S. FUJISAKI

PAMELA J. SCHELL
SCOTT R. GRIGSBY

# NEELEY & ANDERSON LLP

A LIMITED LIABILITY LAW PARTNERSHIP
733 BISHOP STREET, SUITE 2301
HONOLULU, HAWAII 96813

TELEPHONE
(808) 536-8177
FACSIMILE
(808) 536-4977

May 10, 2006

**VIA FAX 541-1386**

The Honorable Magistrate Judge Leslie E. Kobayashi
United States District Court for the District of Hawaii'i
300 Ala Moana Boulevard, Room C-353
Honolulu, Hawai'i 96813

    Re:   <u>**Na Pali Haweo Community Association v. Anthony Charles**</u>
          <u>**Grande, et al., Civil No. CV04-00413 DAE/LEK**</u>

Dear Judge Kobayashi:

    I am in receipt of Mr. Jacobson's letter to you dated May 9, 2006, and respond as follows. The purpose of the status conference is to discuss disclosures under Rule 26(a)(1) and (2).

    With regard to the Rule 26(a)(1) disclosures, both parties were required to file disclosures under Rule 26(a)(1) by December 10, 2004. However, all deadlines were stayed by this Court during the November 16, 2004, settlement conference. A new deadline for Rule 26(a)(1) disclosures was never set.

    During my telephone conversation with Mr. Jacobson on March 15, 2006, 12:39 p.m., I asked Mr. Jacobson whether he would stipulate to a mutual waiver of disclosures under Rule 26(a)(1) of the Federal Rules of Civil Procedure and he consented to the waiver. Hence, on March 17, 2006, I sent Mr. Jacobson a Stipulation Regarding Initial Discovery Disclosures. As he did not return the Stipulation to me, in response to his April 24, 2006, e-mail, I stated in my April 27, 2006, e-mail that the Association would require the Grandes to stipulate to waive Rule 26(a)(1) disclosures (which Mr. Jacobson had already agreed to do via telephone). In response to my April 27, 2006, e-mail, Mr. Jacobson did not voice any objection to the Stipulation. In fact, his April 28, 2006, e-mail stated in reference to my April 27, 2006, e-mail: "That may work with some modifications." It should be emphasized that

The Honorable Magistrate Judge Leslie E. Kobayashi
United States District Court for the District of Hawai'i
May 10, 2006
Page 2

Mr. Jacobson did not file a Rule 26(a)(1) disclosure, nor did he previously request any other party to do so.

Based upon the above, we submit that Mr. Jacobson's May 9, 2006, letter is extremely misleading with regard to the following statement:

> I understand that Mr. Fujisaki does not want the Association to make its Initial Disclosures until after the Association's motion for summary judgment is heard on June 26. We do not believe that request is appropriate, or proper. The federal rules provide for discovery prior to summary judgment hearings, for obvious reasons. See, for example, FRCP Rule 56(f). We certainly cannot agree to waive it.

There was never any intent by the Association to prevent the Grandes from obtaining information. We proposed to waive the Rule 26(a)(1) and delay the Rule 26(a)(2) disclosures to minimize the attorneys' fees and costs incurred in this case. A significant time has passed since the original deadline, the parties have exchanged information through settlement negotiations, and the parties have had ample time to serve discovery requests. As the Association intends to seek reimbursement of its attorneys' fees and costs from the Grandes at the conclusion of this case, it is in the interest of all parties, inclusive of the Association and the Grandes, to minimize the fees and costs incurred. Moreover, Mr. Jacobson did agree to the mutual waiver of Rule 26(a)(1) disclosure requirements during the March 15, 2006, 12:39 p.m. telephone conference, and his agreement is confirmed by his receipt of the proposed Stipulation which he did not object to, and his April 27, 2006, e-mail which again did not voice any objection to the Stipulation. Furthermore, as Mr. Jacobson has not disclosed information per Rule 26(a)(1) on behalf of the Grandes, and did not attempt to reinstate the disclosure deadline under Rule 26(a)(1), he cannot contend that his clients have been in any way prejudiced by the Association's nondisclosure under Rule 26(a)(1). The Association will strongly oppose any argument by Mr. Jacobson that the Grandes were prejudiced by the failure to disclose information under Rule 26(a)(1) in light of the above.

In addition to the above, there remains the issue of whether the disclosure requirements under Rule 26(a)(2) should be continued as the Association's Motion

The Honorable Magistrate Judge Leslie E. Kobayashi
United States District Court for the District of Hawai'i
May 10, 2006
Page 3

for Summary Judgment is scheduled for June 26, 2006. The Association's Rule 26(a)(2) disclosures are due on June 9, 2006. Be believe an extension of the June 9, 2006, should be granted in the interests of judicial economy as the ruling on the Motion may dispose of this case in whole or in part.

