### Lance S. Fujisaki

| | |
|---|---|
| **From:** | "Lance S. Fujisaki" <lfujisaki@neeley-anderson.com> |
| **To:** | "Steven B. Jacobson, AAL, ALLLC" <sjacobson.iaw@hawaiiantel.net>; "John Zalewski" <JZalewski@caselombardi.com> |
| **Cc:** | "M. Anne Anderson" <AAnderson@Neeley-Anderson.com> |
| **Sent:** | Thursday, March 15, 2007 9:50 AM |
| **Subject:** | Status conference |

Dear Steve:

This responds to your 3/14/07 e-mail.

1. The status conference will be held before Judge Kurren, not Judge Kobayashi.

2. We will provide the settlement agreement to you shortly. Please note you also have not provided us with sections you agreed to draft. In any event, the settlement agreement cannot be finalized until the plans are approved by the ARC and, in that regard, the Grandes were delinquent in their submission of plans. (Plans were due 1/3/07 but were not submitted until 1/26/07.)

3. On Tuesday 3/13/07, I left a phone message for you to call me to schedule a meeting to discuss the plans, however, you have not returned my call. To resolve issues concerning the plans, the most productive course would be to have a meeting between Mr. Resh, Mr. Awa, you and one attorney for the Association. In addition, if Mr. Resh is having a draftsperson or other person prepare the plans, he or she should also attend the meeting. It is important that the person actually performing the work understand what needs to be done to resolve deficiencies in the plans. We feel a face to face meeting is the best course to promptly resolve this matter. Problems continue to surface with the plans despite our past discussions and numerous written communications. We will accommodate the concerns expressed in your e-mail by agreeing to minimize the number of people attending the meeting. However, we believe one attorney representing each side must be present.

Thank you for your attention to this matter.

Lance S. Fujisaki

Neeley & Anderson LLP
A Limited Liability Law Partnership
733 Bishop Street, Suite 2301
Honolulu, Hawaii 96813
Telephone: (808) 536-8177, ext. 106
Facsimile: (808) 536-4977
========================================================
CONFIDENTIALITY NOTICE: This e-mail transmission, and any documents, files or previous e-mail messages attached to it may contain confidential information that is legally privileged. If you are not the intended recipient, or a person responsible for delivering it to the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of any of the information contained in or attached to this transmission is STRICTLY PROHIBITED. If you have received this transmission in error, please immediately notify us by reply e-mail and


EXHIBIT "C"

**EXHIBIT "K"** 2007
**Page 31 of 58**

destroy the original transmission and its attachments without reading or saving it in any manner. Thank you.

—— Original Message ——
From: Steven B. Jacobson, AAL, ALLLC
To: John Zalewski ; Lance S. Fujisaki
Cc: M. Anne Anderson
Sent: Wednesday, March 14, 2007 9:37 PM
Subject: Re: Status conference

Why don't you just provide me with the draft shell settlement agreement that was supposed to be sent to me months ago, and some indication of what the new objections to the plans are? They may be things we thought would be covered in the agreement we've never seen, like the paint color.

We don't yet know what Judge Ezra's ruling will be, so how can MJ Kobayashi properly set a status conference on Tuesday morning for you? She's precluded from doing anything by the statute.

I'm not supposed to be doing anything, since I have "acute bronchitis bordering on pneumonia."

## Lance S. Fujisaki

| | |
|---|---|
| From: | "Lance S. Fujisaki" <lfujisaki@neeley-anderson.com> |
| To: | "Steven B. Jacobson" <sjacobson.law@hawaiiantel.net> |
| Cc: | "M. Anne Anderson" <AAnderson@Neeley-Anderson.com>; "John Zalewski" <JZalewski@caselombardi.com> |
| Sent: | Monday, April 02, 2007 2:35 PM |
| Attach: | Sett-Agr 3-31-07.pdf |
| Subject: | Na Pali Haweo - Grande |

Dear Steve:

Attached is a draft of our proposed form of settlement agreement and release ("agreement"). The attached agreement is in draft form only and subject to further revision by our office. It is also subject to review and approval by our client, the Na Pali Haweo Community Association. The Association shall not be bound by the agreement until such time as it has been approved by its Board of Directors and fully executed by the parties thereto.

We are providing a copy to you prior to approval by our client in an effort to expedite the completion of the agreement. Once the attorneys in the case have been able to work out the details of the form of agreement, we can then present it to our respective clients for review and approval.

Per our discussions, we have left blank the section entitled, "Agreement Related to Covenant Violations," as you asked to prepare that section. Please provide us with your proposed section and any comments you may have with respect to the attached form of agreement. We will transmit Exhibits "1" and "2" separately.

Following up on our status conference on March 21, 2007, we would like to proceed with the meeting with Ed Resh as soon as possible. During our discussion after the status conference, you stated you would contact Mr. Resh to discuss the feasibility of a meeting. We believe a face to face meeting with Mr. Resh and his draftsperson is necessary to avoid further delays in resolving the outstanding issues. Please provide us with dates for a meeting as soon as possible.

Thank you for your attention to this matter.

Lance S. Fujisaki

Neeley & Anderson LLP
A Limited Liability Law Partnership
733 Bishop Street, Suite 2301
Honolulu, Hawaii 96813
Telephone: (808) 536-8177, ext. 106
Facsimile: (808) 536-4977
=====================================================

CONFIDENTIALITY NOTICE: This e-mail transmission, and any documents, files or previous e-mail messages attached to it may contain confidential information that is legally privileged. If you are not the intended recipient, or a person responsible for delivering it to the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of any of the information contained in or attached to this transmission is STRICTLY PROHIBITED. If you



EXHIBIT "K"
Page 33 of 58

have received this transmission in error, please immediately notify us by reply e-mail and destroy the original transmission and its attachments without reading or saving it in any manner. Thank you.

SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("Agreement") is entered into by and between the Na Pali Haweo Community Association ("Association") and Anthony Charles Grande and Narindar Kaur Grande (collectively "Owners"). The Association and Owners are sometimes hereinafter individually referred to as a "Party" and collectively as the "Parties".

W I T N E S S E T H   T H A T :

A.    WHEREAS, the Association is a planned community association governed by Hawai'i Rev. Stat., Chapter 414D, and the Declaration of Covenants, Conditions and Restrictions of Na Pali Haweo subdivision recorded at the Bureau of Conveyances of the State of Hawaii as Document No. 91-049173 ("Declaration") and the Na Pali Haweo Design Guidelines ("Design Guidelines) among other documents;

B.    WHEREAS, Owners are the owners of a lot located at 1251 Kamehame Drive, also known as Lot No. 49 (Kamehame Ridge Subdivision, Unit II-Phase 2-A shown on file Plan Number 2028), Maunalua, Honolulu, Hawai'i 96825 (the "Property"). Said Property is located in the Na Pali Haweo subdivision.

C.    WHEREAS, the Association filed a legal action against the Owners, which suit is now pending in the United States District Court, District of Hawaii in CV04-00413 DAE/LEK (the "Litigation").

D.    WHEREAS, the Owners filed a counterclaim against the Association and Ronald K. Awa ("Awa") in said Litigation.

E.    WHEREAS, the Litigation involves, among other things, a dispute concerning the construction of a home on the Property.

F.    WHEREAS, the Parties, in connection with their respective counsel, have each fully and carefully examined the merits of the claims and defenses of each other Party, are fully cognizant of the risks, benefits, and expense of further prosecution of the Litigation and have decided that it is in each of their respective best interests to settle the disputes between them on the terms set forth below.

NOW, THEREFORE, IT IS HEREBY AGREED:

1.    <u>Valuable Consideration</u>. The Parties agree and acknowledge that each has received good and valuable consideration for the terms, conditions, promises, and agreements set forth herein.

2.    <u>Agreement Related to Covenant Violations</u>. The Parties have reached an agreement related to the covenant violations identified in the Litigation. The agreement is set forth below:

**NOTE: THE INITIAL DRAFT OF THIS SECTION IS TO BE PREPARED BY STEVE JACOBSON**

3.    <u>Determination of Association's and Awa's Attorneys' Fees, Expert Fees, and Costs</u>. The Parties agree that the issue of the award of attorneys' fees, expert fees, attorneys' costs, expert costs, court costs, and other costs and expenses (collectively referred to as "attorneys' fees, expert fees, and costs") to the Association, both as Plaintiff and Counterclaim-Defendant, and Awa, as Counterclaim-Defendant, shall be submitted to the Court for determination via a motion filed by the Association, as Plaintiff and a separate motion filed by the Association and Awa as Counterclaim Defendants. For purposes of the motions, the Parties agree that the Association (both as Plaintiff and Counterclaim Defendant) and Awa shall be considered the prevailing parties on the merits of the case and that the sole purpose of the motions shall be for the Court to determine the reasonable dollar amount of the attorneys' fees, expert fees, and costs to be paid by the Owners to the Association and Awa. The details of the agreement between the Parties regarding the motions for attorneys' fees, expert fees, and costs and the payment thereof are set forth in the written stipulation and order attached hereto and incorporated herein as Exhibit "1." As a condition to this Agreement, the Parties shall seek and obtain the agreement of the Court to hear and consider such motions under the terms and conditions set forth in said stipulation and order attached hereto as Exhibit "1." As a condition to this Agreement, the Parties shall also seek and obtain the agreement of Awa to sign and enter into the stipulation and order attached hereto as Exhibit "1."

-2-

4.    Definitions of Claims and Covered Claims.

As used herein, "claims" means and includes any and all (*i.e.*, collectively, individually, and any combination thereof) demands, claims, allegations, controversies, actions, causes of action, complaints, liabilities, judgments, injuries, costs, losses, expenses, fees, attorneys' fees, expert fees, awards, and damages, of any kind or nature whatsoever, whether based in statute or common law, tort, contract, warranty, strict liability or otherwise, whether known or unknown, whether patent or latent, and whether at law or in equity.

As used herein, "Covered Claims" means and includes any and all claims, as defined above, from the beginning of time to the date hereof, arising out of, related or traceable to, connected with, based upon, and/or resulting from the claims, as defined above, and/or defenses asserted in the Litigation. The Covered Claims shall not include any claims of the Association or Awa for the recovery of attorneys' fees, expert fees, and costs from the Owners. The Association's and Awa's claims for attorneys' fees, expert fees, and costs shall be governed by Paragraph 3 above and the attached stipulation and order. Additionally, the Covered Claims shall not include any claims of the Parties related to any breach or enforcement of the terms of this Agreement.

5.    Release.    For good and valuable consideration, receipt of which is hereby acknowledged: a) except as stated in Paragraphs 2 and 3 above, the Association, for itself and its Board of Directors, directors, officers, successors, and assigns hereby releases and forever discharges the Owners and their respective heirs, executors, administrators, personal representatives, legal representatives, agents, successors, and assigns from the Covered Claims; b) Owners, for themselves and their respective heirs, executors, administrators, personal representatives, legal representatives, successors, and assigns hereby release and forever discharge the Association and its Board of Directors, directors, officers, employees, agents, managing agents (including, but not limited to, Hawaiiana Management Company, Ltd.), insurers (including, but not limited to, Great American Insurance Company), successors, and assigns from the Covered Claims; and c) Owners, for themselves and their respective heirs, executors, administrators, personal representatives, legal

-3-

**EXHIBIT "K"**
**Page 37 of 58**

representatives, successors, and assigns hereby release and forever discharge Awa, and his heirs, executors, administrators, personal representatives, legal representatives, agents, insurers (including, but not limited to, Great American Insurance Company), successors, and assigns from the Covered Claims.

