

ORIGINAL

ANTHONY CHARLES GRANDE
NARINDAR KAUR GRANDE
125 Mar-Len Drive
Melbourne Beach, FL 32951
(321)-728-2942
Defendants Pro Se

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

MAY 29 2008

at ___ o'clock and ___ min. ___ M.
SUE BEITIA, CLERK

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| NA PALI HAWEO COMMUNITY ASSOCIATION, a Hawaii non-profit corporation, | CIVIL NO. CV04-00413-DAE BMK |
| Plaintiff, | DEFENDANTS' AND COUNTERCLAIMANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S INTERLOCUTORY MOTION FOR FEES, COSTS, AND EXPERT FEES AND COSTS; REQUEST FOR JUDICIAL NOTICE; EXHIBITS B and D; DECLARATION OF STEVEN B. JACOBSON; CERTIFICATE OF SERVICE |
| v. | |
| ANTHONY CHARLES GRANDE; NARINDAR KAUR GRANDE; and DOES, | |
| Defendants. | |
| ANTHONY CHARLES GRANDE and NARINDAR KAUR GRANDE, | Magistrate Judge: Hon. Barry M. Kurren |
| Counterclaim Plaintiffs, | |
| v. | |
| NA PALI HAWAO COMMUNITY ASSOCIATION; RONALD K. AWA; and DOES 1-25, | |

~ 1 ~

Counterclaim Defendants

## DEFENDANTS' AND COUNTERCLAIMANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S INTERLOCUTORY MOTION FOR FEES, COSTS, AND EXPERT FEES AND COSTS

In this action, in which an order directing the entry of an injunction has been issued *without* a trial, and in which the testimony the Association used to obtain that order came from another trial in which the Association's counsel *did not even participate*, the Association has filed an interlocutory motion requesting an outrageously high fee, cost, and "expert" award of $214,280.66, consisting of:

| | |
|---|---|
| Fees and Excise Taxes | $ 189,107.73 |
| "Taxable and Non-Taxable Costs" and Excise Taxes | 7,084.37 |
| "Expert" Fees and Costs | 18,088.56 |

The Association has not, however, filed a bill of costs.

This memorandum will begin by showing that the Association's motion is premature. It will then move on, in case the Court considers it anyway, by addressing and weeding through the non-attorney's fee items, none of which are recoverable. It will conclude by dealing with the Association's attorney's fee request.

## I.     PLAINTIFF'S MOTION IS PREMATURE.

Although a "judgment" was issued in this action on March 31, 2008, ordering the issuance of an injunction on the terms set forth in the Court's Order of

March 20, 2008 (at 31), there remain outstanding claims and other matters in this
action which make plaintiff's fee, cost, and "expert" motion premature.

First, plaintiff's Complaint includes a claim for damages which has yet to be
litigated. Paragraph C of plaintiff's Complaint (at 9) requests:

> "That the Court award the Association all such damages and charges
> due to the Association as a result of Defendants' failure to comply
> with the Governing Documents."

That claim has not been allowed, dismissed, or litigated. Nothing in the Court's
Order of March 20, 2008, or in the Judgment filed March 31, 2008, covers it.

Second, no injunction has been issued.

Third, there remains pending before Judge Ezra defendants' appeal filed
December 8, 2006, from Magistrate Judge Kobayashi's Order of September 25,
2006, and her denial of reconsideration thereof on December 4, 2006. The
Association mentions that order, involving $3,642.42, in its present motion (at 3)
and memorandum (at 9), and asks for a new order encompassing that order, but –
with unfortunately typical lack of candor – fails to mention the appeal's pendency.
Indeed, Plaintiff is seeking fees for opposing that very appeal. (Ex. B, at 27)

## II.    PLAINTIFF'S COST REQUESTS (INCLUDING EXPERT FEES) ARE IMPROPERLY MADE, INADEQUATELY SUPPORTED, AND LARGELY FRIVOLOUS.

Plaintiff's cost requests show that their counsel's self-laudatory claims of expertise are baseless, by showing that they have little knowledge of proper litigation procedure and rules.

In this federal court, the appropriate way to request the $25,000+ of costs Plaintiff is requesting is via a bill of costs filed pursuant to, and in conformity with the requirements of, FRCP 54(d)(1) and Local Rule 54-2(a-c, f). Plaintiff has not filed a bill of costs. Plaintiff's cost requests should be denied for that reason alone.

