NEELEY & ANDERSON LLP
A Limited Liability Law Partnership

JOYCE Y. NEELEY          (3134-0)
LANCE S. FUJISAKI        (4224-0)
SCOTT R. GRIGSBY         (6673-0)
Pacific Guardian Center, Makai Tower
733 Bishop Street, Suite 2301
Honolulu, Hawai`i  96813
Telephone: (808) 536-8177
Facsimile: (808) 536-4977

X:\NaPaliHaweo\Grande\Usdc PLEADINGS\Mtn Fees-Reply-fnl.wpd

Attorneys for Plaintiff
NA PALI HAWEO COMMUNITY ASSOCIATION

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

| | |
|---|---|
| NA PALI HAWEO COMMUNITY ASSOCIATION, a Hawaii nonprofit corporation,<br><br>             Plaintiff,<br><br>     vs.<br><br>ANTHONY CHARLES GRANDE; NARINDAR KAUR GRANDE; JOHN DOES 1-10; JANE DOES 1-10; DOE PARTNERSHIPS 1-10; DOE CORPORATIONS 1-10; DOE ENTITIES 1-10; AND DOE GOVERNMENTAL UNITS 1-10,<br><br>             Defendants.<br><br>ANTHONY CHARLES GRANDE and NARINDAR KAUR GRANDE,<br><br>             Counterclaim Plaintiffs, | CIVIL NO. CV04-00413 DAE/BMK<br>(Injunctive Relief)<br><br>PLAINTIFF NA PALI HAWEO COMMUNITY ASSOCIATION'S REPLY MEMORANDUM REGARDING MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS AND EXPERT'S FEES AND COSTS (FILED APRIL 11, 2008); DECLARATION OF LANCE S. FUJISAKI; EXHIBIT "W"; CERTIFICATE OF SERVICE |

|  |  |
|---|---|
| vs.<br><br>NA PALI HAWEO COMMUNITY ASSOCIATION; RONALD K. AWA and DOES 1-25,<br><br>    Counterclaim Defendants. |  |

**PLAINTIFF NA PALI HAWEO COMMUNITY ASSOCIATION'S
REPLY MEMORANDUM REGARDING
MOTION FOR ATTORNEYS' FEES AND COSTS AND EXPERT'S FEES
AND COSTS (FILED APRIL 11, 2008)**

Defendants' Memorandum in Opposition ("MIO") suggests that there has been judicial misconduct because the former law clerk of United States District Court Judge David A. Ezra was not made an offer for an associate position with the Torkildson law firm when Steven B. Jacobson was a hiring partner:

> Plaintiff is charging attorney rates for telephone calls with Court Clerks and Courtroom Managers. [Citations Omitted] One such entry is particularly troublesome. Mr. Fujisaki was apparently having ex parte discussions with Judge Ezra's law clerk, who had formerly been a summer law clerk at Mr. Jacobson'[s] former law firm, hired by him while its hiring partner, but had not received an offer of an associate's position at the end of the summer.

*See* Memo in Support at 8. Defendants' argument epitomizes the manner in which they have handled this case since the initial stages, when they refused to stop construction to mediate this dispute, and through more than 20 meetings with this Court. Defendants' approach to this case has been reckless, uncooperative and capricious. Although there were ample signs that Defendants had no meritorious defenses, they failed to take advantage of the numerous opportunities to resolve this case, they forced NPH to litigate this case to judgment, and they never made a meaningful effort to reach a compromise. In their MIO, Defendants continue their pattern of taking outrageous positions. NPH will respond to Defendants' arguments in the same order they are raised in the MIO.

I.  **THE MOTION IS NOT PREMATURE**

1. The award of fees and costs in favor of NPH constitutes an award of damages. Stanford Carr Dev. Corp. v. Unity House, Inc., 111 Hawai'i 286, 305, 141 P.3d 459, 478 (2006) ("Under Hawai'i law, '[o]rdinarily, attorneys' fees cannot be awarded as <u>damages</u> or costs unless so provided by statute, stipulation, or agreement.'") (citation and quotation marks omitted). Count II of the Complaint is a dedicated count for reimbursement of fees and costs. Thus, by deciding the instant Motion, this Court will resolve Count II and Paragraph C of the Complaint, requesting that the "Court award the Association all such damages and charges due to the Association." This is not an unresolved claim.

