ORIGINAL

ANTHONY CHARLES GRANDE
NARINDAR KAUR GRANDE
125 Mar-Len Drive
Melbourne Beach, FL 32951
(321)-728-2942
Defendants Pro Se

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

AUG 07 2008

at 9 o'clock and 00 min. P M
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

NA PALI HAWEO COMMUNITY
ASSOCIATION, a Hawaii non-profit
corporation,

      Plaintiff,

    v.

ANTHONY CHARLES GRANDE;
NARINDAR KAUR GRANDE; and
DOES,

      Defendants.

ANTHONY CHARLES GRANDE
and NARINDAR KAUR GRANDE,

      Counterclaim Plaintiffs,

    v.

NA PALI HAWAO COMMUNITY
ASSOCIATION; RONALD K.
AWA; and DOES 1-25,

CIVIL NO. CV04-00413-DAE BMK

DEFENDANTS' OBJECTIONS TO
SEPCIAL MASTER'S REPORT
RECOMMENDING THAT PLAINTIFF'S
MOTION FOR ATTORNEY'S FEES AND
COSTS BE GRANTED IN PART AND
DENIED IN PART; CERTIFICATE OF
SERVICE

JUDGE: Hon. David Alan Ezra

~ 1 ~

Counterclaim Defendants

## DEFENDANTS' OBJECTIONS TO SPECIAL MASTER'S REPORT RECOMMENDING THAT PLAINTIFF'S MOTION FOR ATTORNEY'S FEES AND COSTS BE GRANTED IN PART AND DENIED IN PART

Defendants Anthony and Narindar Grande object to the Special Master's Report on Plaintiff's fee and cost requests, insofar as it grants Plaintiff $215,844.69 of the $216,285.33 it has requested for fees and costs – in an action which never went to trial, in which there was minimal discovery (no depositions), and in which the testimony the Association used to obtain an order directing the entry of an injunction[1] came from another action in which the Association's counsel did not participate.

The Special Master became so carried away in recommending costs and fees that the amounts he proposes are objectionable *in toto.*

As but one example, the Special Master essentially ignored this Court's (Judge Ezra's) Order of June 30, 2008, in which this Court observed (at 7-8) that "Plaintiff, not the Grandes, is arguably the party whose actions can be seen as complicating the proceedings surrounding the initial granting of [Grandes'] default" and its aftermath, and this Court's denial of any fees and costs connected therewith. The Special Master also ignored Magistrate Judge Kobayashi's earlier

---

[1] No document labeled as an injunction has been issued yet.

determination that, in any event, a substantial amount of Plaintiff's fees incurred in connection therewith were unreasonable. (Order of October 19, 2004)

Instead, the Special Master is recommending assessment of every penny of Plaintiffs' fees, totaling way more than $10,000, connected therewith or with Plaintiff's *unsuccessful* defense of the related appeals. (See Exhibit B to Plaintiff's fee request, at 3, 5, 7, 16-17, 18, 26-27, 28, 31, 39)

I. THE SPECIAL MASTER ERRONEOUSLY CONCLUDED THAT STATE LAW, RATHER THAN FEDERAL LAW, SHOULD BE APPLIED IN DETERMINING ANY COST AND EXPENSE (AS DISTINGUISHED FROM FEE) AWARD, AND OTHERWISE ERRED IN HIS COST AND EXPENSE RECOMMENDATION.

The Special Master's recommendation that Plaintiff be awarded almost all of its requested costs and expenses is based upon a clearly erroneous misreading of Champion Produce, Inc. v. Ruby Robinson Co., Inc., 342 F.3d 1016 (9th Cir. 2003).

Part II.A.2. of Champion Produce, dealing with costs, as distinguished from Part II.A.3 of Champion Produce, which deals with fees, makes clear that awards of costs and expenses in federal courts, "even in diversity cases," are to be based upon federal rather than state law.

Consequently, it was wrong for the Special Master to base his proposed cost and expense award on state, rather than federal, law. (See Report, at 4-6, esp. 5)

As made clear in LR 54.2(f), the question of whether costs – as distinguished from attorneys' fees – are awardable in federal courts is a question of federal law,

to be decided by application of 28 USC §§ 1821 & 1920 *et seq.*, the FRCP, and this Court's Local rules. Thus, the Special Master's citations upon HRS § 421J-10 and Hawaii state case and common law, and Plaintiff's citation of HRS § 607-9, are irrelevant to whether Plaintiff should be awarded costs, and how much, in this action.