Finally, after the Association filed its Motion for Summary Judgment on April 12, 2006, the Grandes submitted plans to correct violations on their property. The Association is in the process of reviewing the plans and will provide the Grandes with a response shortly. We submit that there is good cause to grant our request for a status conference, and respectfully request that Your Honor do so.

Thank you for your attention to this matter.

Sincerely,

NEELEY & ANDERSON LLP
A Limited Liability Law Partnership

Lance S. Fujisaki

LSF:etb
cc:    Steven B, Jacobson, Esq. (via e-mail & mail)

John D. Zalewski, Esq. (via e-mail & mail)
Case Lombardi & Pettit

Na Pali Haweo Community Association

X:\NaPaliHaweo\Grande\Usdc PLEADINGS\Judge Kobayashi4-fnl.wpd

**EXHIBIT "K"**
**Page 14 of 58**

JOYCE Y. NEELEY
M. ANNE ANDERSON
PHILIP L. LAHNE
LANCE S. FUJISAKI

PAMELA J. SCHELL
SCOTT R. GRIGSBY

NEELEY & ANDERSON LLP
A LIMITED LIABILITY LAW PARTNERSHIP
733 BISHOP STREET, SUITE 2301
HONOLULU, HAWAII 96813

TELEPHONE
(808) 536-8177
FACSIMILE
(808) 536-4977

June 9, 2006

**VIA FACSIMILE AND MAIL**

The Honorable Magistrate Judge Leslie E. Kobayashi
United States District Court for the District of Hawai'i
300 Ala Moana Boulevard, Room C-353
Honolulu, Hawai'i 96813

Re:  <u>**Na Pali Haweo Community Association v. Anthony Charles**</u>
<u>**Grande, et al.,**</u> Civil No. CV04-00413 DAE/LEK

Deadline for Submission of Letter Brief:  June 9, 2006, 4:00 p.m.
Discovery Cut-Off:  October 13, 2006
Trial Date:  December 12, 2006

Dear Judge Kobayashi:

This law firm represents Plaintiff Na Pali Haweo Community Association
regarding the above matter.  Pursuant to L.R. 37.1(c) the Association hereby submits
its Discovery Letter Brief regarding the First Supplemental Responses of Defendants
Anthony Charles Grande and Narindar Kaur Grande to Plaintiff's First Request For
Answers to Interrogatories, which were dated May 10, 2006.

During the Rule 26(f) discovery conference on September 13, 2004, the parties
agreed that each set of interrogatories may not exceed sixty (60) interrogatories.  On
March 30, 2006, the Association served thirteen (13) interrogatories upon each of the
Grandes.  On May 1, 2006, the Grandes served the Association with their first
responses to the interrogatories, which were comprised entirely of objections.

On May 10, 2006, the Grandes served the Association with their first
supplemental responses to interrogatories. Without waiving any objections, the
Grandes answered Interrogatories No. 1 through No. 5.  However, the Grandes
deemed Interrogatory No. 6 to contain more than 56 subparts, and they refused to
answer any further interrogatories. See Exhibit "A". Further, the Grandes' answer to

**EXHIBIT "K"**
**Page 15 of 58**

subpart "6a" was non-responsive in that they failed to identify a single person in their 17 "subpart" response.

The Association respectfully requests a ruling as to the Grandes' characterization of Interrogatory No. 6 as having 56 subparts. The Advisory Committee addressed this issue and provided some guidance as to when subparts should and should not count as separate interrogatories:

> Each party is allowed to serve 25 interrogatories upon any other party, but must secure leave of court (or a stipulation from the opposing party) to serve a larger number. Parties cannot evade this presumptive limitation through the device of joining as "subparts" questions that seek information about discrete separate subjects. However, a question asking about communications of a particular type should be treated as a single interrogatory even though it requests that the time, place, persons present, and contents be stated separately for each such communication.

Advisory Committee Note, 146 F.R.D. 401, 675-676 (Fed. 1993); *see also*, Swackhammer v. Sprint Corp. PCS, 225 F.R.D. 658, 664-665 (D. Kan. 2004) (An interrogatory containing subparts directed at eliciting details concerning a "common theme" should generally be considered a single question.).

The Grandes' responses to Interrogatory Nos. 7, 8, 9, 11, and 13 indicate that their answers would include some or all of the information requested in the interrogatories except insofar as "Plaintiff has exceeded the applicable limits on interrogatory numbers (including subparts)." The Association respectfully requests that the Court direct the Grandes to answer Interrogatory Nos. 6, 7, 8, 9, 11 and 13 without regard to their objection as to Interrogatory No. 6 exceeding the limitation on interrogatory numbers, including subparts.

Thank you for your assistance with this matter.

Sincerely,

NEELEY & ANDERSON LLP
A Limited Liability Law Partnership

Joyce Y. Neeley
Lance S. Fujisaki
Scott R. Grigsby

6. For each and every allegation of the Association's Complaint which you deny, please state all facts upon which you rely in denying each such allegation (39+ subparts).