   6. <u>Releases in Paragraph 5 are a Complete Bar to Covered Claims</u>.  The releases given in Paragraph 5 above are and may be pleaded as a complete and absolute bar to the Covered Claims released by said Paragraph 5 notwithstanding the subsequent discovery of facts in addition to or different from those which the Parties now know or believe to be true with respect to the subject matter of this Agreement.

   7. <u>Stipulation to Dismiss</u>.  Once the: a) covenant violations referenced in Paragraph 2 have been corrected, as set forth in Paragraph 2 above; b) the Court has heard and ruled on the Association's and Awa's motion for attorneys' fees, expert fees, and costs provided for in Paragraph 3 above; and c) the attorneys' fees, expert fees, and costs awarded to the Association and Awa have been paid in full, the Parties agree to authorize and instruct their respective legal counsel of record to sign and file a stipulation for dismissal with prejudice with respect to the Litigation in the form attached hereto as Exhibit "2."   As a condition to this Agreement, the  Parties shall obtain the agreement of Awa to sign said stipulation for dismissal under the terms of this Paragraph 7.

   8. <u>Warranty of No Assignment of Covered Claims/Indemnification Agreement for Breach of Warranty</u>.

The Association warrants and represents that it has not heretofore assigned or transferred or purported to assign or transfer any of the Covered Claims released by it in Paragraph 5 above or any part thereof and agrees to indemnify, defend, and hold harmless Owners from and against any said released Covered Claims asserted by any assignee of the Association. Owners warrant and represent that they have not heretofore assigned or transferred or purported to assign or transfer any of the Covered Claims released by them in Paragraph 5 above or any part thereof and agree to indemnify, defend, and hold harmless the Association from and against any said released Covered Claims asserted by any assignee of Owners, or either of them.

-4-

**EXHIBIT "K"**
**Page 38 of 58**

9.      Warranty of Authority. The Parties each warrant and represent to each other that they have all requisite power and authority to enter into this Agreement without the approval or consent of any person not a party hereto.

10.     Parties in Interest; No Third Party Benefit. This Agreement shall be binding upon and inure to the benefit of the Association and its Board of Directors, directors, officers, successors, and assigns. This Agreement shall also be binding upon and inure to the benefit of Owners and their respective heirs, executors, administrators, personal representatives, legal representatives, successors, and assigns. Nothing in this Agreement is intended to and/or shall be deemed to confer any right upon any third party or person.

11.     Disclaimer. The Parties hereby acknowledge that, in entering into this Agreement, they have not relied on any promises, representations, warranties, or statements of any kind or nature whatsoever, made by any other Party, or any agent, employee, officer, director, or attorney of any other Party, which are not set forth in this Agreement. The Parties further acknowledge that, in connection with this Agreement, each Party has been represented by independent counsel, and that each has relied on its/his/her own investigation and judgment and the investigation and judgment of its/his/her own counsel. This Agreement shall be considered as having been drafted by all Parties, and shall not be construed or interpreted against any Party by reason of such Party's role in drafting the same, but shall be construed and interpreted in accordance with the fair representations or warranties made herein.

12.     No Admission of Liability. The Parties understand and agree that this Agreement represents a compromise of disputed claims and is not to be construed as an admission of liability by any Party and further, that each Party expressly denies any liability to the other Parties. The consideration given and/or received by the Parties to this Agreement has been given and/or received in compromise of disputed claims and, except as otherwise provided herein, may not be used as evidence to establish liability for or invalidity of any claim or its amount. Notwithstanding the foregoing, nothing herein shall bar any Party from submitting this Agreement or any provision hereof

-5-

**EXHIBIT "K"**
**Page 39 of 58**

into evidence for the purpose of enforcing this Agreement and/or establishing a breach or violation of, or failure to comply with, any of the terms, covenants, conditions, promises, or agreements set forth herein.  Furthermore, this paragraph shall not be interpreted or construed in any fashion as to diminish the effectiveness or validity of any of the terms, covenants, and conditions of this Agreement.

13.    Miscellaneous.

(a)  The headings of paragraphs herein are for convenience and reference only and shall in no way define, limit, or describe the scope or intent of any provision in this Agreement.  The use of any gender herein shall be deemed to include the other gender and the use of the singular herein shall be deemed to include the plural (and vice versa), whenever appropriate.

(b)  If any term, covenant, or condition of this Agreement or the application thereof to any person or to any circumstance shall, to any extent, be invalid or unenforceable, the remainder of this Agreement, or the application of such term, covenant, or condition to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby and each term, covenant, or condition of this Agreement shall be valid and may be enforced to the fullest extent permitted by law.

(c)  This Agreement contains the entire agreement between the Parties with respect to the subject matters hereof and supersedes and cancels any and all prior oral or written agreements and understandings between the Parties with respect to the subject matter hereof.

(d)  This Agreement may not be amended or modified in any respect, except by an instrument in writing executed by all of the Parties.

(e)  This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, and which shall together constitute one and the same document, binding the Association and Owners, notwithstanding that the Association and Owners are not signatories to the original or the same counterpart.  For all purposes, duplicate, unexecuted, and _____ ____ _____ __ ____ _____ ____ __ _____ in earlier and the remaining pages assembled as

one document. The Parties shall execute two copies of this Agreement so that both the Association and Owners may retain a fully executed copy in their files.