Moreover, Plaintiff is offering the wrong law. Plaintiff's citations of HRS §§ 421J-10 and 607-9 are irrelevant to its cost requests, including its request for expert witness fees and costs. As made clear in LR 54.2(f), the question of whether costs – as distinguished from attorneys' fees – are awardable in federal courts is a question of federal law, to be decided by application of 28 USC §§ 1821 & 1920 *et seq.*, the FRCP, and this Court's Local rules.

Expert Fees and Costs. Plaintiff's request for $18,000+ of expert witness fees ignores LR 54.2(f)(3), which provides: "Unless otherwise provided by law, fees for expert witnesses are not taxable in an amount greater than that statutorily allowable for ordinary witnesses." Because there was no trial, Plaintiff is not entitled to any witness fees whatsoever under 28 U.S.C. § 1821, and no other

federal statute applies in this case.  See Twentieth Century Fox Film Corp. v.

Entertainment Distributors, 429 F.3d 869, 885 (9th Cir. 2005) ("clear evidence of

*congressional* intent that non-taxable costs should be available" is required).[1]

Also, it is quite clear, from their own declarations, that the purported expert

witnesses were serving in other capacities and did not just sign declarations.

Local Faxes, Postage, Title Reports, Recordation Fees (Plaintiff's items 1, 5-

7, Memo p. 28).  Nothing in 28 USC § 1920 allows faxes, postage, title reports, or

recordation fees, to be taxed in this action.  It appears from Exhibit C (at 1) that

$78 of the "Fees of the Clerk" listed in Plaintiff's memo were really recording fees

of some kind.

Fees of the Clerk (Item 1, p. 28).  As Exhibit C (at 1) shows, the $275 item

was *not* paid to the Clerk of this Court and thus is not a recoverable cost listed in

28 U.S.C. § 1920(1).  See the previous paragraph re the other $78.

"Fees for service of summons and subpoena" (Item 2, p. 28).  None of these

fees were paid to a marshal, so none are recoverable.  28 U.S.C. § 1920(1).  There

is no indication that Plaintiff attempted requested a waiver of service as provided

in FRCP 4(d).  Plaintiff spent $45 on a Hawaii process server, although it knew

---

[1] Although it's irrelevant in this federal court, Defendants note that none of the
CC&R provisions cited in Plaintiff's memo (at 20 et seq.) authorize the awarding
of engineer's, architect's, or surveyor's fees, or other expert fees, as litigation costs
in lawsuits.

Grandes had moved to Tennessee months earlier. Then, instead of using a local process server in Tennessee, it spent $280 on one in Minnesota.    (Ex. U, 4, 6)

Court Reporter Fees (Item 3, p. 28). It appears that all but $516.36 of the requested amount was for a copy of a trial transcript in another case. Such transcripts are not recoverable under LR 54.2(f)(2)(" of any *deposition* transcript"). The other $143.33 apparently was for an unnecessary deposition of City records personnel, unnecessary because whatever public documents were obtained would have been admissible by judicial notice anyway. This was "mere discovery," in the words of the rule.

Copying (Items 4a-4f & 8["April 2008"], p. 28): Copying costs may be recoverable under some circumstances, but only at a maximum of 15 cents per page, without taxes being added onto them. LR 54.2(f)(4). It is obvious that the charges listed in items 4b-4f are for charges far in excess of 15 cents per page.

Moreover, Plaintiff has failed to submit – for any of Items 4a-4f and 8 – the required affidavit "describing the documents copied, the number of pages copied, the cost per page, and the use of or intended purpose for the items copied." It is apparent, from Plaintiff's memorandum, that Plaintiff's counsel are ignoring that rule's admonition that "The cost of copies obtained for the use and/or convenience of the party seeking recovery and its counsel is not allowable."

III.    PLAINTIFF'S FEE REQUEST IS GROSSLY OVERINFLATED.

Plaintiff's fee request is ludicrous by any measure.  In the related case between defendants and their contractor, in which a judgment has now been rendered after a full blown trial, and which necessarily revolved around the same allegations of covenant violations, etc., the total fees awarded were only $78,311.89 – only 41% of the amount requested by the Association here.  (Exhibit 1, at 2; see Exhibit 2)[2]

In this very action, in Magistrate Judge Kobayashi's Order on remand of September 25, 2006, and in her earlier Order cited therein on the same fee questions, Magistrate Judge Kobayashi had to hack down another wildly inflated fee request made by the Association's same attorneys.

Plaintiff has failed to prove the doubtful "qualifications" of its attorneys, who obviously lack expertise or any sense of professionalism.

---

[2] The Brandt action is now on appeal, so the rulings therein are neither res judicata nor collateral estoppel in this action, under Hawaii's *Silver* rule. *Silver v. Queen's Hospital*, 63 Haw. 430, 439-40, 629 P.2d 1116, 1123-24 (1981).