2. The order entered on March 20, 2008, granting NPH summary judgment constitutes a mandatory injunction. The order compels Defendants to take specific action to resolve covenant violations on the Property.

3. It appears that Defendants are correct that Judge Ezra has not ruled on the appeal filed December 8, 2006. Defendants should have previously apprised this Court of this fact. However, Judge Ezra's ruling on the appeal does not render the Motion premature or the judgment not final as the appeal relates solely to the issue of whether Defendants are liable for NPH's fees and costs as sanctions. (The appeal is, in any event, moot because NPH has prevailed in this case and is entitled to reimbursement of all reasonable fees and costs regardless of how Judge Ezra rules on Defendants' appeal. NPH reserves the right to file a supplemental memo if the appeal is dismissed for mootness.) Even if final judgment were not entered, court rules do not prohibit a party from filing a motion for fees and costs prior to the entry of judgment, particularly

2

where the Complaint includes a specific count for reimbursement of fees and costs. To the extent, assuming for argument, final judgment has not been entered, NPH may file a supplemental motion for additional fees and costs subsequently incurred prior to entry of final judgment.

## II. NPH SHOULD BE AWARDED ITS COSTS

The underlying premise for Defendants' arguments concerning costs is wrong. Defendants argue that §§ 421J-10 and 607-9 are irrelevant and that LR54.2(f) controls. However, this Court has in numerous decisions applied Hawai`i statutory law on costs. *See* Great Divide Insurance Company v. AOAO Maluna Kai Estate, Civil No. 05-00608 ACK-LEK, 2007 WL 2484322 at 6 (D. Hawai'i Aug. 28, 2007) (costs awardable under HRS § 607-14); Synagro Technologies, Inc. v. GMP Hawaii, Inc., Civ. No. 04-00509 SPK/LEK, 2007 WL 851271 at 14 (D. Hawai'i Mar. 15, 2007) (costs awardable under HRS § 607-14). Furthermore, in this case, the DCC&R grants NPH a contractual right to recover costs.

### A. Experts' Fees and Costs

Defendants' sole argument is that NPH is not entitled to any reimbursement of experts' fees and costs. They virtually ignore the language in § 7.3 of the DCC&R which states that, without limitation, engineers' and architects' fees are recoverable.

> 7.3 <u>Reimbursement Assessment</u>: The Board shall levy an assessment against an Owner whose failure to comply with this Declaration, the Rules or the Architectural Committee Rules results in monies being expended by the Association . . . Monies so expended shall include, without limitation, engineers', architects', attorneys', and accountants' fees when reasonably incurred by the Association.

3

*See* Ex. A. Defendants argue that this provision does not authorize an award of fees "as litigation costs in lawsuits." However, § 7.3 is extremely broad. It makes no distinction between litigation fees and non-litigation fees. Fees are recoverable regardless of whether litigation is filed. There is nothing to suggest an intent to exclude fees incurred in litigation.

Defendants cite Twentieth Century Fox Film Corp. v. Entertainment Distributors, 429 F.3d 869, 885 (9th Cir. 2005). However, this decision has no bearing on this issue other than to confirm there are situations where 28 U.S.C. § 1920 does not control. In that case, the Court held that under a different statute, 17 U.S.C. § 505 (the 1976 Copyright Act), the Court was authorized to award a broader spectrum of costs. The court spoke of "clear evidence of congressional intent" because it was interpreting competing federal statutes. In this case, the DCC&R is a contract between NPH and Defendants and NPH is entitled to the relief specified in the DCC&R. Based upon the above, NPH should be awarded all expert fees and costs.

**B.     Miscellaneous Costs**

1.     Defendants argue that NPH may not recover various other cost items, such as faxes, postage, title reports, recordation fees, fees to the Circuit Court of the First Circuit, and fees for service of the summons and subpoena. However, Defendants are relying upon 28 U.S.C. § 1920, which does not apply. These costs are recoverable under § 607-9 and § 421J-10, HRS, and §§ 7.3, 6.8.1, 6.10, and 12.2.1 of the DCC&R.