Moreover, because federal law applies, the Special Master is wrong in concluding, expressly and *sub silento*, that this Court's Local rules need not be applied in determining any cost award.

Witness Fees. Plaintiff's request for $18,000+ of expert witness fees is inappropriate given LR 54.2(f)(3), which provides: "Unless otherwise provided by law, fees for expert witnesses are not taxable in an amount greater than that statutorily allowable for ordinary witnesses." Indeed, because there was no trial, Plaintiff is not entitled to any witness fees whatsoever under 28 U.S.C. § 1821, and no other federal statute applies in this case. See Twentieth Century Fox Film Corp. v. Entertainment Distributors, 429 F.3d 869, 885 (9th Cir. 2005) ("clear evidence of *congressional* intent that non-taxable costs should be available" is required).[2]

Also, it is quite clear, from their own declarations, that the purported expert witnesses were serving in other capacities and did not just sign declarations.

_____

[2] Although it's irrelevant in this federal court, Defendants note that none of the CC&R provisions cited in Plaintiff's memo (at 20 et seq.) authorize the awarding

Local Faxes, Postage, Title Reports, Recordation Fees (Plaintiff's items 1, 5-7, Memo p. 28). Nothing in 28 USC § 1920 allows faxes, postage, title reports, or recordation fees, to be taxed in this action. It appears from Exhibit C (at 1) that $78 of the "Fees of the Clerk" listed in Plaintiff's memo were really recording fees of some kind.

Fees of the Clerk (Item 1, p. 28). As Exhibit C (at 1) shows, the $275 item was *not* paid to the Clerk of this Court and thus is not a recoverable cost listed in 28 U.S.C. § 1920(1). See the previous paragraph re the other $78.

"Fees for service of summons and subpoena" (Item 2, p. 28). None of these fees were paid to a marshal, so none are recoverable. 28 U.S.C. § 1920(1). There is no indication that Plaintiff attempted requested a waiver of service as provided in FRCP 4(d). Plaintiff spent $45 on a Hawaii process server, although it knew Grandes had moved to Tennessee months earlier. Then, instead of using a local process server in Tennessee, it spent $280 on one in Minnesota. (Ex. U, 4, 6)

Court Reporter Fees (Item 3, p. 28). It appears that all but $516.36 of the requested amount was for a copy of a trial transcript in another case. Such transcripts are not recoverable under LR 54.2(f)(2)(" of any *deposition* transcript"). The other $143.33 apparently was for an unnecessary deposition of City records personnel, unnecessary because whatever public documents were obtained would

of engineer's, architect's, or surveyor's fees, or other expert fees, as litigation costs

have been admissible by judicial notice anyway. This was "mere discovery," in the words of the rule.

Copying (Items 4a-4f & 8["April 2008"], p. 28): Copying costs may be recoverable under some circumstances, but only at a maximum of 15 cents per page, without taxes being added onto them. LR 54.2(f)(4). It is obvious that the charges listed in items 4b-4f are far in excess of 15 cents per page.

The Local rule mandates that "The cost of copies obtained for the use and/or convenience of the party seeking recovery and its counsel is not allowable."

Before any of its copying costs can be recovered, a party must – as required by the Local Rule – submit an affidavit "describing the documents copied, the number of pages copied, the cost per page, and the use of or intended purpose for the items copied." That requirement enables defending parties the opportunity to point out any excessive or otherwise inappropriate requests, and the Court to delete them.

The Special Master apparently thought that it was okay for Plaintiff to ignore the Local Rule's requirements, because he thought state rather than federal law applied. He was wrong, and Plaintiff's failure to comply with the Local Rule requires denial of the entirety of its request for copying charges.

---

in lawsuits.

II.  PLAINTIFF'S FEE REQUEST IS GROSSLY OVERINFLATED.

Plaintiff's fee request is ludicrous and unreasonably huge by any reasonable measure.