Objections: This interrogatory is overly broad, burdensome and oppressive in that it seeks information not relevant to the claim or defense of any party. Without waiving those objections, Defendants' answers will include the requested information for all of the allegations Defendants themselves deny, except insofar as Plaintiff has exceeded the applicable limits on interrogatory numbers (including subparts).

Answer:

Subpart 1 (subpart numbers refer to the paragraph numbers of Plaintiff's Complaint). The Association is an artificial entity which operates through its officers and other agents. It employs a management company to perform some of its functions.

Subpart 2. The Association is not acting to enforce requirements of its Governing Documents. Please see the responses to the subsequent subparts.

Subpart 3. Defendants did not purchase the property until March 23, 2000.

Subpart 4. I do not know of any such persons.

Subpart 5. The Property is not subject to matters which have been abandoned, waived, varied or otherwise exempted, which conflict with other overriding provisions, or which are contrary to Hawaii law, and is subject to custom and practice.

Subpart 6. Defendants are not subject to matters which have been abandoned, waived, varied or otherwise exempted, which conflict with other overriding provisions, or which are contrary to Hawaii law, and the Association is subject to custom and practice.

Subpart 7. Article IV, Section 4.1 says only what it says.

Subpart 8. Article IV, Sections 4.3 and 4.3.4 say only what they say.

Subpart 9. Article VI, Paragraph 4.1 says only what it says.

Subpart 10. The Dwelling does not violate the Governing Documents.

Subpart 11. Article III, Section 3.2.1(d) says only what it says. The quoted language itself lists aspects of a structure which "may protrude outside the building envelope."

Subpart 12. The second floor balcony columns and front roof section above the garage of the Dwelling do not protrude beyond the Building Envelope established for the Dwelling and do not violate Section 3.2.1(c) of the Design Guidelines, nor do any other parts of the Dwelling.

Subpart 13. Article III, Section 3.2.1(d) says only what it says.

Subpart 14. The Dwelling does not violate Article III, Section 3.1. No significant part is within 20 feet of the front property line and all parts of the Dwelling are set back more than ten feet from the front property line.

Subpart 15. Article III, Section 3.2.3(f) says only what it says, and itself makes clear that it does not apply universally.

Subpart 16. Under the Governing Documents and custom and practice, the color and location of roof vents are subject to the reasonable approval of the ARC, either in advance or post hoc.

Subpart 17. The two roof vents on the Dwelling are colored to match the roof, are not visible from the street, and do not violate Section 3.2.3(f) of the Design Guidelines. One vent on the plans approved in advance by the ARC was visible from the street, and was it installed in the approved location, but has since been moved so as not to be visible from the street. As-built plans showing the location of the vents have been submitted to the ARC for its approval. Defendants did not realize that the Association was concerned with the two roof vents until the Association filed its Complaint initiating this lawsuit. The Association never cited them for any such violation.

Subpart 18. Article III, Section 3.2.3(i) of the Design Guidelines says only what it says.

Subpart 19. Article III, Section 3.2.3(i) of the Design Guidelines says only what it says. It only says that "skylights facing the street shall be ... subject to the approval of the Architectural Review Committee," does not specify when such approval is to be obtained, and is subject to custom and practice.

Subpart 20. The letter of October 24, 2000, only says what it says.

Subpart 21. The letter of October 24, 2000, only says what it says. The skylights are designed as an integral part of the roof, the glazing is not white, the framing is colored to match the roof, and the skylights are not of a bubble design. [See the Association's Exhibit AA, filed April 12, 2006, top photo] Also, the Association has waived and abandoned this guideline, as there are many non-conforming skylights throughout Na Pali Haweo.

Subpart 22. Article III, Section 3.2.7 only says what it says.

EXHIBIT A

Subpart 23. The Governing Documents say what they say, and are subject to custom and practice, waiver, abandonment, variance and other exemption. As for front walls, their dimensions as constructed, under the Governing Documents and custom and practice, are subject to the reasonable approval of the ARC, either in advance or *post hoc*, subject to waiver, abandonment, variance and other exception.

Subpart 24. Defendants did not realize that the front wall had been constructed beyond the dimensions set forth in the Design Guidelines until the Association filed its Complaint initiating this lawsuit. The Association never cited them for any such violation. Nor did it provide them with any other notice or opportunity to comply. Upon receiving the Complaint, Defendants promptly notified the Association that they would modify the front wall to the desired height. Defendants have submitted plans such a modification, but the ARC has not yet acted upon them.