(f) In the event of a breach of the Agreement, the prevailing Party or Parties will be entitled to reimbursement of all reasonable attorneys' fees, costs, and expenses made necessary to enforce the terms and provisions of the Agreement, regardless of whether a legal action or proceeding for enforcement is filed.

(g) In the event of any litigation concerning this Agreement or the subject matter of this Agreement, the Parties hereby agree that the courts of the State of Hawaii shall have exclusive jurisdiction, and that all matters at issue and all questions concerning the interpretation of this Agreement shall be decided and construed in accordance with the laws of the State of Hawaii.

(h) The reference to a person or persons shall include natural persons, corporations, unincorporated associations, partnerships, limited liability partnerships, limited liability companies, joint ventures, governmental entities, eleemosynary corporations, and/or any other form of entity recognized by law.

14.    Good Faith Agreement. The Parties agree that the settlement, releases, and dismissal with prejudice provided for in this Agreement have been made, agreed to, and entered into in good faith.

15.    Effectiveness. This Agreement shall be effective as of the date it has been executed by the Association and Owners.

IN WITNESS WHEREOF, the undersigned have executed this Agreement below.

NA PALI HAWEO COMMUNITY ASSOCIATION

By:_____

Its:
Date:_____

"Association"

_____
ANTHONY CHARLES GRANDE
Date:_____

-7-

NARINDAR KAUR GRANDE
Date:

"Owners"

**EXHIBIT "K"**
**Page 42 of 58**

APR 1 9 2007

# Steven B. Jacobson
## Attorney at Law
## A Limited Liability Law Company

E-MAIL:
SJACOBSON.LAW@HAWAIIANTEL.NET

April 17, 2007

FOR SETTLEMENT PURPOSES
PROTECTED BY HRE AND FRE RULES 408

M. Anne Anderson, Esq.          John D. Zalewski, Esq.
Lance S. Fujisaki, Esq.          Case Lombardi & Pettit
Neeley & Anderson               737 Bishop Street, Suite 2600
737 Bishop Street, Suite 2301    Honolulu, HI 96813
Honolulu, HI 96813

Re: Grande adv. & v. Na Pali Haweo Community Association; USDC Civ. No. 04-00413

Dear Counsel:

While you have been refusing to say what your client has found unacceptable in the proposed revisions to the Grande residence, Mr. and Mrs. Grande have been investigating whether they would be able to borrow the approximately $300,000 (or more) contemplated as a pre-condition under the current form of the proposed settlement, and maintain that amount of additional debt.

They have determined that they cannot. Moreover, in view of your refusal to divulge what is and is not acceptable, except under impossible conditions, it appears that the settlement negotiations are going nowhere anyway.

I will be so advising the Court at next Monday's Status Conference.

You might want to remember that your case hinges on a very precarious waiver theory.

Sincerely yours,

STEVEN B. JACOBSON
Attorney at Law
A Limited Liability Law Company

Steven B. Jacobson

P. O. Box 240761  Honolulu, HI 96824-0761 · TELEPHONE (808) 37...

**EXHIBIT "K"**
**Page 43 of 58**

## Lance S. Fujisaki

| | |
|---|---|
| From: | "Steven B. Jacobson, AAL, ALLLC" <sjacobson.law@hawaiiantel.net> |
| To: | "M. Anne Anderson" <aanderson@neeley-anderson.com> |
| Cc: | "Lance Fujisaki" <LFujisaki@neeley-anderson.com> |
| Sent: | Thursday, December 14, 2006 8:11 AM |
| Subject: | Re: Na Paii Haweo - Grande |

PRIVILEGED RULE 408 COMMUNICATION

Anne,

My experience is the opposite.

However, the suggestion in your third sentence -- that you do the initial draft of the standard terms, and I do the initial draft of the provisions unique to this case, is fine. My concerns are both with fees and costs, and with making sure that the language reflects the actual tradeoffs being made so that there's no confusion in the latter regard in the indemnification case against the guy who created the problem in the first place (Brandt).

Steve

> —-· Original Message ----·
> From: M. Anne Anderson
> To: 'Steven B. Jacobson, AAL, A.LLC'
> Cc: 'Lance S. Fujisaki' ; 'John Zalewski'
> Sent: Thursday, December 14, 2006 7:49 AM
> Subject: Na Pali Haweo - Grande
>
> Steve:
>
> In my experience, we generally spend less time negotiating a settlement agreement when we prepare the initial draft. As such, I think, in the long run, the fees will be less if we prepare the initial draft. However, we may be able to divide the work up so that you do the initial draft of the provisions that are unique to this case and we do the initiation draft of the standard terms that are found in most settlement agreements. If you agree, we will provide you with an initial draft of a settlement agreement with standard terms and you can insert the initial draft of the provisions that pertain to the agreement of the parties regarding the construction issues.
>
> Let me know if you agree.
>
> Sincerely,
>
>
> M. Anne Anderson
>
> Neeley & Anderson LLP
> A Limited Liabiiity Law Partnership
> 733 Bishop Street, Suite 2301
> Honolulu, Hawaii 96813 <>
> Ph: (808) 536-8177
> Fax: (808) 536-4977
> E-Mail: AAnderson@Neeley-Anderson.com

The information contained in this e-mail message and any attachments hereto is intended only for the personal and

EXHIBIT "F"

EXHIBIT "K"
Page 44 of 58

confidential use of the recipient(s) designated above. This message may be an attorney-client communication. If it is, it is privileged and confidential. If the reader of this message is not the designated recipient or an agent responsible for delivering this message to the designated recipient, you have received this document in error. In that event, any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please delete it from your computer and contact us immediately by telephone at (808) 536-8177.