Although the Circuit Court found that the contractor had breached the construction contract by building defendants' house too close to the street, the judge – new to the bench and to civil law – entered judgment against the defendants on their contract claim notwithstanding *inter alia*, Hawaii's longstanding $1.00 contract damage judgment rule set forth in *Ferreira v. Honolulu Star-Bulletin*, 44 Haw. 567, 356 P.2d 651 (1960).

Overbilling Generally. Plaintiff's counsel charge .2 hours for simply reviewing hearing notices. (Ex. B, at 29) A supposed .4 hour was spent discussing paint colors on a single day. (Ex. B, at 44)

Plaintiff makes much ado over defendant's 27-page concise statement of facts, many of which simply recited provisions of the CC&Rs and other documents. Despite Plaintiff's sound and fury, only $3,162.00 plus tax of Plaintiff's $189,107.73 fee request is for fees incurred in responding to it. (Ex. B, at 24)

Plaintiff was busy researching such issues as whether *its own* "approval of erroneous plans" would allow it to avoid summary judgment (Ex. B, at 18) – obviously, defendants shouldn't be charged fees for the Association's own errors.

Plaintiff is charging attorney rates for telephone calls with Court Clerks and Courtroom Managers. (Ex. B, at 3, at 24, at 26, at 40, *et seq.*) One such entry is particularly troublesome. Mr. Fujisaki was apparently having *ex parte* discussions with Judge Ezra's law clerk, who had formerly been a summer law clerk at Mr. Jacobson' former law firm, hired by him while its hiring partner, but had not received an offer of an associate's position at the end of the summer. (Declaration, *infra*)

From the very beginning of Plaintiff's fee itemization, one can see the inflation. This action was filed on June 1, 2004. Counsel's billings begin on

~ 8 ~

March 2, 2004 – one needs to go to a second page before reaching June 1 – and it is clear that Plaintiff is requesting fees for much more than litigation activity. (Ex. B, at 1-2) Ludicrously, Plaintiff's attorneys were still writing letters to Mr. Grande about maintenance after being notified that defendants had abandoned the property. (Ex. B, at 6)

Plaintiff wants fees for bankruptcy related matters, and a Department of Health matter involving, what ?. (Ex. B, at 6, 17) Plaintiff wants fees relating to discovery requests served upon Messrs. Fujisaki, Nishimoto, and Stevens in another case. (Ex. B, at 15 [includes Wong, an attorney in the other case]).

Plaintiff wants fees for opposing consolidation of this case with the case against Grandes' contractor and the case brought by Grandes' neighbor, although requiring Grandes' contractor to fix his mistakes was the most obvious solution to this action. (Ex. B, at 17, 25, *et seq.*)

Plaintiff wants fees for unsuccessfully trying and drafting documents to get a stipulation to a Magistrate Judge's trial despite being advised that would not happen, and it didn't. (Ex. B, at 46)

There are numerous entries for purportedly preparing or reviewing correspondence or memoranda without indicating their subjects or topics researched, and/or without saying who they came from and/or went to. (Ex. B, at 1 *et seq.*)

Plaintiff is seeking fees for conferences among its attorneys, and with attorneys in the neighbor's aborted suit against Grandes. (Ex. B, at 2 [Iglesias], 3 [Fujisaki, Nakamoto], 24 [Grigsby], at 42, *et seq.*) Plaintiff is seeking fees for conversations with multiple client representatives on the same subject. (Ex. B, at 1 [Awa, Kloetzel], *et seq.*)

Plaintiff is seeking fees for drafting Board minutes and resolutions. (Ex. B, at 5, *et seq.*)

Plaintiff is seeking fees for talking about, or researching or working on, bills, compensation, and other fee matters, including the present motion. (Ex. B, at 3, at 4, at 39, at 42, at 50-51, *et seq.*) Plaintiff seeks over $10,000 for the present motion alone. (Ex. B, at 50-51)

Plaintiff is seeking fees for internal memos, calls and memos covering the same items, or drafting lengthy memos where a simple call to a client representative would have sufficed. (Ex. B, at 1, *et seq.*) Plaintiff is seeking fees for Westlaw research. (Ex. B, at 21, 24).