2.     Defendants must pay filing fees to the Clerk of the First Circuit Court. Defendants should not be immunized from paying these fees simply because they removed the case to Federal Court.

4

3. Court reporter's fees for preparation of the transcript of Mr. Grande's trial testimony should be paid for by Defendants as a cost of enforcement. The transcript was necessary as Mr. Grande testified about the violations of the NPH governing documents in the circuit court trial and portions of the transcript were used in NPH's Motion for Summary Judgment. The records deposition of the Department of Planning and Permitting was needed to authenticate records subpoenaed from the City, which were attached to NPH's Motion for Summary Judgment.

4. NPH is seeking reimbursement of photocopy charges at the rate of 15 cents per page. This is reflected on page 28 of the Memo in Support (12,238 copies x .15 = $1,835.70). (The Memo in Support erroneously states that the number of copies is 12,233.)

5. NPH has provided sufficient information to support an award of copy charges. This has been an extremely document intensive case, as established by the exhibits attached to this Motion and other documents filed.

## III.  NPH'S FEE REQUEST IS REASONABLE

### A.  DEFENDANTS' ALLEGATIONS OF OVERBILLING ARE UNFOUNDED

Defendants have disputed only a very small fraction of the 1,477 time entries submitted to this Court and they have not challenged the hourly rates of NPH'S attorneys, other than to disparage N&A generally. Defendants have failed in their burden under LR54.3(f) which requires that the responsive MIO identify ***with specificity each disputed time entry:***

> Unless otherwise ordered by the court, any opposing party may file a responsive memorandum within eleven (11) days after service of the

5

> statement of consultation. The responsive memorandum in opposition to a motion for attorneys' fees and related non-taxable expenses shall identify ***with specificity*** all disputed issues of law and fact, ***each disputed time entry***, and each disputed expense item. The moving party, unless otherwise ordered by the court, may file a reply memorandum within eleven (11) days after service of the responsive memorandum. Thereafter, unless otherwise ordered by the court, the motion and supporting and opposing memoranda will be taken under advisement and a ruling will be issued without a hearing.

Defendants have failed to identify with specificity each disputed time entry. Indeed, NPH attached as Exhibit "B" an itemized description of services rendered in this case with 1,477 sequentially numbered entries. Although it would have been very easy for Defendants to pinpoint to this Court the specific entries they are objecting to, they have failed to do so. In many instances, Defendants merely cite to a page number of Exhibit "B" with the notation "*et seq.*" without specifying what they are disputing. Each page of Exhibit "B" contains roughly 25 or more entries. A general page reference is not sufficient. Moreover, many of the page references Defendants provide are inaccurate. NPH has done its best to respond to Defendants' objections.

The task of this Court is not to evaluate the merits of every action NPH's counsel took in this case. The prevailing party is entitled to all reasonably expended fees, even if the Court ruled against NPH on a particular sub-issue:

> If a plaintiff ultimately wins on a particular claim, she is entitled to all attorney's fees reasonably expended in pursuing that claim-even though she may have suffered some adverse rulings. Here, although the Supreme Court vacated our judgment, the Court's order was simply a temporary setback on the way to a complete victory for plaintiff . . .
>
> Rare, indeed, is the litigant who doesn't lose some skirmishes on the way to winning the war. Lawsuits usually involve many reasonably disputed issues and a lawyer who takes on only those battles he is certain of winning is probably not serving his client vigorously enough; losing is part of winning. The County would have us scalpel out attorney's fees for

6

every setback, no matter how temporary, regardless of its relationship to the ultimate disposition of the case. This makes little sense.

Cabrales v. County of Los Angeles, 935 F.2d 1050, 1053 (9th Cir. 1991).