In the related case between defendants and their contractor, in which a judgment has now been rendered after a full blown trial, and which necessarily revolved around the same allegations of covenant violations, etc., the total fees awarded were only $78,311.89 – only 41% of the amount requested by the Association here.  (Defendants' Exhibit 1, filed 5-29-08, at 2; see also Defendants' Exhibit 2)[3]

In this very action, in Magistrate Judge Kobayashi's Order on remand of September 25, 2006, and in her earlier Order cited therein on the same fee questions, Magistrate Judge Kobayashi had to hack down another wildly inflated fee request made by the Association's same attorneys.

Plaintiff is improperly seeking "fees on fees."  Plaintiff is asking for more than $12,000 of fees purportedly incurred in preparing its present fee and cost

---

[3] The Brandt action is now on appeal, so the rulings therein are neither res judicata nor collateral estoppel in this action, under Hawaii's *Silver* rule.  *Silver v. Queen's Hospital*, 63 Haw. 430, 439-40, 629 P.2d 1116, 1123-24 (1981).

Although the Circuit Court found that the contractor had breached the construction contract by building defendants' house too close to the street, the judge – new to the bench and to civil law – entered judgment against the defendants on their contract claim notwithstanding *inter alia*, Hawaii's longstanding $1.00 contract

motion. (Ex. B, at 50-51, and Supp. Req. in Reply Memo) Plaintiff is seeking

other fees purportedly incurred in talking about, or researching or working on,

bills, compensation, and other fee matters. (Ex. B, at 3, at 4, at 39, at 42, at 50-51,

*et seq.*)

Plaintiff , as already noted, is seeking the fees it unreasonably incurred in

taking and defending its inappropriate entry of Defendants' default.

Overbilling Generally. Plaintiff's request is padded. Plaintiff's counsel

charge .2 hours for simply reviewing hearing notices, and .3 hours calling the

clerk's office "re filing an errate." (Ex. B, at 22, 29) A supposed .4 hour was

spent discussing paint colors on a single day. (Ex. B, at 44) 2.6 hours was spent

"researching allowable interrogatory subparts." (Ex. B, at 14) .7 hours was spent

researching whether Grandes' submitting plans during settlement discussions could

be called an admission. (Ex. B, at 22) 5.4 hours were purportedly spent

scheduling a meeting. (Ex. B, at 42)

Plaintiff makes much ado over defendant's 27-page concise statement of

facts, many of which simply recited provisions of the CC&Rs and other

documents. Despite Plaintiff's sound and fury, only $3,162.00 plus tax of

Plaintiff's $189,107.73 fee request is for fees incurred in responding to it. (Ex. B,

at 24)

---

damage judgment rule set forth in *Ferreira v. Honolulu Star-Bulletin*, 44 Haw.

Comparatively little of Plaintiff's request was devoted to actual litigation activity.

Plaintiff was busy researching such issues as whether *its own* "approval of erroneous plans" would allow it to avoid summary judgment (Ex. B, at 18) – obviously, defendants shouldn't be charged fees for the Association's own errors.

Plaintiff is charging attorney rates for telephone calls with Court Clerks and Courtroom Managers which could just as easily be made by unbilled secretaries or lesser . (Ex. B, at 3, at 24, at 26, at 40, *et seq.*)  One such entry is particularly troublesome.  Mr. Fujisaki was apparently having *ex parte* discussions on undisclosed topics with this Court's *law* clerk, who had formerly been a summer law clerk at Mr. Jacobson' former law firm, hired by him while its hiring partner, but had not received an offer of an associate's position at the end of the summer. (Declaration, filed 5-29-08, *infra*)

From the very beginning of Plaintiff's fee itemization, one can see the fee inflation.  This action was filed on June 1, 2004.  Counsel's billings begin on March 2, 2004 – one needs to go to a second page before reaching June 1 – and it is clear that Plaintiff is requesting fees for much more than litigation activity.  (Ex. B, at 1-2) Ludicrously, Plaintiff's attorneys were still writing letters to Mr. Grande

567, 356 P.2d 651 (1960).

about maintenance after being notified that defendants had abandoned the property

on January 11, 2008.  (Ex. B, at 6, entries 132, 135 & 138)