Subpart 25. The Dwelling's interior areas for service and storage facilities meet all requirements of the Governing Documents, including all requirements of the Design Guidelines (whether or not enforceable) and do not deviate from the plans approved by the ARC in any material respect. Moreover, to the extent the Design Guidelines vary from the Declaration, they are unenforceable. Under Section 4.1 of the Declaration, "Nothing contained herein shall be construed to limit the right of the Owner to remodel . . . the interior of structures comprising a Lot in any manner desired." The roof ridges, hips and/or valleys likewise meet all requirements of the Governing Documents, and do not deviate from the plans approved by the ARC in any material respect, as do all other previously-unmentioned aspects of the Dwelling. Minor changes were made in aspects of the Dwelling during construction. As-built plans showing those changes have been submitted to the ARC, per custom and practice. Defendants did not receive notice of any other alleged violations or deviations until the Association filed its Complaint initiating this lawsuit. The Association never cited them for any such violations or deviations. Nor did it provide them with any other notice or opportunity to comply.

Subpart 26. The communications of the Association and its counsel only say what they say, and their pre-complaint communications did not make many of the allegations they have made in this action. Despite disagreements over almost all of the Association's allegations, Defendants did respond to them, did stop work while waiting for the Association to make what it wanted clear. Subsequent work was only for protective purposes, to areas not in dispute, or to do what the Association asked irrespective of whether it was really required so as to eliminate disputes.

Subpart 27. The Declaration says only what it says, and is subject to Hawaii and federal constitutional, statutory and common law, and rules.

Subpart 28. The Declaration says only what it says, and is subject to Hawaii and federal constitutional, statutory and common law, and rules. The Association cannot meet any of the requirements for an injunction. Defendants are in full compliance with all enforceable parts of the Governing Documents.

Subpart 29. Please see the responses to the previous subparts.

Subpart 30. Please see the responses to the previous subparts.

Subpart 31. There was no need for the Association to bring this lawsuit. The Property was in compliance with all enforceable aspects of the Governing Documents which the Association had raised prior to filing suit, and had even indicated their willingness to make modifications which were not required, which likewise met all enforceable aspects of the Governing Documents.

Subpart 32. The Declaration says only what it says, and is subject to Hawaii and federal constitutional, statutory and common law, and rules. The Association is not entitled to any fees or costs or liens thereunder. Please also see the responses to the previous subparts.

Subpart 33. HRS § 421J-10 says only what it says. The Association is not entitled to any fees or costs thereunder, because it is not entitled to prevail in this action. It is the Defendants who are entitled to their fees and costs thereunder. Please also see the responses to the previous subparts.

Subpart 34. The Declaration says only what it says, and is subject to Hawaii and federal constitutional, statutory and common law, and rules. The Association is not entitled to any assessment. The Defendants have not acted or failed to act or refused to act or otherwise not complied with any enforceable aspect of the Governing Documents. Please also see the responses to the previous subparts.

Subpart 35. The Declaration says only what it says, and is subject to Hawaii and federal constitutional, statutory and common law, and rules. The Association is not entitled to any assessment, fees or costs. The Defendants have not acted or failed to act or refused to act or otherwise not complied with any enforceable aspect of the Governing Documents. Please also see the responses to the previous subparts.

Subpart 36. The applicable federal and Hawaii constitutional provisions, statutes, rules and common law say only what they say, and the Association is not entitled to expert witness fees thereunder. Please also see the responses to the previous subparts.

Subpart 37 [prayer B]. The Association is not entitled to injunctive relief. Please see the responses to the previous subparts.

Subpart 38 [prayer C]. The Association is not entitled to damages or charges. Please see the responses to the previous subparts.

Subpart 39 [prayer D]. The Association is not entitled to costs, fees or expenses. Please see the responses to the previous subparts.

**EXHIBIT "K"**
**Page 18 of 58**

6a. Identify all persons having knowledge of the facts asserted in your response to Interrogatory 6 above and detailing as to each person, the specific basis of their knowledge (14+ subparts).

Objections: This interrogatory is premature, overly broad, and/or violates the attorney work-product and attorney-client privileges, to the extent that it requests the identity of and information relating to Defendants' expert witness(es) and Defendants' attorneys. Without waiving those objections, Defendants' answers will include the information requested in the interrogatory as to other persons, except insofar as Plaintiff has exceeded the applicable limits on interrogatory numbers (including subparts), and Defendants will provide the expert witness disclosures required by the Court's prior Orders by the deadline set forth therein (or as it may be extended). See FRCP Rule 26(a)(2)(C).

Subpart 1. a) Everyone with knowledge of what a corporation is. b) All members of the Association and the personnel of Hawaiiana Management.
Subpart 2. Please see the responses to the subsequent subparts.
Subpart 3. Everyone who has seen Defendants' deed.
Subpart 4. Me.
Subpart 5. Everyone with a knowledge of the applicable law.
Subpart 6. Everyone with a knowledge of the applicable law.
Subpart 7. Everyone who has read it.
Subpart 8. Everyone who has read them.
Subpart 9. Everyone who has read it.
Subpart 10. Please see the responses to the other subparts.
Subpart 11. Everyone who has read it.
Subpart 12. Everyone who has seen the plans approved by the ARC and eyeballed or measured the subject parts of the Dwelling.
Subpart 13. Everyone who has read it.
Subpart 14. Everyone who has read it (what the Section says). Everyone who has seen it (where the Dwelling is situated).
Subpart 15. Everyone who has read it.
Subpart 16. Everyone who has read the Governing Documents and is familiar with the applicable law, the operations of the Association, and construction practices in planned community associations.