No virus found in this incoming message.
Checked by AVG Free Edition.
Version: 7.1.409 / Virus Database: 268.15.18/586 - Release Date: 12/13/2006

No virus found in this outgoing message.
Checked by AVG Free Edition.
Version: 7.1.409 / Virus Database: 268.15.18/586 - Release Date: 12/13/2006

**EXHIBIT "K"**
**Page 45 of 58**

JOYCE Y. NEELEY
M. ANNE ANDERSON
PHILIP L. LAHNE
LANCE S. FUJISAKI

PAMELA J. SCHELL
SCOTT R. GRIGSBY
SANDRA D. LYNCH

**NEELEY & ANDERSON LLP**
A LIMITED LIABILITY LAW PARTNERSHIP
733 BISHOP STREET, SUITE 2301
HONOLULU, HAWAII 96813

TELEPHONE
(808) 536-8177
FACSIMILE
(808) 536-4977

August 3, 2007

**VIA HAND DELIVERY**
**CONFIDENTIAL SETTLEMENT LETTER**

The Honorable Barry M. Kurren
United States Magistrate Judge
United States District Court for the District of Hawai`i
300 Ala Moana Blvd., Room C-229
Honolulu, Hawai`i 96813

Re:  <u>Na Pali Haweo Community Association v. Anthony Charles</u>
<u>Grande, et al.</u>, Civil No. CV04-00413 DAE/LEK

Dear Judge Kurren:

In accordance with your directive, Plaintiff/Counterclaim Defendant Na Pali Community Association (the "Association") and Counterclaim Defendant Ron Awa hereby jointly submit this letter which summarizes recent events and the current status of settlement matters and outstanding issues in the above-referenced case. Please see our April 20, 2007, letter for a brief overview of this case. We will not repeat information from our prior letter.

After months of written requests and negotiations, on May 17, 2007, the Grandes' architect, Ed Resh, Mr. Resh's draftsperson, and Ron Awa of the Architectural Review Committee ("ARC") met at Mr. Resh's office to discuss deficiencies in the Grandes' January 26, 2007, submission. At the April 23, 2007, status conference, this Court requested that the meeting occur within 21 days (*i.e.*, by May 14, 2007) and that revised plans be submitted <u>thirty (30) days</u> following the meeting. Thus, revised plans, including as-built plans, were due no later than <u>June 18, 2007</u>.

On June 28, 2007, pursuant to Rule 408 of the Federal Rules of Evidence, Mr. Jacobson submitted a letter to the Association seeking clarification of the remedial work required to bring the subject property into compliance with the governing documents. A copy of the letter is attached hereto as Exhibit "A." This letter, together with the July 6, 2007, letter from the Association's counsel, confirms that the Grandes understood what they were required to do with regard to the submission of plans. The Grandes did not comply with this deadline.

On July 2, 2007, this Court granted Mr. Jacobson's Motion for Leave to Withdraw as Counsel effective August 10, 2007. As plans were not previously submitted, the Grandes agreed to submit plans by no later than July 20, 2007. The ARC moved the date of its meeting to July 24, 2007, based upon the Grandes' representation that plans would be submitted by July 20, 2007.

**EXHIBIT "K"**
**Page 46 of 58**

The Honorable Barry M. Kurren
August 3, 2007
Page 2

On July 6, 2007, pursuant to Rule 408 of the Federal Rules of Evidence, the Association's counsel responded to Mr. Jacobson's June 28, 2007, letter. A copy of the letter is attached hereto as Exhibit "B."

On July 24, 2007, in the mid-afternoon, the Grandes delivered to the Association's counsel two sheets of plans. The two sheets of plans were not submitted in time for the ARC meeting, and in any event, the plans were substantially incomplete and inadequate. The Grandes should have submitted (1) a complete set of as-built plans, (2) a complete set of revised plans, (3) revised landscaping plans. The plans submitted on July 24, 2007, were not as-built plans; the plans did not include all remedial work described in Mr. Jacobson's June 28, 2007, letter; the plans were missing various sheets; and no landscaping plans were included. As a point of reference, the set of plans approved by the ARC in 2000 spanned 17 pages.

On July 26, 2007, Mr. Jacobson acknowledged that the plans were deficient and indicated the Grandes were contacting Mr. Resh.

On July 30, 2007, Mr. Jacobson informed the Association that due to poor health, Mr. Resh would not render any further services for the Grandes and that the Grandes were searching for a new architect. In other words, the Grandes now apparently intend to proceed with both a new attorney and a new architect, approximately three years into this litigation, and well over one year into protracted settlement communications and settlement-related actions.

By e-mail dated July 26 and 30, and August 1, 2007, the Association's counsel requested a meeting with Mr. Jacobson to prepare for the August 6, 2007, settlement conference. Mr. Jacobson did not respond to the request for a meeting.

The Association's counsel also requested but did not receive from Mr. Jacobson the section of the Settlement Agreement and Release entitled "Agreement Related to Covenant Violations," which Mr. Jacobson agreed to draft, nor have counsel received comments to their proposed draft of the Settlement Agreement and Release.

The following issues should be discussed at the settlement conference:

1.    Deadline for Grandes to file appearance of new counsel
2.    Deadline for Grandes to retain architect
3.    Deadline for submission of as-built, proposed revised, and proposed landscaping plans
4.    Schedule next settlement conference
5.    Commitment to resolve this case in accordance with the plan agreed upon at the December 13, 2006, settlement conference, and as summarized in our April 20, 2007, letter.