Although Plaintiff's attorneys did not represent the Association on the Counterclaim, they are nonetheless seeking fees relating thereto, and for conferences with the attorney dealing with the Counterclaim (Mr. Zalewski). (Ex. B, at 3, at 4, at 10, at 11, at 12, *et seq.*)

Plaintiff seeks fees relating to a TRO application, and amended complaint, although neither was ever filed. (Ex. B, at 2, 7) Plaintiff's counsel took 1.1 hours to write a letter advising Grandes' counsel that the Complaint would not be amended, instead of simply telephoning. (Ex. B, at 7)

Although Magistrate Judge Kobayshi's Order already covers and deals with such fees, and although Plaintiff is asking for inclusion of her award in a new award, Plaintiff is also asking for fees relating to its counsel's unsuccessful attempt to obtain defendants' default – after they had appeared by removing – by filing a default notice instead of responding to defense counsel's telephone request for a short extension to answer. (Ex. B, at 7, *et seq.*) Plaintiff is also seeking fees incurred in connection with the appeal from that Order, which has yet to be resolved. (Ex. B, at 27-28, 39-40)[3]

Plaintiff seek fees for opposing defendant's motion to disqualify Magistrate Judge Kobayashi, although she did disqualify herself, so Ms. Neeley could serve as chair of her reappointment committee. (Ex. B, at 27-28)

Unnecessary Expansion and Prolongation of Litigation. Contrary to the impression Plaintiff now attempts to create, this action was needlessly expanded and prolonged by the quixotic antics of Plaintiff itself, and its counsel, who are now seeking to be rewarded for their bungling.

Needless to say, defendants had no desire whatsoever to spend years of their lives embroiled in litigation with the Association, to lose all of the equity (essentially representing their life savings) in their house, and to be forced into bankruptcy.

The simplest way to have settled this action, and related litigation, would have been to add the errant contractor and the complaining neighbor as parties, so that this Court could apply settlement pressure to the contractor – who at one point was supposedly willing to perform some work – instead of having three separate actions. The Association cluelessly opposed that, requiring a separate trial of the case against the contractor.

The action began with defense counsel asking for a short extension, after appearing and removing, to answer the complaint, so Mr. Grande – a pilot on the road – could review it. Instead of responding, Plaintiff's counsel snuck down to the Courthouse and asked for a default entry, then tried to sustain it by lying and claiming that no extension request had been received – which was easily disproven by showing that counsel's allegation that only one person ever answered telephone calls at their firm was false. (See the appeal filed December 8, 2006)

After the case was filed, instead of trying to settle the real issues alleged in the Complaint (the front setback and the height of the front roof), the Association

---

[3] Plaintiff claims .8 hours for drafting an email simply asking for an extension to

sent an expensive team to the house, to go over it with a fine-toothed comb to find every possible minor "violation" they could imagine, as makeweights in case their claims about the front setback and the roof – which were built in conformity with the plans approved by the Association – failed. (See, *e.g.*, the limited allegations of the Complaint, Ex. B, at 18 *et seq.*, and Judge Ezra's 2006 Order of July 18, 2006, at 13-16) Indeed, the expert fees Plaintiff is now seeking includes the fees of that team.

Defendants were unaware of such "violations" prior to the team's blitz, and agreed to remedy them upon learning of them. See Grandes' Memorandum re Summary Judgment, filed 6-8-06, at 7-8, and the supporting materials.

After reaching tentative agreement on the parameters of a possible settlement in September 2005, including a waiver of the less-than-3-inch front setback problem, the Association withdrew that waiver, and other items of agreement, when Plaintiffs submitted revised plans in 2006. See Grandes' Memorandum re Summary Judgment, filed 6-8-06, at 8, 14, and the supporting materials.

When the Association saw that defendants were visibly working to remedy alleged violations in 2006, and defendants were was about to present the Association with a new set of plans, the Association bizarrely raced off to Court to respond. (Ex. B, 39-40)

file its first motion for summary judgment. See Grandes' Memorandum re Summary Judgment, filed 6-8-06, at 8, and the supporting materials.

The Association only adopted a more conciliatory approach after summary judgment was denied, and defendants' finances had been stretched thin for nearly three years. Even at that point, as its moving papers show, the Association demanded a $200,000 fee and cost deposit – far more that it could possibly be owed for fees and costs – as a settlement condition. And, as the Court knows, defendants were unable to finance that amount plus the cost of potential alterations, leading to their abandonment of the house, and their anticipated bankruptcy filing.

<u>Conclusion on Fees.</u> Plaintiff's fees are grossly overstated. Moreover, in light of Plaintiff's needless expansion and prolongation of this litigation, Plaintiff should be denied any fees whatsoever.

CONCLUSION

Plaintiff's motion should be denied for each and all of the foregoing reasons.

DATED: May 29, 2008.

_____
ANTHONY CHARLES GRANDE

_____
NARINDAR KAUR GRANDE