### MIO at 7

1. Defendants are attempting to mislead this Court by arguing that NPH's fees are unreasonably high when compared to the fees awarded to Defendants' contractor in the mechanics' lien action. As shown by Exhibit 1 to the MIO, the trial court awarded the contractor $32,493.38 in damages for breach of contract. Based upon that award, under § 607-14, the contractor was awarded attorneys' fees of $8,123.35 (25% of $32,493.38) for the prosecution of its claims, including discovery and a lengthy bench trial. The contractor was also awarded $70,188.54 to defend against the counterclaim. Thus, the court did not determine the reasonable amount of fees incurred. The court capped the contractor's fees on the complaint based upon the statutory limits of § 607-14 which do not apply in this case. There are other differences, e.g., Defendants neglect to mention that the hourly rates of the contractor's attorney were $145/hour for partner's time and $125/hour for associate's time, which are on the lower end of the scale in Honolulu, *see* Exh. "W," nor do Defendants mention that the state court action had been pending for only approximately 1 1/2 years from filing to the trial date. By comparison, this case was filed in April 2004, and judgment was entered on March 31, 2008, nearly 4 years later.

2. Defendants argue that Judge Kobayashi "had to hack down another wildly inflated fee request made by the Association's same attorneys." This is untrue. Judge Kobayashi awarded NPH $3,642.42 by order entered September 22, 2006. (Doc. No.

7

158.) Although NPH requested an award of $7,689.30, Judge Kobayashi did not award the full amount because (1) approximately 10 hours of attorney time included block billing and time in which multiple attorneys worked on the same task, (2) 12.6 hours of time was for the Motion to Strike Answer, which Judge Kobayashi had not awarded. It should be noted that Judge Kobayashi found as to NPH's counsel's hourly rates, which were $185 and $190 at the time:

> [T]his Court is well aware of the prevailing rates in the community for similar services performed by attorneys of comparable experience, skill and reputation. Based on this Court's knowledge of the prevailing rates in the community at the relevant time, this Court finds the requested hourly rates to be manifestly reasonable.

Order at 16. (Note that the 12.6 hours ($2,092.69) referenced above and costs of $58.37 should have been included in this Motion but were inadvertently omitted.)

## MIO at 8

Defendants state that N&A should not have spent .2 hours (12 minutes) to review the hearing notice of NPH's MSJ. The review of the notice included reviewing the court rules and briefing schedule for the motion. This is not an unreasonable amount of time for a highly critical task. Decl. of Fujisaki.

Apparently referencing entries 1067F and 1068F, Defendants question the .4 hours spent discussing paint colors for roof vents, skylight frames and flashing. However, Defendants do not explain why these charges are not reasonable. Defendants should have resolved these issues promptly and they should not have forced NPH to litigate these issues in Federal Court.

Fees were incurred in responding to Defendants' defense that the ARC approved plans which did not show the building envelope drawn in the correct place, *i.e.*, that the

8

ARC erred in approving the plans. In granting summary judgment in favor of NPH, Judge Ezra rejected Defendants' argument that NPH waived the building envelope violation and, at the hearing, commented that Defendants' architect was responsible for complying with the Design Guidelines. NPH should be awarded fees to respond to Defendants' argument.

Communications with Court personnel were limited to ministerial acts, such as court imposed deadlines and scheduling meetings. By comparison, see Mr. Jacobson's June 27, 2006, letter to Judge Ezra. Exh. M, 13-15.

### MIO at 9

Defendants argue that NPH is "requesting fees for much more than litigation activity." Under the governing documents, NPH is entitled to all fees and costs incurred in enforcing the govering documents. The governing documents and Chapter 421J do not restrict the recovery of fees to fees incurred in litigation. The governing documents compel Defendants to reimburse NPH its fees and costs for enforcement of the governing documents, regardless of whether NPH files suit.

Defendants argue that "Plaintiff's attorneys were still writing letters to Mr. Grande about maintenance after being notified that defendants had abandoned the property." Regardless of whether Defendants have "abandoned" the property, Defendants are nevertheless owners of the property and bound by the injunction issued by this Court.

NPH should be awarded fees incurred in responding to the potential bankruptcy filing. Defendants have threatened bankruptcy at various stages in this case. *See, e.g.,* Defendants' Memorandum filed March 14, 2008, at 12 ("Mr. and Mrs. Grande have

9

not filed for bankrtupcy. They are currently determining which chapter of the Bankruptcy Code to file under . . .")

Defendants dispute entry 407E, .2 hours spent reviewing a complaint filed with the Department of Health related to a complaint of fugitive dust from Defendants' property. (The entry numbers in this memorandum refer to Exh. B.) As NPH did not pursue this issue, NPH hereby withdraws its request for reimbursement of this item.