Plaintiff wants fees for bankruptcy related matters, and a Department of

Health matter involving, what ?.  (Ex. B, at 6, 17)  Plaintiff wants fees relating to

discovery requests served upon Messrs. Fujisaki, Nishimoto, and Stevens in

another case.  (Ex. B, at 15 [includes Wong, an attorney in the other case]).  There

are references to conversations with attorney Wong on another case scattered

throughout Plaintiff's Exhibit B.  (E.g., at 4)

Plaintiff wants fees purportedly relating to a 2004 summary judgment

motion that it didn't file.  (Ex. B, at 16)

Plaintiff wants fees for opposing consolidation of this case with the case

against Grandes' contractor and the case brought by Grandes' neighbor, although

requiring Grandes' contractor to fix his mistakes was the most obvious solution to

this action.  (Ex. B, at 17, 25, *et seq.*)

Plaintiff wants fees for unsuccessfully trying and drafting documents to get a

stipulation to a Magistrate Judge's trial despite being advised that would not

happen, and it didn't.  (Ex. B, at 46)

There are numerous entries for purportedly preparing or reviewing

correspondence or memoranda without indicating their subjects or topics

researched, and/or without saying who they came from and/or went to.  (Ex. B, at 1 *et seq.*)

There is no explanation whatsoever for one entry.  (Ex. B, at 19)

Since everything in this action occurred in Hawaii, there was no choice of law issue to research.  (Ex. B, at 21)

Plaintiff is seeking fees for conferences among its attorneys, and with attorneys in the neighbor's aborted suit against Grandes.  (Ex. B, at 2 [Iglesias], 3 [Fujisaki, Nakamoto], 24 [Grigsby], at 37, 38, 42, 48, *et seq.*)   Plaintiff is seeking fees for conversations with multiple client representatives on the same subject.  (Ex. B, at 1 [Awa, Kloetzel], *et seq.*)  And having multiple attorneys in client meetings.  (Ex. B, at 21, *et seq.*)

Plaintiff is seeking fees for drafting Board minutes and resolutions.  (Ex. B, at 5, *et seq.*)

Plaintiff is seeking fees for internal memos, calls and memos covering the same items, or drafting lengthy memos where a simple call to a client representative would have sufficed.  (Ex. B, at 1, *et seq.*)  Plaintiff is seeking fees for Westlaw research.  (Ex. B, at 21, 24).

Although Plaintiff's attorneys did not represent the Association on the Counterclaim, they are nonetheless seeking fees relating thereto, and for

conferences with the attorney dealing with the Counterclaim (Mr. Zalewski).  (Ex. B, at 3, at 4, at 10, at 11, at 12, *et seq.*)

Plaintiff seeks fees relating to a TRO application, and amended complaint, although neither was ever filed.  (Ex. B, at 2, 7)  Plaintiff's counsel took 1.1 hours to write a letter advising Grandes' counsel that the Complaint would not be amended, instead of simply telephoning.  (Ex. B, at 7)

Plaintiff seek fees for opposing defendant's motion to disqualify Magistrate Judge Kobayashi, although she did disqualify herself, so one of Plaintiff's counsel, Ms. Neeley, could serve as chair of her reappointment committee.  (Ex. B, at 27-28)

Unnecessary Expansion and Prolongation of Litigation.  Contrary to the impression Plaintiff now attempts to create, this action was needlessly expanded and prolonged by the quixotic antics of Plaintiff itself, and its counsel, who are now seeking to be rewarded for their bungling.

Needless to say, defendants had no desire whatsoever to spend years of their lives embroiled in litigation with the Association, to lose all of the equity (essentially representing their life savings) in their house, and to be forced into bankruptcy.

The simplest way to have settled this action, and related litigation, would have been to add the errant contractor and the complaining neighbor as parties, so

that this Court could apply settlement pressure to the contractor – who at one point was supposedly willing to perform some work – instead of having three separate actions. The Association cluelessly opposed that, requiring a separate trial of the case against the contractor.