Subparts 17 *et seq.* Answer/Objection: Plaintiff has exceeded the applicable limits on interrogatory numbers (including subparts).

**EXHIBIT "K"**
**Page 19 of 58**

CERTIFICATE OF COMPLIANCE

I am counsel for Plaintiff Na Pali Haweo Community Association, the moving party in the attached Discovery Letter Brief, and certify that counsel for the parties conferred in person on May 31, 2006, concerning the dispute as to the number of interrogatories and subparts propounded to the Defendants Anthony Charles Grande and Narindar Kaur Grande by the Association, in a good faith effort to limit the disputed issues and, if possible, eliminate the need for Discovery Letter Briefs as required by L.R. 37.1(a).

SCOTT R. GRIGSBY

**EXHIBIT "K"**
**Page 20 of 58**

JOYCE Y. NEELEY
M. ANNE ANDERSON
PHILIP L. LAHNE
LANCE S. FUJISAKI

PAMELA J. SCHELL
SCOTT R. GRIGSBY

NEELEY & ANDERSON LLP
A LIMITED LIABILITY LAW PARTNERSHIP
733 BISHOP STREET, SUITE 2301
HONOLULU, HAWAII 96813

April 20, 2007

TELEPHONE
(808) 536-8177
FACSIMILE
(808) 536-4977

**VIA HAND DELIVERY**

The Honorable Magistrate Judge Barry M. Kurren
United States District Court for the District of Hawai`i
300 Ala Moana Blvd., Room C-229
Honolulu, Hawai`i 96813

Re:    Na Pali Haweo Community Association v. Anthony Charles
       Grande, et al., Civil No. CV04-00413 DAE/LEK

Dear Judge Kurren:

In accordance with your directive, Plaintiff/Counterclaim Defendant Na Pali Community Association (the "Association") and Counterclaim Defendant Ron Awa hereby jointly submit this letter which summarizes recent events and the current status of settlement matters and outstanding issues in the above-referenced case.

By way of background, Na Pali Haweo is an upscale planned community located on Kamehame Ridge in east Oahu. The Grandes own a custom home and lot in Na Pali Haweo located at 1251 Kamehame Drive. The Grandes also own a home in Melbourne Beach, Florida, where they currently reside. According to public records, the respective tax assessed values of the Honolulu property and the Florida property are $899,900 and $625,240. Mr. Grande is a commercial airline pilot with Northwest Airlines. Counterclaim Defendant Ron Awa is an architect and chair of the Association's Architectural Review Committee.

**December 13, 2006 Settlement Conference**

As previously discussed, at the December 13, 2006 settlement conference before the then-assigned Magistrate Judge, the Honorable Leslie E. Kobayashi, which Defendant Anthony Charles Grande attended in person, the parties agreed as follows:

1.    By no later than January 3, 2007, Defendants agreed to submit plans containing their proposed remedial work to the Association's Architectural Review Committee ("ARC") for review and approval. Defendants agreed to submit plans that show their dwelling's as-built condition and indicated that their architect, Ed Resh, would prepare the plans.

2.    The parties agreed to enter into a written settlement agreement after the plans are approved. The written agreement shall, among other things, identify the deadline

**EXHIBIT "K"**
**Page 21 of 58**

The Honorable Magistrate Judge Barry M. Kurren
April 19, 2007
Page 2

        by which the Defendants shall complete the work, in accordance with the ARC-approved plans. The parties agreed that the Court should retain jurisdiction over this case to resolve any dispute that may arise during construction. The parties further agreed that the settlement agreement will, among other things, require dismissal with prejudice of all claims asserted in the Association's Complaint and Defendants' Counterclaim.

3.    The parties agreed that Defendants shall prepare a stipulation and order concerning resolution of the Association's claim for attorneys' fees and costs, which shall memorialize the following terms:

    a.    Defendants shall remit $200,000 with the Clerk of the U.S. District Court for the District of Hawaii, for deposit into an interest-bearing account, with the interest to be paid to Defendants.

    b.    The Association shall file a motion or motions for attorneys' fees and costs and expert fees and costs within thirty (30) days following execution of the settlement agreement, and the Magistrate shall rule on the motion(s).

    c.    The parties shall have the right to appeal the Magistrate's decision to United States District Judge Ezra. However, the parties agreed that Judge Ezra's ruling shall not be appealed.