**EXHIBIT "K"**
**Page 47 of 58**



The Honorable Barry M. Kurren
August 3, 2007
Page 3

      6.      Commitment to take steps to expedite completion of remedial work. (While the details of the remedial work to be performed have not been agreed upon as the Grandes have not submitted as-built and proposed revised plans, the Grandes have sufficient information to consult with contractors and make arrangements to finance remedial work. Advance preparation will allow for the expedited completion of remedial work and resolution of this case.)

      Given Mr. Jacobson's impending withdrawal, and Mr. Grande's apparent lack of confidence in Mr. Jacobson, the Court is respectfully requested to maximize any chance of settlement at this critical juncture by communicating directly to Mr. Grande, and to emphasize to him that: (1) he and his spouse need to take any and all actions necessary to achieve settlement, *forthwith*; (2) *any* further delays, obfuscation, or finger-pointing are completely counterproductive to his and his spouse's interests, and will result in yet greater exposure to mounting attorneys' fees and costs, as there can be no doubt that the Association is the prevailing party in this action. (See Judge Ezra's order re: summary judgment entered herein on July 14, 2006.)

      This case has been held in abeyance from November 2004 through December 2005, and since October 2006 as the parties have attempted to resolve the Association's claims. The Association's objective is to resolve this case as expeditiously as possible, preferably through closing the final related settlement matters. However, the Association will not agree to continue to keep this case on hold or engage in unproductive settlement negotiations for an indefinite period. The Association is prepared to file additional motions, proceed with discovery, schedule this case for trial and take any other appropriate steps as necessary to resolve this case. The Grandes' 11th hour ploy to retain both new counsel and a new architect should not be permitted to cause yet further delays, especially given their ongoing pattern of dilatory conduct.

      Thank you for your attention to this matter.

                Sincerely,

                NEELEY & ANDERSON LLP
                A Limited Liability Law Partnership

                Lance S. Fujisaki
                Attorney for Plaintiff
                Na Pali Haweo Community
                Association

**EXHIBIT "K"**
**Page 48 of 58**

The Honorable Barry M. Kurren
August 3, 2007
Page 4

CASE LOMBARDI & PETTIT

John D. Zalewski
Attorney for Counterclaim-Defendants
Na Pali Haweo Community
Association and Ronald K. Awa

Enclosures:   June 28, 2007, letter from Mr. Jacobson (Exhibit "A")
              July 6, 2007, letter from Mr. Fujisaki (Exhibit "B")

LSF/JDZ

cc:           Na Pali Haweo Community Association

X:\NaPaliHaweo\Grande\Usdc PLEADINGS\Judge Kurren2-fnl.DOC

**EXHIBIT "K"**
**Page 49 of 58**

# Steven B. Jacobson

## Attorney at Law

## A Limited Liability Law Company

E-MAIL:
SJACOBSON.LAW@HAWAIIANTEL.NET

June 28, 2007

FOR SETTLEMENT PURPOSES
PROTECTED BY HRE AND FRE RULES 408

M. Anne Anderson, Esq.
Lance S. Fujisaki, Esq.
Neeley & Anderson
737 Bishop Street, Suite 2301
Honolulu, HI 96813

Re: Grande adv. & v. Na Pali Haweo Community Association; USDC Civ. No. 04-00413
DAE LEK

Dear Counsel:

Mr. Grande and I have been able to meet with Mr. Resh, now that the trial of the Brandt Homes case has adjourned, and to go over the draftsman's notes. So that nothing gets lost in translation, please confirm that the following understandings are correct, and that we're not missing anything.

1)    The Association would like a complete set of architectural plans showing the house, front walls, etc., as they presently exist, according *inter alia* to the measurements made by Association surveyor Lance Stevens.

This set of plans would show, among other things, (a) how far the front of the house is set back from the front property line; (b) the height of the front of the house from the ground to the top of the roof; (c) the flat skylights; (d) the color of the paint on the frames of the skylights; (e) the air conditioner in the back yard with the lattice work cover suggested by Mr. Kloetzel; (f) the current location and shape of the roof vents; (g) the current heights of the front garden wall; (h) the support columns and filled-in sides of the balcony on the sides of the front lanai; (i) the absence of planters on the front porch; (j) the front light fixtures the Association has approved; and (k) the area on each floor of the house. The plans would be accompanied by the manufacturer's "cut sheet" for the paint on the skylight frames, and additional information on the cmu of the air conditioning unit.

Mr. and Mrs. Grande are willing to have such plans prepared for the Association, as long as there is a clear understanding that they are being submitted under the protection of Rule 408,

**EXHIBIT** *A*

June 29, 2007
Page Two

and cannot be used against Mr. and Mrs. Grande at any trial of this or any other action.  Mr. Resh is presently attempting to have such plans computerized.

Rule 408 protection is particularly appropriate here, where Grandes have asked to exercise their right under the CC&Rs to re-build disputed items like the front garden wall in conformity with the plans approved by the Association in 2001, but the Association (through you) has asked that they refrain from doing so.

2)      The Association would also like a second set of architectural plans, based upon the first set but proposing the following changes:

a)      The revision of the front roof previously approved by the Association after Grandes' April 2006 plan submittal.

b)      A different "less ugly" color for the roof vents.

c)      A "capping" of the front garden wall on the left side of the driveway, or a driveway gate.

d)      A reduction in the height of the front garden wall, where it exceeds 6', by one or two levels of blocks.

e)      The front eyebrow roof Grandes have always agreed that they would install, but projecting 2'6" out from the front of the house rather than the 2'3-1/2" previously requested by the Association, even though that would put the front of the eyebrow roof within 17'6" of the front property line.

f)      The creation of a gap between the front roofs, making them "separate and distinct elements."

g)      Arching-curving of the upper corners of the garage wall opening, as the Grandes have always agreed to do.

h)      Railings on the sides of the front balcony.

i)      A storage room in the garage of at least 100 square feet, in the space now set aside in the back of the garage for automobile parking, reducing the capacity of the garage from three cars to two.