NPH seeks fees and costs incurred in connection with subpoenas and attempts to call Messrs. Fujisaki, Nishimoto and Stevens as trial witnesses in the circuit court mechanics' lien action. The contractor attempted to depose NPH's counsel and expert witnesses as Defendants sought to call these witnesses at trial. N&A, which did not represent NPH in the circuit court case, assisted to prevent Defendants from calling these witnesses at trial and to protect NPH's interests in this case. NPH was concerned that the circuit court testimony could be used against NPH in this case. Thus, these fees were necessarily incurred in the enforcement of the governing documents and should be awarded to NPH. (NPH incurred additional fees in defense of the State case but did not include these fees in the Motion.)

NPH is entitled to fees in opposing Defendants' motion to consolidate which the Court denied.

NPH is entitled to fees in attempting to have a Magistrate Judge serve as the trial judge in this case. If Judge Ezra had not granted NPH's motion for summary judgment, the parties would have benefited by having a Magistrate Judge serve as trial judge in lieu of Judge Ezra. The fees incurred were reasonable.

Defendants have a blanket objection to "numerous entries" which do not include the subjects or topics of correspondence or memoranda. Defendants fail in the burden under LR54.3(f) to specifically identify the entries.

## MIO at 10

NPH is entitled to fees relating to the litigation filed by Defendants' neighbors, the Moribes. Although N&A did not represent NPH in that action, N&A communicated with the Moribes' counsel on numerous occasions and the Moribes' counsel attended settlement and/or status conferences before Judge Kobayashi. This was necessary because, as a practical matter, a settlement of this case required the approval of the Moribes. If the Moribes did not agree to the terms of the settlement, they may have continued to pursue claims against NPH and Defendants.

N&A's communications with multiple client representatives was reasonable. Jeff Kloetzel is a project manager for NPH's managing agent and was tasked with enforcement of the governing documents and serving as a liaison between owners and the ARC. Mr. Awa is the chair of the ARC and is responsible for review of plans. There is no rule of law that prohibits an award of fees if an attorney consults with more than one representative of an organization.

NPH is entitled to fees in drafting minutes and resolutions related to the prosecution of this action. *See* entries 119A, 121A and 122A. As previously mentioned, the DCC&R compels owners to reimburse all fees incurred in enforcement of the governing documents. This includes preparation of executive session minutes and/or resolutions which relate to actions taken by the Board to enforce the governing documents.

NPH is entitled to recover fees and costs in bringing this motion. The DCC&R provides that owners must reimburse NPH for fees and costs incurred in enforcing the governing documents. This Motion is a motion to enforce NPH's rights under the DCC&R. Thus, the fees and costs to bring this motion should be awarded against Defendants.

Defendants provide no specific references to the internal memos and telephone calls which they object to. Thus, NPH cannot respond to this objection.

Although Westlaw charges are not recoverable under Court rules, attorney time spent researching issues on Westlaw are certainly reimbursable.

N&A was required to communicate with attorney John D. Zalewski, counsel representing NPH and ARC Chair Awa on the Counterclaim. The Counterclaim, in part, sought "a declaration that [Defendants] are in full compliance with all lawful requirements the Association can impose upon them." Given that the Counterclaim was closely intertwined with the Complaint, it was necessary to coordinate prosecution of the Complaint with the defense of the Counterclaim.

### MIO at 11

Fees were incurred in exploring whether to file of a motion for TRO, among other remedies. Although a motion for TRO was not filed, NPH is entitled to recover fees incurred in investigating its options in enforcing the governing documents. Likewise, NPH explored whether to file an amended Complaint to include newly discovered violations. However, NPH concluded that the initial Complaint was sufficient to encompass all of the violations discovered on the Property and NPH ultimately obtained judgment on all violations, except those which were cured by

Defendants.