The action began with defense counsel asking for a short extension, after appearing and removing, to answer the complaint, so Mr. Grande – a pilot on the road – could review it. Instead of responding, Plaintiff's counsel snuck down to the Courthouse and asked for a default entry, then tried to sustain it by lying and claiming that no extension request had been received – which was easily disproven by showing that counsel's allegation that only one person ever answered telephone calls at their firm was false. (See the appeal filed December 8, 2006)

After the case was filed, instead of trying to settle the real issues alleged in the Complaint (the front setback and the height of the front roof), the Association sent an expensive team to the house, to go over it with a fine-toothed comb to find every possible minor "violation" they could imagine, as makeweights in case their claims about the front setback and the roof – which were built in conformity with the plans approved by the Association – failed. (See, *e.g.*, the limited allegations of the Complaint, Ex. B, at 18 *et seq.*, and Judge Ezra's 2006 Order of July 18, 2006, at 13-16) Indeed, the expert fees Plaintiff is now seeking includes the fees of that team.

~ 13 ~

Defendants were unaware of such "violations" prior to the team's blitz, and agreed to remedy them upon learning of them. See Grandes' Memorandum re Summary Judgment, filed 6-8-06, at 7-8, and the supporting materials.

After reaching tentative agreement on the parameters of a possible settlement in September 2005, including a waiver of the less-than-3-inch front setback problem, the Association withdrew that waiver, and other items of agreement, when Plaintiffs submitted revised plans in 2006. See Grandes' Memorandum re Summary Judgment, filed 6-8-06, at 8, 14, and the supporting materials.

When the Association saw that defendants were visibly working to remedy alleged violations in 2006, and defendants were was about to present the Association with a new set of plans, the Association bizarrely raced off to Court to file its first motion for summary judgment. See Grandes' Memorandum re Summary Judgment, filed 6-8-06, at 8, and the supporting materials.

The Association only adopted a more conciliatory approach after summary judgment was denied, and defendants' finances had been stretched thin for nearly three years. Even at that point, as its moving papers show, the Association demanded a $200,000 fee and cost deposit – far more that it could possibly be owed for fees and costs – as a settlement condition. And, as the Court knows,

defendants were unable to finance that amount plus the cost of potential alterations, leading to their abandonment of the house, and their anticipated bankruptcy filing.

Conclusion on Fees.  Plaintiff's fees are grossly overstated.  Moreover, in light of Plaintiff's needless expansion and prolongation of this litigation, Plaintiff should be denied any fees whatsoever.

CONCLUSION

Plaintiff's motion should be denied for each and all of the foregoing reasons.

DATED:  August 7, 2008.

_____
ANTHONY CHARLES GRANDE

_____
NARINDAR KAUR GRANDE

~ 15 ~

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| NA PALI HAWEO COMMUNITY ASSOCIATION, a Hawaii non-profit corporation, | CIVIL NO. CV04-00413-DAE BMK |
| | CERTIFICATE OF SERVICE |
| Plaintiff, | |
| v. | |
| ANTHONY CHARLES GRANDE; NARINDAR KAUR GRANDE, and DOES, | |
| Defendants. | |
| ANTHONY CHARLES GRANDE and NARINDAR KAUR GRANDE, | |
| Counterclaim Plaintiffs, | |
| v. | |
| NA PALI HAWAO COMMUNITY ASSOCIATION; RONALD K. AWA; and DOES 1-25, | |
| Counterclaim Defendants | |

CERTIFICATE OF SERVICE

The undersigned hereby certifies that copies of the foregoing document will be served today by first-class mail or hand delivery upon:

~ 16 ~

JOYCE Y. NEELEY, ESQ.
LANCE S. FUJISAKI, ESQ.
SCOTT GRIGSBY, ESQ.
Neeley & Anderson LLP
733 Bishop Street, Suite 2301
Honolulu, Hawai'i 96813

Attorneys for Plaintiff
and Counterclaim Defendant
Na Pali Haweo Community Association

JOHN D. ZALEWSKI, ESQ.
Case Lombardi & Pettit
737 Bishop Street, Suite 2600
Honolulu, HI 96813

Attorneys for Plaintiff
and Counterclaim Defendants
Na Pali Haweo Community Association
and Ronald K. Awa

DATED: August 7, 2008.

_____
ANTHONY CHARLES GRANDE