    d.    Defendants shall stipulate that the Association is the prevailing party in this action for purposes of adjudication of the Association's fees and cost award. (See Judge Ezra's summary judgment ruling entered herein on July 18, 2006.)

    e.    To enable Defendants to obtain financing for the remedial work, and to obtain the funds to deposit with the Clerk of the U.S. District Court, the Association agreed to release its duly-recorded lien on Defendants' property, upon Defendants' deposit of $200,000 with the Clerk of the U.S. District Court.

    f.    Upon a final award of fees and costs, the Clerk shall issue payment to the Association in the amount of fees and costs awarded. If the amount awarded to the Association (on the Complaint and Counterclaim) is less than $200,000, the balance will be returned to the Grandes. The Association will not waive claims for any amounts over $200,000 if awarded by the Court.

4.    Upon resolution of this case, the construction deposit of $3,000 will be returned to Defendants.

**EXHIBIT "K"**
**Page 22 of 58**

The Honorable Magistrate Judge Barry M. Kurren
April 19, 2007
Page 3

5. Defendants shall dismiss with prejudice their claims against the Association in a pending State Court mechanics' lien foreclosure action pending in the First Circuit Court involving the same Na Pali Haweo residence.

## Current Status re: Settlement

The following is the status of the various steps towards settlement:

### Step 1 - Approval of Plans

Although January 3, 2007, was the deadline for submitting plans for remedial work, Defendants submitted plans to the ARC on January 26, 2007. The plans were disapproved via letter dated March 5, 2007. *See* attached Exhibit A.

The March 5, 2007, letter from the Association's counsel disapproving the plans requested a meeting between the Defendants' architect, the chair of the ARC and counsel for the parties:

> We believe that the outstanding issues may be most efficiently addressed and resolved via a meeting including Ed Resh and the chair of the ARC, other Association representatives and counsel. Please contact me with dates when you and Mr. Resh are available for a meeting in our office.

The Association requested a meeting given the extensive history of problems with plans submitted by Defendants' architect. Since 2003, the ARC has expressed concerns about the exceedingly poor quality of plans submitted by Defendants. This was briefly outlined in the Association's Memorandum in Support of Motion for Summary Judgment. For example, plans submitted by Defendants have not complied with standard architectural conventions and practices, such as documenting revisions with clouds, revision numbers and corresponding dates; revisions were made on some but not all of views of the subject features; plans which should have shown as-built conditions did not accurately reflect conditions that actually exist. The ARC found that many of the same deficiencies noted on prior versions of the plans were repeated on the plans submitted on January 26, 2007. Because the written settlement agreement and Defendants' agreed-upon remedial work center in large part on the plans, their significant flaws and ambiguities must be addressed. Revised and corrected plans are essential.

The Association made repeated attempts to schedule a meeting with Defendants' architect and draftsman. *See* e-mail dated March 8, 2007, March 15, 2007, and April 2, 2007, attached hereto as Exhibits B through D. Furthermore, after the status conference before this Court on March 21, 2007, both of us discussed with Mr. Jacobson the need for a face to face meeting involving the Grandes' architect Ed Resh, his draftsperson and the ARC chair. We explained to

The Honorable Magistrate Judge Barry M. Kurren
April 19, 2007
Page 4

Mr. Jacobson that given the history of this case, this case could not be resolved unless the design professionals met face to face to discuss the outstanding deficiencies. Mr. Jacobson informed us that Mr. Resh's health was uncertain and he was unable to travel to downtown for a meeting. We offered to travel to Kailua to meet with him, or any other mutually agreeable location. We emphasized that the meeting would not be adversarial in nature and that Mr. Resh could terminate the meeting at any time if he felt it would be best to do so. Mr. Jacobson also stated that a meeting with Mr. Resh's draftsman would be unproductive as he does not speak English. We suggested that Mr. Resh retain a draftsman who does speak English. We asked that Mr. Jacobson discuss this with Mr. Resh. *See* April 17, 2007, letter, attached as Exhibit E, summarizing this discussion.

The Association maintains that a face to face meeting is vital to resolve this case and requests that this Court order the Grandes' architect and draftsman to appear in Court for a meeting with the chair of the ARC to discuss deficiencies in the plans submitted on January 26, 2007, and how the plans should be corrected. The Grandes have provided no reasonable excuses for their design professionals' failure to meet with the ARC chair. If their architect is too ill to meet, or their draftsman is unable to communicate in English, they should be required to retain a new design team. The current situation is, and has for many years been, a major impediment towards settlement. Finally, the statement in Mr. Jacobson's April 17, 2007, letter, attached as Exhibit "E," that the Association has imposed "impossible conditions" for a meeting is patently ridiculous. The Association has made every effort to accommodate the Grandes' architect, but these accommodations have been met without success.