**EXHIBIT "K"**
**Page 51 of 58**

June 20, 2007
Page Three


It is unclear whether the Association is now asking (1) that .15-.19' be removed from the front of the house, so that it's 20' from the front property line; (2) that the previously-suggested lattice be replaced with something else; (3) that planters or something else be shown on the front porch; or (4) that both front roofs be modified to create the desired gap, or just one of the front roofs.

It is likewise unclear whether the Association wants the skylight frames repainted again, and whether it is still going to provide chips showing the shade of red it would like the roof vents and/or skylights to be painted. The present color now appears to match the roof, so someone may want to look at that question again.

Please clarify these items, and let us know whether we have misunderstood your specific items or missed anything.

Sincerely yours,

STEVEN B. JACOBSON
Attorney at Law
A Limited Liability Law Company


Steven B. Jacobson

CC: John Zalewski, Esq.

NEELEY & ANDERSON LLP

JOYCE Y. NEELEY
M. ANNE ANDERSON
PHILIP L. LAHNE
LANCE S. FUJISAKI

PAMELA J. SCHELL
SCOTT R. GRIGSBY
SANDRA D. LYNCH

A LIMITED LIABILITY LAW PARTNERSHIP
733 BISHOP STREET, SUITE 2301
HONOLULU, HAWAII 96813

TELEPHONE
(808) 536-8177
FACSIMILE
(808) 536-4977

July 6, 2007

Steven B. Jacobson, Esq.
P.O. Box 240761
Honolulu, Hawai'i 96824-0761

Via E-Mail
and U.S. Mail

Re:  **Na Pali Haweo Community Association v. Anthony
Charles Grande, et al.**, Civil No. CV04-00413 DAE/LEK

Dear Mr. Jacobson:

The following is in response to your July 28, 2007, letter, as revised on July 29, 2007. For convenience, text quoted from your July 28, 2007, letter is italicized with our comments inserted below. This letter is subject to Rule 408 of the Federal Rules of Evidence.

*The Association would like a complete set of architectural plans showing the house, front walls, etc., as they presently exist, according inter alia to the measurements made by Association surveyor Lance Stevens.*

We emphasize that the plans should reflect the "as built" condition of the building, including all design and construction changes from the final plans approved by the ARC on October 24, 2000, not merely the measurements of the surveyor.

*This set of plans would show, among other things,*

*(a) how far the front of the house is set back from the front property line;*
*(b) the height of the front of the house from the ground to the top of the roof;*
*(c) the flat skylights;*
*(d) the color of the paint on the frames of the skylights;*
*(e) the air conditioner in the back yard with the lattice work cover suggested by Mr. Kloetzel;*
*(f) the current location and shape of the roof vents;*
*(g) the current heights of the front garden wall;*
*(h) support columns and the filled-in sides of the balcony on the sides of the front lanai;*
*(i) the absence of planters on the front porch;*



EXHIBIT **B**

**EXHIBIT "K"
Page 53 of 58**

Steven B. Jacobson, Esq.
July 6, 2007
Page 2

*(j) the front light fixtures the Association has approved; and*
*(k) the area on each floor of the house.*
*The plans would be accompanied by the manufacturer's "cut sheet" for the paint on*
*the skylight frames, and additional information on the cmu of the air conditioning*
*unit.*

The Association disputes that Mr. Kloetzel made any suggestions regarding lattice work for the air conditioner as lattice work is not allowed as fencing material. Fencing material for the air conditioner must be consistent with the house design; equipment must be screened from view and insulated for sound attenuation. NPH Design Guidelines § 3.2.14. The ARC may accept a solid wall with a stucco finish that matches the finish of the dwelling and that screens air conditioning equipment from view. Submission of product information describing the noise level of the air conditioner may resolve noise concerns.

*Mr. and Mrs. Grande are willing to have such plans prepared for the Association,*
*as long as there is a clear understanding that they are being submitted under the*
*protection of Rule 408, and cannot be used against Mr. and Mrs. Grande at any trial*
*of this or any other action.  Mr. Resh is presently attempting to have such plans*
*computerized.*

As previously discussed, the Rule 408 protection also applies to the Association, this letter and related communications.

*Rule 408 protection is particularly appropriate here, where Grandes have*
*asked to exercise their right under the CC&Rs to re-build disputed items like the*
*front garden wall in conformity with the plans approved by the Association in 2001,*
*but the Association (through you) has asked that they refrain from doing so.*

Rule 408 applies as discussed above. Note the front garden wall is no longer in dispute as Judge Ezra's order granting partial summary judgment found the garden wall in violation of the governing documents.

*The Association would also like a second set of architectural plans, based upon the*
*first set but proposing the following changes:*

*(a)     The revision of the front roof previously approved by the Association after*
*Grandes' April 2006 plan submittal.*

*(b)     A different "less ugly" color for the roof vents.*

**EXHIBIT "K"**
**Page 54 of 58**

Steven B. Jacobson, Esq.
July 6, 2007
Page 3

> (c)    *A "capping" of the front garden wall on the left side of the driveway, or a driveway gate.*

> (d)    *A reduction in the height of the front garden wall, where it exceeds 6', by one or two levels of blocks.*

The plans must reflect a reduction in the height of the garden wall consistent with the Design Guidelines. Note that the NPH Design Guidelines provide that walls within the front setback area shall not exceed 5 feet above the finished grade on the side of the wall facing the adjacent property. The plans must reflect the elevations of the wall and the adjacent finished grade at each stepped level. Previously submitted plans did not include this information.