Defendants object to entries 116B and 167B which relate to the preparation of a letter to Mr. Jacobson notifying him that NPH would not amend the Complaint. Although this letter may appear simple and straight forward, the letter was extremely important as it related to the scope of the allegations in the Complaint and NPH's ability to obtain relief. The letter could have surfaced as an exhibit to a motion. It is important to understand the context in which the letter was prepared. NPH had previously informed Defendants that it was considering an amendment to the Complaint; however, NPH reassessed its plan due to other concerns. The amount of time spent crafting the letter is reasonable given the context in which the letter was drafted and the concerns that Defendants might misinterpret the letter or somehow use it against NPH later in the litigation. The letter went through several drafts before it was finalized.

The Motion does not seek reimbursement of fees included in any previously filed Motion concerning the entry of default. Defendants should have identified the specific entries they dispute. (The record reflects that NPH strenuously disputed Defendants' counsel's allegation that he requested an extension of time to answer via telephone or via fax before default was entered. *See* Memo filed Oct. 8, 2004 at 9-13.)

NPH is entitled to recover its fees to oppose Defendants' motion to disqualify Judge Kobayashi. Defendants' motion, in part, alleged collusion between N&A and Judge Kobayashi. For example, Defendants claimed that Judge Kobayashi stated that "her past experiences in unrelated prior cases and the legal community have shown her that Mr. Fujisaki 'is always meticulous and right' and that the Neeley & Anderson firm

13

is 'the experts' who 'know the area' - anyone else's experience and knowledge apparently being irrelevant . . ." Defendants also claimed that Judge Kobayashi stated she would award the Association "at least 85-90% of whatever attorneys' fees it requests because its attorneys come from law firms she views favorably, based upon her past experiences with them in unrelated prior cases." These statements were either completely false or grossly misrepresented Judge Kobayashi's comments.

At footnote 3, Defendants are apparently questioning entries 943F and 945F. As one can see from the two e-mails, attached as Exh. N, at 1-2, the e-mails discussed substantive issues, including instructions to the court clerk ***to accept the Grandes' deposit of $200,000 with the U.S. District Court***, and other matters. The time billed for the 2 e-mails is reasonable.

### B. NPH DID NOT UNNECESSARILY EXPAND AND PROLONG THE LITIGATION

Defendants state that "this action was needlessly expanded and prolonged by the quixotic antics of Plaintiff itself, and its counsel, who are now seeking to be rewarded for their bungling." As NPH chronicled in its memorandum, the "quixotic antics" were committed by the Defendants, and it is ironic that Defendants claim NPH bungled this case when Defendants lost on every claim of the Complaint, either via judgment or by Defendants' voluntary correction of violations. Defendants also lost every claim they raised in their Counterclaim.

At page 12, Defendants repeat arguments they previously made to this Court and which this Court rejected.

At page 13, Defendants argue about the 3-inch front setback violation. NPH never waived or agreed to waive the setback violation. NPH was willing to explore

14

practical solutions to the setback violation. This was most recently explained at the settlement conference before Judge Kurren on August 6, 2007, which Mr. Grande attended. *See* Memo in Support at 17.

NPH did not "bizarrely race off to Court to file its first motion for summary judgment." Rather, Judge Kobayashi terminated settlement discussions to allow NPH to file the MSJ with the hope that a ruling on the motion would resolve the case, or help to facilitate settlement discussions.

On December 13, 2006, Defendants agreed to deposit $200,000 with the Court to secure payment of fees and costs incurred by NPH on the Complaint *and* the Counterclaim. NPH's total fees and costs on the Complaint were, at that juncture, approximately $147,000 and the expert's fees and costs were approximately $16,000. The $200,000 deposit would also cover fees and costs to defend against the Counterclaim. Defendants agreed to deposit this amount with the Clerk in consideration for the release of NPH's lien on the Property and other terms.

## IV. Additional Fees and Costs

In addition to the fees and costs previously requested, NPH seeks additional attorneys' fees and costs of $3,895.29 and $9.45, respectively, based upon the attached Declaration.

DATED: Honolulu, Hawaii, June 9, 2008.

                                  /s/ Lance S. Fujisaki
                                  JOYCE Y. NEELEY
                                  LANCE S. FUJISAKI
                                  SCOTT R. GRIGSBY
                                  Attorneys for Plaintiff
                                  NA PALI HAWEO COMMUNITY ASSOCIATION