Step 2 - Drafting Settlement Agreement

The Association agreed to prepare an initial draft of the standard terms of the Settlement Agreement and Mr. Jacobson agreed to draft the "provisions unique to this case." *See* December 14, 2006, e-mail, attached as Exhibit F. A draft of the settlement agreement was e-mailed to Mr. Jacobson on April 2, 2007. *See* April 2, 2007, e-mail, attached as Exhibit D. Thus far, the Association has received neither any comments nor responses from Mr. Jacobson on the settlement agreement, nor the specific settlement terms which Mr. Jacobson agreed to draft.

Step 3 – Deposit With Clerk of the Court

In their April 17, 2007, letter, the Grandes have notified the Association for the first time they are unable to obtain financing to deposit funds with the Clerk in the instant action. *See* attached as Exhibit E. The April 17, 2007, letter mentions that they have determined that they cannot "borrow the approximately $300,000 (or more) contemplated as a pre-condition under the current form of the proposed settlement, and maintain that amount of additional debt." The $300,000 figure is apparently based upon the $200,000 the Grandes agreed to deposit with the Clerk of this Court, the estimated expense of remedial work and the amounts to be deposited in

**EXHIBIT "K"**
**Page 24 of 58**

The Honorable Magistrate Judge Barry M. Kurren
April 19, 2007
Page 5

the mechanics' lien foreclosure action pending in the First Circuit Court to release the mechanics' lien.

At the December 13, 2006, settlement conference, Mr. Grande represented that he had researched the issue and was able to obtain financing for (1) the $200,000 deposit in the instant case, (2) the amounts to be deposited with the First Circuit Court to release the mechanics' lien, and (3) the cost of remedial work. Mr. Grande was advised to take steps immediately to secure financing so that the funds could be obtained without delay. He stated he had done so.

It should be noted that the December 13, 2006, settlement conference followed several settlement meetings in October and November 2006 between counsel for the Grandes and the Association. Thus, the Grandes had ample time to explore financing. Moreover, after the December 13, 2006, settlement conference, the Grandes filed a motion to release and discharge the mechanics' and materialmen's liens in the First Circuit Court action. The First Circuit Court granted the motion, subject to the Grandes depositing $63,751.48 pursuant to Section 507-45, Hawaii Revised Statutes. The motion to release and discharge the liens was consistent with the agreement reached on December 13, 2006.

In light of the Grandes' previous representations that they would obtain necessary financing to resolve this case, they should be required to provide this Court and the Association with good cause for their current determination that they are unable to obtain financing.

Step 4 - Dismissal of Claims in Mechanics' Lien Action

In the related state action, Mr. Jacobson agreed to stipulate to the dismissal of the Grandes' claims against the Association provided that the Association, in that action only, agree that each side shall bear their own fees and costs. The Association's counsel of record in the state action, Tony Wong, Esq., agreed and has submitted several draft stipulations for dismissal to Mr. Jacobson for review and approval. The latest draft was sent to Mr. Jacobson several days ago, but he has failed to date to respond.

Conclusion

In summary, in light of Mr. Jacobson's April 17, 2007, letter (Exhibit E), the status of settlement is unclear. It is not clear whether the Grandes are once again attempting to delay matters further and/or repudiate settlement terms which they previously agreed to. Such tactics should not be permitted. To return this case to a settlement track, the Association respectfully submits that this Court should order (1) the Grandes to personally appear for a further settlement conference, and (2) the Grandes' architect and draftsman to appear in Court for a meeting with the chair of the Architectural Review Committee to discuss deficiencies in the plans submitted on January 26, 2007, and how the plans should be corrected.

The Honorable Magistrate Judge Barry M. Kurren
April 19, 2007
Page 6

Thank you for your attention to this matter.

Sincerely,

NEELEY & ANDERSON LLP
A Limited Liability Law Partnership

Lance S. Fujisaki
Attorney for Plaintiff
Na Pali Haweo Community
Association

CASE LOMBARDI & PETTIT

John D. Zalewski
Attorney for Counterclaim-Defendants
Na Pali Haweo Community
Association and Ronald K. Awa

LSF/JDZ

cc:     Steven B. Jacobson, Esq. (via mail (with enclosures) and via e-mail (without enclosures))
        Na Pali Haweo Community Association

x:\NaPaliHaweo\Grande\UsDcPleadings\Judge Kurren1-fnl.doc

Enclosures (as referenced)

**EXHIBIT "K"**
**Page 26 of 58**

## Edna Bartolome

| | |
|---|---|
| **From:** | "Lance S. Fujisaki" <lfujisaki@neeley-anderson.com> |
| **To:** | "Steven B. Jacobson" <sjacobson.law@hawaiiantel.net> |
| **Cc:** | "John Zalewski" <JZalewski@caselombardi.com> |
| **Sent:** | Monday, March 05, 2007 2:39 PM |
| **Attach:** | Jacobson21-fnl.pdf |
| **Subject:** | NPH/Grande - plans |

Dear Steve:

Attached is a letter dated 3/5/07.