> (e)    *The front eyebrow roof Grandes have always agreed that they would install, but projecting 2'6" out from the front of the house rather than the 2'3-1/2" previously requested by the Association, even though that would put the front of the eyebrow roof within 17'6" of the front property line.*

The eyebrow roof above the garage door opening may protrude up to 2'6" beyond the front building envelope, i.e., the roof overhang combined with the front wall encroachment must not protrude more than 2'6" beyond the front setback. The Association disputes that the Grandes have "always agreed" to install the front eyebrow roof.

> (f)    *The creation of a gap between the front roofs, making them "separate and distinct elements."*

Note that the "gap" was described on the approved plans.

> (g)    *Arching-curving of the upper corners of the garage wall opening, as the Grandes have always agreed to do.*

The Association disputes that the Grandes have "always agreed" to install arched openings in the garage.

> *Railings on the sides of the front balcony.*

The railings should be open metal railing.

Steven B. Jacobson, Esq.
July 6, 2007
Page 4

    (i)    *A storage room in the garage of at least 100 square feet, in the space now set aside in the back of the garage for automobile parking, reducing the capacity of the garage from three cars to two.*

    *It is unclear whether the Association is now asking*

    *(1) that .15 - .19' be removed from the front of the house, so that it's 20' from the front property line;*

For purposes of settlement discussions, the Association will accept plans which do not require removal of a portion of the front wall within the 20' front setback. However, this should not be construed or interpreted to mean that the Association is waiving the front setback issue upon which Judge Ezra granted partial summary judgment.

    *(2) that the previously-suggested lattice be replaced with something else;*

The Association denies that lattice was suggested as this is a specifically prohibited fencing material.

    *(3) that planters or something else be shown on the front porch; or*

See discussion below.

    *(4) that both front roofs be modified to create the desired gap, or just one of the front roofs.*

The Grandes' architect should address this issue in the proposed plans as it is an architectural issue.

    *It is likewise unclear whether the Association wants the skylight frames repainted again, and whether it is still going to provide chips showing the shade of red it would like the roof vents and/or skylights to be painted. The present color now appears to match the roof, so someone may want to look at that question again.*

I have requested a follow up inspection of the roof, vents and skylight frames; however, unless further work was performed by the Grandes, I would expect the violations still exist.

The ARC does not provide paint chips to owners. The owners should select several shades of paint and provide the same to the ARC for review and approval.

Steven B. Jacobson, Esq.
July 6, 2007
Page 5

The following are additional comments:

1.  Paint skylight frame to match color of roof tile, install dressing over exposed lead flashing with roof tiles or paint to match the roof color, and submit manufacturer's brochure or similar product information for skylights. If properly painted, field dressing of the flashing would not be necessary.

2.  Add trim (1" x 4") to garage door. Owner may use built-up insulation and EFS finish to match the house texture. Together with the roof eyebrow overhang, it will help in softening the front facade.

3.  Plant on each side of the stairway at ground level 25-gallon size McArthur Palms (Ptychosperma macarthurii), i.e., approximately 6'-8' tall at planting, and croton foundation plants. Palm shall be "multi-trunk" or "clumping."

4.  In the right side yard, plant fan palm, such as Fiji fan palm (Pritchardia pacifica) with a minimum trunk height of 3' and with a minimum 65 gallon size, or other similar landscaping treatment, to soften appearance of wall up to second floor line or higher. With a 3' trunk, palm fronds should add 6' to 8' of additional height.

5.  Submit a revised landscaping/irrigation plan incorporating, among other things, the above additions. (For purposes of the July 20, 2007, deadline, the Grandes may submit a conceptual plan if it is not feasible to submit complete landscaping/irrigation plans by this date. Complete landscaping/irrigation plans should be submitted prior to the August 21, 2007, ARC meeting.)

6.  Provide manufacturer's brochure or similar product information for vents.

7.  Replace or paint sheet metal exhaust vent.

8.  Construct concrete pad between trash area and driveway.

As discussed at the status conference before Magistrate Judge Barry M. Kurren on July 2, 2007, the Grandes shall submit as-built and revised plans to the Architectural Review Committee by no later than July 20, 2007. The ARC is expected to meet on or about July 24, 2007, and a response will be provided shortly thereafter. Our intention is to complete the review process by the Settlement Conference on August 6, 2007. To achieve that objective, it is imperative that your clients submit plans by the July 20, 2007, deadline.

**EXHIBIT "K"**
**Page 57 of 58**

Steven B. Jacobson, Esq.
July 6, 2007
Page 6


Finally, we have not received the section of the Settlement Agreement and Release entitled "Agreement Related to Covenant Violations," which you agreed to draft, nor have we received comments to our proposed draft of the Settlement Agreement and Release. Please provide the insert to the Settlement Agreement and Release and your comments as soon as possible.

Please do not hesitate to contact us should you have any questions regarding this matter.

Sincerely,

NEELEY & ANDERSON LLP
A Limited Liability Law Partnership

Lance S. Fujisaki

cc:    John Zalewski, Esq. (via e-mail)
       Case Lombardi & Pettit

       Client (via e-mail)


X:\NaPaliHaweo\Grande\Jacobson26-fnl.wpd

**EXHIBIT "K"**
**Page 58 of 58**