Thank you for your attention to this matter.

Lance S. Fujisaki

Neeley & Anderson LLP
A Limited Liability Law Partnership
733 Bishop Street, Suite 2301
Honolulu, Hawaii 96813
Telephone: (808) 536-8177, ext. 106
Facsimile: (808) 536-4977
================================================================

CONFIDENTIALITY NOTICE: This e-mail transmission, and any documents, files or previous e-mail messages attached to it may contain confidential information that is legally privileged. If you are not the intended recipient, or a person responsible for delivering it to the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of any of the information contained in or attached to this transmission is STRICTLY PROHIBITED. If you have received this transmission in error, please immediately notify us by reply e-mail and destroy the original transmission and its attachments without reading or saving it in any manner. Thank you.

EXHIBIT "A"

JOYCE Y. NEELEY
M. ANNE ANDERSON
PHILIP L. LAHNE
LANCE S. FUJISAKI

PAMELA J. SCHELL
SCOTT R. GRIGSBY

NEELEY & ANDERSON LLP
A LIMITED LIABILITY LAW PARTNERSHIP
733 BISHOP STREET, SUITE 2301
HONOLULU, HAWAII 96813

TELEPHONE
(808) 536-8177
FACSIMILE
(808) 536-4977

March 5, 2007

Via Fax, E-Mail
and U.S. Mail

Steven B. Jacobson, Esq.
P.O. Box 240761
Honolulu, Hawai'i 96824-0761

Re:   Na Pali Haweo Community Association v. Anthony
      Charles Grande, et al., Civil No. CV04-00413 DAE/LEK

Dear Mr. Jacobson:

On behalf of the Architectural Review Committee ("ARC") of Na Pali Haweo Community Association, we hereby advise you that the plans you hand-delivered to Neeley & Anderson LLP on January 26, 2007, are disapproved by the ARC as they, among other things, fail to address many of the issues previously discussed. We believe that the outstanding issues may be most efficiently addressed and resolved via a meeting including Ed Resh, the chair of the ARC, other Association representatives and counsel. Please contact me with dates when you and Mr. Resh are available for a meeting in our office.

Please do not hesitate to contact us should you have any questions regarding this matter.

Sincerely,

NEELEY & ANDERSON LLP
A Limited Liability Law Partnership

/s/Lance S. Fujisaki

Lance S. Fujisaki
Scott R. Grigsby

LSF/SRG:etb

cc:   John Zalewski, Esq.
      Case Lombardi & Pettit

      Client
X:\NaPaliHaweo\Grande\Jacobson21-fnl.wpd



## Lance S. Fujisaki

| | |
|---|---|
| **From:** | "Lance S. Fujisaki" <lfujisaki@neeley-anderson.com> |
| **To:** | <sjacobson.law@hawaiiantel.net> |
| **Cc:** | "John Zalewski" <JZalewski@caselombardi.com>; "M. Anne Anderson" <AAnderson@Neeley-Anderson.com> |
| **Sent:** | Thursday, March 08, 2007 6:46 AM |
| **Subject:** | NPH/Grande - plans |

Dear Steve:

It would be most efficient to have the ACC Chair and Mr. Resh meet. If Mr. Resh's medical condition does not allow him to attend a meeting with the ACC Chair, perhaps the Grandes should retain a different architect. Please inform Mr. Resh that the purpose of this meeting is to discuss what needs to be corrected on the drawings, not to argue the merits of this case. His attorney is also invited if he wishes. We want to move forward and resolve the outstanding issues as quickly as we can and as efficiently as we can and a face to face meeting is the best way to proceed.

Thank you for your attention to this matter.

Lance S. Fujisaki

Neeley & Anderson LLP
A Limited Liability Law Partnership
733 Bishop Street, Suite 2301
Honolulu, Hawaii 96813
Telephone: (808) 536-8177, ext. 106
Facsimile: (808) 536-4977
=========================================================
CONFIDENTIALITY NOTICE: This e-mail transmission, and any documents, files or previous e-mail messages attached to it may contain confidential information that is legally privileged. If you are not the intended recipient, or a person responsible for delivering it to the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of any of the information contained in or attached to this transmission is STRICTLY PROHIBITED. If you have received this transmission in error, please immediately notify us by reply e-mail and destroy the original transmission and its attachments without reading or saving it in any manner. Thank you.

----- Original Message -----
From: sjacobson.law@hawaiiantel.net
To: lfujisaki@neeley-anderson.com
Cc: John Zalewski
Sent: Tuesday, March 06, 2007 10:17 PM
Subject: Re: NPH/Grande - plans

Lance,

I'm not in Honolulu at this moment, and am not sure whether Mr. Resh's medical condition would allow such a meeting.



I'll check with him upon my return.  Which items are you concerned with?

Steve

**EXHIBIT "K"**
**Page 30 of 58**